# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH DAKOTA
# WESTERN DIVISION

| | |
|---|---|
| NDN COLLECTIVE, individually and on behalf of all others similarly situated, and SUNNY RED BEAR, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RETSEL CORPORATION, d/b/a GRAND GATEWAY HOTEL and d/b/a CHEERS SPORTS LOUNGE AND CASINO, CONNIE UHRE, and NICHOLAS UHRE,<br><br>Defendants. | Case No. 5:22-cv-05027-RAL<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiffs NDN Collective and Sunny Red Bear, individually and on behalf of all others similarly situated, alleges as follows:

## INTRODUCTION

1. This lawsuit arises out of the explicit racial discrimination by Defendants Retsel Corporation d/b/a Grand Gateway Hotel ("Grand Gateway Hotel") and d/b/a Cheers Sports Lounge and Casino ("Cheers Bar"), Connie Uhre, and Nicholas Uhre (collectively, the "Uhres").

2. Connie Uhre owns and operates the Grand Gateway Hotel in Rapid City, South Dakota. She also owns and operates Cheers Bar, which is located on the same

1

premises as, and connected to, the Grand Gateway Hotel. The Grand Gateway Hotel and Cheers Bar are managed by Nicholas Uhre, Connie's son.

3. On March 21 and 22, 2022, the Defendants discriminated against NDN Collective and Sunny Red Bear on the basis of their race, in violation of 42 U.S.C. § 1981.

4. The Defendants' intentional racial discrimination against the Plaintiffs is part of a policy, pattern, or practice of intentional racial discrimination against Native Americans.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because this complaint involves a claim to recover damages for the protection of civil rights under 42 U.S.C. § 1981, which provides for redress when the right to make or enforce a contract is interfered with on the basis of racial discrimination or animus, and 42 U.S.C. § 1988, which authorizes the recovery of attorneys' fees.

6. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 *et seq.*, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court.

7. Venue is appropriate under 28 U.S.C § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of South Dakota and Defendants reside or are located in this judicial district.

## PARTIES

8. Plaintiff NDN Collective is a 501(c)(3) non-profit organization registered in Rapid City, South Dakota. NDN Collective's mission includes educating, funding, and organizing those engaged in Native American issues. NDN Collective seeks to increase philanthropic and capital investment in Native communities; to use trainings, leadership development, and education to prepare Indigenous communities to create sustainable outcomes for their people and planet; and to develop a political agenda for activism related to the Indigenous community goals of, among other things, protecting and defending their land, air, water and the planet. NDN Collective makes regular use of public accommodations in Rapid City, including hotels.

9. Plaintiff Sunny Red Bear is an individual residing in Rapid City, South Dakota. Ms. Red Bear is Native American and a member of a protected class.

10. Defendant Retsel Corporation is a South Dakota corporation. On information and belief, Retsel Corp. does business as the Grand Gateway Hotel. The 2021 Annual Report filed with the South Dakota Secretary of State for Retsel Corp. lists its actual address in this state as 1721 N Lacrosse Street, Rapid City, South Dakota. That address is the same as the address listed online for the Grand Gateway Hotel.[1]

11. On information and belief, Retsel Corp. also operates the Cheers Bar, which is located within the Grand Gateway Hotel. The website for the Grand Gateway

---

[1] *See* Grand Gateway Hotel, available at https://www.grandgatewayhotel.com/ (last accessed March 22, 2022).

Hotel contains a section for the Cheers Sports Lounge and Casino, which states, among other things "The Grand Gateway Hotel – a hotel, a restaurant, and a sports bar – all on the same property."[2]

12. On information and belief, Defendant Connie Uhre is an individual and a South Dakota resident residing in Rapid City, South Dakota. Connie Uhre owns and operates Retsel Corp. d/b/a Grand Gateway Hotel, and d/b/a Cheers Sports Bar and Lounge. The 2021 Annual Report for Retsel Corp. lists Connie Uhre as President and a director of that entity.

13. On information and belief, Defendant Nicholas Uhre is an individual and South Dakota resident residing in Rapid City, South Dakota. On information and belief, Nicholas Uhre is the manager of the Grand Gateway Hotel and Cheers Bar. The 2021 Annual Report for Retsel Corp. lists Nicholas Uhre as a director of that entity.

14. Retsel Corp., and its businesses, Grand Gateway Hotel and Cheers Bar, are vicariously liable for the actions of the employees, owners, managers, and directors of the corporation. The Uhres are also individually liable for their actions.

**ADDITIONAL FACUTAL ALLEGATIONS**

15. The Grand Gateway Hotel and Cheers Bar are open to the public and offer services as public accommodations.

---

[2] *See* Grand Gateway Hotel, available at https://www.grandgatewayhotel.com/rapid-city-hotel-dining/cheers-sports-lounge-casino (last accessed March 22, 2022).

16. On or around March 20, 2022, Connie Uhre posted on social media that she will "not allow a Native American to enter our business including Cheers" because she is unable to tell "who is a bad Native or a good Native."[3]

17. In another since-deleted social media post,[4] Connie Uhre not only stated that she was banning Native Americans from the Grand Gateway Hotel and from Cheers Bar, but she also offered a "very special rate" to ranchers and travelers—presumably, only non-Native ranchers and travelers:



Connie Uhre
Do to the killing that took place at the Grand Gateway Hotel on March 19 2022 at 4 am plus all the vandalism we have had since the Mayor and Police Department are working with the non profit organization ( Dark Money) . We will no long allow any Native American on property. Or in Cheers Sports Bar. Natives killing Natives. Rancher and Travelers will receive a very special rate of 59.00 a night. Book Direct.

1d   Like   Reply

---

[3] Siandhara Bonnet, *Hotel threatens to ban Native Americans following shooting*, Rapid City Journal, March 21, 2022, available at https://rapidcityjournal.com/news/local/hotel-threatens-to-ban-native-americans-following-shooting/article_d3282ee4-95fb-5873-a02a-2d0aff9c0975.html (last accessed March 22, 2022); KOTA Staff, *Rapid City hotel purportedly bans Native Americans from its property*, KOTA, March 21, 2022, available at https://www.kotatv.com/2022/03/22/rapid-city-hotel-purportedly-bans-native-americans-its-property/ (last accessed March 22, 2022).

[4] It is unclear if this is the same social media post quoted in the articles cited in note 3.

18.     Nicholas Uhre also started an email chain among other local hospitality management. On information and belief, Connie Uhre sent an email as part of that chain on or around March 20, 2022, in which she stated, "I really do not want to allow Natives on property. Every time we have problems I call the police with it, the first thing they ask is what nationality is he or she and 98% of the time I have to say native [sic], and we call at least once a week. they [sic] kill each other walk around with guns . . . The problem is we do not know the nice ones from the bad natives…so we just have to say no to them!!"[5]

19.     Despite these overtly racial comments, the Uhres claim the Grand Gateway Hotel and Cheers Bar do not have a policy discriminating against Native Americans. This claim is pretext for intentional racial discrimination against the Plaintiffs and the members of the class.

20.     On information and belief, by the afternoon of March 23, 2022, the Grand Gateway Hotel had stationed guards, at least one of whom had an assault rifle, in the lobby of the hotel:

---

[5] Arielle Zionts, *Workers quit, lawsuit pending after hotel owner calls for ban on Native Americans*, SDPB, March 22, 2022, available at https://listen.sdpb.org/business-economics/2022-03-22/workers-quit-lawsuit-pending-after-hotel-owner-calls-for-ban-on-native-americans (last accessed March 23, 2022).



21. The presence of guards and automatic weapons was intended to, and did, further intimidate and exclude Native Americans, including the Plaintiffs here.

I. **Intentional Racial Discrimination Against Sunny Red Bear**

22. On March 21, 2022, Plaintiff Sunny Red Bear entered the Grand Gateway Hotel with another Native American woman. The two women tried to rent a room at the hotel.

23. After initially beginning to process the rental and providing a price quote, a hotel employee refused to rent a room to them, claiming that the hotel had a policy that it did not rent rooms to people with "local" identification. This was mere pretext to discriminate against Ms. Red Bear based on her race.

24. The hotel employee first claimed that this local identification policy was an actual policy. Then she reversed herself, claiming there was not a formal policy but that this was an effort to implement and/or deal with the fallout from Connie Uhre's social media posts. On information and belief, no written policy existed, and no such policy was provided to Ms. Red Bear.

25. The hotel employee also did not allow the other woman to rent the room under her name using her identification, and never asked to see the other woman's identification to determine whether she was "local."

26. As a direct result of Connie Uhre's decision, announced on social media, to exclude Native Americans from her businesses, Ms. Red Bear was discriminated against in violation of federal law. On information and belief, Nicholas Uhre has also endorsed and enforced this policy, and hotel management had communicated such a policy to its staff.

27. As a result of the Defendants' public statements endorsing racial discrimination at their businesses, and as a result of the March 21, 2022, incident, Ms. Red Bear felt and feels threatened, embarrassed, humiliated, disturbed, and shocked. She feels unwelcome to return.

28. Ms. Red Bear had not done anything to warrant exclusion from the Grand Gateway Hotel. Instead, Ms. Red Bear and her companion were excluded on the basis of their race and protected status as Native Americans.

29. As a result of the Defendants' intentional policy of racial discrimination, Ms. Red Bear was prevented from completing any transactions at the Grand Gateway Hotel and at Cheers Bar.

## II. Intentional Racial Discrimination Against NDN Collective.

30. On March 22, 2022, representatives of NDN Collective entered the Grand Gateway Hotel to reserve five rooms on behalf of the organization.

31. NDN Collective was told that they could not rent rooms due to some "issues" that the hotel had.

32. When NDN Collective stated that Expedia showed rooms available, the front desk employee confirmed that rooms were, in fact, available but the hotel would not rent those available rooms to NDN Collective.

33. At no point did the NDN Collective representative present a form of identification, local or otherwise.

34. The NDN Collective representative asked to speak to a manager. At all times, the interaction with the front desk employee was respectful and polite.

35. Immediately thereafter, an individual believed to be Nicholas Uhre approached the NDN Collective representatives and forcefully demanded that they leave the hotel. He then followed them out of the hotel. The representatives of NDN Collective were intimidated by Nicholas Uhre's threatening demeanor.

36. As a direct result of Connie Uhre's decision, announced on social media, to exclude Native Americans from her businesses, NDN Collective was discriminated against in violation of federal law. Nicholas Uhre also endorsed and enforced this

policy, including by communicating a policy of exclusion to hotel staff and by intimidating the NDN Collective representatives and excluding them from the hotel.

37. As a result of the Defendants' public statements endorsing racial discrimination at their businesses, NDN Collective and its members felt and feel threatened, embarrassed, humiliated, disturbed, and shocked.

38. Further, as a result of the March 22, 2022, incident at the Grand Gateway Hotel, NDN Collective and its members felt and feel threatened, embarrassed, humiliated, disturbed, and shocked. They feel unwelcome to return.

39. The individuals present at the Grand Gateway Hotel on behalf of NDN Collective had not done anything to warrant exclusion from the Grand Gateway Hotel. Instead, they were excluded on the basis of their race and protected status as Native Americans, the racial identity of their organization, and NDN Collective's advocacy for Native Americans.

40. As a result of the Defendants' intentional policy of racial discrimination, NDN Collective was prevented from completing any transactions at the Grand Gateway Hotel and at Cheers Bar.

## CLASS ACTION ALLEGATIONS

41. The Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

42. Pursuant to a pattern or practice of intentional and willful racial discrimination, Plaintiffs and other Native American patrons have been, are being, and

will be denied equal services at the Defendants' businesses, which are public accommodations.

43. The alleged class consists of:

All Native Americans who have or will visit the Grand Gateway Hotel and/or Cheers Bar. Excluded from the Class are Defendants and their officers, directors, management, employees, subsidiaries, and affiliates. Also excluded is courthouse personnel and their spouses and immediate family.

Alternatively, the Plaintiffs will seek to certify a subclass consisting of

All Native Americans with a Rapid City address who have or will visit the Grand Gateway Hotel and/or Cheers Bar. Excluded from the Class are Defendants and their officers, directors, management, employees, subsidiaries, and affiliates. Also excluded is courthouse personnel and their spouses and immediate family.

44. The Plaintiffs may alter the class definition(s) to conform with developments in the case and discovery.

45. **Numerosity under Federal Rule of Civil Procedure 23(a)(1):** The class is so numerous that joinder of all members is not practicable. Approximately 10,000 Native Americans live in Pennington County alone.

46. **Commonality and Predominance under Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):** There are questions of law and fact common to the class members. These common questions predominate over any questions relating to individual class members. Specifically, common questions include, but are not limited to, whether the Defendants have discriminated and will discriminate against class members, whether the Defendants have a policy of discrimination against class members, and whether such discrimination violates federal law.

11

47. **Typicality under Federal Rule of Civil Procedure 23(a)(3):** The Plaintiffs' claims are typical of the claims of class members. All are based on the same or similar facts and the same legal theories.

48. **Adequacy of Representation under Federal Rule of Civil Procedure 23(a)(4):** Plaintiffs are adequate Class Representatives because their interests do not conflict with the interests of Class Members they seek to represent. Additionally, Plaintiffs have retained counsel experienced in civil rights litigation and class action litigation.

49. **Declaratory and Injunctive Relief under Federal Rule of Civil Procedure 23(b)(2):** Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

50. **Superiority of Class Action under Federal Rule of Civil Procedure 23(b)(3):** A class action is the superior method for the fair and efficient adjudication of this matter, in that individual actions are not economically or practically feasible, and members of the class are unlikely to be aware of their rights or pursue litigation.

51. On behalf of the class, the Plaintiffs may seek the following relief: certification of a class or classes as appropriate, compensatory and punitive damages as determined by a jury, injunctive and declaratory relief, and attorneys' fees and costs.

# CLAIMS FOR RELIEF[6]

## Count I: Violation of 42 U.S.C. § 1981.
### Against all Defendants

52. The Plaintiffs incorporate all previous paragraphs of this Complaint as if fully set forth herein.

53. Section 1981 provides that all persons within the jurisdiction of the United States shall have "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. This includes "the making performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b).

54. Section 1981 is not limited to existing contractual relationships.

55. Sunny Red Bear is a member of a protected class.

56. Sunny Red Bear was engaged in an activity protected by 42 U.S.C. § 1981 when she attempted to make a contract for the purchase of hotel rooms at the Grand Gateway Hotel.

57. The Grand Gateway Hotel, at the instruction of Connie and/or Nicholas Uhre, intentionally interfered with the formation of that contract based solely on Ms. Red Bear's membership in a protected class.

---

[6] The Defendants also violated 42 U.S.C. § 2000a *et seq.* and the South Dakota Human Relations Act, SDCL ch. 20-13, by engaging in racial discrimination in public accommodations. The Plaintiffs are in the process of filing a complaint with the South Dakota Human Rights Commission, and may amend this complaint 30 days after that administrative complaint is submitted to comply with the jurisdictional prerequisite as interpreted in *Bilello v. Kum & Go, LLC*, 374 F.3d 656 (8th Cir. 2004). This jurisdictional prerequisite does not exist with respect to claims under 42 U.S.C. § 1981.

58. The Defendants acted with discriminatory intent. Connie Uhre's racist comments, and the discriminatory policy in place at the Grand Gateway Hotel, successfully interfered with and prevented Ms. Red Bear from enjoying her right to enter into a contract with the Grand Gateway Hotel. As a result, Ms. Red Bear was denied access to the Grand Gateway Hotel and the Cheers Bar, located on and within the same property.

59. The Defendants' actions proximately and directly caused injury and harm to Ms. Red Bear, including the denial of federally and constitutionally protected rights, public embarrassment, severe emotional distress, mental pain and suffering, injury to dignity, anguish, and personal degradation on the basis of race.

60. NDN Collective represents members of a protected class and it shares the racial identity of its members.

61. NDN Collective was engaged in an activity protected by 42 U.S.C. § 1981 when it attempted to make a contract for the purchase of hotel rooms at the Grand Gateway Hotel.

62. The Grand Gateway Hotel, at the instruction of Connie and/or Nicholas Uhre, intentionally interfered with the formation of that contract based solely on NDN Collective's identity and association with members of a protected class.

63. The Defendants acted with discriminatory intent. Connie Uhre's racist comments, and the discriminatory policy in place at the Grand Gateway Hotel, successfully interfered with and prevented NDN Collective from enjoying its right to enter into a contract with the Grand Gateway Hotel. As a result, NDN Collective and its

members were denied access to the Grand Gateway Hotel and the Cheers Bar, located on and within the same property.

64. The Defendants' actions proximately and directly caused injury and harm to NDN Collective, including the denial of federally and constitutionally protected rights, public embarrassment, severe emotional distress, mental pain and suffering, injury to dignity, anguish, and personal degradation on the basis of race.

65. As a result of an unlawful policy or practice, the Defendants denied Ms. Red Bear and NDN Collective the use and enjoyment of the benefits, privileges, terms and conditions that it extends to all other guests and invitees.

66. While both Ms. Red Bear and NDN Collective were denied the ability to contract for hotel rooms, the Defendants offered a reduced rate to non-Native persons. That rate was not available to the Plaintiffs on the same terms as it was available to others.

67. By discriminating against the Plaintiffs on the basis of race, the Defendants denied the Plaintiffs the same right to enjoy the benefits, privileges, terms, and conditions of contract that are enjoyed by white citizens, in violation of the Plaintiffs' rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

68. As a result of the Defendants' unlawful conduct, the Plaintiffs have suffered and will continue to suffer economic loss, humiliation, embarrassment, emotional distress, and unlawful deprivation of their federally protected rights to enjoy equal treatment in the making and enforcing of contracts in places of public

accommodation without regard for their race. Plaintiffs are entitled to compensatory damages in an amount to be determined at trial.

69. The Defendants' conduct was intentional, deliberate, reckless, hurtful, wanton, discriminatory, done with malice and in reckless disregard of the rights of the Plaintiffs, providing a justification and need for punitive damages in this case.

70. The Plaintiffs are entitled to an injunction prohibiting the Defendants from future violations of federal law.

71. The Plaintiffs are entitled to recover attorneys' fees and expert fees under 42 U.S.C. §§ 1981 and 1988 (b) and (c).

**Count II: Declaratory Relief, 28 U.S.C. §§ 2201 and 2202.**
**Against All Defendants**

72. The Plaintiffs incorporate all previous paragraphs of this Complaint as if fully set forth herein.

73. A dispute currently exists with respect to the rights and obligations of the Plaintiffs, on one hand, and the Defendants, on the other.

74. The Plaintiffs are entitled to a declaratory judgment finding that the foregoing actions of the Defendants violate the Civil Rights Act of 1866, 42 U.S.C. § 1981.

## PRAYER FOR RELIEF

75. Plaintiffs respectfully requests that this Court:

   a. Certify this matter as a class action;

   b. Award compensatory, general, and special damages as each Plaintiff is entitled to recover in an amount determined at trial;

   c. Award punitive damages to each Plaintiff in an amount that will punish the Defendants' conduct and discourage and deter Defendants and others from engaging in similar discrimination in the future;

   d. Issue injunctive relief prohibiting Defendants and all persons acting in concert with them from engaging in further unlawful conduct;

   e. Award to Plaintiffs their costs, expenses, disbursements, and reasonable attorneys' fees in this action pursuant to 42 U.S.C. § 1988;

   f. Award pre-judgment and post-judgment interest;

   g. Pursuant to 28 U.S.C. §§ 2201 and 2202, declare that the Defendants' conduct is unlawful; and

   h. Grant other and further relief, both general and specific, at law, or in equity, as the Court finds is just and proper.

Dated: March 24, 2022

        Respectfully submitted,

        */s/ Brendan V. Johnson*
        Brendan V. Johnson (SD Bar # 3263)
        Timothy W. Billion (SD Bar # 4641)
        ROBINS KAPLAN LLP
        140 North Phillips Ave, Suite 307
        Sioux Falls, SD 57104
        Tel: 605-335-1300
        BJohnson@RobinsKaplan.com
        TBillion@RobinsKaplan.com

        ATTORNEYS FOR PLAINTIFFS