UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| NDN COLLECTIVE, individually and on behalf of all others similarly situated, SUNNY RED BEAR, individually and on behalf of all others similarly situated, and GEORGE BETTELYOUN, individually and on behalf of all others similarly situated,<br>                    Plaintiffs<br><br>vs.<br><br>RETSEL CORPORATION, d/b/a GRAND GATEWAY HOTEL and d/b/a CHEERS SPORTS LOUNGE AND CASINO, CONNIE UHRE, and NICHOLAS UHRE,<br>                    Defendants<br><br><br>and<br><br>RETSEL CORPORATION, d/b/a GRAND GATEWAY HOTEL and d/b/a CHEERS SPORTS LOUNGE AND CASINO,<br>                    Third-Party Plaintiff<br><br>vs.<br><br>JOHN DOES 1 through 20, JANE DOES 1 through 20, and ABC CORPORATIONS 1 through 20,<br>                    Third-Party Defendants | 5:22-cv-5027<br><br><br>MEMORANDUM OPINION AND ORDER |

1

Pending before the Court is Plaintiffs' Motion to Dismiss Defendants' Counterclaims and Third-Party Complaint, (Doc. 20).  Defendants have filed a response, (Doc. 26), and Plaintiffs have replied, (Doc. 29).  For the following reasons, the Court grants the motion in part and denies it in part.

**BACKGROUND**

Plaintiff NDN Collective is a non-profit organization with a mission that includes "educating, funding, and organizing those engaged in Native American issues." (Doc. 17, PgID 155).  To accomplish its goals, the organization "makes regular use of public accommodations in Rapid City, including hotels." (Id.).  Plaintiff Sunny Red Bear is a Native American who resides in Rapid City, South Dakota. (Id.).  Plaintiff George Bettelyoun is a Native American who resides in Coon Rapids, Minnesota. (Id.).  The Defendant Retsel Corporation does business in Rapid City, SD, as the Grand Gateway Hotel and Cheers Sports Lounge and Casino.  Defendants Connie Uhre and Nicholas Uhre operate the hotel and lounge. (Id.).  Nicholas Uhre is a director of Retsel.  (Doc. 26, PgID 235).

The Complaint alleges that George Bettelyoun attempted to rent a room at Defendants' hotel in June 2020, and that he and Defendant Nicholas Uhre argued when the Defendants' employee allegedly required a damage deposit, which Plaintiff Bettelyoun challenged.  Eventually the Defendant began recording the encounter and allegedly yelled so close to Bettelyoun that the latter could feel spit

2

hitting his face. (Doc. 17, PgID 159).  Approximately two years later, in March 2022, Defendant Connie Uhre allegedly posted on social media that she would "not allow a Native American to enter our business including Cheers" because she could not tell "who is a bad Native or a good Native." (Id., PgID 161-62). Plaintiffs allege Defendants made additional comments, stationed guards at the hotel, and refused to rent a hotel room to Sunny Red Bear on March 21, 2022. (Id., PgID 164).  Plaintiffs NDN Collective allegedly attempted to rent rooms at Defendants' hotel on March 22, 2022, and the request was refused.  On May 27, 2022, when Sunny Red Bear was present while a group was boycotting the Defendants' hotel, Defendant Connie Uhre allegedly sprayed dust spray into Red Bear's face. (Id., PgID 166).

Plaintiffs subsequently filed this lawsuit alleging interference with contract on the basis of race in violation of 42 U.S.C. § 1981 on behalf of all Plaintiffs; seeking a declaratory judgment that Defendants' actions violated the Civil Rights Act, 42 U.S.C. § 1981; and filing claims by Sunny Red Bear alleging battery and assault against Connie Uhre and Retsel.

Defendants have filed an answer denying Plaintiffs' allegations and have counterclaimed alleging that an employee of NDN Collective posted on Facebook a false and defamatory message in that it depicted Nicholas Uhre as the author of an email he did not write and referred to Retsel as "Klan members." (Doc. 18,

3

PgID 196).  The counterclaim further alleges Plaintiffs have intentionally interfered with business relations, and have trespassed onto Defendants' property by projecting light images, entered the property without permission, intimidated hotel guests, and vandalized the property.  (Id.).  The counterclaim consists of five claims and alleges intentional interference with business relations by NDN Collective against Retsel; defamation against Retsel and Nick Uhre by an NDN employee for which NDN is vicariously liable; trespass by NDN against Retsel; nuisance by NDN against Retsel; and civil conspiracy based on intentional interference with business relations by NDN against Retsel.  (Id., PgID 197-200).  Defendants also have brought a third-party claim alleging that NDN's employees, NDN Collective, and unnamed third-party defendants have engaged in a civil conspiracy to interfere with Retsel's business relationships. (Id., PgID 201-02).

## LEGAL STANDARD

### Motion to Dismiss

Plaintiff has moved for dismissal of the five counterclaims made by Defendant pursuant to FRCP 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  To avoid dismissal under Rule 12(b)(6), *Ashcroft v. Iqbal* requires that the complaint include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." 556 U. S. 662, 678, 129 S. Ct. 1937,1949,173 L. Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U. S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

4

See *Spagna v. Phi Kappa Psi, Inc.*, 30 F.4th 710, 715 (8th Cir. 2022) (dismissal proper where factual allegations failed to state a plausible claim for relief and amounted to only a possibility that relief was warranted); *Faulk v. City of St. Louis*, 30 F.4th 739, 744 (8th Cir. 2022) (quoting *Iqbal* standard and reversing denial of motion to dismiss). The standard for dismissal of a claim applies equally to dismissal of a counterclaim. See *Summers Manufacturing Company, Inc. v. Tri-County AG, LLC*, 300 F.Supp.3d 1025, 1031-32 (S.D. Iowa, 2017); *Northern Valley Communications, LLC v. Sprint Communications Co. Ltd. Partnership*, 618 F.Supp.2d 1076, 1079 (D.S.D. 2009).

As the court considers a motion to dismiss, it must assume all facts alleged in the complaint are true. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). See also *Yankton Sioux Tribe v. U.S. Dept. of Health & Human Services*, 496 F. Supp. 2d 1044 (D.S.D. 2007); *Broin and Associates, Inc. v. Genencor Intern., Inc.*, 232 F.R.D. 335, 338 (D.S.D. 2005). The complaint is to be viewed in the light most favorable to the non-moving party. *Broin*, 232 F.R.D. at 338 (citing *Frey v. Herculaneum,* 44 F.3d 667, 671 (8th Cir. 1995)). Although the court should grant the Motion to Dismiss only in the "unusual" situation in which a plaintiff includes allegations that show on the face of the complaint that there is "some insuperable bar to relief," it is a requirement that the complaint "contain facts which state a claim as a matter of law and must not be conclusory." *Frey,* 44 F.3d at 671. While

5

conclusory statements are insufficient, well-pleaded factual allegations should be deemed true and the District Court should proceed to determine whether the complainant is entitled to relief. *Drobnak v. Andersen Corp.*, 561 F.3d 778 (8th Cir. 2009).

When the court considers a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), it examines the complaint and "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned' without converting the motion into one for summary judgment." *Faloni and Associates, LLC v. Citibank N.A.*, 2020 WL 4698475, *2 (D.S.D. 2020) (quoting *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citing 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004))).

## ANALYSIS

1. Intentional interference with business relations

To establish the tort of intentional interference with a business relationship, the claimant must establish the following: "(1) [T]he existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional and unjustified act of interference on the part of the

interferer; (4) proof that the interference caused the harm sustained; and, (5) damages to the party whose relationship or expectancy was disrupted." *Qwest Communications Corporation v. Free Conferencing Corporation,* 837 F.3d 889, 895 (8th Cir. 2016) (quoting *Selle v. Torser*, 786 N.W. 2d 748, 753 (S.D. 2010)). See also *Gateway, Inc. v. Companion Products*, 320 F.Supp.2d 912, 929 (D.S.D. 2002); *Table Steaks v. First Premier Bank*, 650 N.W.2d 829, 835 (S.D. 2002).

Satisfaction of the first factor—the existence of a valid business relationship or expectancy—has been addressed in numerous cases. The standard is that a claimant must be able to show that it has a "relationship with an identifiable third party" that was affected by the opponent's actions. *Table Steaks*, 650 N.W.2d at 835. Furthermore, "the public at large does not constitute an identifiable third person." *Id*. (citing *Sarkis v. Pafford Oil Co. Inc*., 697 So.2d 524, 527 (Fla.App. 1 Dist. 1997)). It is required that the claimant establish "a triangle," meaning "a plaintiff, an identifiable third party who wished to deal with the plaintiff, and the defendant who interfered with the plaintiff and third party." *Landstrom v. Shaver*, 561 N.W.2d 1, 16 (S.D. 1997) (citing *Tibke v. McDougall*, 479 N.W.2d 898, 908 (S.D. 1992)). The "identifiable" party need not be named but must be "subject to identification" or "capable of being identified." *Hayes v. Northern Hills General Hosp.,* 590 N.W.2d 243, 249 (S.D. 1999).

In *Hayes,* the plaintiff described the third parties as his existing and potential patients in the "Lead-Deadwood medical community" for "family practitioners from 1992-present" (approximately 4-5 years). 590 N.W.2d at 250. This met with the Supreme Court's approval as proper identification of an identifiable third party who wished to deal with plaintiff. See also *POET, LLC v. Nelson Engineering, Inc.*, 2018 WL 791254, *7 (D.S.D 2018) (describing identifiable third parties as "consulting engineers in the ethanol industry").

In the case at bar, the Counterclaimants do not cabin their "identifiable" third parties who wish to deal with them in a manner akin to that in *Hayes.* Rather, the class the Counterclaimants identify in Counterclaim I is "customers and the public," (Doc. 18, PgID 198), clarified in their Memorandum of Law in Opposition to the Motion to Dismiss as "people seeking hotel and full-service bar amenities in the Rapid City area" from March 2022 to the present. (Doc. 26, PgID 234). That is a description that appears to encompass the general public, including residents of the Rapid City area, those who are traveling in the area of the Black Hills comprising a substantial part of western South Dakota, or those on Interstate-90 who are traveling further west. The inability to identify a class analogous to those described in *Hayes* and *Table Steaks,* for example, is fatal to Defendants' counterclaim.

8

The failure of Counterclaimants to plead an identifiable third party affects the resolution of the remaining elements of the claim for tortious interference with a business relationship. Thus, the inability to plead an identifiable class means Plaintiffs could not have known of a business relationship with that class; Plaintiffs could not have intentionally and unjustifiably interfered with the relationship; and there was no indication of harm sustained or its cause. See *Gateway,* 320 F.Supp.2d at 929-30.

The Court finds Counterclaimants have failed to meet the pleading requirements of Rule 12(b)(6) with respect to Counterclaim I, alleging intentional interference with a business relationship. Therefore, the Court grants the motion to dismiss Counterclaim I.

## 2. Defamation

South Dakota prohibits defamation as follows: "Every person is obligated to refrain from infringing upon the right of others not to be defamed." S.D. Codified Laws § 20-11-1. The statute defines libel as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." S.D. Codified Laws § 20-11-3.

Counterclaimants allege that Hermus Bettelyoun, allegedly an employee of Plaintiff NDN Collective, defamed Defendants in two ways. First, according to the counterclaim, Bettelyoun allegedly published an item on Facebook that appeared to attribute a post to Defendant Nicholas Uhre that "falsely represents the authorship of the email." (Doc. 18, PgID 196). Further, the allegation continues that Bettelyoun also referred to Nicholas Uhre and Retsel as "Klan members." (Id., PgID 198).

Plaintiffs respond that the evidence establishes that Bettelyoun merely forwarded a screen shot of an email thread and did not personally attribute the statement to Defendant Nicholas Uhre. (Doc. 29). The screenshot and email thread appear in the attachments to defense counsel's affidavit. (Doc. 30-1, 30-2). With respect to the "Klan" statement, Plaintiffs argue this is protected speech and a matter of Bettelyoun's opinion that Retsel holds discriminatory views. (Id.). NDN also challenges whether the Counterclaimant alleges sufficient facts to hold NDN vicariously liable for its employee's acts. (Id., PgID 269).

a.  Email attachment to Facebook post

The allegedly defamatory email appears in an attachment to Bettelyoun's Facebook post, in which he expresses outrage at the proposed exclusion of Native people from the Grand Gateway Hotel, discussed in more detail below. (Doc. 30-1). The attached email thread explains the context of Bettelyoun's disgust with any

such policy which allegedly was a policy adopted by Defendant Retsel, including Nicholas Uhre as manager. (Doc. 30-2). There is no indication that Bettelyoun created a message or falsified it in any way. There is no quotation or indication Bettelyoun is attributing the message he received to Nicholas Uhre. Certainly, the message is connected with Retsel's alleged policy, whether implemented by Nicholas Uhre, Connie Uhre, or Retsel. The point of the thread is to show the policy itself, rather than attribute it to one or the other of the hotel operators. The email message posted on Facebook was not a defamatory statement of Hermus Bettelyoun against Nicholas Uhre or Retsel.

b. Reference to "Klan" in Facebook post

The second claim of defamation centers on the text of Bettelyoun's Facebook post. (Doc. 30-1). As the Supreme Court has stated, the First Amendment protects statements that "cannot reasonably be interpreted as stating actual facts about an individual" in "recognition of the Amendment's vital guarantee of free and uninhibited discussion of public issues." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20, 22 (1990). See also *Sandman v. New York Times Company*, __ F.4th ___, 2023 WL 5274469, *9 (6th Cir. 8/16/23) (discussing need for statements to be understood in their totality and holding statements were opinions and thus protected); *Mzamane v. Winfrey,* 693 F.Supp.2d 442, 488 (E.D. Pa. 2010) (hyperbolic language not actionable if "words used reflect an unrealistic

exaggeration rather than an actual description"). The upshot of *Milkovich* and related cases is that exaggerations or hyperbole may not be actionable. See also *Counterman v. Colorado,* __ US ___, 143 S.Ct. 2106, 2115 (2023) (requiring subjective state of mind in assessing "true threats" to protect First Amendment rights and avoid-self censorship).

The Court notes that an allegation that an individual is a member of the Ku Klux Klan can amount to defamation. Restatement (Second) Torts, § 559 (1977) (May 2023 update). That does not preclude an assessment of whether the statement actually was an allegation of Klan membership or merely hyperbole or an expression of frustration with another's conduct. The law governing defamation also treads carefully when First Amendment rights are implicated. As such, individuals may speak freely on topics of public interest. *Kreuger v. Austad*, 545 N.W.2d 205, 215 (S.D. 1996). The Eighth Circuit has recognized the importance of preserving the right of the public to address maters of importance, reinforcing that opinions are protected. *Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1430 (8th Cir. 1989). Furthermore, individuals who are in the forefront of public controversies, even as "limited public figures," will have to establish "actual malice" to prevail, meaning the statements were false or made in reckless disregard of falsity. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334 (1974).

The issue in this case of whether a Rapid City hotel had adopted a policy excluding Native people garnered extensive interest and media coverage, making it a topic of public interest. The post referred to as defamatory first exclaims dismay as follows: "NO INDIANS ALLOWED…! Dare you." It continues with a question posed to Nick Uhre, asking the following:

> "[expletive] is wrong with you? Did you forget whos land you are on? I am hoping to put you out of business! I will be organizing a Boycott and Protest against this place for Discrimination and Stereotyping Our People!  We must take stands against these Klan members, you made a big mistake leaving your HOOD and SHEET on!"  (Doc. 30-1, PgID 279).

Defendants' memorandum in opposition to the motion to dismiss asserts that the post implied "a false assertion of fact:  That Defendants engaged in racial discrimination and violence." (Doc 26, PgID 234).  This case will be the forum to resolve whether Defendants engaged in discrimination as alleged, and whether Plaintiff Red Bear's allegation of battery is established.  The Court notes that at least one factor Bettelyoun may have relied on was the publication of Connie Uhre's statements in the local press that Native people would not be able to obtain lodging at the Grand Gateway Hotel, (Doc. 17, PgID 161, 162).  Bettelyoun's taking offense and making a public comment comparing Retsel and its manager to "Klan members" was not a statement of fact that was false and clearly was hyperbole directed at their purported policy.

Hermus Bettelyoun is not a party to this action and is encompassed by it only if he was an employee acting within the scope of his employment. NDN is not vicariously liable unless the counterclaimant can establish those facts. His Facebook post does not implicate NDN and appears to be his statement as an individual.

In sum, the Court's assessment of Bettelyoun's Facebook post in the context of this lawsuit is as follows:  the attachment of an email thread, (Doc. 30-2), did not involve quotation or attribution of the message falsely to Nick Uhre.  Rather, the thread explained the context of Bettelyoun's outrage in his post.  The post itself, (Doc. 30-1), uses the reference to the "Klan" as a comparison and cannot be interpreted as a false statement of fact by Bettelyoun.  Therefore, the Court grants the motion to dismiss Count II of the Counterclaim for Defamation as it pertains to Bettelyoun's Facebook post and its attached email thread.

3. Trespass

The South Dakota Supreme Court has described the elements of a civil trespass as follows: "One who intentionally and without a consensual or other privilege (a) enters land in possession of another or any part thereof or causes a thing or third person to do so, or (b) remains thereon, is liable as a trespasser to the other irrespective of whether harm is thereby caused to any of his legally protected

interests." *Zwart v. Penning*, 912 N.W.2d 833, 839-40 (S.D. 2018) (quoting

*Benson v. State*, 710 N.W.2d 131, 159 (S.D. 2006)).  See also Restatement

(Second) of Torts § 158 (Am. Law Inst. 1965) (May 2023 update).

As a general proposition an innkeeper "gives a general license to all persons

to enter his house" and therefore, "it is not a trespass to enter an inn without a

previous actual invitation." *Hopp v. Thompson*, 72 S.D. 574, 38 N.W.2d 133, 135

(1949).  *Hopp* also holds that an individual who does not enter as a guest is there

"under an implied license that the landlord may revoke at any time," and may use

reasonable force to evict him if the person fails to leave when ordered to do so by

the landlord. 38 N.W.2d at 135 (quoting 28 Am.Jur., Innkeepers, § 133).

Counterclaimants have alleged that Plaintiffs entered the hotel "without

permission," projected images onto the property and covered illumination devices

on the property. (Doc. 18, PgID 197).  Plaintiffs initiated this lawsuit alleging that

Defendants engaged in racially discriminatory practices in the operation of their

hotel, in that they purportedly denied Native Americans the opportunity to rent

hotel rooms at their property.  The Court does not interpret Defendants' allegation

as requiring that people associated with NDN Collective needed specific,

individualized permission to enter.  Therefore, Plaintiffs had the right to enter the

hotel in the same manner as anyone else.  There is no allegation that Defendants

revoked the license for Plaintiffs to enter and that Plaintiffs refused.  Therefore, the

Court grants Plaintiffs' motion to dismiss this aspect of the trespass claim.

Counterclaimants also allege the shining of a light onto Defendant's hotel

property was a trespass, as was covering a light to take a photo.  As the Eighth

Circuit held in interpreting Arkansas law, transmission of light is not a trespass

because there is no invasion of tangible matter.  *International Paper Company v.

MCI WorldCom Network Services, Inc.*, 442 F.3d 633, 636 (8th Cir. 2006).  In

support the court cited the proposition that "while a personal entry is unnecessary

for a trespass", there must be "an invasion of tangible matter."  *Id*. (quoting W.

Page Keeton et al., Prosser and Keeton on the Law of Torts § 13, at 71 (5th Ed.

1984)).  In South Dakota, *Zwart* appears to implement a similar requirement in

discussing that the parties had alleged "that the other caused a thing—namely

water—to enter their land without permission," which complied with the

applicable requirement that a "thing" enter the land.  *Zwart*, 912 N.W.2d at 840.

Based on these authorities and the analysis in *Zwart* and *Benson*, supra, the

Court holds that absent an entry onto land, trespass is not shown.  Therefore,

Plaintiffs motion to dismiss Count III of the Counterclaim as it refers to a trespass

based on shining a light onto Defendants' property or momentarily covering a light

is granted.  Therefore, Counterclaim III alleging trespass is dismissed in its

entirety.

4. Nuisance

South Dakota defines nuisance as follows:

A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:
> (1) Annoys, injures, or endangers the comfort, repose, health, or safety of others;
> (2) Offends decency;
> (3) Unlawfully interferes with, obstructs, or tends to obstruct, or renders dangerous for passage, any lake or navigable river, bay, stream, canal, or basin, or any public park, square, sidewalk, street, or highway;
> (4) In any way renders other persons insecure in life, or in the use of property.

S.D. Codified Laws § 21-10-1.

The parameters of the relatively broad statute have been set in a number of cases. As such, "the existence of a nuisance is subject to a rule of reason." *Aberdeen v. Wellman*, 352 N.W.2d 204, 205 (S.D. 1984). Furthermore, "This rule of reason requires that a nuisance must be a condition that "substantially invades and *unreasonably* interferes with another's use, possession, or enjoyment of his land." *Id.* (citing *Greer v. City of Lennox,* 79 S.D. 28, 107 N.W.2d 337 (1961)). See also *Prairie Hills Water and Development Co. v. Gross*, 653 N.W.2d 745, 752 (S.D. 2002).

The Counterclaim alleges NDN employees "intentionally and unreasonably invaded Retsel's interests in the use and enjoyment of the property" and NDN is vicariously liable. (Doc. 18, PgID 197). Some of the allegations of nuisance are

entering without permission, projecting images, and covering illumination devices

supposedly for recording images. The Court has determined above that Plaintiffs

were not required to obtain permission from Defendants before entering their hotel,

which would establish treatment not required of the general public, and therefore

failure to obtain permission is neither a trespass nor a nuisance. The Court has

determined that projecting light onto the hotel property was not a trespass and also

does not appear to have created a nuisance. Covering a light for a moment to take

a picture or make a recording does not seriously interfere with the use of the

property and does not amount to a nuisance.

Defendants have alleged conduct that could amount to a nuisance if

established, including engaging in intimidating behavior to the hotel employees

and guests, provided the claim is not based on the mere existence of a group of

protesters or a boycott of the hotel. (Doc. 18, PgID 197). See generally *Danielson*

*v. Huether*, 355 F.Supp.3d 849, 865 (D.S.D. 2018) (addressing claim of

intimidation). In addition, the allegation based on "information and belief" of

vandalism could support a claim of nuisance. (Doc. 18, PgID 197). However,

Counterclaimant has pleaded nothing in support of any vandalism having occurred

and has not established a prima facie case.

Therefore, the Court grants the motion to dismiss claims of nuisance based

on entering the property without additional permission, projecting lights onto the

property, covering illumination devices, and vandalism. The Court denies the

motion to dismiss the nuisance claim based on intimidating hotel employees or

guests to the extent the alleged conduct exceeds Plaintiffs' exercise of their First

amendment right to protest at the hotel and lounge.

5.  Civil Conspiracy

The South Dakota Supreme Court has ruled that to establish a prima facie

case of civil conspiracy, a plaintiff must prove the following:

> (1) two or more persons;
> (2) an object to be accomplished;
> (3) a meeting of the minds on the object or course of action to be taken;
> (4) the commission of one or more unlawful overt acts; and
> (5) damages as the proximate result of the conspiracy.

*Setliff v. Akins*, 616 N.W.2d 878, 889 (*Setliff I*) (S.D. 2000) (quoting *In re TMJ*

*Implants Prods. Liab. Litigation*, 113 F.3d 1484, 1498 (8th Cir. 1997)).  See also

*Engel v. Engel*, 2022 WL 2208875, *7 (D.S.D. 2022).

Furthermore, as the South Dakota Supreme Court has made clear, "a civil

conspiracy is, fundamentally, an agreement to commit a tort." *Kirlin v. Halverson,*

758 N.W.2d 436, 455 (S.D. 2008) (quoting *Reuben C. Setliff, III, M.D., P.C. v.*

*Stewart*, 694 N.W.2d 859, 867 (*Setliff II*) (S.D. 2005)). A factual basis for a claim

of civil conspiracy is required. *Id.* "Suggestions" of a conspiracy drawn from a

relationship, without more, are insufficient. *Id.* See also *Engel*, 2022 WL 2208875,

*7 (speculative allegations about "meeting of the minds" cannot survive motion to dismiss conspiracy claim).

If plaintiffs fail to establish an underlying tort claim, there is no claim of civil conspiracy remaining. *Thompson v. Harrie*, 2018 WL 4501051, *5 (D.S.D. 2018) (citing *Kirlin*, 758 N.W.2d at 455).

In the case at bar, the Court has dismissed Retsel's claim of intentional interference with a business relationship against NDN Collective. To the extent Count V and the third-party complaint cite this tort as the basis for a civil conspiracy claim, the latter fails. In addition, facts to establish a meeting of the minds among Plaintiffs, or between Plaintiffs and unknown third parties, or between NDN's employees acting outside the scope of their employment and unknown third parties, that might amount to a civil conspiracy, as Counterclaimants have alleged, are lacking. The claims rest on mere speculation. For these reasons, the motion to dismiss Count V-Civil Conspiracy-Intentional Interference with Business Relations and the third-party Complaint, Claim I—Civil Conspiracy—Intentional Interference with Business Relations are granted.

## CONCLUSION

Defendants have failed to meet the requirements of Rule 12(b)(6) with respect to their allegation of intentional interference with business relations by not adequately identifying a third party who may have been impacted by Plaintiffs'

actions, and therefore, Counterclaim I is dismissed. Defendants' two-part Counterclaim II alleging defamation is dismissed based, first, on the lack of attribution of an allegedly defamatory Facebook post to Defendant Nicholas Uhre, and second, on the First Amendment right to comment on matters of public interest, even with hyperbole. Defendants Counterclaim III alleging trespass is dismissed because Plaintiffs did not need individualized permission to enter the hotel, and for failure to establish an entry onto Defendants' property with the use of a light. Defendants' Counterclaim IV alleging nuisance is dismissed for the same reasons as the trespass claim, with the exception of the claim that Plaintiffs intimidated hotel employees and guests. Counterclaim V alleging civil conspiracy is dismissed for failure to establish the underlying tort of intentional interference with a business relationship and failure to offer anything other than speculation that Plaintiffs joined with others to form a conspiracy. Finally, the third-party complaint grounded in civil conspiracy is dismissed for failure to allege sufficient facts for the underlying tort of intentional interference with a business relationship by establishing an identifiable third party.

Accordingly, IT IS ORDERED that

1. Plaintiffs' motion to dismiss Counterclaims I, II, III, and V is granted, (Doc. 18);

2. Plaintiffs' motion to dismiss Counterclaim IV, alleging nuisance, is granted with

the exception of the nuisance claim grounded in intimidation of employees and

guests;

3.  Plaintiffs' motion to dismiss the third-party complaint is granted except for the

claim in Count IV of nuisance grounded in intimidation of employees and guests.

  Dated this ___ day of December, 2023.

        BY THE COURT:

        Lawrence L. Piersol
        United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK