UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

---

NDN Collective, individually and on
behalf of all others similarly situated,
SUNNY RED BEAR, individually and on
behalf of all others similarly situated,
ALBERTA EAGLE, individually and on
behalf of all others similarly situated,
NICK COTTIER, individually and on
behalf of all others similarly situated,
BRE JACKSON, individually and on
behalf of all others similarly situated,
MARY BOWMAN, individually and on
behalf of all others similarly situated, and
GEORGE BETTELYOUN, individually
and on behalf of all others similarly
situated,

        Plaintiffs


vs.


RETSEL CORPORATION, d/b/a
GRAND GATEWAY HOTEL and d/b/a
CHEERS SPORTS LOUNGE AND
CASINO, CONNIE UHRE, and
NICHOLAS UHRE,

        Defendants


and


RETSEL CORPORATION, d/b/a
GRAND GATEWAY HOTEL and d/b/a
CHEERS SPORTS LOUNGE AND
CASINO,

        Third-Party Plaintiff,

5:22-cv-5027


MEMORANDUM AND ORDER
DENYING MOTION FOR
INDEPENDENT MEDICAL
EXAMINATION

1

vs.

JOHN DOES 1 through 20,
JANE DOES 1 through 20, and
ABC CORPORATIONS 1
through 20,

      Third-Party Defendants

Pending before the Court is a motion for independent medical examinations (IME) of Plaintiffs Sunny Red Bear and George Bettelyoun filed by Defendants Retsel Corporation, et al. (Doc. 64). The motion also requests an adjustment to the scheduling order to accommodate scheduling of the examinations. (Id.). Plaintiffs challenge the need for the examinations, assert that Defendants failed to comply with the obligation to meet and confer, and request attorney's fees in conjunction with responding to the motion. (Doc. 74). Defendants' reply reinforces the request for independent medical examinations, asserts compliance with the meet-and-confer requirement, and requests attorney's fees from Plaintiffs. (Doc. 82).

Accompanying the motion and responsive pleadings is documentation establishing that Plaintiffs have released their medical records, answered interrogatories, and been deposed with respect to mental health and other issues. Thus, the only question before the court is whether Plaintiffs also must submit to the requested forensic psychiatric examinations. (Doc. 69-5, PgID 749).

## BACKGROUND

Plaintiff NDN Collective is a non-profit organization with a mission that includes "educating, funding, and organizing those engaged in Native American issues." (Doc. 84, PgID 998). To accomplish its goals, the organization "makes regular use of public accommodations in Rapid City, including hotels." (Id.). Plaintiff Sunny Red Bear is a Native American who resides in Rapid City, South Dakota. (Id.). Plaintiff George Bettelyoun is a Native American who resides in Coon Rapids, Minnesota. (Id.). The Defendant Retsel Corporation does business in Rapid City, SD, as the Grand Gateway Hotel and Cheers Sports Lounge and Casino. Defendants Connie Uhre and Nicholas Uhre operate the hotel and lounge. (Id.). Nicholas Uhre is a director of Retsel. (Doc. 26, PgID 235).

The Complaint alleges that George Bettelyoun attempted to rent a room at Defendants' hotel in June 2020, and that he and Defendant Nicholas Uhre argued over a required damage deposit, which Plaintiff Bettelyoun challenged. Eventually the Defendant began recording the encounter and allegedly yelled so close to Plaintiff that the latter could feel saliva hitting his face. (Doc. 84, PgID 1002). Approximately two years later, in March 2022, Defendant Connie Uhre allegedly posted on social media that she would "not allow a Native American to enter our business including Cheers" because she could not tell "who is a bad Native or a good Native." (Id., PgID 1005). Plaintiffs allege Defendants made additional

comments, stationed guards at the hotel, and refused to rent a hotel room to Sunny Red Bear on March 21, 2022.  (Id., PgID 1008).  Plaintiffs NDN Collective allegedly attempted to rent rooms at Defendants' hotel on March 22, 2022, and the request was refused.  On May 27, 2022, when Sunny Red Bear was present while a group was boycotting the Defendants' hotel, Defendant Connie Uhre allegedly sprayed dust spray into Red Bear's face.  (Id., PgID 1010).[1]

Plaintiffs subsequently filed this lawsuit alleging interference with contract on the basis of race in violation of 42 U.S.C. § 1981 on behalf of all Plaintiffs; seeking a declaratory judgment that Defendants' actions violated the Civil Rights Act, 42 U.S.C. § 1981; and including claims by Sunny Red Bear alleging battery and assault against Connie Uhre and Retsel.  Plaintiffs Bettelyoun and Red Bear seek damages for "denial of federally and constitutionally protected rights, public embarrassment, severe emotional distress, mental pain and suffering, injury to

---

[1] Plaintiff has supplied notice that Connie Uhre was convicted of battery in the Seventh Judicial Circuit Court of the State of South Dakota.  (Doc. 74, PgID 831 n.1) (citing Shalom Baer Gee, Grand Gateway owner found guilty of two counts of assault, Rapid City J. (Oct. 13, 2023) https://rapidcityjournal.com/news/local/crime-courts/connie-uhre-guilty-verdict/article_63fefee8-6a33-llee-aeal-d7a640f41c34.html.).  Apparently, Defendant Uhre has moved for a new trial or judgment of acquittal. Rapid City J. (Nov. 1, 2023) Shalom Baer Gee, Grand Gateway's Connie Uhre seeks new trial or acquittal after assault conviction, https://rapidcityjournal.com/news/local/Uhre-new-trial-request/article_dc8898cc-78f4-11ee-a9d5-c7f31f66ac2c.html.

dignity, anguish, and personal degradation on the basis of race." (Doc. 84, PgID 1019).

Defendants filed an answer denying Plaintiffs' allegations and counterclaimed raising numerous allegations.  The Court dismissed all counterclaims with the exception of a claim alleging nuisance grounded in intimidation of employees and guests.  (Doc. 76).

Defendants seek independent medical examinations by a forensic psychiatrist of Plaintiffs Bettelyoun and Red Bear based on the allegations of severe emotional distress. Defendants assert the emotional distress claims are a "major component of their damages claims." (Doc. 68, PgID 685).  Defendants argue Bettelyoun has alleged that Defendants' actions have exacerbated his Post Traumatic Stress Disorder (PTSD). (Id.).  They argue that Red Bear has alleged Defendants' actions have resulted in physical manifestations of emotional distress and the need to seek ongoing mental health care. (Id.).  They argue these claims mean the Plaintiffs' mental states are in controversy and there is good cause for the requested examinations.

**INDEPENDENT MEDICAL EXAMINATION**

A. Legal Standard

Rule 35 of the Federal Rules of Civil Procedure provides as follows:

(a)  Order for an Examination.

5

(1) In General.  The court where the action is pending may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed certified examiner.  The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

(2) Motion and Notice:  Contents of the Order.  The order:
   (A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and
   (B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

Fed. R. Civ. P. 35(a).

The standard for ordering an examination pursuant to Rule 35 was established in *Schlagenhauf v. Holder*, which requires that "good cause," not mere relevance, be shown.  379 U.S. 104, 118 (1964).  This indicates "there must be greater showing of need" than other discovery rules require.  *Id.*  The "good cause" requirement, like the "in controversy" requirement, is "not a mere formality."  *Id.* There must be an affirmative showing that the condition sought to be examined "is really and genuinely in controversy."  *Id. Schlagenhauf* demands that courts engage in a "discriminating application" of Rule 35's requirements.  *Id.*

To assist in applying the Rule's provisions demanding "good cause" and "in controversy," many courts have developed a four or five factor analysis of whether the plaintiff's case includes:  (1)  a cause of action for negligent or intentional infliction of emotional distress; (2)  an allegation of a specific mental or psychiatric injury or disorder; (3)  a claim of unusually severe emotional distress; (4)  the

plaintiff's offer of expert testimony to support a claim of emotional distress; and possibly (5) the plaintiff's concession that her or his mental condition is "in controversy" within the meaning of Rule 35.  See, e.g., *Malark v. RBC Capital Markets, LLC*, 2020 WL 13032695, *2 (D. Minn. Mar. 11, 2020).  See also *Bird v. Borough of Moosic*, 2020 WL 1904454, *2 (M.D. Pa. Apr. 17, 2020); *Auer v. City of Minot*, 178 F.Supp.3d 835, 842 (D.N.D. 2016) (drawing analogy to Rule 35 requirements in addressing release of medical records);  *Schaadt v. St. Jude Med. S.C., Inc.*, 2006 WL 7090866, *3 (D. Minn. Apr. 4, 2006); *Bethel v. Dixie Homecrafters, Inc.*, 192 F.R.D. 320, 322 (N.D. Ga. 2000); *O'Sullivan v. Minnesota*, 176 F.R.D. 325, 328 (D. Minn. 1997); *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995) (summarizing case law and identifying five factors that justify grant or denial of mental examination).

Drawing a line between severe and unusually severe emotional distress has been problematic.  Some courts have used the concept of "garden variety" emotional distress, although often expressing dismay at the phraseology.  As a starting point, the emotional distress at issue is serious enough to be the subject of a request for damages in a lawsuit.  Yet, with claims of this type of emotional distress,

> …the plaintiff seeks no diagnosis or treatment.  They are accurately characterized as being claims of generalized insult, hurt feelings, and lingering resentment.  These claims do not involve a significant disruption of

the plaintiff's work life and rarely involve more than a temporary disruption of the claimant's personal life.

*Javeed v. Covenant Medical Center, Inc*., 218 F.R.D. 178, 179 (N.D. Iowa 2001). As the court explained in *Fitzgerald v. Cassil*, "garden variety" claims amount to "ordinary and commonplace distress" that is "simple or usual," rather than distress resulting in a specific psychiatric disorder.  216 F.R.D. 632, 637 (N.D. Cal. 2003) (citing *Ruhlman v. Ulster County Dep't of Soc. Servs*., 194 F.R.D. 445, 449 n. 6 (N.D.N.Y. 2000)).

An example of how to address "garden variety" emotional distress is *E.E.O.C. v. Maha Prabhu, Inc*., where defendant sought an independent mental examination with respect to plaintiff's claim of discrimination in hiring based on her disability manifested as scarring on her face from lupus. 2008 WL 2559417, *1 (W.D.N.C. June 23, 2008).  Defendant argued the claim of emotional distress amounted to a claim of "severe emotional distress" and thus placed her mental state in issue.  *Id.*  In denying the IME, the court first explained that "where the average lay person would have difficulty evaluating the nature, extent, and cause of the claimant's injuries, there is good cause for an IME."  *Id.* at *2 (citing *Greenhorn v. Marriot Int'l Admin. Servs., Inc*., 216 F.R.D. 649, 652 (D. Kan. 2003)).  The court further explained that the "in controversy" requirement is not necessarily met by the language in pleadings if the court finds the plaintiff merely has "garden-variety" emotional distress.  *Id.* at *3. To justify an IME, in the court's

view, unusually severe emotional distress must exist and must be accompanied by at least one of the five factors elucidated in *Turner v. Imperial Stores*. *Id.* (citing to *Turner*'s analysis of relevant factors at 161 F.R.D. at 95). The court concluded that plaintiff's allegations of difficulty sleeping, anxiety, stress, weight loss, avoiding interaction with others, feeling like an outcast, humiliation, and feeling like she was "raped of her human rights" were garden-variety emotional distress claims. *Id.* Because she made no claim of specific psychiatric injury, and only generalized feelings of distress, her mental state was not "in controversy" within the meaning of Rule 35. *Id.* Furthermore, "good cause" was lacking because "a reasonable lay person" would be able to understand the plaintiff's symptoms of emotional distress, including "feelings of isolation, humiliation, anxiety, and stress." *Id.* at *4. Therefore, a "clinical explanation of her condition" was unnecessary and the factfinder could evaluate her emotional distress without expert testimony. *Id.* In addition, unless the plaintiff elected to call an expert witness on her behalf, there was no good cause to order "such invasive discovery." *Id.* See also *Auer,* 178 F. Supp.3d at 845 (holding allegation of mental pain and anguish is not sufficient to put plaintiff's mental condition in controversy because jurors can evaluate "hurt feelings, humiliation, anger, and embarrassment" based on the facts developed at trial and "their common experience.").

Similarly, in *Finn v. Syneos Health US, Inc.*, the plaintiff alleged sexual harassment, sex discrimination, retaliation, and unequal pay while employed by defendant, and sought damages for "past and future" mental and emotional distress.  2020 WL 12968437, *1 (S.D. Iowa July 14, 2020).  Defendant moved for an independent medical examination.  The court determined that a plaintiff does not place his or her mental condition in controversy "merely by claiming damages for mental anguish or 'garden variety' emotional distress."  *Id.* at *2 (quoting *Santifer v. Inergy Auto. Sys., LLC*, 2016 WL 1305221, *2 (E.D. Mich. Apr. 4, 2016)).  Although the plaintiff alleged her symptoms were ongoing to some extent, the court responded that this was only "one factor" which did not "tip the scales given the generalized nature" of the plaintiff's allegations.  *Id.* at *3.  The court also confirmed *Maha Prabhu's* approach and distinguished cases where an IME was justified because plaintiff had alleged specific physical or mental impairment. *Id.*  Accord, *Jarrar v. Harris*, 2008 WL 2946000, *5 (E.D. N.Y. July 25, 2008) (denying IME because "lay jurors are entirely competent to evaluate" whether plaintiff was "scared, embarrassed, shamed, and humiliated as a result of the defendants' alleged misconduct").

Additional helpful analysis appears in *Karrani v. JetBlue Airways Corp.*, where plaintiff alleged discrimination based on his removal from a flight. 2019 WL 2269818 (W.D. Wash. May 28, 2019). Although plaintiff claimed "garden variety

emotional harm damages," defendants used his mention of seeking medical assistance after the incident as a basis to request disclosure of extensive medical records. The court characterized the damages sought as "non-medical emotional harm damages" related to, among other things, stress, anxiety, and humiliation. *Id.* at *3. The court denied the defendants' request, reasoning that, as plaintiff used the terms, they were "not medical diagnoses" but instead were "lay observations of the emotions" plaintiff claimed to have experienced. *Id.* The court recognized that a term like "anxiety" carries a medical definition but that plaintiff "alleges anxiety in a generalized way, relying on the dictionary definition." *Id.* The court concluded that plaintiff's nonprofessional description of his emotions did not open the door to the discovery defendant sought. *Id.*

Relevant to the issues before the Court with respect to Plaintiff Bettelyoun is *Gilio v. Lowe's Home Centers, LLC*, where an Army veteran made claims under the Americans with Disabilities Act (ADA) and other statutes alleging wrongful termination and discrimination based on a diagnosis of PTSD. 2018 WL 11483484 (N.D. Ga. Feb. 26, 2018). Although the court simply could have held that plaintiff placed his mental condition in issue by making a claim under the ADA, it engaged in the five-factor analysis typical of most courts. Plaintiff had asserted his damages were for "garden variety emotional distress," but the court had correctly ruled under the very different facts of that case, that he had placed his condition in

controversy and there was good cause for an IME. *Id.* at \*3-4.   The court found that the PTSD was a centerpiece of plaintiff's allegations, because he had alleged the PTSD, a specific mental or psychiatric disorder, was the basis for his firing resulting in claimed damages of $500,000. *Id.* at \*4.

The Court is persuaded by the analyses in cases such as *Maha Prabhu*, *Javeed*, *Karrani*, and others discussed.  That is, under the "good cause" and "in controversy" requirements of Rule 35, a plaintiff who alleges mental distress based on defendants' alleged actions is not automatically subject to an independent medical examination.  Rather, the court's "discriminating analysis" must begin with an assessment of whether the lawsuit includes a claim for intentional or negligent infliction of emotional distress; an allegation of a specific or psychiatric injury or disorder; an allegation of unusually severe mental distress; use of expert testimony in support of the emotional distress claim; and plaintiff's concession that mental condition is in controversy.  The court should further determine whether, without an IME, a plaintiff's alleged damages can be evaluated by jurors because they can assess generalized feelings of distress where a claim of specific psychiatric or physical injury is absent.  "Garden variety" damages involving emotional distress do not warrant an independent medical examination.

B.  Analysis

1.  Plaintiff Red Bear

Defendants have requested an independent medical examination of Plaintiff Red Bear which they characterize as "a psychiatric IME."  (Doc. 69-5, PgID 750). The contemplated examination will include "gathering a history of the Plaintiff (e.g., social, family, medical, chemical dependency, etc,), then a mental status exam and MMPI [Minnesota Multiphasic Personality Inventory]."  (Id., PgID 749). As noted, Plaintiff Red Bear has released her medical records and participated in discovery.  She asserts that because she has requested "garden variety" damages, an additional independent medical examination—a psychiatric examination--is not warranted.  Plaintiff asserts the limited damages means there is not "good cause" for an examination authorized under Rule 35 and that her mental condition is not "in controversy."  The parties appear to have agreed on this issue.  (Id., PgID 748). Apparently declining to await Plaintiff's promised amended answer to an interrogatory, however, Defendants filed this motion.

In assessing whether the good cause and in controversy requirements of Rule 35 are met, the Court makes reference to the factors elucidated in numerous cases: (1) whether the plaintiff has brought a cause of action for negligent or intentional infliction of emotional distress; (2)  whether plaintiff has alleged a specific mental or psychiatric injury or disorder; (3) whether plaintiff has made a claim of unusually severe emotional distress; (4)  the plaintiff's offer of expert testimony to support a claim of emotional distress; and possibly (5) the plaintiff's concession

that her or his mental condition is "in controversy" within the meaning of Rule 35.
*Malark*, 2020 WL 13032695, at *2; *Turner*, 161 F.R.D. at 95.

Plaintiff Red Bear has not brought a claim for intentional infliction of
emotional distress, nor has she alleged a specific mental or psychiatric injury or
disorder.  She does not plan to offer expert testimony to support a claim of
emotional distress; she characterizes her claim as "garden variety" emotional
distress which is not unusually severe. (Doc. 74, PgID 831). She has not conceded
that her mental condition is in controversy.  As Plaintiff indicates, the damages she
seeks are for the humiliation, insult and hurt feelings caused by discriminatory
actions alleged against Defendants.  These are matters a lay jury is capable of
addressing without a psychiatric examination.  Furthermore, Plaintiff's current
counseling is limited to consultation with a Lakota elder who endeavors to assist
her in dealing with everyday stress and other issues in a culturally relevant way.
(Id.).

Defendant characterizes Plaintiff's claims as alleging severe emotional
distress with physical manifestations as "the bulk" of her damages claim.  (Doc.
68, PgID 704-05). Defendants tie in her "shortness of breath from anxiety and
anxiety attacks." (Id.).  Plaintiff clarified in her deposition that she did not have a
medical diagnosis that any physical issues were the result of her interactions with
Defendants and had merely discussed the possibility with her women's health

doctor.  (Doc. 69-4, PgID 738).  Plaintiff also has clarified that she has limited her claimed damages to "ordinary and commonplace emotional distress, not complex distress that resulted in any specific psychiatric disorder."  (Doc. 74, PgID 836). She "is not seeking damages for past or future medical expenses, lost income, or damages for any diagnosed condition" resulting from the conduct alleged in her complaint.  (Id., PgID 835). It appears her claim is based on alleged racism and discrimination in her treatment by Defendants, and she does not claim any level of damages other than what a person in Plaintiff's position would claim.  She has produced her medical records and there is no showing the information already released is inadequate to address the damages she claims.

For these reasons, the Court denies Defendants' motion for an independent medical examination of Plaintiff Sunny Red Bear in the form of a psychiatric examination.

### 2.  Plaintiff Bettelyoun

Plaintiff Bettelyoun's complaint alleges that he felt "threatened, embarrassed, humiliated, disturbed, shocked" and "unwelcome to return" due to Defendants' actions. (Doc. 84, ¶ 44).  Because of his previously diagnosed HIV, and the rampaging covid pandemic, he states that he feared possible repercussions for himself and others at the funeral he was in town to attend.  (Id., ¶ 39).  He claims the harm caused was the "denial of federally and constitutionally protected

rights, public embarrassment, severe emotional distress, mental pain and suffering, injury to dignity, anguish, and personal degradation on the basis of race." (Id., ¶ 103).  He does not claim intentional or negligent infliction of emotional distress. He does not intend to introduce expert testimony about his mental status and has not conceded that his mental status is in issue.  The damages requested appear to be "garden variety" damages for embarrassment, humiliation, insult and hurt feelings. In this respect, his situation is akin to that of Plaintiff Red Bear.

Where Plaintiff Bettelyoun differs from Plaintiff Red Bear is with respect to his previous diagnosis of PTSD.  The interrogatory and deposition excerpts presented to the Court demonstrate that Bettelyoun was diagnosed with PTSD several years before the alleged encounter with Defendant Uhre. (Doc. 69-3, PgID 728).  During Bettelyoun's deposition, Defense Counsel clarified that the diagnosis was not made after the alleged incident with Defendant, as Bettelyoun initially indicated.  (Id.).  Bettelyoun discussed in detail his diagnosis and medications used to treat his issues.  His medical records were made available to Defendants. Plaintiff also clarified in his deposition that he did not have a medical diagnosis supporting that his interaction with Defendant had caused "an onset of post-traumatic stress disorder."  (Id., PgID 725).  Plaintiff disclaims any interest in seeking compensation for mental health treatment.  (Doc. 74, PgID 848).

Defendants characterize the exacerbation of PTSD as a major component of Plaintiff's claim for damages.  (Doc. 82, PgID 971).   Plaintiff responds that the reference to PTSD merely seeks to provide "context for a jury to understand why Mr. Bettelyoun felt embarrassed and anxious when Defendants discriminated against him."  (Doc. 74, PgID 848).  Defendants discount Plaintiff's response as an attempt to "downplay" the mention of "exacerbation of PTSD." (Doc. 82, PgID 973), and maintain their position that PTSD is a centerpiece of the claim.

As additional support for their position that the "exacerbation of Plaintiff's PTSD" justifies an independent medical examination, Defendants argue there is good cause to obtain the examination because of "discrepancies in Bettelyoun's deposition testimony with respect to causation or exacerbation of his PTSD." (Id., PgID 974).  Defendants add that "this determination is necessary…because it will determine the extent of Bettelyoun's damages." (Id.). Defendants argue the medical records and deposition testimony are inadequate for the Defendants' purposes because they are "inconsistent." (Id.).  Yet Defendants clarified in the deposition that the PTSD diagnosis was several years before the encounter with Defendant and tied it to contemporaneous incidents. (Doc. 69-3, PgID 725, 728).  Defendants also clarified that Plaintiff has no medical diagnosis to support that the alleged incident with Defendant exacerbated his PTSD. (Id., PgID 724).  Defendants assert that a forensic psychologist will "review Bettelyoun's past diagnosis, discuss with

him how the June 2020 encounter affected him, and prepare a report that clarifies whether Defendants caused or exacerbated his PTSD." (Doc. 82, PgID 975). This is a far cry from the psychiatric examination Defendants request which seeks an examination by a forensic psychiatrist including "history (social, family, medical, chemical dependency, etc.) then a mental status exam and MMPI." (Doc. 69-5, PgID 749).

Plaintiff Bettelyoun's deposition, answers to interrogatories, and medical records have been provided to Defendants. It appears the type of damages alleged in the context of a discussion of PTSD, which Plaintiff does not intend to support with expert testimony, can be evaluated by a jury. Defendants' request for a comprehensive and intrusive psychiatric examination does not appear warranted based on the alleged conduct of Defendants and the damages claimed by Plaintiff. The controversy in the case is whether, as Plaintiff alleges and Defendants deny, Defendants have acted to deprive Plaintiff Bettelyoun of federally-protected rights, and if so, whether he should be compensated. A full independent psychiatric examination adds nothing to whether Plaintiff felt embarrassment, humiliation, severe emotional distress, injury to dignity or personal degradation on the basis of race. Plaintiff can testify that he believes his PTSD was exacerbated by the incident, but he will have to admit that he has no medical opinion to support that claim.

The Court finds that Defendants have failed to meet the "good cause" and "in controversy" prerequisites for the Court to order a forensic psychiatric examination of Plaintiff Bettelyoun. Therefore, the Court denies Defendants' motion for an independent medical examination.

**MEET-and-CONFER REQUIREMENT**

!     The requirement that parties meet and confer concerning discovery disputes is set forth in F.R.C.P. 37 as follows:

> (a) Motion for an Order Compelling Disclosure or Discovery.
>
>     (1) *In General.* On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37.

In accordance with the local rules of this court, the parties must file a certification describing the good faith efforts to resolve the dispute. D.S.D. Civ. LR 37.1. Defendants' Counsel filed a certification that the parties exchanged correspondence with respect to conducting independent medical examinations of Plaintiffs Red Bear and Bettelyoun. (Doc. 65). Plaintiffs challenge Defense Counsel's assertion that the meet-and-confer requirement was satisfied. (Doc. 74).

The purpose of the rule requiring that parties meet and confer prior to submitting a discovery dispute to the court is "to force litigants to attempt to

resolve, or at least narrow, the disputed issues to prevent the unnecessary waste of time and effort on any given motion." *Maples v. Safeway, Inc*., 2016 WL 4444746, *2 (D.S.D. Aug. 23, 2016) (quoting *Robinson v. Napolitano*, 2009 WL 1586959, *3 (D.S.D. June 4, 2009)). The requirement "is not an empty formality." *GmbH v. Omega Liner Company, Inc*., 2023 WL 4980031, *4 (D.S.D. Aug. 3, 2023) (citing *Pierce v. Fremar, LLC*, 2010 WL 3420169, *1 (D.S.D. Aug. 27, 2010)).

It appears the parties made some effort to resolve their dispute. Particularly with respect to Plaintiff Red Bear, it appears the dispute initially had been resolved in favor of not conducting the examination in question. Despite this, Defense Counsel filed a motion to compel without waiting for a response to interrogatories. With respect to Plaintiff Bettelyoun, it appears the parties were at an impasse because they disagreed about whether the "in controversy" and "good cause" standards for an IME were met. This was a closer question. As such, it was appropriate for the Court to resolve the dispute and it has done so in favor of Plaintiffs. See generally *Pierce*, 2010 WL 3420169, at *2 (citing *Robinson*, 2009 WL 1586959, at *4).

Plaintiffs have requested attorney's fees, arguing the Defendants' motion was not substantially justified. Fed. R. Civ. P. 37(a)(5)(B). Defendants resist the motion and request that attorney's fees be awarded to them pursuant to F.R.C.P. 37(a)(5)(A).

Given that reasonable minds could differ over whether the independent medical examinations of Plaintiffs Red Bear and Bettelyoun were substantially justified, the Court denies the award of attorney's fees to both parties.

**CONCLUSION**

Defendants seek psychiatric examinations of Plaintiffs Red Bear and Bettelyoun despite having Plaintiffs' medical records and extensive information developed during discovery.  Plaintiffs' damages appear to qualify as "garden variety damages," for hurt feelings, stress, emotional distress, and humiliation stemming from Defendants alleged conduct.  As such, the claimed damages can be evaluated by a jury.  Because the "good cause" and "in controversy" requirements of Rule 35 that would justify psychiatric examinations have not been met, Defendants' motion is denied.

Accordingly, IT IS ORDERED that:

1.  Defendants' motion for an independent medical examination of Plaintiff Red Bear is denied;

2.  Defendants' motion for an independent medical examination of Plaintiff Bettelyoun is denied;

3.  Defendants' motion for adjustment of the schedule to accommodate independent medical examinations of the Plaintiffs is denied;

4.  the Parties' motions for attorney's fees from the opposing party in conjunction

with this motion is denied.

Dated this 16th day of January, 2024

BY THE COURT:


Lawrence L. Piersol
United States District Judge


ATTEST:
MATTHEW W. THELEN, CLERK