UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| NDN COLLECTIVE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; SUNNY RED BEAR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; GEORGE BETTELYOUN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; ALBERTA EAGLE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; NICK COTTIER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; BRE JACKSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; AND MARY BOWMAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; | 5:22-CV-05027-LLP |
| Plaintiffs, | ORDER |
| vs. | |
| RETSEL CORPORATION, CONNIE UHRE, NICHOLAS UHRE, | |
| Defendants. | |

A discovery dispute is before the court where Plaintiffs move to compel production of information and documents withheld by the Defendants. (Doc. 95). Plaintiffs seeks attorney's fees and expenses as recompense for bringing the motion. Id. The district court, the Honorable Lawrence L. Piersol, referred the motion to this magistrate judge for determination pursuant to 28 U.S.C. § 636(b)(1)(A). (Doc. 120).

1

## FACTS[1]

NDN Collective, Sunny Red Bear, George Bettelyoun, Alberta Eagle, Nick Cottier, Bre Jackson, and Mary Bowman ("Plaintiffs") brought this lawsuit against Retsel Corporation ("Retsel"), Connie Uhre, and Nicholas Uhre ("Defendants"), alleging racial discrimination in making and enforcing contracts in violation of 42 U.S.C. § 1981.  (Doc. 84, p. 2).  Retsel owns and operates the Grand Gateway Hotel and Cheers Sports Lounge and Casino.  Id. at 5.[2]

In June 2020, George Bettelyoun, a Native American man, alleges he and his sister attempted to rent a room at the Grand Gateway but were excluded from the hotel based on his race.  Id. at 10.  They also alleged and any policy of the hotel used to exclude him was a pretext for racial discrimination.  Id.  On March 20, 2022, Connie posted on Facebook that she would "not allow a Native American to enter our business" because she is unable to tell "who is a bad Native or a good Native."  Id. at 11.  She again stated this message in an email chain to other Rapid City-area hotel operators.  Id. at 12.

On March 21, 2022, Sunny Red Bear, a Native American woman, attempted to rent a room at the Grand Gateway but was told the hotel could not rent Ms. Red Bear a room because she had a "local" identification.  Id. at 14-15.  Ms. Red Bear alleges that the local identification policy was a pretextual reason to exclude her based on her race.  Id. at 14.

---

[1] For purposes of considering Plaintiffs' motion to compel, the court takes the facts as asserted in the complaint and the party's briefs. No imprimatur of the court as to their veracity is intended.
[2] Connie is the president of Retsel; Nicholas, her son, manages the Grand Gateway Hotel.  Id.

On March 22, 2022, five Native Americans, who work at NDN Collective, including Plaintiffs Eagle, Cottier, Jackson, and Bowman, allege they were denied hotel rooms based on their racial status. Id. at 18-19.

Plaintiffs allege that Defendants' policies, practices, and actions violated their federal civil rights. Id. at 23-25. Plaintiffs also seek punitive damages based on Defendants' intentional, deliberate, reckless, hurtful, and wanton discriminatory actions. Id. at 27. In response to this lawsuit, Defendants brought counterclaims against NDN Collective for intentional interference with business relations, defamation, trespass, nuisance, and civil conspiracy. (Doc. 18). The court dismissed the counterclaims except for the claim for nuisance, which the court narrowed to "intimidating behavior . . . not based on the mere existence of a group of protesters or a boycott of the hotel." (Doc. 76, p. 18). Defendants asked the court to reconsider that ruling. (Doc. 94.)

On November 2, 2023, Plaintiffs served Requests for Production Nos. 14, 15, and 16 on Defendants. On December 4, 2023, Defendants responded. On January 10, 2024, Plaintiffs sent a meet and confer letter. (Doc. 98-2). On January 17, 2024, Defendants responded, stating that they are "still in the process of determining what financial statements are available for production." Id. On January 30, 2024, Plaintiffs wrote asking Defendants to produce responsive documents by February 6, 2024. (Doc. 98-4). In response, Defendants stated it was "still in the process of determining" what documents are "responsive" or "relevant" and "available for production." (Doc. 98-5).

On February 28, 2024, Plaintiffs wrote another letter reiterating the relevance of Defendants' financial information to Plaintiffs' claim for punitive damages and asking to meet and confer by a phone or video conference on March 11 or 12, 2024. (Doc. 98-6). Defendants responded on March 11, 2024, stating that "Defendants are in the process of working to produce this information." (Doc. 98-7). Defendants' counsel stated they were available to meet and confer by phone but stated they would take the same position they had in their written correspondence. (Doc. 98-8). Defendants produced additional documents on March 25, 2024, but it did not include documents responsive to Requests Nos. 14, 15, or 16. (Doc. 98-2).

On March 27, 2024, Plaintiffs filed a motion to compel production for financial documents. (Doc. 95). On April 16, 2024, Defendants disclosed to Plaintiffs the following financial documents: (1) tax returns from 2019 through 2023; (2) profit and loss statements from 2019-2023; and (3) balance sheets from 2019-2023. (Doc. 115, p. 5).

## DISCUSSION

### A. Discovery

Federal Rule of Civil Procedure ("FRCP") 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the

4

proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

See FRCP 26(b)(1).

If a party fails to respond to a proper request for discovery, or if an evasive or incomplete response is made, the party requesting the discovery has a right to move for a motion compelling disclosure after making a good-faith effort to resolve the dispute by conferring first with the other party.  See FRCP 37(a).  The moving party "must make a threshold showing that the requested information falls within the scope of discovery under Rule 26(b)(1)."  Sprint Comm. Co. L.P. v. Crow Creek Sioux Tribal Ct., 316 F.R.D. 254, 263-64 (D.S.D. 2016) (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992)).  It then becomes the burden of the party resisting discovery to convince the court that "the discovery is irrelevant or disproportional."  Id. (citations omitted).  If the court determines the requests to be outside the scope allowed by FRCP 26(b)(1), it must fashion appropriate limits.  FRCP 26(b)(2)(C)(iii).

What is relevant for discovery "is broader than what is admissible at trial; information sought in discovery need only be 'reasonably calculated to lead to the discovery of admissible evidence.' "  Pearson v. Royal Canin USA, Inc., 4:22-CV-04018-KES, 2023 WL 5916437, at *3 (D.S.D. Sept. 11, 2023) (quoting Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC, 784 F.3d 1183, 1198 (8th Cir. 2015)).  The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel

the other to disgorge whatever facts he has in his possession." <u>See</u> 8 Charles

A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2007 (3d ed. Oct. 2020

update) (quoting <u>Hickman v. Taylor</u>, 329 U.S. 495, 507-08 (1947)).

 Determining whether requested discovery is proportional to the needs of

the case is a fact-intensive inquiry that considers:

 1) the amount in controversy,
 2) the parties' relative access to relevant information,
 3) the parties' resources,
 4) the importance of the discovery in resolving the issues,
 5) whether the burden or expense of the proposed discovery outweighs
  its likely benefit.

<u>See id.</u> at *3 (quoting FRCP 26(b)(1)).  It is resisting party's burden to

demonstrate how the requested discovery is disproportionate to the needs of

the case.  <u>Penford Corp. v. National Union Fire Ins. Co.</u>, 265 F.R.D. 430, 433

(N.D. Iowa 2009); <u>St. Paul Reinsurance Co. v. Commercial Financial Corp.</u>, 198

F.R.D. 508, 511 (N.D. Iowa 2000).  The articulation of mere conclusory

objections that something is disproportionate is insufficient to carry the

resisting party's burden that party must make a specific showing of reasons

why the relevant discovery should not be had.  <u>Cincinnati Ins. Co. v. Fine</u>

<u>Home Managers, Inc.</u>, 2010 WL 2990118, *1 (E.D. Mo. 2010).  "This district

has repeatedly held that boilerplate objections fail to pass muster." <u>Rounds v.</u>

<u>Hartford</u>, Case No. 4:20-CV-04010-KES, 2021 WL 4150838, at *9 (D.S.D. Sept.

13, 2021) (citing <u>Kooima v. Zacklift Int'l. Inc.</u>, 209 F.R.D. 444, 446 (D.S.D.

2002) ("Boilerplate objections are unacceptable.  The party resisting discovery

must show specifically how each interrogatory or request for production is not

relevant or how each question is overly broad, burdensome, or oppressive.")).

**C. The Disputed Discovery**

Plaintiffs' Motion to Compel concerns disputes over Requests for Production of Document Numbers 14, 15, and 16. (Doc. 95, p. 2). The court will discuss each request in turn.

A prerequisite to moving to compel discovery is the filing of "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FRCP 37(a)(1). Additionally, under the District of South Dakota local rule 37.1, "[a] party filing a motion concerning a discovery dispute must file a separate certification describing the good faith efforts of the parties to resolve the dispute." D.S.D. Civ. LR 37.1.

The certification mentioned in FRCP 37 must include "the names of the parties who conferred or attempted to confer, the manner by which they communicated, the dispute at issue, as well as the dates, times, and results of their discussions, if any." Shuffle Master, Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 170-171 (D. Nev. 1996). "Good faith" requires that the parties made a genuine attempt to resolve the discovery dispute without involving the court. Id. Finally, "conferment" requires the parties "to have had an actual meeting or conference." Id. Thus, before making a motion to compel, "a moving party must personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." Id. Unilaterally sending

correspondence demanding that the other side comply with a discovery request does not satisfy the requirement. Id. at 172.

The parties do not dispute that there were several meet-and-confer conferences held to discuss the various discovery issues at hand. (Docs. 97, 115). The Plaintiffs filed a certificate stating that the party's counsel met and conferred in good faith with each other. (Doc. 115). Defendants argue Plaintiffs' "motion is premature because Defendants did not refuse to provide financial documents. The parties were not even at an impasse. Retsel properly stated its objections and [] provided financial documentation responsive to the requests prior to the discovery deadline. This motion [] is now moot because Retsel produced the responsive documents." (Doc. 115, p. 8).

Plaintiffs' motion was not premature. As discussed *supra*, Plaintiffs brought this motion to compel after nearly 5 months of trying to oblige Defendants to produce their financial documents. See Doc. 98-1. Defendants initially responded to the Requests with objections to words and the timeframe, Defendants subsequently abandoned those objections and instead argued that it was "still in the process of determining what financial statements are available for production" without further explanation. (Docs. 98-3 at 2; 98-5 at 2-3; 98-7 at 2). The Defendants' failure to meaningfully meet and confer regarding its objections, brought the parties to an impasse. Therefore, this motion is properly brought before the court.

Additionally, this court agrees with the Defendants that some aspects of the motion to compel regarding requests for production are now moot because

8

the Defendants produced the responsive documents; however, there are still

documents in which the Defendants must produce.

### 1. Request for Production No. 14

Request for Production No. 14 states:

> All of Your audited and unaudited financial statements for the last
> five years.

(Doc. 98-1, p. 2).  The Defendants' response states:

> Defendant objects to this Request to the extent that it is vague and
> ambiguous with respect to the words "audited and unaudited."
> Defendant further objects to the extent that this Request is overly
> broad and unduly burdensome with respect to the words "audited
> and unaudited" as well as the timeframe "for the last five years."
> Defendant objects to this Request as seeking information that is
> neither relevant to the claims or defenses in this matter nor
> reasonably calculated to lead to the discovery of admissible
> evidence, and seeks information otherwise beyond the scope of
> permissible discovery as defined by the Federal Rules of Civil
> Procedure.

Id.  Plaintiffs argue the requested materials are relevant because,

> Retsel's financial condition bears on a determination of punitive
> damages. Distributions made by Retsel to its board, shareholders,
> and directors are relevant to Retsel's financial condition, its
> governance structure and operations, and those individuals' bias
> and motive to testify.  See Alliance Commc'ns Co-op, Inc. v. Golden
> West Telecomm. Co-op, Inc., 2009 WL 512023, at *5 (D.S.D. Feb.
> 27, 2009) (citing Wright, Miller & Marcus, Fed. Prac. & Proc., §
> 2015, at 207) (providing for discovery for purposes of
> impeachment).  Retsel's financial condition is also relevant to its
> remaining counterclaim for nuisance—including the health of the
> business prior to March of 2022 and the impact of the protests on
> the business.

(Doc. 97, p. 10).  Plaintiffs assert that "[f]ive years of financial records is an

appropriate time frame to assess Retsel's financial condition before and after

the nuisance it alleges in its counterclaim and to assess its financial condition.

9

Furthermore, Retsel itself has requested documents going back five years in this litigation.  [Doc. 98-9; Doc. 98-10.]  If five years is an appropriate time frame for Retsel to conduct discovery, it is an appropriate time frame for Plaintiffs to conduct discovery."  Id. at p. 9.

Defendants do not debate the relevancy of the requested documents but assert they disclosed to Plaintiffs their profit and loss statements and balance sheets from 2019 through 2023.  (Doc. 115, p. 7).  Defendants also assert the request to produce every financial statement is not proportional to the needs of the case because the burden or expense of the proposed discovery outweighs its likely benefit.  Id.

The court finds that the Defendants' boilerplate objections failed to establish how the discovery sought was not proportional to the needs of the case.  See Penford Corp., 265 F.R.D. at 433; Rounds, 2021 WL 4150838, at *9; Kooima, 209 F.R.D. at 446.  Thus, Defendants are ordered to produce all audited and unaudited financial statements for the last five years.  Defendants must supply this information within 7 business days of the order.

**2. Request for Production No. 15**

Request for Production No. 15 states:

> All documents showing any compensation or distribution of money made or paid to any shareholder, director, officer, or board member of Retsel Corporation for the last five years.

(Doc. 98-1, p. 2).  The Defendants' response states:

> Defendant objects to this Request to the extent that it is vague and ambiguous with respect to the words "all documents, "any compensation or distribution" and "any shareholder, director, officer, or board member." Defendant further objects to this

10

> Request to the extent that it is overly broad and unduly
> burdensome with respect to the words "all documents" and
> timeframe "for the last five years." Defendant objects to this
> Request as seeking information that is neither relevant to the
> claims or defenses in this matter nor reasonably calculated to lead
> to the discovery of admissible evidence, and seeks information
> otherwise beyond the scope of permissible discovery as defined by
> the Federal Rules of Civil Procedure.

Id. at pp. 2-3.

Plaintiffs' requested information can be found in the tax returns and
balance sheets from 2019-2023, which is now in the Plaintiffs' possession.  The
court finds the Plaintiffs' request for all documents showing any compensation
or distribution to any shareholder, director, officer, or board member to be
duplicative and, therefore, unnecessary.  The court believes the Plaintiff has
sufficient information regarding Retsel's compensation to any shareholder,
director, officer, or board member; therefore, Plaintiffs' Request for Production
No. 15 is denied as moot.

### 3. Request for Production No. 16

Request for Production No. 16 states:

> All statements of Your assets and liabilities for the last five years.

(Doc. 98-1, p. 3).  The Defendants' response states:

> Defendant objects to this Request to the extent that it is vague,
> ambiguous, overly broad, unduly burdensome with respect to the
> words "all statements" and with respect to the timeframe "for the
> last five years." Defendant further objects to this Request as
> seeking information that is neither relevant to the claims or
> defenses in this matter nor reasonably calculated to lead to the
> discovery of admissible evidence, and seeks information otherwise
> beyond the scope of permissible discovery as defined by the
> Federal Rules of Civil Procedure.  Without waiving these objections,
> Defendant answers: a statement of assets and liabilities for the
> past five years will be produced.

11

Id.

Plaintiffs' request for all statements that show the Defendants' assets and liabilities is overbroad.  Sufficient information regarding Defendants' assets and liabilities can be found in the Defendants' balance sheets from 2019-2023, which is now in the Plaintiffs' possession; thus, the court denies this request as moot.

**D. Attorney Fees**

If a party files such a motion and it is granted "or if the disclosure or requested discovery is provided after the motion was filed—the court *must*, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added). However, the burden is on the moving party to demonstrate that its request for attorney's fees is reasonable.  Plaintiffs failed to make any showing regarding the hours spent or the hourly rate requested.  Without such a showing the court cannot rule on the request for attorney's fees.  Should the Plaintiffs file a separate motion for attorney's fees, Defendants will be able to address the reasonableness of the request and the court will consider the matter by separate motion.

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is ORDERED that
Plaintiffs' Motion to Compel (Doc. 95) is denied in part and granted in part in
accordance with this opinion.

## NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration
of this order before the district court upon a showing that the order is clearly
erroneous or contrary to law.  The parties have fourteen (14) days after service
of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A),
unless an extension of time for good cause is obtained.  See FRCP 72(a); 28
U.S.C. § 636(b)(1)(A).  Failure to file timely objections will result in the waiver of
the right to appeal questions of fact.  Id.  Objections must be timely and
specific in order to require review by the district court.  Thompson v. Nix, 897
F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 12th day of July, 2024.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge