UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| NDN COLLECTIVE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; SUNNY RED BEAR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; GEORGE BETTELYOUN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; ALBERTA EAGLE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; NICK COTTIER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; BRE JACKSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; AND MARY BOWMAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; | 5:22-CV-05027-LLP |
| Plaintiffs, | |
| vs. | ORDER |
| RETSEL CORPORATION, CONNIE UHRE, NICHOLAS UHRE, | |
| Defendants. | |

A discovery dispute is before the court where Plaintiffs moves to compel production of information and documents withheld by the Defendant. (Doc. 108). Plaintiffs seeks attorney's fees and expenses as recompense for bringing the motion. Id. The court has original jurisdiction over the matter pursuant to 28 U.S.C. § 1332. This opinion resolves Plaintiffs' motion to compel (Doc. 108) which the district court referred to this magistrate judge. (Doc. 120).

1

## FACTS[1]

On November 2, 2023, Plaintiffs served Requests for Production No. 13 on Defendants.  On December 4, 2023, Defendants responded.  On January 10, 2024, Plaintiffs sent a meet and confer letter to Defendants.  (Doc. 98- 2).  Plaintiffs asked Defendants to produce a privilege log for any documents withheld on the basis of any privilege.  (Doc. 111-3, p. 1).  Defendants responded:

> [We] ha[ve] produced all non-privileged and non-work product related emails from its five separate e-mail addresses in past productions beginning in March 2022.  There are no relevant e-mails from Retsel's email addresses in June 2020.  Retsel does not have custody or control over the communications of Retsel board members, directors, or officers.

(Doc. 111-4, p. 1).  The Board Members include Leslie Sherry, Josh Uhre, Judson Uhre, and Chad Uhre.  Plaintiffs replied that Defendants response was deficient "because responsive documents include more than emails.  For example, board members Leslie Sherry and Judson Uhre both stated in their respective depositions that oard members texted about Retsel's business."  (Doc. 111-5, p. 1).  Plaintiffs also countered that the Defendants have the practical ability to obtain its board members' documents, and therefore it had the requisite "possession, custody, or control" under Rule 34.  Id.  Finally, Plaintiffs stated that they would issue subpoenas duces tecum to Defendants' Board Members "out of an abundance of caution" but would withdraw the

---

[1] For purposes of considering Defendants' motion to compel, the court takes the facts as asserted in the complaint and plaintiffs' briefs.  No imprimatur of the court as to their veracity is intended.

2

subpoenas if Defendants produced documents responsive to Request 13. Id. at

2.  On March 11, 2024, Defendants again refused to produce documents on the

basis of relevance, undue burden, and cost.  (Doc. 111-8, p. 1; Doc. 111-9).

On December 8, 2023, Plaintiffs served Request No. 22, on Defendants,

and Defendants responded on January 8, 2024:

> Please produce all text messages or social media posts or messages
> from Retsel or any of its managers, officers, or directors concerning
> Sunny Red Bear, George Bettelyoun, NDN Collective, or Native
> Americans from June 1, 2020, to the present.

> RESPONSE: Defendant objects to this Request to the extent that it
> is vague, ambiguous and overly broad and unduly burdensome
> with respect to the timeframe "June 1, 2020 to the present."
> Further, Defendant objects to this request to the extent that it is
> not in possession or control of any text messages, social media, or
> messages from any of its managers, officers, or directors.  In
> addition, Defendant objects to this Request as seeking information
> that is protected by the attorney client privilege, the work product
> doctrine, as seeking information that is neither relevant to the
> claims or defenses in this matter nor reasonably calculated to lead
> to the discovery of admissible evidence, and as seeking information
> otherwise beyond the scope of permissible discovery as defined by
> the Federal Rules of Civil Procedure. Without waiving these
> objections, Defendant answers: see documents previously
> produced and to the extent that Defendant has possession or
> control of additional documents, relevant and responsive
> documents will be produced.

(Doc. 111-10, p. 1).  Request 22 expanded upon Request 13 and sought

communications from Defendants' managers, officers, or directors to third

parties.  (Doc. 111-11, pp. 2-3).  On January 22, 2024, Plaintiffs initiated meet

and confer efforts regarding Request 22.  Id. at 1-2.  Plaintiffs asked

Defendants to clarify whether any responsive documents were being withheld,

and if so, on what basis.  Id. at 2.  Plaintiffs explained that the time frame of

June 1, 2020, to the present was appropriate, because it included the dates relevant to the Third Amended Complaint and more recent social media posts Defendants made in December 2023 regarding Native Americans. Id. Plaintiffs also reiterated that Defendants' board members' documents are actually or constructively in its possession, custody, or control, and it has the practical ability to obtain them. Id. Plaintiffs also asked Defendants to provide a privilege log for documents withheld on the basis of attorney client or work product privilege. Id.

In response, Defendants claimed that it had produced all responsive social media posts or messages from the accounts of the Grand Gateway and Cheers, and further stated that they do not have text message accounts. (Doc. 111-12, p. 1). Defendants, despite acknowledging that the post had been deleted, claimed that it was "easily accessible" to Plaintiffs and further objected on evidentiary grounds. Id. Defendants again took the position that it does not have possession or control of board members' documents. Id. Defendants repeated its objection to Request 13, that documents of Board Members in addition to those of Connie and Nick would be duplicative. Id. at 2. Defendants also claimed that the subpoenas duces tecum served on Board Members renders Request 22 moot. Id. Defendants produced a privilege log listing 14 documents withheld on the basis of attorney client or work product privilege. (Doc. 111-13). None of those documents were text messages. Id. Plaintiffs replied, explaining that the issuance of the subpoenas did not moot Defendants' obligation to collect and produce its board members' documents.

4

(Doc. 111-14, p. 1).  Plaintiffs stated that the blanket assertions of privilege, especially over documents it has not even collected or reviewed, is insufficient. Id.  Plaintiffs invited Defendants to meet and confer by phone or video conference, but Defendants' counsel indicated in their last communication on the subject that their position would be consistent with their written meet and confer efforts.  Id.; Doc. 111-19.

Because Defendants refused to collect or produce documents of its Board Members who were not named in the Complaint, Plaintiffs issued subpoenas duces tecum on January 31, 2024, to the Board Members that sought essentially the same information has Request 13 and 22.  (Doc. 111-14, p. 1). The Board Members, represented by the same counsel as Defendants, served objections to the subpoenas that mirrored Defendants' objections to Requests 13 and 22.  (Doc. 111-16).  The Board Member additionally based their objections on the reasonableness standard of Rule 45 applicable to purported third parties.  Id.

On March 7, 2024, Plaintiffs initiated written meet and confer efforts regarding the subpoenas and addressed the Board Members' objections in the same manner as Defendants' objections to Requests 13 and 22.  (Doc. 111-17). Plaintiffs stated due to "there [being] limited time left is discovery, and because we have previously requested time to meet and confer with you on related issues on March 11 or 12, 2024, we propose to meet and confer by phone or video conference on the matters discussed above on March 11 or 12, 2024." Id. at 8.  Counsel for the Board Members responded after the close of business

on Friday, March 22, 2024, asking to meet and confer sometime the following week.  (Doc. 111-18).  Plaintiffs' counsel responded the following morning, Saturday, March 23, 2024, and proposed that the parties meet on the morning of Monday, March 25, 2024.  (Doc. 111-18 at 1).  The parties met by phone on March 25, 2024, and discussed the Board Members' objections, but counsel for the Board Members would not commit to producing any documents and indicated that they needed another week to discuss these matters with their clients.  When the parties met again on April 2, 2024, the Board Members' counsel indicated that the Board Members would collect and produce some responsive documents, but they maintained their relevance objections and maintained that all documents created on or after March 22, 2022, are categorically privileged, notwithstanding the fact that they had yet to collect and review them.  (Doc. 111-26, pp. 1-2).

On April 16, 2024, Plaintiffs bring this motion to compel production of all responsive post-March 22, 2022, documents.  (Doc. 108).  Plaintiffs assert that they "will continue to work with Defendants to secure production of pre-March 22, 2022, documents without Court intervention."  (Doc. 109).  Defendants assert the only issue is regarding "Retsel's privilege objections and the request to establish a litigation cut-off date of March 22, 2022 for the Parties' privilege logs."  (Doc. 133, p. 9).

## DISCUSSION

### A. Discovery

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery

in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is
> as follows: Parties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim or
> defense and proportional to the needs of the case, considering the
> importance of the issues at stake in the action, the amount in
> controversy, the parties' relative access to relevant information, the
> parties' resources, the importance of the discovery in resolving the
> issues, and whether the burden or expense of the proposed
> discovery outweighs its likely benefit.  Information within this
> scope of discovery need not be admissible in evidence to be
> discoverable.

See FED. R. CIV. P. 26(b)(1).  The court will limit the extent of discovery if it

determines the discovery is unreasonably duplicative, cumulative, can be

obtained from a more convenient source, or if the expense or burden of

discovery outweighs its benefit.  FED. R. CIV. P. 26(b)(2)(C).

If a party fails to respond to a proper request for discovery, or if an

evasive or incomplete response is made, the party requesting the discovery has

a right to move for a motion compelling disclosure after making a good-faith

effort to resolve the dispute by conferring first with the other party.  See FED.

R. CIV. P. 37(a).  The moving party "must make a threshold showing that the

requested information falls within the scope of discovery under Rule 26(b)(1)."

Sprint Comm. Co. L.P. v. Crow Creek Sioux Tribal Ct., 316 F.R.D. 254, 263–64

(D.S.D. 2016) (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir.

1992)).  It then becomes the burden of the party resisting discovery to convince

7

the court that "the discovery is irrelevant or disproportional." Id. (citations

omitted); see Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton, 136

F.R.D. 682, 684–85 (D.Kan. 1991) ("All discovery requests are a burden on the

party who must respond thereto. Unless the task of producing or answering is

unusual, undue or extraordinary, the general rule requires the entity

answering or producing the documents to bear that burden."). The articulation

of mere conclusory objections that something is "overly broad, burdensome, or

oppressive," is insufficient to carry the resisting party's burden—that party

must make a specific showing of reasons why the relevant discovery should not

be had. Cincinnati Ins. Co. v. Fine Home Managers, Inc., Civ. No. 09–234,

2010 WL 2990118, at *1 (E.D.Mo. July 27, 2010). If the court determines the

requests to be outside the scope allowed by Rule 26(b)(1), it must fashion

appropriate limits. FED. R. CIV. P. 26(b)(2)(C)(iii).

What is relevant for discovery "is broader than what is admissible at

trial; information sought in discovery need only be 'reasonably calculated to

lead to the discovery of admissible evidence.' " Pearson v. Royal Canin USA,

Inc., 4:22-CV-04018-KES, 2023 WL 5916437, at *3 (D.S.D. Sept. 11, 2023)

(quoting Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC,

784 F.3d 1183, 1198 (8th Cir. 2015)). The reason for the broad scope of

discovery is that "[m]utual knowledge of all the relevant facts gathered by both

parties is essential to proper litigation. To that end, either party may compel

the other to disgorge whatever facts he has in his possession." See 8 Charles

8

A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2007 (3d ed. Oct. 2020 update) (quoting <u>Hickman v. Taylor</u>, 329 U.S. 495, 507-08 (1947)).

 Determining whether requested discovery is proportional to the needs of the case is a fact-intensive inquiry that considers:

1) the amount in controversy,
2) the parties' relative access to relevant information,
3) the parties' resources,
4) the importance of the discovery in resolving the issues,
5) whether the burden or expense of the proposed discovery outweighs its likely benefit.

<u>See id.</u> at *3 (quoting FED. R. CIV. P. 26(b)(1)).  It is defendant's burden to demonstrate how the requested discovery is disproportionate to the needs of the case.  <u>Penford Corp. v. National Union Fire Ins. Co.</u>, 265 F.R.D. 430, 433 (N.D. Iowa 2009); <u>St. Paul Reinsurance Co. v. Commercial Financial Corp.</u>, 198 F.R.D. 508, 511 (N.D. Iowa 2000).  The articulation of mere conclusory objections that something is disproportionate is insufficient to carry the resisting party's burden—that party must make a specific showing of reasons why the relevant discovery should not be had.  <u>Cincinnati Ins. Co. v. Fine Home Managers, Inc.</u>, 2010 WL 2990118, *1 (E.D. Mo. 2010).

**C. The Disputed Discovery**

 Plaintiffs "respectfully move this Court to order the production of documents from Defendant Retsel Corporation, or alternatively to compel production of documents from Judson Uhre, Leslie Sherry, Chad Uhre, and Josh Uhre ('Board Members') pursuant to the subpoenas duces tecum served upon them." (Doc. 108, p. 1).

9

### 1. Meet and Confer

A prerequisite to moving to compel discovery is the filing of "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1). Similarly, under the District of South Dakota local rule 37.1, "[a] party filing a motion concerning a discovery dispute must file a separate certification describing the good faith efforts of the parties to resolve the dispute." D.S.D. Civ. LR 37.1.

The certification mentioned in FED. R. CIV. P. 37 must include "the names of the parties who conferred or attempted to confer, the manner by which they communicated, the dispute at issue, as well as the dates, times, and results of their discussions, if any." Shuffle Master, Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 170-171 (D. Nev. 1996). "Good faith" requires that the parties made a genuine attempt to resolve the discovery dispute without involving the court. Id. Finally, "conferment" requires the parties "to have had an actual meeting or conference." Id. Thus, before making a motion to compel, "a moving party must personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." Id. Unilaterally sending correspondence demanding that the other side comply with a discovery request does not satisfy the requirement. Id. at 172.

As discussed *supra*, the parties engaged in several meet-and-confer conferences to discuss the discovery issue at hand. Plaintiffs filed a certificate

stating that Plaintiffs' Counsel met and conferred in good faith with Defendants' Counsel. (Doc. 110). The court finds that parties properly met and conferred regarding Requests 13 and 22 and the subpoenas duces tecum served on the Board Members.

### b. Request

On November 2, 2024, Plaintiffs served Request for Production No. 13 on Defendants, and Defendants responded on December 4, 2023. The request states:

> All communications between or among any Retsel Corporation board members, directors, or officers in June 2020 and from March 2022 to the present concerning NDN Collective, any employee of or person affiliated with NDN Collective, Nick Tilsen, Hermus Bettelyoun, Sunny Red Bear, boycotts, Native Americans, homelessness, racism, a local identification policy, or the events involved in this lawsuit.

(Doc. 101-2, p. 4). The Defendants' response states:

> Defendant objects to this Request to the extent that it is vague, ambiguous and overly broad with respect to the words "all communications" and "the events involved in this lawsuit." Defendant further objects to this Request to the extent that it is unduly burdensome with respect to the timeframe "March 2022 to the present." In addition, Defendant objects to this Request as seeking information that is protected by the attorney client privilege, the work product doctrine, as seeking information that is neither relevant to the claims or defenses in this matter nor reasonably calculated to lead to the discovery of admissible evidence, and as seeking information otherwise beyond the scope of permissible discovery as defined by the Federal Rules of Civil Procedure. Without waiving these objections, Defendant answers: see documents previously produced and additional relevant and responsive documents will be produced.

Id.

On February 5, 2024, Defendants responded to Plaintiffs meet and confer letter stating it does not have "possession or control over the e-mail, Facebook, or phone accounts of its shareholders." (Doc. 111-6, p. 1).  Defendants stated they produced "relevant non-privileged communications between Retsel board members" collected through their respective email accounts, and "relevant non-privileged . . . Facebook Messenger and phone text messages" with board members.  Id.  Defendants argued "any additional collections of the same text strings via third-party subpoena between board members would be duplicative and burdensome."  Id.  More communications occurred.  On March 11, 2024, in a final communication regarding Request 13, Defendants again refused to produce documents on the basis of relevance, undue burden, and cost.  (Doc. 111-8, p. 1; see also Doc. 111-9).  On December 8, 2023, Plaintiffs served another Request for Production No. 22 on Defendants, and Defendants responded on January 8, 2024.  The request states:

> Please produce all text messages or social media posts or messages from Retsel or any of its managers, officers, or directors concerning Sunny Red Bear, George Bettelyoun, NDN Collective, or Native Americans from June 1, 2020, to the present.

(Doc. 111-10, p. 1).  The Defendants' response states:

> Defendant objects to this Request to the extent that it is vague, ambiguous and overly broad and unduly burdensome with respect to the timeframe "June 1, 2020 to the present." Further, Defendant objects to this request to the extent that it is not in possession or control of any text messages, social media, or messages from any of its managers, officers, or directors. In addition, Defendant objects to this Request as seeking information that is protected by the attorney client privilege, the work product doctrine, as seeking information that is neither relevant to the claims or defenses in this matter nor reasonably calculated to lead to the discovery of admissible evidence, and as seeking information otherwise beyond

12

the scope of permissible discovery as defined by the Federal Rules of Civil Procedure. Without waiving these objections, Defendant answers: see documents previously produced and to the extent that Defendant has possession or control of additional documents, relevant and responsive documents will be produced.

Id. On January 22, 2024, Plaintiffs asked Defendants to clarify whether any responsive documents were being withheld, and if so, on what basis and to provide a privilege log for documents withheld on the basis of attorney client or work product privilege. (Doc. 111-11, pp. 1-2). In response, Defendants claimed it had produced all responsive social media posts or messages from the accounts of the Grand Gateway and Cheers, and also stated they do not have possession or control of board members' documents. (Doc. 111-12, p. 1). Defendants also claimed that the subpoenas duces tecum served on Board Members renders Request 22 moot. Id. Defendants produced a privilege log listing 14 documents withheld on the basis of attorney client or work product privilege, the documents did not include text messages. (Doc. 111-12, p. 1).

On January 31, 2024, Plaintiffs issued subpoenas duces tecum on Board Members. Plaintiffs informed the court they are only seeking enforcement of the subpoenas duces tecum if the information sought in the Request for Production No. 13 & 22 are not supplied. Plaintiffs are only seeking all responsive post-March 22, 2022, documents. (Doc. 108). Plaintiffs assert that they "will continue to work with Defendants to secure production of pre-March 22, 2022, documents without Court intervention." (Doc. 109).

Defendants assert

13

"because Plaintiffs' document requests 13 and 22, and the
subpoenas duces tecum seek post-litigation communications, to
the present, exchanged between and among the Retsel
shareholders, about topics related to this and related lawsuits,
Defendant Retsel asserted a categorical privilege objection,
expressly identifying that the shareholders' communications
between and among themselves, after litigation commenced on
March 22, 2022, are, categorically and presumptively, privileged as
either attorney-client communications or work product.

Thus, there are two components to Retsel's objections to
production of post-litigation communications between and among
the Retsel shareholders and officers about this and related
lawsuits: (1) the communications are, categorically, either not
relevant or they are privileged; and (2) the burden and cost to
collect, search, review, and log the Non-Party Shareholders'
electronic communications to identify information responsive to
Plaintiffs' broad requests, and then to create and maintain on-
going, post-litigation privilege logs, is not proportional to the needs
of the case."

(Doc. 133, p. 11).

## A. Relevance

The court finds that the requested communications after March 22,

2022, are relevant to both the Plaintiffs' claims and Defendants' counterclaims.

Defendants do not dispute that the request discovery is relevant. (Doc. 133, p.

16). The burden now shifts to Defendants to show that this request is

protected by privilege or overly broad, burdensome, oppressive.

## B. Possession, Custody, Or Control

Defendants claim they do not have custody or control over the

communications of its board members, directors, or officers, and also claim

that the Board Members' communications are protected by their attorney-client

privilege. (Doc. 111-4, p. 1; Doc. 133, pp. 9-18). These arguments cannot

coexist. If the communications are protected by Defendants' attorney-client

14

privilege, then Defendants necessarily has constructive control of the
communications.  However, if the Defendants do not have possession, custody,
or control of the Board Members' communications, then there can be no
attorney-client privilege protecting this information.

   Under FRCP 34, a party is only required to produce responsive
documents in its "possession, custody, or control."  This includes documents
that it has the practical ability to obtain, or documents it has the "legal right to
obtain."  See Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 636 (D. Minn.
2000); Dakota Energy Coop., Inc. v. E. River Elec. Power Coop., Inc., 4:20-CV-
04192-LLP, 2021 WL 3860327, at *4 n.1 (D.S.D. Aug. 27, 2021) (citing 8A
Wright, Miller & Marcus, Fed. Prac. & Proc. § 2210, at 397 (2d ed. 1994)
("[D]ocuments in the possession of East River's directors are clearly within East
River's control because they have a legal right to ask for and obtain the
document."); see also McAllister-Lewis v. Goodyear Dunlop Tires N. Am., Ltd.,
4:14-CV-04103-LLP, 2015 WL 5794697, at *4 (D.S.D. Oct. 1, 2015) ("If a party
has the right, and the ready ability, to obtain copies of documents gathered or
created by its' agents pursuant to work done for the party, 'such documents
are clearly within the [party's]control.' ").

   The court finds that Defendants have possession, custody, or control of
the requested documents for two reasons.  First, Defendants have the legal
right to obtain from its board members documents regarding Defendants'
business.  Second, Defendants pay for Board Members' cell phone bills, so
practically they can obtain those records. (Doc. 111-27, p. 2).  Therefore, the

court finds that the Defendants have possession, custody, or control of the
Board Members' communications.

### C. Privilege

Defendants argue they do not need to provide a privilege log because the
relevant communications between and among other board members after
March 22, 2022, are categorically privileged. (Doc. 133, p. 10). Specifically,
the Defendants state:

> As of March 22, 2022, communications between and among the
> Retsel officers, directors, and shareholders, about the topics listed
> in Plaintiffs' document requests 13 and 22 and the subpoenas
> duces tecum, can fairly be said to have been prepared or
> exchanged because of the prospect or in response to this and
> related litigation, and are, therefore, protected work product under
> Federal Rule of Civil Procedure 26(b)(3).

Id. at 13. Defendants further state that their "post-litigation, trial preparation
discussions about the issues in this case are protected by the attorney-client
privilege and/or the work product doctrine, and with regard to work product,
Plaintiffs have not—and cannot—articulate any substantial need for the
corporations' internal trial preparation discussions." Id. at 17. The Plaintiffs
state that Defendants' communications with counsel are privileged; but, the
Defendants' internal communications are not privileged unless they carry their
burden to show that they are protected from disclosure. (Doc. 140, p. 5).

It is the party claiming the privilege, not the opposing party, who must
"describe the nature of the documents [or] communications" being withheld
and do so "in a manner that . . . will enable other parties to assess the claim."
Fed. R. Civ. P. 26(b)(5)(A). And when a claim of privilege is challenged, it is the

party asserting the privilege who bears the burden of establishing that the privilege applies. Gowan v. Mid Century Ins. Co., 309 F.R.D. 503, 508 (D.S.D. Sept. 11, 2015) (citing Fed. R. Civ. P. 26(b)(2)(B) and (C)). Furthermore, it is impossible for a party to identify or challenge documents that have not been produced on the basis of a privilege, especially when, as here, they refuse to produce a privilege log for the documents in question that are being withheld.

The crux of the work product doctrine, as articulated by the Eighth Circuit, is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Marvin Lumber & Cedar Co. v. PPG Indus. Inc., 168 F.R.D. 641, 645 (D. Minn. 1996) (citing Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987)). "While the 'work product' may be, and often is, that of an attorney, the concept of 'work product' is not confined to information or materials gathered or assembled by a lawyer." Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 603 (8th Cir. 1977). Documents prepared in the normal course of business are not protected. Marvin Lumber & Cedar Co, 168 F.R.D. at 645.

Here, Defendants made a blanketed privilege assertion and argue "[r]equiring post-litigation privilege logs is not proportional to the needs of this case." (Doc. 113, p. 14). Defendants argue their situation is similar to Danielson, where a subpoena sought communications between the State and its attorney about Plaintiff's lawsuit and the court took a categorical approach to a subpoena that requested information that was clearly privileged. Id. at p.

17

13 (citing <u>Danielson v. Huether</u>, 4:18-CV-04039 2020 WL 2922173 at *4-5
(D.S.D. June 3, 2020)).  In this case, unlike the requests at issue in <u>Danielson</u>,
Plaintiffs' request does not specifically seek communications with Defendants'
counsel, nor do they seek communications about the litigation itself.  The
requests at issue here target specific topics relevant to the allegations in this
lawsuit.  Thus, Defendants' categorical assertion of privilege fails.

Plaintiffs state that Defendants "need not log post-ligation
communications with counsel so long as the communication does not include
any third parties. . . .  But Retsel must produce a privilege log for any
communications between its Board Members that do not involve counsel (or
that involve counsel but also include third parties) so that Plaintiffs—and a
reviewing court—have some way of evaluating their claims. . . . [T]he Court
should instruct Retsel to provide a privilege log identifying each document
(other than communications with counsel that do not involve any third party)
and establishing the basis for withholding each document." (Doc. 140, pp. 19-
20).  The court agrees.  The Defendants are required to produce a priveloge log
for all communications between board members after June 1, 2020, but need
not produce a privilege log for communications with counsel that do not
include any third parties.

**D. Burden**

Defendants assert that "requiring post-litigation privilege logs is not
proportional to the needs of this case" due to this case involving extensive
discovery. (Doc. 133, p. 14).  Defendants point to a court in this circuit have

18

excused parties from creating post-litigation privilege logs, applying an assumption of privilege after litigation begins, to both attorney-client communications and work product, especially where extensive discovery is requested.  Id. (citing Frye v. Hamilton County Hosp., 2019 WL 11023858, at *4-5 (N.D. Iowa March 26, 2019).  Defendants state "[a]fter March 22, 2022, if the Retsel officers, shareholders, and directors are communicating about "the events involved in this lawsuit," about the Plaintiffs, or about the other issues specifically raised by Plaintiffs' claims, it is a safe presumption that their communications are privileged."  (Doc. 111-15 at Exhibit A, subpar. (a)).

Here, the cost and burden to collect, review, and produce responsive documents is not undue.  This is especially true given that the Board Members have now collected their responsive ESI and begun to produce responsive documents, except those it has improperly withheld as privileged.  (Doc. 133 at 18).  The data has already been collected and stored, including documents and communications from March 22, 2022, and later, and thousands of pages of Board Member documents have been produced.  Id.  Therefore, additional review and production of board communications will not impose an undue burden on Defendants.

The court rejects Defendants' categorical privilege argument and requires that Defendants produce a complete privilege log for any communications between Board Members that do not involve counsel, or that involve counsel but also include a third party. Defendants shall produce this log by within 7 business days of this order.

### D. Attorney Fees

If a party files such a motion and it is granted "or if the disclosure or requested discovery is provided after the motion was filed—the court *must*, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added). However, the burden is on the moving party to demonstrate that its request for attorney's fees is reasonable. Plaintiffs failed to make any showing regarding the hours spent or the hourly rate requested. Without such a showing the court cannot rule on the request for attorney's fees. Should the Plaintiffs file a separate motion for attorney's fees, Defendants will be able to address the reasonableness of the request and the court will consider the matter by separate motion.

### CONCLUSION

Based on the foregoing facts, law, and analysis, it is ORDERED that Plaintiffs' Motion to Compel (Doc. 108) is granted in accordance with this opinion.

### NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A),

unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 12th day of July, 2024.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge