UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

NDN COLLECTIVE, individually and
on behalf of all others similarly situated;
SUNNY RED BEAR, individually and
on behalf of all others similarly situated;
GEORGE BETTELYOUN, individually
and on behalf of all others similarly
situated; ALBERTA EAGLE, individually
and on behalf of all others similarly
situated; NICK COTTIER, individually
and on behalf of all others similarly
situated; BRE JACKSON, individually
and on behalf of all others similarly
situated; MARY BOWMAN, individually
and on behalf of all others similarly
situated,

        Plaintiffs

        vs.

RETSEL CORPORATION,
d/b/a Grand Gateway Hotel,
d/b/a Cheers Sports Lounge and Casino;
CONNIE UHRE; and
NICK UHRE,

        Defendants,

        and

RETSEL CORPORATION,
d/b/a Grand Gateway Hotel,
d/b/a Cheers Sports Lounge and Casino,

5:22-cv-5027

MEMORANDUM OPINION
AND ORDER GRANTING IN
PART AND DENYING IN
PART DEFENDANTS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT

1

Third-Party Plaintiff,

vs.

JOHN DOES 1-20; JANE DOES, 1-20;
And ABC CORPORATIONS 1-20,

Third-Party Defendants

---

Pending before the Court is Defendants' Motion for Partial Summary Judgment with accompanying materials. (Doc. 152). Defendants requested oral argument on the motion, (Doc. 153), which the Court held on August 13, 2024. (Doc. 164). Defendants have submitted a supplement. (Doc. 166). Plaintiffs have responded to the motion, and supplied an affidavit and responses to Defendants' statement of undisputed material facts. (Doc. 168, 169, 170). The Court notes that Plaintiffs also have moved for partial summary judgment, (Doc. 158), which the Court will address in a separate order.

Defendants seek summary judgment as follows:

I. A.—Counts 1 and 2—George Bettelyoun's § 1981 claims on the basis the June 2020 incident was a single incident involving Bettelyoun and his sister, and

B.—lack of Bettelyoun's standing for the § 1981 claim, and inability to prove both intent to discriminate and the element of his contracting with Retsel

II. With respect to Plaintiffs Red Bear, Eagle, Cottier, Jackson and Bowman: 1—Counts 1 and 2—inability to establish the § 1981 claims for lack of prudential standing, Article III standing, and intent of Retsel to discriminate

III. With respect to NDN Collective, Eagle, Cottier, Jackson, and Bowman: lack of standing for NDN for all § 1981 claims; lack of standing for Eagle, Cottier, Bowman, and Jackson as representing NDN; lack of real interest in contracting

IV. Judgment on § 1981 claims for individuals Connie Uhre and Nick Uhre

V. Strike class action

VI. Prayer for declaratory and injunctive relief is moot

The Parties argued their respective positions in the telephonic hearing. For the following reasons, the Court grants in part and denies in part Defendants' motion for partial summary judgment.

## BACKGROUND

As described in detail in previous memorandum opinions, the case arose in two parts. The later part chronologically occurred in March 2022. After a shooting at the Grand Gateway Hotel, Rapid City, SD, the hotel owner, Defendant Connie Uhre, posted comments on Facebook and elsewhere asserting that the hotel would not rent rooms to Native Americans. (Doc. 84, PgID 1005). The rationale was that she could not tell "who is a bad Native or a good Native." (Id.). Plaintiffs allege Defendants made additional comments, stationed guards at the hotel, and refused

to rent rooms to Plaintiffs Sunny Red Bear on March 21, 2022, and to four members of NDN Collective on March 22, 2022. Subsequently, Connie Uhre allegedly sprayed dust spray into Sunny Red Bear's face.

An incident at the Grand Gateway two years earlier also is a subject of this lawsuit. In June 2020, Plaintiff George Bettelyoun and his sister allegedly endeavored to rent a hotel room at the Grand Gateway. After an argument about a damage deposit, Defendant Nick Uhre, manager of the hotel, ordered Plaintiff Bettelyoun and his sister to leave the hotel. Allegedly Uhre spoke closely enough to Bettelyoun that the latter could feel spit on his face.

Following the March 2022 incidents, there were calls for protests at the Grand Gateway, including from Plaintiff NDN Collective, and the protests allegedly lasted for several weeks.

Plaintiffs filed this lawsuit alleging interference with contract on the basis of race in violation of 42 U.S.C. § 1981 on behalf of all Plaintiffs; seeking a declaratory judgment that Defendants violated the Civil Rights Act, id.; and alleging assault and battery of Sunny Red Bear against Connie Uhre and Retsel Corporation, the owner of the Grand Gateway. Defendants denied the allegations related to the § 1981 claims and counterclaimed alleging intentional interference with business relations, civil conspiracy, defamation, trespass, and nuisance. The

Court granted Plaintiffs' motion to dismiss some of the counterclaims, (Doc. 76), and subsequently permitted Defendants to file an amended complaint. (Doc. 128).

It is important to recognize that the United States sought declaratory and injunctive relief against Retsel based on the incidents of March 2022. (*United States of America v. Retsel Corporation, et al*, 5:22-cv-5086). The case has been resolved by a consent decree. (Id., Doc. 59).

## LEGAL STANDARD

### 1.—Summary Judgment

According to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). As the Eighth Circuit has noted, "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Celotex v. Catrett*, 477 U.S. 317, 327 (1986)). When a court is asked to review a motion for summary judgment it examines "the record in the light most favorable to the nonmoving party ... drawing all reasonable inferences in that party's favor." *Whitney v. Guys*, 826 F.3d 1074, 1075 (8th Cir.

2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923-24 (8th Cir. 2004)). See also *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987); *Kirkendall v. Shur-Co*, 2007 WL 1574423, *1 (D. S. D. 2007). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). When cross motions for summary judgment are before the Court, the general principles governing summary judgment apply. *Anderson v. Nationwide Agribusiness Insurance Co.*, 2022 WL 3445838, *1 (D.S.D. Aug. 17, 2022).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.,* 838 F.2d 268, 273–74 (8th Cir.1988). See also *Pinchas v. USA Deaf Sports Federation, Inc.*, 457 F.Supp.2d 937 (8th Cir. 2006). Furthermore, as a general rule, "if conflicting testimony appears in the affidavits and depositions that are filed, summary judgment may be inappropriate as the issues involved will depend on the credibility of witnesses." Charles Alan Wright & Arthur R. Miller, 10A FEDERAL PRACTICE AND PROCEDURE § 2726.1 (4th ed. June 2024 update).

Local rules in this district provide additional requirements for parties with respect to motions for summary judgment. First, all motions for summary judgment must be accompanied by a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. D. S.D. LR 56.1(A). Further the opposing party is required to respond to the movant's statement of material facts with "a separately numbered response and appropriate citations to the record" and also must "identify any material facts on which there exists a genuine material issue to be tried." Id. 56.1(B). Material facts set forth in the movant's statement of material facts are deemed "admitted unless controverted by the opposing party's response to the moving party's statement of material facts." Id. 56.1(D). See also *On Target Sporting Goods, Inc. v. Attorney General of the United States*, 472 F.3d 572, 574 (8th Cir. 2007).

### 2.—42 U.S.C. § 1981 claims

a.-- Substantive Requirements

To prevail on a claim under § 1981 a plaintiff is required to prove the following: "(1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant." *Johnson v. Schulte Hospitality Group, Inc.*, 66 F. 4th 1110, 1118 (8th Cir. 2023) (quoting *Gregory v. Dillard's*, 565 F.3d 464, 469 (8th Cir. 2009)). Further, any claim brought under § 1981 "must initially identify an impaired 'contractual relationship' under which the plaintiff has rights."

7

*Gregory,* 565 F.3d at 469 (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)). In the retail context, a plaintiff must show he or she "actively sought to enter into a contract" and made a tangible attempt to contract." *Id.* at 470. Once this threshold is met, the "plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest. *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006) (cleaned up).

Plaintiffs can prevail on a claim under § 1981 by showing the defendants created a "markedly hostile atmosphere" or that people similarly situated were treated differently based on race. *Keck v. Graham Hotel systems, Inc.*, 566 F.3d 634, 641 (6th Cir. 2009). Whether the defendants' actions were discriminatory ordinarily is a jury question. *Id.* at 642. Furthermore, individual employees may be held liable if they "intentionally cause an employer to infringe on a plaintiff's § 1981 rights." *Silverman v. Village*, 2019 WL 2881586, *2 (E.D. Ark. July 3, 2019) (citing *Jones v. Forrest City Gro., Inc.*, 564 F.Supp.2d 863, 869 (E.D. Ark. 2008)).

A threshold question under § 1981 is whether plaintiff is a member of a protected class. *Yang v. Robert Half International, Inc.*, 79 F.4th 949 (8th Cir. 2023). An organization may have such status, as has been made clear in a number of cases. See, e.g., *Woods v. City of Greensboro*, 855 F. 3d 639, 644 (4th Cir. 2017) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130

and n.4 (2014); *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 196 (2017)).  In

analyzing § 1981, the Ninth Circuit explained that the statute "protects all persons

from racial discrimination in making and enforcing contracts" and that "although a

corporation is not a person it may acquire standing under § 1981 if it has acquired

an "imputed racial identity." *Thinket Ink Information Resources, Inc. v. Sun*

*Microsystems, Inc.*, 368 F.3d 1053, 1055 (9th Cir. 2004).  A corporation with such

an imputed racial identity "is sufficiently within the zone of interest to have

prudential standing under § 1981." *Woods,* 855 F.3d at 645 (citing *Thinket,* 368

F.3d at 1060).  Accord *University of Maryland Eastern Shore National Alumni*

*Association, Inc. v. Schulte Hospitality*, 2024 WL 3424088, *5 (D. MD July 15,

2024) (corporate entity, an HBCU, may pursue claim under § 1981 because it has

an imputed racial identity).  See also *Oti Kaga v. South Dakota Housing*

*Development Authority*, 342 F.3d 871, 878 (8th Cir. 2003) (holding non- profit

corporation established by Cheyenne River Sioux Tribal government "to acquire,

construct, and operate rental housing and related facilities" on the reservation

alleged injury in fact and causation sufficiently to satisfy the requirements of

Article III).

 In several cases where individuals claimed membership in a protected class

in bringing charges of discrimination, they alleged their identities as "Moor

Americas Aboriginal Native Californian National" or "Autochthonous and

Indigenous Native American, descendant of the original copper-tone people of the

Americas," or "Moorish American," or "Aboriginal-Indigenous Native

American/Moor." The courts addressing these allegations ruled the plaintiffs had

not established that these identities qualified for relief pursuant to claims of

national origin discrimination.  See, respectively, *Nixon El v. General Motors

Company*, 2020 WL 3848099 (N.D. Texas July 8, 2020); *Gilmore-Bey v. Meltser*,

2024 WL 3740110, *2 n. 2 (E.D. Mich. April 22, 2024) (collecting cases); *Bey v.

FCA US LLC*, 2019 WL 5849367 (E.D. Mich. Oct. 15, 2019); *Bey v. Oakton Cmty.

Coll.*, 2015 WL 5732031, *4 (N.D. Ill. 2015).  Use of the word "indigenous" was

insufficient to bring them within the purview of the pertinent statute.

> b.—Standing Requirements

Because Defendants challenge the standing of Plaintiffs with respect to the §

1981 claims, the Court will set forth the governing law on standing pertinent to the

summary judgment motion.  Recently, the Supreme Court reiterated rules that

apply in assessing whether a party has standing.  In *Uzuegbunam v. Preczewski*,

the Court commented that, "At all stages of litigation, a plaintiff must maintain a

personal interest in the dispute. … To demonstrate standing, the plaintiff must not

only establish an injury that is fairly traceable to the challenged conduct but must

also seek a remedy that redresses that injury."  592 U.S. 279, 141 S.Ct.792, 796

(2021).  In numerous additional cases, the Supreme Court has set forth the

requirements for Article III standing. The "irreducible constitutional minimum of standing" is that a plaintiff must have suffered an "injury in fact," meaning, invasion of a legally protected interest; "there is a causal connection between the injury and the conduct complained of"; and the injury can be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). See also *Department of Commerce v. New York*, 588 U.S. 752, 767 (2019) (in a dispute over a citizenship question on the 2020 census, states had standing, given the potential impact on their representation in Congress). The Eighth Circuit has reinforced the requirement that a plaintiff must allege "a personal stake in the outcome of the case" that warrants "invocation of federal court jurisdiction" and justifies the court's exercise of remedial powers to vindicate the claim. *Glickert v. Loop Trolley Transp. Development Dist.*, 792 F.3d 876, 881 (8th Cir. 2015).

Standing requirements seek to ensure that a litigant has a "sufficient stake in an otherwise justiciable controversy" to obtain judicial resolution of the controversy. *Sierra Club v. Morton*, 405 U.S. 727, 731-32 (1972). Beyond the constitutional limitation on standing, a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 474 (1982) (quoting *Warth v.*

11

*Seldin,* 422 U.S. 490, 499 (1975)). The purpose of this prudential limitation on standing is to avoid the adjudication of the rights of third parties not before the court with the goal of ensuring "that the most effective advocate of the rights at issue is present to champion them." *Duke Power v. Carolina Environmental Study Group,* 438 U.S. 59, 80 (1978).

In *TransUnion LLC v. Ramirez*, the Court discussed the requirement for Article III standing, reiterating the need for "a concrete and particularized injury caused by the defendant and redressable by the court." 594 U.S. 413, 423 (2021). The Court emphasized the need for "a real controversy with real impact on real persons." *Id.* at 424 (quoting *American Legion v. American Humanist, Assn.*, 588 U.S. 29, 87 (2019) (Gorsuch, J., concurring)). The injury claimed by the plaintiff must be "'concrete'—that is, 'real, and not abstract.'" *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). Furthermore, Article III requires a showing of standing even if a violation is established under a statute. *Id.* at 426.

(1)  Standing of a potential hotel guest whose room would be paid

for by an accompanying relative (Bettelyoun)

As noted above, a plaintiff must have a "personal stake in the outcome" of litigation "to warrant federal court jurisdiction." A plaintiff must assert his or her own rights to have standing. *Warth*, 422 U.S. at 499.

The Supreme Court has made clear that any claim brought under § 1981 "must identify an impaired 'contractual relationship'...under which the plaintiff has rights." *Domino's Pizza*, 546 U.S. at 476. A plaintiff must "establish the loss of an actual, not speculative or prospective contract interest. *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001). Thus, planning to make a contract in the future does not suffice in establishing a § 1981 claim, although if an individual makes a "tangible attempt to contract" with a merchant and is "thwarted" from doing so, a claim will lie. *Id.* at 752.

South Dakota law applies to the underlying contract dispute at issue in this case. *See Estes v. Hughes County, South Dakota*, 2021 WL 2043070, *5 (D.S.D. May 21, 2021) (citing *Emmenegger v. Bull Moose Tube Co.*, 324 F.3d 616, 624 n.9 (8th Cir. 2003)). S.D.C.L. § 53-2-6 provides that "[a] contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it." The South Dakota Supreme Court has addressed contracts that inure to the benefit of a third party as follows:

> [W]henever two parties enter into an agreement that appears to have been made expressly for the benefit of a third party, and such agreement has a good and sufficient consideration, the agreement itself creates all the privity there need be between the person for whose benefit the agreement was entered into and the party assuming the obligation, and an action at law should lie regardless of whether there was any obligation existing between the other party to the agreement and the third party. *But, before the third party can adopt the agreement entered into and recover thereon, he must*

13

> *show clearly that it was entered into with the intent on the part of the*
> *parties thereto that such third party should be benefited thereby.* (Emphasis
> added).

*Sisney v. Reisch*, 754 N.W.2d 813, 817-18 (S.D. 2008) (quoting *Trouten v. Heritage*

*Mut. Ins. Co.*, 632 N.W.2d 856, 858-59 (S.D. 2001)).

Courts recognize that common situation—one person with a credit card

paying for a room that may be shared or occupied by an accompanying relative—

does not eliminate standing to challenge discriminatory practices by a guest who

endeavors to stay in a hotel.  Thus, in *Shumate v. Twin Tier Hospitality*, the court

recognized the standing of a plaintiff who was reserving a room for himself, his

fiancé, and their minor child.  655 F.Supp.2d 521, 531-33 (M.D. Penn. 2009). The

court also acknowledged the possibility of the latter's standing, because the fiancé-

father acted as their agent or because they were third-party beneficiaries to his

contract with the hotel.  *Id.*  The court acknowledged the question of the existence

and scope of any agency relationship was for the jury.  *Id.* at 532.  The court also

discussed at length the third-party beneficiary rationale that would support

standing of the fiance and child, and stated, "where an individual seeks to enter a

contract to rent a hotel room for the expressed purpose of accommodating himself,

his fiancé, and their minor child, the circumstances indicate that the hotel would

intend to confer third party beneficiary benefit on the fiancé and minor child." *Id.*

at 536.  Similarly, in *Macedonia Church v. Lancaster Hotel Ltd.,* a Church rented

premises for a weekend retreat for its members and when the hotel reneged, the

Church and members brought suit under 42 U.S.C. § 1981 alleging discrimination

based on race in the making of a contract. 560 F.Supp.2d 175 (D. Conn. 2008). The

court determined that the Church was the contracting party but that the individual

members were intended beneficiaries of the contract with "the right to sue" under

the contract pursuant to § 1981. *Id.* at 185-86.  See also *Dawes v. Motel 6*

*Operating L.P.*, 2006 WL 276928 (E. D. Wash. Jan. 31, 2006) (both members of

interracial couple could bring § 1981 claim when both allegedly participated in

registration; fact question whose credit card was used).

Comparable situations exist in other contexts.  For example, in *Denny*, an

African-American daughter purchased a spa treatment as a gift for her mother.  456

F.3d at 429.  When she tried to add hair coloring to the treatment, an employee said

there was a problem because the salon did not "do black people's hair." *Id.*  The

court determined that "this was a third party beneficiary contract" cognizable under

the § 1981 claim brought by both mother and daughter. *Id.* at 436.  As such, issues

of material fact regarding the encounter as a whole were appropriate for the jury to

resolve.  See also *Miales v. McDonald's Restaurants of Colorado, Inc.*, 438

F.Supp.2d 1297, 1300 (D. Colo. 2006) (holding that children were third party

beneficiaries of mother's effort to purchase food and had rights under 42 U.S.C. §

1981).

(2)  Standing of five individual Plaintiffs employed by

Plaintiff NDN Collective

(i)  Standing of "testers"

In *Keck*, an African-American couple sought to rent a banquet room for their

wedding reception.  577 F.3d at 637.  After several efforts to sign an agreement

were rebuffed, plaintiffs complained to the Fair Housing Center of Southeastern

Michigan.  *Id.* at 638.  The organization arranged for "testers" consisting of an

African-American couple and a white couple to seek to rent banquet rooms; in

three of the four "tests" it appeared racial discrimination may have existed. Citing

their own and the testers' experiences, the plaintiffs sued under § 1981.  As

pertinent to this case, the court determined that "the experiences of testers have

been held probative on the question of discriminatory intent." *Id.* at 642.  There

was no question the plaintiffs had standing, the testers' experiences served as

support, and discriminatory intent was a jury question.  In *Kyles v. J.K. Guardian

Sec. Service, Inc.*, African-American plaintiffs worked as employment testers for a

legal services group. 222 F.3d 289 (7th Cir. 2000). The individuals posed as job

applicants but would not have accepted an offer of employment if one was

tendered.  They alleged discrimination under § 1981, and the court ruled they

lacked standing.  *Id.* at 302.  The rationale was that the plaintiffs had no intent to

enter into a contract and "at most" were "seeking the opportunity to decline an

16

offer of employment." *Id.* Such an interest "is not sufficient to confer standing to sue for asserted violations of § 1981." *Id.*

An example of a somewhat infamous "tester" appears as the plaintiff in many lawsuits, including in *Laufer v. Mann Hospitality, L.L.C.*, 996 F.3d 269 (5th Cir. 2021). A resident of Florida, plaintiff asserted she intended to travel throughout Texas at some point. The court noted her over 500 lawsuits in which she sought to test the websites of various hotels to determine their compliance with the ADA, and commenced a lawsuit if she was not satisfied they had complied. *Id.* at 271 n. 1. The court dismissed for failure to show "the necessary concrete interest to support standing." *Id.* at 272. Plaintiff merely visited an online reservation service "to see if the motel complied with the law, and nothing more." *Id.* Accord *Laufer v. Looper,* 22 F.4th 871 (10th Cir. 2022); *Laufer v. Alamac, Inc.*, 621 F.Supp.3d 1 (D.D.C. 2021). See also *Harty v. West Point Realty,* 28 F.4th 435 (2d Cir. 2022). But see *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156 (4th Cir. 2023) (informational injury can be sufficient to establish standing).

(ii) Individuals' Standing as alleged agents of NDN

In *Domino's Pizza*, an individual who was the sole shareholder and president of a corporation sought to bring a claim under § 1981. 546 U.S. at 472. He was unable to do so because the contract at issue was between defendant and the corporation. The Court cited rules of corporation and agency law and ruled

17

plaintiff was precluded from suing under § 1981 because he was simply an agent of the corporation and did not have rights under the contract. *Id.* at 477. On the other hand, where contracting parties sign as individuals, they do have rights under the contract and may sue under § 1981. *Prieto Automotive, Inc. v. Volvo Car USA LLC*, 2024 WL 3011170, *5 (E.D. Cal. June 14, 2024).

## ANALYSIS

As a threshold matter, the § 1981 claims require a determination that Plaintiffs are members of a protected class. With respect to Plaintiffs Red Bear, Eagle, Bowman, Jackson, and Cottier, there appears to be no question. The Parties agree they are Native Americans and therefore, qualify as members of a protected class. Therefore, that element of § 1981 has been established.

Defendants' motion for summary judgment is resolved as follows:

I. June 2020 incident involving George Bettelyoun's endeavor to stay at the Grand Gateway Hotel

Apart from proving Plaintiff's membership in a protected class, a § 1981 claim requires that Plaintiff also prove intent to discriminate on the basis of race by the defendant; and discrimination concerning one or more of the activities in the statute, including the right to make and enforce contracts. See *Johnson,* 66 F.4th at 1118; *Gregory*, 565 F.3d at 469.

Defendants describe Bettelyoun's entering the hotel with his sister to rent a hotel room. When the sister and Bettelyoun questioned the need for a damage deposit, an argument broke out. Defendants describe the details of the argument, (Doc. 152-2, PgID 2042), as do Plaintiffs in their response. The Parties' accounts do not differ significantly about the circumstances but do so with respect to their role in this lawsuit.

Defendants spend substantial effort arguing the Bettelyoun claims are not connected to the NDN Collective claims of two years later. The Court does not require that the connection be established and summary judgment on that basis is denied. Defendants also argue that summary judgment is proper because Bettelyoun lacks standing and cannot prove intent to discriminate. (Doc. 152-2, PgID 2047-48).

In support, Defendants submit that requiring a security deposit is common practice in hotels and shows there was no intent to discriminate. Plaintiffs counter that a security deposit requirement can be applied in a non-racially neutral manner but, in this case, the allegations are that an argument broke out between Bettelyoun and Nick Uhre and that, citing the former's attitude, Uhre ejected him from the hotel. In the course of the shouting during the ejectment, Uhre allegedly grew so angry his spit hit Bettelyoun's face. There supposedly was a remark about residents of the Rosebud Sioux Reservation. This presents a factual scenario that

adds substantial context to the Parties' accounts, and the Court declines to grant summary judgment in favor of Defendants on whether Bettelyoun can prove intent to discriminate.

Whether Bettelyoun has standing is an issue that remains. Defendants argue he does not because his sister was paying for the room with her credit card meaning he was not attempting to contract with the hotel. Plaintiffs counter that Bettelyoun's sister was his agent in making the contract or that he was a third-party beneficiary of it. The cases discussed above indicate that the person bringing the § 1981 claim need not be the person whose credit card was used. The commonplace situation of persons renting a room as a couple or group does not eliminate standing for all but the card owner.

The Court determines there is a factual dispute over whether Bettelyoun's sister alone was making the contract that would be for Bettelyoun's benefit, and whether she was acting for him in endeavoring to make the contract. There is a factual dispute over whether there was discrimination, and if so, whether it was directed at Bettelyoun. Because of the factual questions at issue, the Court denies Defendants' motion for summary judgment on George Bettelyoun's § 1981 claims in Counts 1 and 2 in its entirety.

II. Section 1981 claims from March 2022 incidents involving Plaintiffs Red Bear, Eagle, Cottier, Bowman, and Jackson

A.  incident involving Plaintiff Red Bear, March 21, 2022

Defendants seek to dismiss Sunny Red Bear's § 1981 claim, arguing she cannot establish intent to discriminate and was merely a tester who lacks standing. The defendants argue first that a local identification policy used by a hotel is non-discriminatory, and therefore, Red Bear cannot prove intent to discriminate when she was unable to obtain a hotel room on March 21, 2022.  They argue further that her status was that of tester.  They argue she did not intend to use the hotel room and was acting only to determine whether the hotel would rent her a room.

Plaintiffs counter that it is a question of fact whether a local identification policy is discriminatory or is employed in a discriminatory manner.  They argue further that Red Bear was not a mere tester—that she was in the hotel, asked for a room, intended to rent the room, and would have used it for herself or another person.

The Court finds there are numerous questions of fact with respect to Red Bear's § 1981 claim.  These include whether she was solely a tester without standing or acted in a dual capacity as an individual seeking to rent a room, and whether the hotel's policy was used to discriminate against her.   Therefore, the Court denies Defendants' motion for summary judgment on this issue.

B.  Incident at Grand Gateway involving Plaintiffs Eagle, Cottier, Bowman, and Jackson on March 22, 2022

21

Defendants challenge the § 1981 claims of Plaintiffs Bowman, Jackson, Eagle, and Cottier on the basis they lack standing as testers and cannot establish intent to discriminate based on the encounter at the Grand Gateway on March 22. Defendants also argue Plaintiffs cannot establish discrimination concerning the right to make and enforce a contract. The Court understands the facts to be that the four named individuals, who are in the protected class as Native Americans, went to the hotel after reading or hearing about the posts stating that it would no longer rent to Native Americans. Shortly after entering the hotel, they had an encounter with Nick Uhre, who ejected them from the premises. They were told to leave the hotel before presenting payment or completing the registration process.

The Parties dispute whether the ejection was discrimination or bad feelings between Defendant NDN and Nick Uhre. Defendants argue because of the latter, Plaintiffs cannot prove intent to discriminate. Defendants also challenge the four individuals as testers who did not intend to stay at the hotel and therefore lack standing.

The Court finds there are questions of fact that make summary judgment inappropriate. The jury will determine whether the four individuals were solely testers or also people who were in the hotel lobby endeavoring to rent a room either for themselves or for people in need. The jury also will determine whether Defendants had the intent to discriminate and whether Plaintiffs were endeavoring

22

to enter into a contract.  The Defendants' motion for summary judgment pertaining to the individual Plaintiffs' claims arising from the March 22 incident is denied.

III.  Summary Judgment against NDN and the individual Plaintiffs'

§ 1981 claims

A.  Lack of standing for individual Plaintiffs as allegedly acting for NDN

Defendants argue the individual Plaintiffs were acting on behalf of NDN and not as individuals when they sought to obtain hotel rooms on March 22.  They point to Plaintiffs' wearing of NDN apparel, that they intended to use the NDN credit card, and their statements as to why they went to the hotel as demonstrating the individuals were acting solely as representatives of the organization.  Plaintiffs dispute this characterization of Plaintiffs' actions when they went to the Grand Gateway, arguing the individual Plaintiffs would have entered into contracts for the rooms individually, signing as individuals, and that the individuals and NDN Collective would have had rights under the contracts that were formed.

The Court determines that summary judgment on this aspect of the Defendants' argument is inappropriate.  There are questions of fact surrounding the individual Plaintiffs' decision to go to the Grand Gateway and whether they were acting on their own behalf and as well as on behalf of NDN.  Therefore, the Court denies summary judgment on this issue.

B.  Lack of standing of NDN Collective because it is not a member of a

racial minority

Defendants argue NDN Collective does not have standing to bring a claim

pursuant to § 1981 because "it is not a member of a racial minority." (Doc. 152-2,

PgID 2073). As noted above, many organizations have been recognized as having

a racial identity such that they qualify as members of a protected class under §

1981.

> Plaintiffs' third amended complaint offers the following description:

> Plaintiff NDN Collective is a 501(c)(3) non-profit organization registered in
> Rapid City, South Dakota. NDN Collective's mission includes educating,
> funding, and organizing those engaged in Native American issues. NDN
> Collective seeks to increase philanthropic and capital investment in
> Native communities; to use trainings, leadership development, and education
> to prepare Indigenous communities to create sustainable outcomes for their
> people and planet; and to develop a political agenda for activism related to
> the Indigenous community goals of, among other things, protecting and
> defending their land, air, water and the planet....

Doc. 84, PgID 998.

Defendants point to NDN Collective's Form 990, which in Part II, Section 1

states: "Briefly describe the organization's mission" followed by NDN Collective's

response: "Build the collective power of Indigenous peoples, communities, and

nations to exercise our inherent right to self-determination, while fostering a world

that is built on a foundation of justice and equity for all people and the planet."

(Doc. 175-19, PgID 4503). Defendants also point to Plaintiff NDN Collective's

website which describes the Collective's "ecosystem" as "comprised of a diverse

24

team of Indigenous staff and board members representing Nations from all across Turtle Island, the Hawaiian Kingdom, and Boriken (Puerto Rico)." (Doc. 152-2, PgID 2075, n. 16). The website continues as follows: "We bring our hearts, lived experience, and cultural values to this work. We are honored to work for our People, the Land, and the movement to build justice and equity for all People and Mother Earth." Id.

As Defendant's counsel suggested during the August 13 hearing on this motion, it can be offensive when one questions the racial identity of an opponent, and she stated discomfort in doing so. In this case, it appears that the effort is to challenge the use of the references in NDN Collective's documents to "Indigenous," "Mother Earth," the Hawaiian Kingdom, and NDN's diverse staff as divesting NDN of its identity as a Native American organization and a member of a protected class. Defendants appear to argue the Court should analogize NDN Collective's racial identity to that of the plaintiffs in *Bey* and the other cases discussed above.

The Court declines to embrace the suggested analogy. The Court finds Plaintiff NDN Collective's racial identity as a Native American organization and therefore, a member of a protected class, has been established. Use of the term "Indigenous" may or may not be precise in terms of a dictionary definition, but the term is well-understood to refer to Native people in the context in which NDN

Collective works.   Reference to "Mother Earth" is part-and-parcel of the Native
American belief system and culture.  The Court finds these terms do not diminish
NDN Collective's identity as an organization with a racial identity as Native
American and therefore, a member of a protected class.  Therefore, the Court
denies summary judgment on the issue of NDN Collective's standing with respect
to Article III, § 1981, and prudential considerations.

   C.  NDN Collective and Bowman, Eagle, Cottier, and Jackson had
       insufficient interest in contracting

   Defendants argue that NDN Collective did not suffer a loss of contracting
opportunity under § 1981.  Defendants analogize to the retail context where there
is authority to support the proposition that a plaintiff's merely being in the store is
insufficient to establish impairment of a contracting opportunity when he is
ejected.  Defendants argue Plaintiffs had not progressed to the point that they
endeavored to make a contract for rooms at the Grand Gateway.  At oral argument,
Defense Counsel characterized the individual Plaintiffs' actions in the hotel as
"theater" and "performative."

   Plaintiffs' position is that they intended to rent rooms, pay for them, and
either occupy them or make arrangements for homeless people or victims of
domestic violence to occupy them.  Plaintiffs argue they entered the hotel to

accomplish this goal but were thwarted in completing the intended contracts when Nick Uhre ejected them from the lobby.

Whether a contracting opportunity was denied to the Plaintiffs is a question of fact. Summary judgment is inappropriate to resolve the question and the Court denies Defendants' motion on this issue.

IV. Section 1981 claims against Nick Uhre and Connie Uhre as individuals

As noted previously, an individual may be able to prevail on a § 1981 claim against a corporation's employee if the employee engaged in the discriminatory conduct at issue. At this juncture, it is premature to determine whether Connie Uhre or Nick Uhre is liable under § 1981. Their liability involves many questions of fact, making summary judgment inappropriate. For these reasons, the Court denies Defendants' motion for summary judgment on this issue.

V. Strike class action allegations

Defendants move to strike the class action allegations in the Third Amended Complaint because Plaintiffs have not moved to certify a class. Plaintiffs respond that they do not intend to move to certify a class, as they previously notified the Court. (Doc. 75). They object to striking the class action allegations because Defendants' motion does not assert a ground for doing so pursuant to Rule 12(f) and the Court will send only the individual claims to the jury.

Rule 23 sets forth the requirements governing certification of a class. The Eighth Circuit has held that a court has the discretion to strike class-action allegations prior to the filing of a motion for class certification when it appears the class cannot be certified. *Donelson v. Ameriprise Financial Services, Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021). See also *Burkhalter v. Montgomery Ward and Co.,* Inc., 676 F.2d 291, 294 (8th Cir. 1982) (proper to strike class action allegations when deadlines not met); *Enger v. Thomas L. Cardella & Associates, Inc.*, 2021 WL 5035046 (N.D. Iowa June 14, 2021) (discussing striking of class action allegations).

The Court is persuaded that maintaining the class action allegations in the third Amended Complaint is unnecessary. The Court grants Defendants' motion to strike the class action allegations.


## VI.   Declaratory and Injunctive Relief

Defendants argue Plaintiffs' claim for declaratory and injunctive relief has been rendered moot by the consent decree entered in *United States v. Retsel*, 5:22-cv-5086. Plaintiffs resist this characterization arguing they are the prevailing Parties and that attorney fees are in issue.

At this juncture, the Court denies the motion for summary judgment on this issue. If necessary, the Court will hear argument on the motion at the pretrial conference on August 26, 2024.

Defendants included a motion for partial summary judgment on the claims against Cheers Bar in their reply brief. (Doc.182, PgID 4845). The Court will permit Plaintiffs to respond by August 22, 2024, if desired.

Accordingly, IT IS ORDERED that:

1. Defendants' motion for summary judgment on George Bettelyoun's claims under § 1981 (Counts 1 and 2) is denied;

2. Defendants' motion for summary judgment on the claims of Sunny Red Bear, Alberta Eagle, Mary Bowman, Nick Cottier, and Bre Jackson under § 1981 is denied;

3. Defendants' motion for summary judgment on the claims of NDN Collective under § 1981 is denied;

4. Defendants' motion for summary judgment on the claims under § 1981 against Connie Uhre and Nick Uhre individually is denied;

5. Defendants' motion to strike the class action allegations is granted;

6. Defendants' motion to dismiss the counts requesting declaratory and injunctive

relief is held in abeyance until the pretrial conference on August 26, 2024;

7. Defendants' motion to strike the allegations concerning Cheers Bar is held in

abeyance until August 22, 2024, to enable Plaintiffs to file a response.


Dated this ____ day of August, 2024.


BY THE COURT:


Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK