UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

---

NDN COLLECTIVE, individually and
on behalf of all others similarly situated;
SUNNY RED BEAR, individually and
on behalf of all others similarly situated;
GEORGE BETTELYOUN, individually
and on behalf of all others similarly
situated; ALBERTA EAGLE, individually
and on behalf of all others similarly
situated; NICK COTTIER, individually
and on behalf of all others similarly
situated; BRE JACKSON, individually
and on behalf of all others similarly
situated; MARY BOWMAN, individually
and on behalf of all others similarly
situated,

       Plaintiffs

       vs.

RETSEL CORPORATION,
d/b/a Grand Gateway Hotel,
d/b/a Cheers Sports Lounge and Casino;
CONNIE UHRE; and
NICK UHRE,

       Defendants

       And

RETSEL CORPORATION,
d/b/a Grand Gateway Hotel,
d/b/a Cheers Sports Lounge and Casino,

       Third-Party Plaintiff,

5:22-cv-5027

MEMORANDUM OPINION
AND ORDER GRANTING IN
PART AND DENYING IN
PART PLAINTIFFS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT

vs.

JOHN DOES 1-20; JANE DOES, 1-20;
and ABC CORPORATIONS, 1-20,

    Third-Party Defendants

---

Pending before the Court is Plaintiffs' Motion for Summary Judgment and accompanying documents. (Doc. 158, 159, 160, 161). Defendants have responded and have included a counter-motion for partial summary judgment. (Doc. 172-75). Plaintiffs have replied. (Doc. 178).

Previously, Defendants filed a motion for summary judgment with accompanying documentation to which Plaintiffs responded and Defendants replied. (Doc. 152). There is some overlap in the issues. The Court held a hearing on Defendants' motion on August 13, 2024. The Court has resolved that motion in a separate memorandum opinion and order filed on August 20, 2024. For the following reasons, the Court grants Plaintiffs' motion in part and denies it in part. The Court denies Defendants' counter-motion.

## BACKGROUND

Because the background material and standard for summary judgment for the Parties' competing motions are identical, the Court repeats here the information supplied in Doc. 206.

As described in detail in previous memorandum opinions, the case arose in two parts. The later part chronologically occurred in March 2022. After a shooting at the Grand Gateway Hotel, Rapid City, SD, the hotel owner, Defendant Connie Uhre, posted comments on Facebook and elsewhere asserting that the hotel would not rent rooms to Native Americans. (Doc. 84). The rationale was that she could not tell "who is a bad Native or a good Native." (Id., PgID 1006). Plaintiffs allege Defendants made additional comments, stationed guards at the hotel, and refused to rent rooms to Plaintiffs Ms. Sunny Red Bear on March 21, 2022, and to four members of NDN Collective on March 22, 2022. Subsequently, Connie Uhre allegedly sprayed Pledge aerosol spray into Sunny Red Bear's face.

An incident at the Grand Gateway two years earlier also is a subject of this lawsuit. In June 2020, Plaintiff George Bettelyoun and his sister allegedly endeavored to rent a hotel room at the Grand Gateway. (Id., PgID 1001-03). After an argument about a damage deposit, Defendant Nick Uhre, manager of the hotel, ordered Plaintiff Bettelyoun and his sister to leave the hotel. Allegedly Uhre spoke closely enough to Bettelyoun that the latter could feel spit on his face. Bettelyoun asserts the conduct was discriminatory. (Id.).

Following the March 2022 incidents, individuals, including Plaintiff NDN Collective, called for protests at the Grand Gateway, and the protests allegedly lasted for several weeks.

Plaintiffs filed this lawsuit alleging interference with contract on the basis of race in violation of 42 U.S.C. § 1981 on behalf of all Plaintiffs; seeking a declaratory judgment that Defendants violated the Civil Rights Act; and alleging assault and battery of Sunny Red Bear against Connie Uhre and Retsel Corporation, the owner of the Grand Gateway. Defendants denied the allegations related to the § 1981 claims and counterclaimed alleging intentional interference with business relations, civil conspiracy, defamation, trespass, and nuisance. The Court granted Plaintiffs' motion to dismiss some of the counterclaims, (Doc. 76), and subsequently permitted Defendants to file an amended complaint which included the counterclaims. (Doc. 127).

The Court notes that the United States brought suit against Retsel Corp. alleging discrimination in violation of 42 U.S.C. § 2000a and seeking declaratory and injunctive relief based on the incidents of March 2022. (5:22-cv-5086). The case has been resolved by a consent decree. (Id., Doc. 59).

Plaintiffs seek summary judgment as follows:

I. Claims by Sunny Red Bear for assault and battery (Counts III and IV) against Connie Uhre and Retsel Corp.

4

II. Partial summary judgment on claims pursuant to § 1981 (Counts I and II) by NDN Collective, Sunny Red Bear, Alberta Eagle, Nick Cottier, Bre Jackson, and Mary Bowman

III. NDN Collective seeks summary judgment for counterclaims brought by Retsel Corp. and Nick Uhre

The Court notes that in the response to Plaintiffs' motion for summary judgment, Defendants moved for summary judgment on certain of their counterclaims. (Doc. 172).

After addressing the standard for summary judgment, the Court will first resolve in Part I Plaintiffs' motion for partial summary judgment on its claims and in Part II address the motion with respect to Defendants' counterclaims.

## LEGAL STANDARD

### Summary Judgment

According to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). As the Eighth Circuit has noted, "[S]ummary judgment is not disfavored

5

and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Celotex v. Catrett*, 477 U.S. 317, 327 (1986)). When a court is asked to review a motion for summary judgment it examines "the record in the light most favorable to the nonmoving party ... drawing all reasonable inferences in that party's favor." *Whitney v. Guys*, 826 F.3d 1074, 1075 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923-24 (8th Cir. 2004)). See also *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987); *Kirkendall v. Shur-Co*, 2007 WL 1574423, *1 (D. S. D. 2007). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence sufficient to support an element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. When cross motions for summary judgment are before the Court, the general principles governing summary judgment apply. *Anderson v. Nationwide Agribusiness Insurance Co.*, 2022 WL 3445838, *1 (D.S.D. Aug. 17, 2022).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ.

P. 56(e); *Anderson,* 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.,* 838 F.2d 268, 273–74 (8th Cir.1988). See also *Pinchas v. USA Deaf Sports Federation, Inc.,* 457 F.Supp.2d 937 (8th Cir. 2006). Furthermore, as a general rule, "if conflicting testimony appears in the affidavits and depositions that are filed, summary judgment may be inappropriate as the issues involved will depend on the credibility of witnesses." 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2726.1 (4th ed., June 2024 update). As the Eighth Circuit has commented, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Combs v. The Cordish Companies, Inc.,* 862 F.3d 671, 680 (8th Cir. 2017).

Local rules in this district provide additional requirements for parties with respect to motions for summary judgment. First, all motions for summary judgment must be accompanied by a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. D. S.D. LR 56.1(A). Further the opposing party is required to respond to the movant's statement of material facts with "a separately numbered response and appropriate citations to the record" and also must "identify any material facts on which there exists a genuine material issue to be tried." Id. 56.1(B). Material facts set forth in the movant's statement of material facts are deemed "admitted

unless controverted by the opposing party's response to the moving party's statement of material facts." Id. 56.1(D).  See also *On Target Sporting Goods, Inc. v. Attorney General of the United States*, 472 F.3d 572, 574 (8th Cir. 2007).

## PART I.  Plaintiffs' motion for summary judgment on their claims against Defendants

## LEGAL STANDARD

### A.  CLAIMS OF ASSAULT AND BATTERY (Counts III and IV)

S.D.C.L. § 22-18-1(4) provides that criminal assault is "attempting by physical menace or credible threat to put another in fear of imminent bodily harm with or without the actual ability to harm the other person."  In *State v. Reed*, the South Dakota Supreme Court stated that a criminal attempt requires that the defendant "had the specific intent to commit the crime."  787 N.W.2d 1, 3 (S.D. 2010) (quoting *State v. DiSanto*, 688 NW2d 201, 206 (S.D. 2004)).  The elements of a civil assault claim in South Dakota require proof as follows: (1) that defendant intended to cause either a harmful or offensive physical contact with the plaintiff, or an imminent apprehension of such contact, (2) the defendant's conduct caused the plaintiff to fear such contact would immediately occur, and (3) the plaintiff did not consent to the intended contact.  S.D. Civ. Model Jury Instruction 20-160-10.

8

The Eighth Circuit has addressed the issue of collateral estoppel in the context of a criminal proceeding in South Dakota followed by a civil suit in federal court, enunciating the test from *Hamilton v. Sommers*, 855 N.W.2d 855, 866 (S.D. 2014) as follows: "collateral estoppel 'bars relitigation of an essential fact or issue involved in the earlier suit.'" *Riis v. Shaver*, 4 F.4th 701, 704 (8th Cir. 2021). The factors to consider in applying the test are as follows:

> (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (4) Did the party against whom the plea is asserted have a full and fair opportunity to litigate the issue in the prior adjudication?

*Id.* (quoting *Hamilton*, 855 N.W.2d at 866) (cleaned up).

In *Matter of Certification of Question of Law from United States District Court, District of South Dakota, Southern Division*, this Court certified three questions to the South Dakota Supreme Court concerning civil and criminal actions involving a vulnerable adult. 981 N.W.2d 325 (S.D. 2022). In the course of responding to this Court's certified questions, the Supreme Court responded that a criminal conviction is not a prerequisite to a civil claim in that context and explained some of its reasoning as follows: "Where a plea of guilty is admitted as substantive evidence in civil litigation involving the same occurrence it is not

9

conclusive and may be explained." *Id.* at 332 n. 9 (citing *Berlin v. Behrens*, 76 S.D. 429, 436, 80 N.W.2d 79, 83 (1956)).  Thus, in a subsequent civil case, the verdict does not necessarily give rise to summary judgment.  See, e.g., *Sommervold v. Grevlos*, 518 N.W.2d 733, 743 (S.D. 1994) (guilty plea to traffic violation "does not conclusively establish the violation" for purposes of civil case).  Accord *Dartt v. Berghorst*, 484 N.W.2d 891, 894 and n. 3 (S.D. 1992).  However, summary judgment must be granted if the elements of the criminal and civil cases are the same, as in the case before the Court.  *Emich Motor Corp. v. General Motors Corp.*, 340 U.S. 558, 569 (1951) (explaining that "[i]n the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment").  See also *S.E.C. v. Gruenberg*, 989 F.2d 977, 978 (8th Cir. 1993) (concluding that "[i]t is well established that prior criminal proceedings can work an estoppel in a subsequent civil proceeding, so long as the question involved was 'distinctly put in issue and directly determined' in the criminal action," quoting *Frank v. Mangum*, 237 U.S. 309, 334 (1915)).  In that circumstance, if the factors from *Riis* are met, collateral estoppel applies.  See *Sealfon v. United States*, 332 U.S. 575, 578 (1948).

Liability of an individual may be attributed to a principal in certain circumstances.  In *Two Eagle v. United States*, the court stated that "[I]n South Dakota, '[t]he ancient doctrine of respondeat superior is well established as

holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency.'" 57 F.4th 616, 621 (8th Cir. 2023) (quoting *Tammen v. Tronvold*, 965 N.W.2d 161, 168-69 (S.D. 2021)). Ordinarily, whether the act of the employee was within the scope of employment is "a question of fact for the jury." *Hass v. Wentzlaff*, 816 N.W.2d 96, 103 (S.D. 2012) (quoting *Kirlin v. Halverson*, 758 N.W.2d 436, 444 (S.D. 2008)). As *Hass* explained, a two-part test applies in analyzing vicarious liability. *Id.* First is whether the act was "wholly motivated by the agent's personal interests or whether the act had a dual purpose, that is, to serve the master and to further personal interests." *Id.* If the act falls within the former category, it is not within the scope of employment and the employer is not liable for it. *Id.* If, on the other hand, the act had a dual purpose, foreseeability must be analyzed to determine "whether a nexus of foreseeability existed between the agent's employment and the activity which caused the injury." *Id.* Finally, if there is a nexus, the fact finder must determine "whether the conduct is so unusual or startling that it would be unfair" to hold the employer responsible. *Id.* The court suggested ten factors from the Restatement to assist in determining the scope of employment analysis. *Id.* at 104 (citing Restatement (Second) of Agency § 229(2)).

B. SECTION 1981 CLAIM (Count I)

As the Eighth Circuit has recognized, § 1981 "prohibits racial discrimination in 'all phases and incidents' of a contractual relationship." *Gregory v. Dillard's,* 565 F.3d 464, 468 (8th Cir. 2009) (quoting *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 302 (1994)). *Gregory* identified the four elements of a § 1981 claim as follows: "(1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant." *Id.* at 469. Accord *Johnson v. Schulte Hospitality Group, Inc.,* 66 F.4th 1110, 1118 (8th Cir. 2023). Further, any claim brought under § 1981 "must initially identify an impaired 'contractual relationship' under which the plaintiff has rights." *Gregory,* 565 F.3d at 469 (quoting *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 476 (2006)). In the retail context, a plaintiff must show he or she "actively sought to enter into a contract" and made a tangible attempt to contract." *Id.* at 470.

A threshold question under § 1981 is whether plaintiff is a member of a protected class. *Yang v. Robert Half International, Inc.,* 79 F.4th 949 (8th Cir. 2023). An organization may have such status, as has been made clear in a number of cases. See, e.g., *Woods v. City of Greensboro,* 855 F. 3d 639, 644 (4th Cir. 2017) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 130 and n.4 (2014); *Bank of Am. Corp. v. City of Miami,* 581 U.S. 189, 196 (2017)). In analyzing § 1981, the Ninth Circuit explained that the statute "protects all persons

from racial discrimination in making and enforcing contracts" and that "although a corporation is not a person it may acquire standing under § 1981 if it has acquired an "imputed racial identity." *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1055 (9th Cir. 2004). A corporation with such an imputed racial identity "is sufficiently within the zone of interest to have prudential standing under § 1981." *Woods,* 855 F.3d at 645 (citing *Thinket,* 368 F.3d at 1060). Accord *University of Maryland Eastern Shore National Alumni Association, Inc. v. Schulte Hospitality*, 2024 WL 3424088, *5 (D. MD July 15, 2024) (corporate entity, an HBCU, may pursue claim under § 1981 because it has an imputed racial identity). See also *Oti Kaga v. South Dakota Housing Development Authority*, 342 F.3d 871, 878 (8th Cir. 2003) (holding non- profit corporation established by Cheyenne River Sioux Tribal government "to acquire, construct, and operate rental housing and related facilities" on the reservation alleged injury in fact and causation sufficiently to satisfy the requirements of Article III). See also *Park View Heights Corp. v. City of Black Jack*, 467 F.2d 1208 (8th Cir. 1972).

In several cases where individuals claimed membership in a protected class in bringing charges of discrimination, they alleged their identities as "Moor Americas Aboriginal Native Californian National" or "Autochthonous and Indigenous Native American, descendant of the original copper-tone people of the

13

Americas," or "Moorish American" or "Aboriginal-Indigenous Native American/Moor." The courts addressing these allegations ruled the plaintiffs had not established that these identities qualified for relief pursuant to claims of national origin discrimination. See, respectively, *Nixon El v. General Motors Company*, 2020 WL 3848099 (N.D. Texas July 8, 2020); *Gilmore-Bey v. Meltser*, 2024 WL 3740110, *2 n. 2(E.D. Mich. April 22, 2024) (collecting cases); *Bey v. FCA US LLC*, 2019 WL 5849367 (E.D. Mich. Oct. 15, 2019); *Bey v. Oakton Cmty. Coll.*, 2015 WL 5732031, *4 (N.D. Ill. 2015). In these cases, use of the term "indigenous" did not confer protected class status upon plaintiffs but in the Court's view, that is not dispositive where—as in the present case—the issue is whether use of the term by a self-described Native American advocacy organization deprives it of its racial identity.

**ANALYSIS**

1. Assault and Battery Claim by Sunny Red Bear against Connie Uhre and Retsel
   a. Claim against Connie Uhre

Connie Uhre was the defendant in the state criminal case, in which she had the full and fair opportunity to present her evidence to a jury. She was found guilty beyond a reasonable doubt of violating S.D.C.L. § 22-18-1(4). (Doc. 160, UMF ¶ 31). Despite Defendants' argument to the contrary, the first element of the

criminal statute, S.D.C.L. § 22-18-1(4), does include the element of intent to cause injury. Indeed, the jury found that Connie Uhre "attempt[ed] by physical menace or credible threat to put Sunny Red Bear in fear of imminent bodily harm." (Doc. 161-15). As the South Dakota Supreme Court has held, a criminal attempt requires the specific intent to commit the crime plus a step toward commission of the intended act. The second element of the civil offense—that the plaintiff has been placed in fear of the contact—was likewise conclusively determined by the jury. Finally, although Defendants also argue that Plaintiff consented to the contact, the documentation presented by both Parties indicates that is not accurate, with both acknowledging Ms. Red Bear did not consent. Therefore, the Plaintiff's motion for summary judgment on the assault claim (Count III) against Connie Uhre is granted. Defendants' counter-motion for summary judgment on this issue between these two Parties is denied.

Plaintiffs also move for summary judgment on the battery claim against Connie Uhre (Count IV). The doctrine of collateral estoppel does not resolve the battery claim because the criminal assault verdict pursuant to S.D.C.L. § 22-18-1(4) does not necessarily encompass a battery. Therefore, Plaintiffs' motion for summary judgment on this claim is denied.

b. Assault and Battery Claim against Retsel (Counts III and IV)

As noted above, an employer can be held vicariously liable for the conduct of an employee if the conduct is within the scope of employment. Ordinarily this is a question of fact. If the conduct is motivated in part by the employee's interests and in part by the employer's, the next question is whether the conduct was foreseeable. This, too, ordinarily is a question of fact.

The Court denies summary judgment for Plaintiff Red Bear against Defendant Retsel based on the assault by Connie Uhre. (Count III). Whether Retsel should be held responsible based on the theory of respondeat superior is a fact-bound inquiry. Retsel's counter-motion for summary judgment on this claim is denied.

Likewise, Plaintiff's motion for summary judgment against Retsel based on the claim of battery by Connie Uhre is denied. (Count IV). Whether Retsel should be held responsible for any battery that may have been committed is a fact-bound inquiry. Retsel's counter-motion for summary judgment on this claim is denied.

2. Section 1981 claims by Plaintiffs Red Bear, Eagle, Bowman, Jackson, Cottier, and NDN Collective (Count I)

Plaintiffs Red Bear, Eagle, Cottier, Bowman, Jackson and NDN Collective argue that they are entitled to summary judgment on three elements of their § 1981 claim: membership in a protected class, discriminatory intent of Defendants, and engagement in a protected activity.

a. Protected class—Native American identity

There is no dispute between the Parties that Plaintiffs Bettelyoun, Red Bear, Eagle, Cottier, Jackson, and Bowman are Native Americans who are members of a protected class. As in their motion for partial summary judgment, however, Defendants have challenged whether NDN Collective has a racial identity as Native American given its references to "indigenous" people in its tax filings and on its website, as well as references to "Mother Earth" and its diverse staff. The Court has discussed this issue in depth in determining in its Memorandum and Order in response to Defendants' Motion for Partial Summary Judgment that NDN Collective has a racial identity and is a member of a protected class for purposes of § 1981. The Court refers the reader to that order for additional discussion. (Doc. 206).

Plaintiffs' third amended complaint describes NDN Collective's mission as including "educating, funding and organizing those engaged in Native American issues," seeking to "increase philanthropic and capital investment in Native communities," and employing "trainings, leadership development, and education to prepare Indigenous communities to create sustainable outcomes for their people and planet." (Doc. 84). NDN Collective also seeks to "develop a political agenda for activism related to the Indigenous community goals of, among other things, protecting and defending their land, air, water, and the planet." (Id.)

17

The Defendants argue that because *Nixon El, Gilmore-Bey,* and *Bey* resulted in a determination that individuals claiming "indigenous" heritage did not qualify as members of a protected class, that NDN Collective also does not qualify because the word "indigenous" appears sporadically on its website and in other documents. The Court rejects this argument and adheres to its finding that NDN Collective's inclusion of the word "indigenous" does not deprive it of its character as a Native American organization and does not equate with individuals who claim a protected identity as in the *Nixon El, Gilmore-Bey,* and *Bey* cases mentioned above. The Court's rationale is as follows:

> The Court finds Plaintiff NDN Collective's racial identity as a Native American organization and therefore, a member of a protected class, has been established. Use of the term "Indigenous" may or not be precise in terms of a dictionary definition, but the term is well-understood to refer to Native people in the context in which NDN Collective works. Reference to "Mother Earth" is part-and-parcel of the Native American belief system and culture. The Court finds these terms do not diminish NDN Collective's identity as an organization with a racial identity as Native American and therefore, a member of a protected class.

Memorandum opinion and order granting in part and denying in part Defendants' motion for partial summary judgment, Doc. 206.

The Court finds that, as is the case with Plaintiffs Bettelyoun, Red Bear, Jackson, Bowman, Eagle, and Cottier, NDN Collective has a racial identity as Native American and is a member of a protected class for purposes of § 1981. The Court grants Plaintiffs' motion for partial summary judgment on this issue.

    b. Section 1981 elements of discriminatory intent by Defendants and engaging in a protected activity by Plaintiffs

Defendants have raised numerous questions of fact concerning proof of discriminatory intent and engaging in a protected activity. Defendants have asserted the individual Plaintiffs were merely serving as "testers" when they entered the Grand Gateway to reserve rooms, that discriminatory intent of Retsel and Nick Uhre are in issue, that Plaintiffs did not do enough to endeavor to make a contract with the hotel, and that there was no concrete injury.

The Court determines that the many questions of fact make summary judgment inappropriate on the elements of § 1981 concerning discriminatory intent and engaging in a protected activity. Therefore, the Court denies Plaintiffs' motion for partial summary judgment on these claims.

## PART II    Plaintiffs' Motion for Summary Judgment on Counterclaims

## LEGAL STANDARD

## A. INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS

To establish the tort of intentional interference with a business relationship, the claimant must establish the following:

> (1) [T]he existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an

intentional and unjustified act of interference on the part of the interferer; (4) proof that the interference caused the harm sustained; and (5) damages to the party whose relationship or expectancy was disrupted.

*Qwest Communications Corporation v. Free Conferencing Corporation,* 837 F.3d 889, 895 (8th Cir. 2016) (quoting *Selle v. Torser*, 786 N.W. 2d 748, 753 (S.D. 2010)). See also *Gateway, Inc. v. Companion Products*, 320 F.Supp.2d 912, 929 (D.S.D. 2002); *Table Steaks v. First Premier Bank*, 650 N.W.2d 829, 835 (S.D. 2002).

Satisfaction of the first factor—the existence of a valid business relationship or expectancy—has been addressed in numerous cases. The standard is that a claimant must be able to show that it has a "relationship with an identifiable third party" that was affected by the opponent's actions. *Table Steaks*, 650 N.W.2d at 835. Furthermore, "the public at large does not constitute an identifiable third person." *Id.* (citing *Sarkis v. Pafford Oil Co. Inc.*, 697 So.2d 524, 527 (Fla. App. 1 Dist. 1997)). It is required that the claimant establish "a triangle," meaning "a plaintiff, an identifiable third party who wished to deal with the plaintiff, and the defendant who interfered with the plaintiff and third party." *Landstrom v. Shaver*, 561 N.W.2d 1, 16 (S.D. 1997) (citing *Tibke v. McDougall*, 479 N.W.2d 898, 908 (S.D. 1992)). The "identifiable" party need not be named but must be "subject to identification" or "capable of being identified." *Hayes v. Northern Hills General Hosp.*, 590 N.W.2d 243, 249 (S.D. 1999).

In *Hayes*, the plaintiff described the third parties as his existing and potential patients in the "Lead-Deadwood medical community" for "family practitioners from 1992-present" (approximately 4-5 years). 590 N.W.2d at 250. This met with the Supreme Court's approval as proper identification of an identifiable third party who wished to deal with plaintiff. See also *POET, LLC v. Nelson Engineering Inc.*, 2018 WL 791254, *7 (D.S.D. 2018) (describing identifiable third parties as "consulting engineers in the ethanol industry").

To establish the third factor, it is not enough to show that an interference took place; a claimant must also show that the "interference was improper." *Gruhlke v. Sioux Empire Fed. Credit Union*, 756 N.W.2d 399, 408 (S.D. 2008). In determining whether the interference was improper, the Court considers several factors:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the societal interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

*Id.* (citing *St. Onge Livestock Co., Ltd. v. Curtis*, 650 N.W.2d 537, 542 (S.D. 2002) (quoting Restatement (Second) of Torts § 767 (1979))). As with proof of the existence of an identifiable third party, the burden is on the plaintiff to plead and prove that the interference was improper. *Windsor Sec., Inc. v. Hartford Life Ins.*

21

*Co.*, 986 F.2d 655, 663 (3d Cir.1993). While the Section 767 factors are neither exhaustive nor determinative of the issue of improper interference, "[t]he nature of a defendant's conduct is a chief factor in determining whether the conduct is improper or not." Restatement (Second) of Torts § 767 cmt. b., c. In analyzing the nature of the actor's conduct, the key inquiry is not whether the actor is justified in causing the result, but rather "whether he is justified in causing it *in the manner* in which he does cause it." *Id.* at cmt. c (emphasis added).

For example, in *Dykstra v. Paige Holding Co.*, the South Dakota Supreme Court affirmed the trial court's conclusion that as a matter of law there was no improper conduct on the part of the Bank because the Bank acted within its rights as a lender and did not breach the terms of the contract or any banking laws. 766 N.W.2d 491, 500 (S.D. 2009). Further, even in situations where an actor induces a third party to breach its contract, courts must examine whether the inducement was wrongful. See *Lien v. Nw. Eng'g Co.*, 73 S.D. 84, 39 N.W.2d 483, 486 (1949) ("When one has knowledge of the contract rights of another, his *wrongful inducement* of a breach thereof is a willful destruction of the property of another..." (emphasis added)). See also *Qwest Commc'ns Corp. v. Free Conferencing Corp.*, 837 F.3d 889, 896 (8th Cir. 2016) (finding that Qwest did not meet its burden that FC's interference was improper because FC "did not intend to cause Sancom to breach its tariff; FC's motivation to maximize its own profits was

not improper; and FC's interests were not inconsistent with the societal interests in the tariff regulatory system."); *St. Onge Livestock Co.*, 650 N.W.2d at 542 (finding the plaintiff met its burden by demonstrating that Strong actively recruited Curtis in a knowing and willful breach a valid non-compete clause).

## B. DEFAMATION

South Dakota prohibits defamation as follows: "Every person is obligated to refrain from infringing upon the right of others not to be defamed." S.D. Codified Laws § 20-11-1. The statute defines libel as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." S.D. Codified Laws § 20-11-3.

In *Paint Brush Corp. v. Neu*, the South Dakota Supreme Court held that "'expressions of opinion may often imply assertions of objective fact,' and those statements are actionable." 599 N.W.2d 384, 396 (S.D. 1999) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990). Accord *Manuel v. Wilka*, 610 N.W.2d 458, 465 (S.D. 2000).

As discussed above, whether an employer is liable for an employee's actions depends on factors such as whether the act was within the scope of employment.

*Two Eagle*, 57 F.4th at 621.  Ordinarily, this is a question of fact.  *Haas*, 816
N.W.2d at 103.  If the action is motivated in part by the employer's interests, the
question is whether the act was foreseeable. *Id.*

## C. TRESPASS

The South Dakota Supreme Court has described the elements of a civil
trespass as follows: "One who intentionally and without a consensual or other
privilege (a) enters land in possession of another or any part thereof or causes a
thing or third person to do so, or (b) remains thereon, is liable as a trespasser to the
other irrespective of whether harm is thereby caused to any of his legally protected
interests." *Zwart v. Penning*, 912 N.W.2d 833, 839-40 (S.D. 2018) (quoting
*Benson v. State*, 710 N.W.2d 131, 159 (S.D. 2006)).  See also Restatement
(Second) of Torts § 158 (May 2023 update).

As a general proposition an innkeeper "gives a general license to all persons
to enter his house" and therefore, "it is not a trespass to enter an inn without a
previous actual invitation." *Hopp v. Thompson*, 72 S.D. 574, 38 N.W.2d 133, 135
(1949). *Hopp* also holds that an individual who does not enter as a guest is there
"under an implied license that the landlord may revoke at any time," and may use
reasonable force to evict him if the person fails to leave when ordered to do so by
the landlord. 38 N.W.2d at 135 (quoting 28 Am. Jur., Innkeepers, § 133).

24

As the Eighth Circuit held in interpreting Arkansas law, transmission of light is not a trespass because there is no invasion of tangible matter. *International Paper Company v. MCI WorldCom Network Services, Inc.*, 442 F.3d 633, 636 (8th Cir. 2006). In support, the court cited the proposition that "while a personal entry is unnecessary for a trespass", there must be "an invasion of tangible matter." *Id.* (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 13, at 71 (5th Ed. 1984)). In South Dakota, *Zwart* appears to implement a similar requirement in discussing that the parties had alleged "that the other caused a thing—namely water—to enter their land without permission," which complied with the applicable requirement that a "thing" enter the land. *Zwart*, 912 N.W.2d at 840.

D. NUISANCE

South Dakota defines nuisance as follows:

A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:
> (1) Annoys, injures, or endangers the comfort, repose, health, or safety of others;
> (2) Offends decency;
> (3) Unlawfully interferes with, obstructs, or tends to obstruct, or renders dangerous for passage, any lake or navigable river, bay, stream, canal, or basin, or any public park, square, sidewalk, street, or highway;
> (4) In any way renders other persons insecure in life, or in the use of property.

S.D. Codified Laws § 21-10-1.

The parameters of the relatively broad statute have been set in a number of cases. As such, "the existence of a nuisance is subject to a rule of reason." *Aberdeen v. Wellman*, 352 N.W.2d 204, 205 (S.D. 1984). Furthermore, "This rule of reason requires that a nuisance must be a condition that "substantially invades and *unreasonably* interferes with another's use, possession, or enjoyment of his land." *Id.* (citing *Greer v. City of Lennox,* 79 S.D. 28, 107 N.W.2d 337 (1961)). See also *Prairie Hills Water and Development Co. v. Gross*, 653 N.W.2d 745, 752 (S.D. 2002). The claims may not be based on the mere existence of a group of protesters or a boycott. See generally *Danielson v. Huether*, 355 F.Supp.3d 849, 865 (D.S.D. 2018) (addressing claim of intimidation).

E.  CIVIL CONSPIRACY

The South Dakota Supreme Court has ruled that to establish a prima facie case of civil conspiracy, a plaintiff must prove the following:

> (1) two or more persons;
> (2) an object to be accomplished;
> (3) a meeting of the minds on the object or course of action to be taken;
> (4) the commission of one or more unlawful overt acts; and
> (5) damages as the proximate result of the conspiracy.

*Setliff v. Akins*, 616 N.W.2d 878, 889 (*Setliff I*) (S.D. 2000) (quoting *In re TMJ Implants Prods. Liab. Litigation*, 113 F.3d 1484, 1498 (8th Cir. 1997)).  See also *Engel v. Engel*, 2022 WL 2208875, *7 (D.S.D. 2022).

Furthermore, as the South Dakota Supreme Court has made clear, "a civil conspiracy is, fundamentally, an agreement to commit a tort." *Kirlin v. Halverson,* 758 N.W.2d 436, 455 (S.D. 2008) (quoting *Reuben C. Setliff, III, M.D., P.C. v. Stewart*, 694 N.W.2d 859, 867 (*Setliff II*) (S.D. 2005)).  A factual basis for a claim of civil conspiracy is required. *Id.*  "Suggestions" of a conspiracy drawn from a relationship, without more, are insufficient. *Id.* See also *Engel*, 2022 WL 2208875, *7 (speculative allegations about "meeting of the minds" cannot survive motion to dismiss conspiracy claim).  If plaintiffs fail to establish an underlying tort claim, there is no claim of civil conspiracy remaining. *Thompson v. Harrie*, 2018 WL 4501051, *5 (D.S.D. 2018) (citing *Kirlin*, 758 N.W.2d at 455).

## ANALYSIS

### A.  INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS

Plaintiffs seek to dismiss Defendants first counterclaim—intentional interference with business relations—arguing, among other things, that Defendant has failed to identify a third party and that Defendant cannot show that NDN's

alleged interference was improper. In a prior order, the Court dismissed
Counterclaim I because of Defendant's inability to identify a class analogous to
those described in *Hayes* and *Table Steaks*. (Doc. 76, at 8). The Court explained
that the description was overbroad and "appeared to encompass the general
public," comprising not only residents of Rapid City, but also a substantial part of
western South Dakota and those simply traveling through Rapid City to
destinations further west. (*Id.*). However, during discovery Defendants learned of
additional pertinent information. (Doc. 127, at 12). The Court found good cause
and granted Defendants leave to amend the counterclaims. (*Id.*). Now, in
Defendants' amended complaint, the class is described as "guests staying at the
Grand Gateway Hotel, including the Rapid City Marshals Football team, as well as
prospective guests seeking hotel and bar accommodations in Rapid City." (Doc.
128, at 22). The description of "guests staying at the hotel" and "prospective guests
seeking hotel and bar accommodations in Rapid City" falls into the same fatal flaw
as the initial description. The description still encompasses the general public and
fails to meet the requirement of an identifiable third party.

The description of the Rapid City Marshals football team, however, does not
fall into the same category. The Rapid City Marshals are an identifiable third party
who allegedly had a contract to stay at the Grand Gateway Hotel and NDN is
alleged to have interfered with this contract. (Doc. 173, ¶ 30).

However, interference alone is not enough, as claimants must also plead and prove that the interference was improper. The record suggests that on or around April 19th, 2022, Sunny Red Bear learned that the Rapid City Marshals football team contracted to stay at the Grand Gateway Hotel. (Doc. 175-2 at 173-74; Doc. 128 ¶ 25; Doc. 173 ¶ 30). The same day, Ms. Red Bear went to the team's practice and passed out flyers informing them of the alleged discriminatory policy and told them they would be on the national news for supporting racism if they continued staying at the Grand Gateway. (Doc. 173, ¶ 30; Doc. 159 at 23, 25). That same day, the team canceled the reservation. (Doc. 173, ¶ 30). Assuming *arguendo* that this conduct interfered with the contract between Grand Gateway and the Rapid City Marshals football team, nothing in the record presented by the claimants demonstrates that this interference was improper.

Passing out flyers, participating in a boycott, and calling for others to join the boycott is conduct and speech safeguarded by the First Amendment. See *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 909-910 (1982). In *Caliborne*, the Court stated:

> [s]peech itself…was used to further the aims of the boycott. Nonparticipants repeatedly were urged to join the common cause, both through public address and through personal solicitation.…Petitioners admittedly sought to persuade others to join the boycott through social pressure and the 'threat' of social ostracism. Speech does not lose its protected character, however, simply because it may embarrass others or coerce them into action.

*Id.* As Justice Rutledge explained in *Thomas v. Collins*, "'[f]ree trade in ideas' means free trade in the opportunity to persuade to action, not merely to describe facts." 323 U.S. 516, 537 (1945). Indeed, in *Thornhill v. Alabama*, the Supreme Court found picketing to be constitutionally protected, even though "the purpose of the picketing 'was concededly to advise customers and prospective customers of the relationship existing between the employer and its employees and thereby to induce such customers not to patronize the employer.'" 310 U.S. 88, 99 (1940).

Here, Ms. Red Bear's conduct was not improper. She learned that a local football team entered a contract to stay at the Grand Gateway Hotel. In an effort to further the aims of the lawful boycott, she attended the team's public practice to pass out flyers and urge the team to join the boycott. Contrary to what Defendants argue, Ms. Red Bear's conduct and speech at the practice did not go beyond the protections of the First Amendment. Merely claiming that Ms. Red Bear "harassed" the team without anything further is insufficient to create a genuine issue of material fact whether her interference was improper. Similar to the Supreme Court's reasoning in *Claiborne*, the persuasive and arguably coercive nature of the speech does not result in the loss of its protected character. For the Court to rule otherwise would impermissibly burden the First Amendment.

In view of the facts in the light most favorable to the nonmovant, the Court determines that as a matter of law Ms. Red Bear's conduct was not improper.

30

Therefore, the Courts grant Plaintiffs' motion for summary judgment on Defendant's Counterclaim I – Intentional Interference with Business Relations. The Court denies Defendants' counter-motion for summary judgment on this claim.

## B. DEFAMATION

Defendant alleges that Hermus Bettelyoun, who is not a party to this case, defamed Nick Uhre by posting an email that Uhre claims falsely is attributed to him. In addition, Bettelyoun posted on his personal Facebook page a reference that Uhre was a "Klan member," (Doc. 128, PgID 1735). These posts appear on March 20, 2022, apparently the day after the shooting at the Grand Gateway and on the same day of Connie Uhre's posts. (Doc. 84, PgID 1005).

Whether Hermus Bettelyoun's actions done on his own time on his personal Facebook page are attributable to NDN rests on an analysis of the factors that establish liability for an employer, including whether the employee's actions were within the scope of employment or served a dual purpose. Because the defamation claim against NDN raises questions of fact concerning NDN's liability with respect to Hermus Bettelyoun's posts, Court denies Plaintiffs' motion for summary judgment on this claim. Likewise, the Court denies Defendants' counter-motion for summary judgment.

## C. TRESPASS

Plaintiffs seek to dismiss Defendant's third counterclaim of Trespass, arguing that no trespass occurred and that, even if a trespass occurred, NDN Collective cannot be held liable because Defendants have failed to prove that the alleged trespasser was an employee or agent of NDN Collective. (Doc. 159, 32-3). Defendants allege in their amended complaint that NDN Collective's employees and affiliates (1) shined a light projection containing an image and written words onto the side of the Grand Gateway Hotel, (2) covered illumination devices on the property, and (3) entered the property and refused to leave after being asked to do so. (Doc. 128, ¶¶ 18-19, 29-30, 48; Doc. 172, 53-54).

The Court determines that (1) shining the image of words and (2) entering the property to cover lights are properly addressed as possible nuisances and resolves the summary judgment motion with respect to those claims in Part D., below.

With respect to the third incident of alleged trespass, during the hearing on August 13, 2024, the Parties' counsel drew the Court's attention to a video which allegedly showed Sunny Red Bear putting her foot across a line to Defendants' property. As best the Court can tell from the video, Plaintiff Red Bear did extend a portion of her foot over the line from a public sidewalk but it was onto the parking lot used by guests of the Grand Gateway Hotel and Perkins Restaurant. As the

parking lot is a public space, the claim of trespass is not established based on Red Bear's conduct.

With respect to the additional aspect of the third allegation asserting that NDN affiliates trespassed, the Court resolves this instance of alleged trespass without reaching the merits. Defendants allege that NDN Collective's employees and "affiliates" "have entered Retsel's property with no intention or attempt to obtain Retsel's services, have interacted with Retsel's guests, and have refused to leave the property after Retsel's employees told them to leave." (Doc. 128, ¶ 19).

However, Defendants have been unable to verify the identity of the alleged trespassers. This failure is fatal to a claim based on vicarious liability. NDN Collective cannot be held vicariously liable for the acts of unidentified persons. See *Doe v. Mckesson*, 71 F.4th 278 (5th Cir. 2023) (concluding that Mckesson cannot be held vicariously liable for the acts of an unidentified protester without proving that the protesters "perform[ed] continuous service" for Mckesson, or that their "physical movements" were subject to his "right to control"). See also *Claiborne Hardware Co.*, 458 U.S. 886 (1982) (finding that N.A.A.C.P. cannot be held vicariously liable without a showing that the acts of the individuals were undertaken within the scope of their actual or apparent authority, that N.A.A.C.P. knowingly ratified the conduct, or that the violent activity followed speeches inciting an imminent breach of the peace); *Scott v. Ross*, 140 F.3d 1275 (9th

Cir.1998) (finding vicarious liability for CAN because CAN was directly linked to the acts of its agent who was acting in the course and scope of employment when the tortious act was committed).

Defendants generally allege their belief that NDN Collective employees and "affiliates" were the ones involved in the alleged trespass, but beliefs and assumptions are not enough to create a genuine issue of material fact. Defendants have not offered any admissible evidence specifically tying the alleged acts of trespassing to NDN Collective's employees or agents. The only individuals Defendants have specifically identified as employees of NDN Collective are Bill Knight, Andrew Boyd Catt, Hermus Bettelyoun, and Sunny Red Bear. Of those four individuals, only three of them are employees of NDN Collective, and of those three, Defendants fail to link them to specific instances of trespassing.

The Court finds that Defendants have failed to create a genuine issue of material fact as to the identity of the alleged trespassers and that as a matter of law NCN Collective cannot be held vicariously liable for the acts of unidentified persons. Therefore, the Court grants Plaintiffs' motion for summary judgment on Defendant's Counterclaim III – Trespass.  The Court denies Defendants' counter-motion for summary judgment on this issue.

D. NUISANCE

Defendants' claim of nuisance addresses "projection of an image containing written words onto the side of the Grand Gateway Hotel" and more generally the "conduct of NDN Collective's employees." (Doc. 128, PgID 1741). The Court has analyzed possible actions of individuals who may have created a nuisance. The Court considered that someone threw rocks through a window, but these were not NDN employees who, apparently, helped to put a stop to the conduct. (Doc. 161-1, PgID 2945-46). Therefore, Plaintiffs' motion for summary judgment on this aspect of the nuisance claim is granted.

In addition, someone set grass near the hotel on fire, but whoever did so has not been identified. Someone painted the word "LAKOTA" on the side of the hotel, but there is no evidence of the identity of the person who did so. Someone approached Connie Uhre in her car and waved sage in front of her, but she identified him only as "a stocky guy." (Doc. 175-9, PgID 4286.). Defendants seek to hold NDN responsible for these actions, but, consistent with the Court's reasoning above, the inability to specify who committed them undercuts Defendants' claims. The protest itself is protected by the First Amendment. Individuals may or may not have been connected to NDN, but speculation is an insufficient basis to permit the claims to proceed against NDN. Therefore, the Court grants Plaintiffs' motion for summary judgment on these aspects of the nuisance claim.

On the other hand, light projections were displayed on the side of the Grand Gateway Hotel and this is alleged to have been done by persons in an NDN truck, who were wearing NDN apparel and entered the property to cover lights. The videos of this were posted on TikTok and the NDN website. (Doc. 173, PgID 3923).  In addition, several people put removable paint on the windows of a van. (Id., PgID 3926). Defendant Nick Uhre asserts there is a video showing who the perpetrators were.  The Court has reviewed all videos submitted, but none depict what Nick Uhre alleged.  However, the Court accepts that he has made an assertion of what he observed, the video can be used to identify who the alleged perpetrators were, and that is sufficient for the purposes of summary judgment.  Therefore, the Court denies Plaintiffs' motion for summary judgment on these aspects of the nuisance claim.

To summarize, the Court has granted Plaintiffs' motion for summary judgment with respect to the nuisance claim insofar as it encompasses the allegations of rock-throwing, painting "LAKOTA" on the hotel, setting grass on fire, and waving sage at Connie Uhre while she was in her car.  The Court has denied Plaintiffs' motion for summary judgment on the nuisance claim to the extent the allegations are that NDN entered the property and covered lights to display "light slogans" later depicted on TikTok and the NDN website, (Doc. 173, PgID 3923), and that NDN's employees or associates painted words on the

windows of the hotel's van with removable paint. The Court denies Defendants'

counter-motion on the nuisance claim.

E. CIVIL CONSPIRACY

The Court has dismissed the claim of intentional interference with business

relations which Defendants cited as the basis for their civil conspiracy claim.

(Doc. 128, PgID 1741). Without an underlying tort, civil conspiracy cannot be

maintained. Furthermore, without evidence of an agreement to commit the tort, the

civil conspiracy claim fails. Plaintiffs' motion for Summary Judgment on this

counterclaim is granted and Defendants' counter-motion for Summary Judgment is

denied.

Accordingly, IT IS ORDERED that:

1. Plaintiffs' motion for summary judgment establishing that NDN Collective has a racial identity as Native American and is a member of a protected class is granted;

2. Plaintiffs' motion for summary judgment on the elements of the § 1981 claim establishing that Defendants' intent was discriminatory and that Plaintiffs were engaging in a protected activity is denied;

3. Plaintiff Red Bear's motion for summary judgment with respect to the claim against Connie Uhre for assault is granted;

4. Plaintiff Red Bear's motion for summary judgment on the claim of battery against Connie Uhre is denied;

5.  Plaintiff Red Bear's motion for summary judgment on the claims of assault and battery against Retsel Corp. is denied;

6.  Plaintiff (counterclaim defendant) NDN Collective's motion for summary judgment on the counterclaim of intentional interference with business relations is granted and Defendants' counter-motion is denied;

7.  Plaintiff (counterclaim defendant) NDN Collective's motion for summary judgment on the counterclaim of defamation is denied and Defendants' counter-motion is denied;

8.  Plaintiff (counterclaim defendant) NDN Collective's motion for summary judgment on the counterclaim of trespass is granted and Defendants' counter-motion is denied;

9.  Plaintiff (counterclaim defendant) NDN Collective's motion for summary judgment on the counterclaim of nuisance is granted in part and denied in part as explained above, and Defendants' counter-motion is denied;

10.  Plaintiff (counterclaim defendant) NDN Collective's motion for summary judgment on the counterclaim of civil conspiracy is granted and Defendants' counter-motion is denied.

Dated this __22nd__ day of August, 2024.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK