UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

---

NDN COLLECTIVE, individually and
on behalf of all others similarly situated;
SUNNY RED BEAR, individually and
on behalf of all others similarly situated;
GEORGE BETTELYOUN, individually
and on behalf of all others similarly
situated; ALBERTA EAGLE, individually
and on behalf of all others similarly
situated; NICK COTTIER, individually
and on behalf of all others similarly
situated; BRE JACKSON, individually
and on behalf of all others similarly
situated; MARY BOWMAN, individually
and on behalf of all others similarly
situated,

      Plaintiffs

      vs.

RETSEL CORPORATION,
d/b/a Grand Gateway Hotel,
d/b/a Cheers Sports Lounge and Casino;
CONNIE UHRE; and
NICK UHRE,

      Defendants

      And

RETSEL CORPORATION,
d/b/a Grand Gateway Hotel,
d/b/a Cheers Sports Lounge and Casino,

      Third-Party Plaintiff,

5:22-cv-5027

MEMORANDUM OPINION
AND PRETRIAL ORDER
GRANTING IN PART AND
DENYING IN PART PARTIES'
PRETRIAL MOTIONS

1

vs.

JOHN DOES 1-20; JANE DOES, 1-20;
and ABC CORPORATIONS, 1-20,

      Third-Party Defendants

---

This case is set for a jury trial commencing, September 9th, 2024, on: (1) Plaintiffs' claim of a violation of 42 U.S.C. § 1981 against all Defendants; (2) Plaintiff Sunny Red Bear's claim of battery against Connie Uhre and claims of assault and battery against Retsel; (3) Defendants' counterclaim of nuisance against NDN Collective; and (4) Defendants Retsel and Nick Uhre's counterclaim of defamation against NDN Collective.

On August 26, 2024, the Court held a pretrial conference. (Doc. 221). During which, the Court discussed trial procedures, heard argument, and ruled on: (1) Defendants' motion to stay trial, (2) Defendants' motion to certify the Court's August 20, 2024, and August 22, 2024, orders for interlocutory appeal, (3) Defendants' motions in limine, and (4) Plaintiffs' motions in limine. (Id.). The Court denies Defendants' motion to stay trial and motion to certify the Court's August 20, 2024, and August 22, 2024, orders for interlocutory appeal, grants in part and denies in part Defendants' motions in limine, and grants in part and denies in part Plaintiffs' motions in limine.

2

The Court will first discuss trial procedures in Part I. Then, the Court will resolve the Parties' pretrial motions in Part II.

## I.    Trial Procedures

During the pretrial hearing conducted on August 26, 2024, the Court and Parties discussed the following trial procedures and logistics. (Doc. 221). Jury selection will commence at 9am on September 9th, 2024, in Courtroom I at the Andrew W. Bouge Federal Building and U.S. Courthouse located in Rapid City, South Dakota. Each Party will be granted 1 hour for *voir dire*. Plaintiffs will have three peremptory strikes as will Defendants. There is no limit on challenges for cause and any challenge for cause will be done in front of the jury. The jury pool will consist of 35 members of the community and 12 jurors will be seated. As requested by Plaintiffs, the jury list will be released to the Parties on August 30th, 2024, by the end of the day.

Each Party will be granted forty-five minutes for their opening statement and PowerPoint slides will not be permitted. The amount of time for closing argument will be determined after the close of evidence and the "no sandbag rule" applies. The Court does not require but encourages that—at least one day in advance—both Parties provide to the other a list of witnesses that will testify the following day. Keep in mind that the Court has high frequency hearing loss. Instruct witnesses to enunciate clearly.

Regarding the Plaintiffs' prayer for punitive damages, at the end of Plaintiffs' case, but before they have rested, the Court will hold a hearing outside the presence of the jury. During this hearing, Defendants can move to dismiss some or all of the punitive damages claims. At that time, the Court will make a ruling whether or not punitive damages claims will be submitted to the jury. If punitive damages are going forward, witnesses may be called and or recalled to testify regarding financial worth for consideration if punitive damages are to be awarded.

In light of the Court's summary judgment orders (Docs. 206 & 212), both Parties must cut down their exhibit list to those relevant to the remaining claims by August 30th, 2024. Additionally, the Parties shall converse and determine a list of demonstrative evidence to be used at trial by September 4th, 2024.

## II.   Pretrial Motions

As an initial matter, Plaintiffs filed a motion to produce documents on August 22, 2024. (Doc. 207). This motion has been referred to Magistrate Judge Daneta Wollmann, who will conduct a hearing on August 30, 2024. (Doc. 225).

Further, on August 25, 2024, Defendants filed a motion to stay trial coupled with a motion to certify the Court's August 20, 2024, and August 22, 2024, orders for interlocutory appeal. (Doc. 217 & 219). The Court denies both motions.

Finally, the Court requested that Plaintiffs respond to Defendants' motion to eliminate Cheers Bar from the lawsuit. (Doc. 152). Plaintiffs respond that Cheers is not a separate Defendant and not a Party. Plaintiffs also assert that no one will testify they tried to enter Cheers or will say anything about Cheers. There is no issue for the Court to rule on, since there will not be any evidence regarding exclusion from Cheers based on Native American identity.

### i. Plaintiffs' motions in *limine*

### 1. Motion to exclude settlement offers—GRANTED in part.

Plaintiffs expressly distinguish the consent decree from other settlement discussions and negotiations related to this case. Defendants do not oppose this motion as it pertains to past settlement discussions and negotiations. However, Defendants do not agree with Plaintiffs' distinction regarding the consent decree. The Court considers the admissibility of the consent decree in section (ii) below.

Pursuant to FRE 408, all evidence of settlement negotiations and mediation efforts relating to this case for the purpose of proving the validity or amount of a disputed claim is inadmissible.

### 2. Motion to exclude medical evidence—GRANTED in part and DENIED in part.

While Plaintiffs may be correct that their medical records are not relevant to prove their claims, they are relevant to Defendants' defense as to the cause,

5

severity, and potential alternative and unrelated contributions to the alleged emotional distress of Plaintiffs.

Therefore, the Court denies Plaintiffs' second motion in *limine* with the limitation that only medical records relevant to Defendants' defense of the claimed emotional distress are admissible. As a result, only medical records concerning emotional or mental ailments are admissible. Medical records of physical ailments are inadmissible with the exception of Mr. Bettelyoun's concerns with HIV (assuming Plaintiffs open the door to a discussion on that topic). FRE 401, 402.

### 3. Motion to exclude reference to Nick Tilsen's protective orders, Facebook posts, and the charge against Brandon Furguson— GRANTED in part.

Mr. Furguson's charge and related protective order is irrelevant and thus inadmissible. Further, Mr. Tilsen's protective order is likewise irrelevant and thus inadmissible. The request to exclude Mr. Tilsen's Facebook requests is overbroad and nonspecific. As such, the Court is unable to assess the admissibility of the Facebook posts at this time.

Therefore, the Court grants Plaintiffs' third motion in *limine* with respect to Brandon Furguson's charge and his related protective order and Nick Tilsen's protective orders. The Court will not rule on Nick Tilsen's Facebook post at this time. FRE 401, 402.

**4. Motion to exclude Sunny Red Bear's protective orders and divorce—GRANTED in part and DENIED in part.**

The specific details of Ms. Red Bear's divorce are not relevant and thus inadmissible. Additionally, discussion of Ms. Red Bear's divorce would waste time and confuse the jury. However, the fact that she is recently divorced and the possibility that the divorce is or was a source of stress is relevant to Defendants' defense and thus admissible. Defendants argue Ms. Red Bear's protective orders are relevant to their claim of negligent hiring, however Defendants have not pled negligent hiring. As far as the Court can tell, this is the first time Defendants are claiming a negligent hiring theory. Therefore, Ms. Red Bear's protective orders are irrelevant.

In summary the Court grants Plaintiffs' fourth motion in *limine* with regards to Ms. Red Bear's protective order and to the specific details of her divorce. However, the occurrence of the divorce and its potential as an alternative source of stress is admissible with the limitation that it may only be used by Defendants as a defense to Ms. Red Bear's claims of emotional distress. FRE 401, 402.

**5. Motion to prevent testimony related to dismissed counterclaims—GRANTED.**

In an August 22, 2024, order and opinion, the Court dismissed Defendants' counterclaims for intentional interference with business relations, trespass, and conspiracy to commit intentional interference with business relations. Any and all

7

evidence related to the dismissed counterclaims is irrelevant, would waste time, and confuse the jury.  FRE 401, 402, 403.

### 6. Motion to prevent questions to NDN Collective witnesses related to salary—GRANTED in part.

Evidence relating to the salaries of Plaintiffs or witnesses is a very personal matter and not relevant to the case.  Further, it may impermissibly suggest to the jury that Plaintiffs do not need damages.  However, evidence relating to Plaintiffs' and witnesses' position with NDN Collective, what their duties are, the hours they work, and whether they are part-time or full-time are relevant and thus admissible.

Therefore, the Court grants Plaintiffs' sixth motion in *limine* with regards to evidence of the salaries of Plaintiffs and witnesses.  However, evidence relating to Plaintiffs' and witnesses' position with NDN Collective, their duties at NDN Collective, the hours they work, and whether they are part-time or full-time is admissible.  FRE 401, 402, 403.

### 7. Motion to prevent evidence and argument regarding NDN Collective's fundraising—GRANTED.

Discussion of fundraising efforts could allow the jury to conclude the lawsuit is a calculated effort to raise money rather than a response to Defendant's alleged discrimination.  Further, evidence of NDN Collective's fundraising efforts is not probative of the issues before the jury. FRE 401, 402, 403.

**8. Motion to prevent reference to Land Back, Mt. Rushmore protests of President Trump, or Nick Tilsen's arrest there—GRANTED in part.**

Both Parties and the Court agree that politics should not be brought into this case. Additionally, Defendants do not intend to introduce any evidence of the Mt. Rushmore protest, former President Trump, or Nick Tilsen's arrest there. Regarding references to Land Back, the Court recognizes this is a sensitive issue as some of the jurors could live on land that could be subject to Black Hills Land Back claims and references to Land Back carry with it a high risk of prejudice and emotionally charged decisions. Absent further foundation, the Land Back movement will not be put in issue. The mission of NDN Collective is an issue in this case, therefore Defendants will be permitted to introduce the mission of NDN Collective, but in doing so, must avoid references to Land Back.

During the August 26, 2024, pretrial conference, there was a discussion surrounding an eviction notice that Defendants intended to introduce to rebut the Plaintiffs' allegations of discriminatory intent. Based on the current information, the eviction notice incident occurred after the alleged discrimination and is therefore irrelevant and inadmissible. However, even if the eviction notice refers to Land Back, if Defendants can demonstrate the eviction notice incident occurred before the alleged discrimination, the Court will reconsider its admissibility. FRE 401, 402, 403.

9. **Motion to prevent testimony related to a minor related to Nick Tilsen being present as the shooting at Grand Gateway Hotel—GRANTED.**

This matter is not relevant to this case. Further, Defendants do not intend to introduce evidence regarding this matter and do not oppose this motion. FRE 401, 402.

10. **Motion to prevent testimony or the video of an incident where Nick Tilsen asked police to leave the NDN Collective headquarters— GRANTED.**

The Court finds this incident irrelevant, and even if it is relevant, it is a collateral issue that would waste time and confuse the jury. FRE 401, 402, 403.

11. **Motion to prevent references to the Pledge Connie Uhre sprayed at Sunny Red Bear as "organic" or "water-based"—DENIED.**

Plaintiffs argue that because Defendants have not produced the can of Pledge used on March 21, 2022, they have no evidence of what ingredients the Pledge aerosol contains. The Court views that this matter can be properly addressed by cross examination as Connie Uhre is entitled to testify as to her belief of what the Pledge aerosol contained.

12. **Motion to prevent identification of previously undisclosed individuals who Defendants think harmed the hotel and to prevent the introduction of evidence about any unidentified non-party Defendants think harmed the hotel—**

The Court will not rule specifically on this at this time. However, evidence relevant to the remaining counterclaims of nuisance and defamation, and who is

responsible for the conduct giving rise to those claims, is admissible. As the Court made clear in its summary judgment order, we will not be trying any claims arising from the conduct of unidentified individuals. For example, the rock throwing incident and the ring of fire was not shown to be done by NDN Collective agents, employees, or supporters. All evidence regarding those incidents is irrelevant at this stage and not admissible. On the other hand, it has been shown that the light projections were done by NDN Collective agents, employees, or supporters. In summary, evidence, testimony, and argument regarding the dismissed counterclaims, including who apparently harmed the hotel in connection to the dismissed counterclaims is inadmissible. Evidence, testimony, and argument as to who is responsible for the conduct giving rise to the remaining counterclaims is admissible. FRE 401, 402, 403.

**13. Motion to preclude use of documents and statements produced on August 5, 6, and 8, 2024, and to preclude any testimony related to or relying on those documents—GRANTED in part and DENIED in part.**

Plaintiffs argue Defendants did not timely produce documents including a legal survey of Retsel's property, documents regarding broken glass, documents regarding the Rapid City Marshalls football team, a lease with Perkins, invoices and refunds for various guests, and a Smith and Travel Research report. The Court finds that the late disclosure is not unfairly prejudicial, even though it should have been previously produced. Plaintiffs will have time to analyze the new evidence

11

and prepare for trial.  However, consistent with the Court's ruling above, evidence regarding the dismissed counterclaims is inadmissible.  For example, documents regarding broken glass, documents regarding the Rapid City Marshalls football team, and documents and testimony regarding alleged damages stemming from the dismissed counterclaims are irrelevant.  Further, as discussed below, the Smith and Travel Research Report is inadmissible.  However, the legal survey and other evidence as well as testimony relevant to the remaining counterclaims is admissible.  FRE 401, 402, 403.

**14. Motion to prevent undisclosed expert opinion—GRANTED.**

The only expert opinions that will be admissible in this case are those that were noticed and sufficiently described in written expert reports.  This applies to both Plaintiffs and Defendants.  Nick Uhre is entitled to testify as to his personal knowledge as a lay witness, but his testimony will be limited to his personal knowledge that is relevant to the remaining counterclaims.  Nick Uhre may not rely on information from undisclosed expert opinion.  Finally, as the Court has made abundantly clear several times in this opinion and order, all evidence regarding the dismissed counterclaims is irrelevant and inadmissible.

**15. Motion to prevent introduction of undisclosed documents and unidentified witnesses—GRANTED.**

While the Court grants Plaintiffs' fifteenth motion in *limine*, it is subject to being revisited. Plaintiffs have not identified what the undisclosed documents are. To the extent that Plaintiffs can show there are documents that should have been disclosed and were not, such documents are inadmissible.

### 16. Motion to prevent testimony or argument about ability to pay a judgment—GRANTED in part.

As an initial matter, a Party's general ability or inability to pay a judgment is irrelevant and inadmissible. Further, any evidence regarding the prospect that Defendants might have to pay some or all of Plaintiffs' attorneys fees if they prevail is inappropriate, unfairly prejudicial, and not admissible. However, Plaintiffs are seeking punitive damages. If punitive damages are submitted to the jury, both Parties are permitted to introduce evidence regarding the net worth of Defendants. If punitive damages are not submitted to the jury, any evidence of the net worth of Defendants is irrelevant and inadmissible. FRE 401, 402, 403.

### 17. Motion to preclude Defendants from referring to any plaintiff at trial as a "tester"—GRANTED in part.

The Court intends to send the issue of whether the Plaintiffs are merely testers or there for a dual purpose or capacity to the jury. The Court will not allow Defendants to directly refer to Plaintiffs as "testers" as this is a jury determination. However, Defendants may say something to the effect of "alleged testers" or "those who we claim to be testers." FRE 403.

### ii. Defendants' motions in *limine*

### 1. Motion to exclude "golden rule," "reptile theory" and other improper argument—GRANTED in part.

Improper argument is not permitted. The Parties cannot make a "golden rule" argument. Without knowing what the "reptile theory" argument would consist of, the Court cannot rule on the motion to exclude it.

### 2. Motion to exclude evidence of the Uhre Family's political speech—GRANTED in part.

Political speech is excluded. Plaintiffs argue references to "dark money" are relevant to intent to discriminate, which is in issue with respect to individual Defendants and Retsel. The Court admonishes the Parties that politics will be kept out of the case. If evidence is relevant to proving discriminatory intent, it is admissible. FRE 401, 402, 403.

### 3. Motion to exclude improper character evidence—

It is unclear to the Court what evidence is the subject of the motion. Plaintiffs have the burden to establish discriminatory intent, and if the evidence is relevant to that issue, it is admissible. FRE 401, 402, 403, 404.

### 4. Motion to exclude evidence regarding Retsel's employees leaving their employment and relationships with Uhre Family members—

Specifics have not been provided to enable the Court to rule on the motion.

If the evidence is relevant to intent to discriminate, it is admissible. FRE 401,

402, 403.

5. **Motion to exclude selectively edited photographs, videos, and other demonstratives—**

The Court is unable to rule without specific evidence before it. As

mentioned above, the Parties should consult with each other and pare down the

Exhibit lists and demonstratives to what will be used at trial.

6. **& 7. Motion to exclude evidence of other lawsuits involving Retsel; and of Retsel's apology as part of the consent decree with the United States—GRANTED in part.**

*a.* the wrongful death lawsuit from the shooting at the hotel is excluded as

not relevant.

*b.* the shareholder lawsuit is not probative and is excluded; the board

member's testimony might be relevant and admissible.

*c. White v. Retsel* lawsuit—not permitted in Plaintiffs' case-in-chief;

possibly admitted on rebuttal for the issue of discriminatory intent

depending upon the direct testimony of Defendants.

The Court does not have sufficient information to rule on whether Clarity

Self and Brandon Ferguson's proposed testimony is admissible.

d. *USA v. Retsel*, 5:22-cv-5086—admissibility of consent decree;
admissibility of apology

Defendants seek to exclude the consent decree, which Plaintiffs seek to
admit. Defendants treat the consent decree similarly to the other litigation
involving Retsel, meaning it is not relevant. Plaintiffs want to exclude mediation
and settlement negotiations, but not the consent decree because it is "a public
document and is relevant to Defendants' interactions with Native Americans."

FRE 408 prohibits admission of a settlement agreement but can admit it for
other purposes such as impeachment or knowledge. Admissibility also depends on
what is in the consent decree; for example, whether a Party made admissions. If
so, they are separately admissible.

Cases from several courts exclude consent decrees under FRE 408. See,
e.g., *Ely v. Cabot Oil*, 2016 WL 454817, *12 (M.D. Pa. Feb. 5, 2016); *Wilson v.
Parisi*, 2009 WL 151666, *1 (M.D. Pa. Jan. 21, 2009); *Bowers v. NCAA*, 563
F.Supp.2d 508, 536 (D.N.J. 2008); *Farnham v. Walmart Stores East, L.P.*, 2014 WL
6908907, *4 (D. Maine Dec. 8, 2014); *Massachusetts Mutual Life Insurance
Company v. DLJ Mortgage Capital, Inc.*, 251 F.Supp.3d 329, 331 (D. Mass. 2017).

FRE 408 does permit introduction of a consent decree under certain
circumstances. See, e.g., *CMFG Life Ins. Co. v. Credit Suisse Securities (USA)
LLC*, 2017 WL 4792253 (W.D. Wisc. Oct. 23, 2017) (admitting section of consent

decree as admission); *Dahlin v. Lyondell Chemical Company*, 2016 WL 4690390,

*8 (S.D. Iowa March 24, 2016)  (consent decree is not categorically inadmissible;

may be admissible to show Defendants' knowledge, not liability); *E. Allen Reeves,*

*Inc. v. Michael Graves & Associates, Inc.*, 2015 WL 105825, *1 (D.N.J. Jan. 7,

2015) (consent decree between plaintiff and a non-party admissible to show bias).

In the present case, admissibility of the consent decree is intertwined with

the question of Defendants' motion to exclude Retsel's apology, which was part of

the consent decree.  Plaintiffs do not intend to go into details of the consent decree

itself.  The apology was distributed widely, however, and in particular to the nine

Tribes in South Dakota.  Counsel discussed how to broach the issue of both the

consent decree and apology and the resolution was as follows:  the Court will

inquire during jury selection whether any prospective juror is aware of a consent

decree filed in relation to this case.  Neither Party will initiate discussion of the

apology by Retsel and will respond if a prospective juror raises the issue.  The

Court will fashion a response depending on the circumstances.  If a juror has any

familiarity with these issues, the Court will explore possible bias or inability to

judge the facts as is done in the usual case with prospective jurors.

**8. Motion to exclude evidence of NDN Collective's emotional distress
   and limit the individual Plaintiffs' non-economic damages to garden
   variety emotional distress—GRANTED in part and DENIED in part.**

17

NDN will not receive damages for emotional distress. The remaining Plaintiffs may testify to emotional distress damages. Plaintiffs will not be permitted to recount details of a lifetime of discrimination but can testify that this incident has caused them to re-live past instances of discrimination and how that contributed to their emotional distress from the events of this case.

**9. Motion to preclude any attempt to attribute one person's statements to a different person or entity—**

The motion is vague, and the Court cannot rule in advance. The Court will handle evidentiary issues as they arise. The Court is willing to provide limiting instructions and Counsel should propose them as appropriate.

**10. Motion to exclude evidence that will create sympathy for Plaintiffs or Defendants but is unrelated to the issues—**

Eighth Circuit Pattern Jury Instruction 1.03 (2022) is adequate to cover the issue. Admissible evidence will be permitted. The Court cannot rule in advance in the abstract.

**11. Motion to exclude all argument or reference to any Attorney's backgrounds—GRANTED in part.**

The Parties agree that the attorneys' background information will not be provided with the exception of inquiring of prospective jurors about possible prosecution of them or their relatives by Plaintiffs' attorney and former US Attorney for South Dakota, Brendan Johnson.

**12. Motion to sequester witnesses—GRANTED.**

The Parties agree the witnesses for both sides should be sequestered, which is the Court's usual practice. FRE 615. Sequestration of expert witnesses is not required.

**13. Motion to preclude Plaintiff George Bettelyoun from testifying or offering evidence that he was a third-party beneficiary of the contract his sister attempted to make with the hotel—DENIED.**

Plaintiff Bettelyoun has pleaded sufficient evidence that he could qualify as a third-party beneficiary. Questions of fact remain based on the video evidence of the encounter.

**14. Motion to exclude Nick Uhre's statement to Plaintiff Bettelyoun and his sister as they left the hotel—DENIED.**

The statement about "Rosebud" is an integral part of the encounter at the hotel and is admissible as nonhearsay pursuant to FRE 803(1).

**15. Motion to preclude testimony from Plaintiffs about Retsel's hotel policies as to other guests and events that occurred outside their presence—GRANTED.**

There is no evidence that witnesses from either side will discuss matters outside their knowledge.

**16. Motion to preclude testimony that Plaintiff Red Bear and NDN Collective were going to use the hotel rooms and that they suffered money damages from Defendants' refusal to rent rooms— GRANTED in part and DENIED in part.**

Plaintiffs do not intend to call witnesses to testify they suffered pecuniary damages from not being able to rent hotel rooms.  Whether and how the rooms might have been used is in issue and testimony is proper.

**17. Motion to preclude evidence that NDN Collective has a racial identity or experienced racial discrimination—DENIED.**

The Court has ruled that NDN has a racial identity.  Whether racial discrimination existed is a contested issue in the case.

**18. Motion to preclude evidence that Plaintiffs are vindicating the rights of others because they did not move for class certification— GRANTED.**

The Court has struck the class action allegations.  (Doc. 206).

Accordingly, IT IS ORDERED as ruled upon above.

Dated this **29** day of August, 2024.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK