UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

---

NDN COLLECTIVE, SUNNY RED BEAR,
ALBERTA EAGLE, NICK COTTIER,
BRE JACKSON, MARY BOWMAN,
and GEORGE BETTELYOUN,
      Plaintiffs,

      vs.

RETSEL CORPORATION, d/b/a GRAND
GATEWAY HOTEL and d/b/a CHEERS
SPORTS LOUNGE AND CASINO,
CONNIE UHRE, and NICHOLAS UHRE,
      Defendants,

      and

RETSEL CORPORATION, d/b/a GRAND
GATEWAY HOTEL and d/b/a CHEERS
SPORTS LOUNGE AND CASINO,
and NICHOLAS UHRE,
      Counterclaimants,

      vs.

NDN COLLECTIVE,
      Counterclaim Defendant

5:22-cv-5027

ORDER DENYING
RECONSIDERATION,
RELIEF FROM ORDER,
AND DISMISSAL

---

1

Pending before the Court is Defendants' motion for reconsideration, relief from judgment or order, or in the alternative, to alter or amend a judgment; and for dismissal of the 42 U.S.C. § 1981 claims of Sunny Red Bear, Nick Cottier, Mary Bowman, and Bre Jackson. (Doc. 282). They have filed a Brief in support. (Doc. 283). Plaintiffs have responded, (Doc. 300,) and Defendants have replied, (Doc. 302). Given that trial was set to begin four weeks after the date Defendants filed their motion, the Court imposed a shortened briefing schedule. (Doc. 284). The trial subsequently has been continued. (Doc. 299). Having considered the submissions relevant to the motion, the Court denies Defendants' motion in all of its aspects. The Court adheres to its rulings on standing in its prior Order, (Doc. 279).

## BACKGROUND

Background information in this case has been set forth in detail in prior orders, (Doc. 76, 85, 127, 206, 212), and in the Order now under discussion, (Doc. 279). The Court refers the reader to those documents and will not repeat the information.

The motion for reconsideration seeks dismissal of the § 1981 claims of Plaintiffs Red Bear, Cottier, Bowman, and Jackson. (Doc. 282, PgID 7114). The arguments set forth in the accompanying brief challenge the Court's treatment of the issue of the prudential standing of Plaintiff Bowman and whether she is merely

2

a "tester" without standing.  Defendants argue the Court has erred in finding

Plaintiffs Red Bear, Cottier, Bowman and Jackson fall within the "zone of

interests" of § 1981 because the latter three were merely "bystanders" during the

effort to rent rooms and all four had "fraudulent intent" to provide the rooms to

needy people.  Defendants further argue for dismissal asserting Plaintiffs assumed

the risk of emotional distress and are simply "testers" who lack standing.  Finally,

Defendants argue Plaintiffs have failed to show that "but for" their race, they

would not have suffered the loss of a federally protected right.  (Doc. 283).

In their reply brief, Defendants argue the Court's analysis of the "zone of

interests" for each Plaintiff was inadequate; that Plaintiffs were mere bystanders

who lack contract rights under South Dakota law; that Plaintiff Bowman lacks

standing; that "testers" lack standing; that Plaintiffs are analogous to retail

shoppers who make no attempt to contract; and that "hurt feelings" do not give

standing to bystanders or those who assume the risk.  (Doc. 302).

## LEGAL STANDARD

### I. Motion to reconsider

Rule 54(b) of the Rules of Federal Civil Procedure provides in pertinent part

the following:

> [A]ny order or other decision, however designated, that adjudicates fewer
> than all the claims or the rights and liabilities of fewer than all the parties
> does not end the action as to any of the claims or parties and may be revised

3

>at any time before the entry of a judgment adjudicating all the claims and all
>the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

The standard for granting a motion to reconsider is not clearly defined,

although as a general proposition a court may amend or reconsider any ruling

under Rule 54(b) to correct any "clearly" or "manifestly" erroneous facts or

conclusions of law. *Flandreau Santee Sioux Tribe v. United States*, 610 F. Supp.3d

1225, 1234 (D.S.D. 2022) (citing *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407,

414 (8th Cir. 1988)). A motion pursuant to Rule 54(b) is not "a vehicle to identify

facts or legal arguments that could have been, but were not raised at the time the

relevant motion was pending." *Julianello v. K-V-Pharm. Co.,* 791 F.3d 915, 923

(8th Cir. 2015). In *SPV-LS, LLC v. Transamerica Life Insurance Company*, the

court made clear that the district court has "wide discretion whether to grant

reconsideration of a prior order." 912 F.3d 1106, 1111 (8th Cir. 2019). Only when

the district court "abuses its discretion" in relying on "clearly erroneous factual

findings or erroneous legal conclusions" will the Eighth Circuit reverse. *Id.* (citing

*Mathenia v. Delo*, 99 F.3d 1476, 1480 (8th Cir. 1996)).

### II. Relief from Order under F.R.C.P. 60(b)(6)

Rule 60(b) provides that relief from a judgment or order may be available

for certain reasons enumerated at (b)1-5, and "(6) any other reason that justifies

4

relief." See generally 11 Charles Alan Wright & Arthur R. Miller *Federal Practice and Procedure,* § 2864 (3d ed. April 2023 update). As a threshold matter, relief pursuant to Rule 60(b)(6) is "exceedingly rare" and available only in "exceptional cases." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.,* 496 F.3d 863, 866 (8th Cir. 2007). Review of denial of a Rule 60(b) motion is for abuse of discretion. *Broadway v. Norris,* 193 F.3d 987, 989 (8th Cir. 1999). *Accord In re Levaquin Prods. Liab. Litig.,* 739 F.3d 401, 404 (8th Cir. 2014); *Elder-Keep v. Aksamit,* 460 F.3d 979, 985 (8th Cir. 2006). As the *Broadway* court made clear, a motion under Rule 60(b) "is not a vehicle for simple reargument on the merits." 193 F.3d at 990. The Rule is "grounded in equity" and is designed to preclude a judgment from being "a vehicle of injustice." *Contreras v. United States,* 2021 WL 3679173, *1 (D.S.D. July 21, 2021) (quoting *Harley v. Zoesch,* 413 F.3d 866, 870 (8th Cir. 2005)). As the Eighth Circuit stated in *Davis v. Kelley,* a court considering granting relief pursuant to Rule 60(b)(6) may consider "a wide range of factors" which may include "'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'" 855 F.3d 833, 835 (8th Cir. 2017). *See also Rouse v. United States,* 2020 WL 1287986, at *3-4 (D.S.D. March 18, 2020); *Hakim v. United States,* 2018 WL 4082503, *3 (D.S.D. Aug. 27, 2018).

**ANALYSIS**

## I. Prudential standing

As the Court cited in its Order now challenged by Defendants, and as Defendants note, prudential standing requires that a plaintiff fall within the zone of interests protected by the statute or constitutional guarantee in question. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 475 (1982). The zone of interest in issue in 42 U.S.C. § 1981 is "the right to enter into and preserve a contractual relationship, period." *Kyles v. J.K. Guardian Sec. Svrv., Inc.,* 222 F.3d 289, 303 (7th Cir. 2000).

Defendants argue in Part III, below, that Plaintiffs Red Bear, Cottier, Bowman and Jackson lack prudential standing under § 1981 because their claims are not within the statute's "zone of interests." The Court will address Defendants' Arguments I and III in Section III below because they overlap.

## II. Plaintiff Bowman's intent other than as a "tester"

Defendants argue there were no findings by the Court that Bowman had any intent other than to "test" whether she could rent a room and therefore she lacks standing as a mere "tester." To the contrary, Bowman testified at her deposition that she "wanted to go and try to rent the room." (Doc 152-3, PgID 2363). She added that Alberta Eagle would speak for all in the group—Plaintiffs Bowman, Cottier, Jackson—seeking to rent "a room for each of us." (Id. at PgID 2364-65).

6

*A. Bowman's intent*--It is clear from Plaintiff Bowman's testimony that her intent was to actually rent a room. She did not "pose" as a person interested in renting a room to collect evidence as Defendants assert, (Doc. 283, PgID 7120)— she stated that she intended to rent the room. The Court is unaware whether she was asked at her deposition what she would do with the room she rented if she did not stay in it. The Court is aware that Eagle and Cottier indicated the room would be for a needy person. Given Bowman's participation in the group, an inference can be drawn that she, too, might have donated the room to a needy person. The Court is unwilling to speculate, however. At this juncture, the Court emphasizes that Bowman intended to rent the room and not simply "test" as Defendants assert. (Doc. 283, PgID 7121; Doc. 302, PgID 7249).

*B. Bowman as "tester"*--Defendants contend that the Court erred in finding that Bowman has standing because the Court did not find Bowman had any intent to rent a room and therefore she is only a "tester". However, whether a plaintiff has standing does not turn on whether she is a tester; rather it turns on whether she has suffered an injury-in-fact, traceable to the defendant, which can be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) ("The irreducible constitutional minimum of standing contains three elements:" (1) a concrete and particularized injury-in-fact that is "actual or imminent, not conjectural or hypothetical," (2) that is "fairly ... traceable to the

challenged action of the defendant" and (3) will likely be "redressed by a favorable decision.").

In their brief, Defendants assert Plaintiff Bowman "pose[d]" as someone interested in renting a room, when her sole purpose was "collecting evidence of unlawful practices." (Doc. 283, PgID 7120). They repeat the argument in the reply brief and conclude this means she suffered no concrete injury to establish standing. (Doc 302, PgID 7250).

The Court finds that Plaintiff Bowman, a Native American, testified that she heard that the owners of the Grand Gateway Hotel were not renting hotel rooms to Native Americans. Bowman visited the property to rent a room and not only experienced the denial of rental of hotel rooms to Native Americans, but she also was yelled at by Nick Uhre and required to leave the hotel. Bowman testified to the injuries she suffered as a result of Defendants' actions. If true, this is sufficient to support standing. *See, e.g., Havens Realty Corp v. Coleman*, 455 U.S. 363, 374 (1982) ("tester" plaintiff suffered injury under Article III for purposes of standing in housing-discrimination case); *Carello v. Aurora Policemen Credit Union,* 930 F.3d 830, 833-34 (7th Cir. 2019) (recognizing that tester status neither defeats standing nor automatically confers it and analyzing whether plaintiff experienced any "personal impact" from defendant's actions). Given the ubiquity of cell phone cameras and consequent taping of activities, it is not surprising that Bowman

videotaped the encounter at the Grand Gateway. This does not deprive her of standing. Therefore, the Court finds that Bowman has standing and was not merely a "tester" who lacks standing.

### III. "Zone of Interest" for Plaintiffs Red Bear, Cottier, Bowman, and Jackson

Defendants contend that Red Bear, Cottier, Bowman, and Jackson are not within the zone of interests of § 1981. They first assert that Plaintiffs Cottier, Bowman, and Jackson did not demonstrate by "words or conduct" an intent to enter into a contractual relationship on their own behaves. Based on the deposition testimony supplied to the Court, the Court understands that Cottier, Bowman, and Jackson did not speak to the desk clerk who initially declined to rent them rooms which Eagle requested. After the clerk refused to rent to Eagle, Plaintiffs sat in the lobby as a group to wait for the manager, Nick Uhre. Upon his arrival, he shouted at the group which included Eagle, Cottier, Bowman, and Jackson before ejecting them from the hotel. Plaintiffs Cottier, Bowman, and Jackson apparently did not try to rent rooms during the shouting match and did not try to rent them after they were ejected from the hotel.

Defendants focus on the lack of words from Cottier, Bowman, and Jackson and argue their lack of words and their conduct means they did not evidence an intent to contract under S.D.C.L. § 51-1-3. The Court has substantial testimony

before it that these individuals' conduct manifested an intent enter into a contract: they stated they went to the hotel to rent rooms; Eagle spoke, asking for rooms for all of them; the clerk declined to rent rooms; Nick Uhre, manager of the Grand Gateway came to the lobby where they were waiting for him; and he shouted at the group, in particular at Cottier, and ejected them from the hotel. The Court finds the actions of Cottier, Bowman, and Jackson, along with Eagle's speaking for them, manifested their intent to enter into contracts with the Grand Gateway. Their efforts were thwarted by Nick Uhre. That is sufficient compliance with S.D.C.L. § 53-1-3. *See generally Scotlynn Transport, LLC v. Plains Towing and Recovery, LLC,* 6 N.W.3d 671, 678 (S.D. 2024) (discussing contract formation based on "the conduct of the parties, language used, or acts done by them, or other pertinent circumstances attending the transaction"). *See also J. Clancy, Inc. v. Khan Comfort, LLC,* 955 N.W.2d 382, 389-90 (S.D. 2021).

Defendants in their reply brief add to their argument by characterizing Plaintiffs Bowman, Cottier, and Jackson as merely "silent bystanders" who, at best, had only a subjective intent to contract. (Doc. 302, PgID 7244, 7248). The Court disagrees. Plaintiffs have stated they went to the hotel intending to enter into a contract for rooms. Defendants seem to expect that once Eagle was unable to do so, each Plaintiff had to make an individual request for the room so there would be

10

an individual rejection.  That is not required especially if, as Plaintiffs argue, Nick Uhre thwarted their effort to make contracts.

Further, Defendants accuse Plaintiffs of having an "intent to lie" about who would be in the room, which disqualifies them from being in the zone of interest. (Doc. 302, PgID 7248).  Such a characterization does not comport with the information provided about the process for obtaining rooms for those in need. There is no indication of lies being told—perhaps the most that can be said is that the hotel did not necessarily ask for information about the identity of a domestic violence or otherwise needy person.  It is also clear that it was not uncommon for advocates to obtain hotel rooms in a variety of hotels in Rapid City.  (Red Bear deposition, Doc. 152-3, PgID 2210, 2212; Doc. 169-15, PgID 3678-79, 3685); Tilsen deposition, Doc. 152-3, 2155-56, 2164; 175-1, PgID 4035-36). During Red Bear's deposition, Defendants' counsel asked about her renting rooms for needy people as follows: "Did you disclose that you were renting rooms for someone else?" Plaintiff Red Bear stated, "I don't know if I was ever asked." (Doc. 152-3, PgID 2217-18).  She added that although she did not remember if she was asked, "I don't feel like I would have cared if I did or not.  I didn't think it was a thing I couldn't do." (Id.).  A reasonable conclusion from this exchange is that perhaps hotel management in Rapid City does not assume fraudulent intent on the part of its patrons and instead simply asks for additional information if it so desires.

Presumably, the hotels would not automatically jump to a conclusion of "fraudulent intent" on the part of the customer, as Defendants suggest.

The Court finds that Plaintiffs Cottier, Bowman, and Jackson fall within the zone of interests of § 1981. The Plaintiffs are Native Americans who responded to posts purporting to exclude Native Americans from the Grand Gateway Hotel located in their community. They went to the hotel in person to try to rent rooms. Eagle spoke to the desk clerk for the group. Plaintiffs Cottier, Bowman, and Jackson did not argue with the clerk after being refused but this does not amount to being just someone in the "background" as Defendants characterize the situation. The Plaintiffs were not merely "bystanders" with only a general interest in contracting, as Defendants assert, but were people who intended to rent rooms at the hotel. (Doc 283, PgID 7126; Doc 302, PgID 7248). These Plaintiffs were not akin to "browsers" in a department store who lack standing to assert a § 1981 claim, as Defendants argue. (Doc. 302, PgID 7255). Likewise, Plaintiffs are not equivalent to the plaintiff in *Magdy v. I.C. System, Inc.*, as Defendants contend. 47 F.4th 884, 887-88 (8th Cir. 2022). Given that the Eighth Circuit's analysis of the zone of interests in *Magdy* of the Fair Debt Collection Practices Act addresses the statute's language, purpose, and scope, it is consistent with this Court's analysis of the application of § 1981 to Plaintiffs' claims and its conclusion that the zone of interest of § 1981 encompasses those claims.

12

Defendants have accused the Plaintiffs Red Bear, Cottier, Bowman, and Jackson of having fraudulent intent in connection with the effort to rent rooms, in that, other than Plaintiff Jackson's, the rooms most likely would have been used for needy people. That speculation is unfounded. Deposition testimony from Plaintiff Red Bear indicated she may not have been asked about the occupant's identity and apparently would not have had a problem providing it. (Doc. 152-3, PgID 2217). The Director of NDN provided information on the group's rental of hotel rooms as a common practice. (Doc. 152-3, 2155-56, 2164). The Court notes that the Plaintiffs Cottier, Bowman, and Jackson went to the Grand Gateway around 10:30 in the morning. If the room would be used by a needy person, that might not have been until later in the day or evening. At that time, presumably, if asked for the proper identification it would have been supplied.

The Court denies Defendants' motion to dismiss Plaintiffs' § 1981 claims on the basis that they do not fall within the zone of interests of § 1981 and lack standing. Defendants' assertion that Plaintiffs Bowman, Cottier, and Jackson are not within the zone of interests because they were bystanders who did not speak and perhaps intended to use the rooms for needy people is unpersuasive. (Doc. 302, PgID 7244; Doc. 283, PgID 7129). More than "hurt feelings" resulted from the encounter with Nick Uhre. (Doc. 302, PgID 7257). The Court finds Bowman, Cottier, and Jackson sought to exercise their right to make a contract and fall

13

within the zone of interests of § 1981. The Court further finds that Plaintiff Red Bear is within the zone of interests of § 1981, in that she endeavored to rent a room and was prevented from doing so based on an allegedly pretextual local identification policy. That she would have had a needy person or domestic violence victim use the room does not foreclose her having standing, given explanations by Red Bear and Tilsen of how advocates for such people engage with hotel management in Rapid City.

## IV. Allegation Plaintiffs were bystanders who assumed the risk

Defendants argue Cottier, Bowman, and Jackson were merely bystanders who assumed the risk of injury. (Doc. 283, PgID 7132). As discussed in Section III., above, the Court rejects as a factual matter the notion that Cottier, Bowman, and Jackson were mere bystanders during the effort to rent rooms at the Grand Gateway and subsequent ejection by Nick Uhre. In turn, the Court rejects the notion that these Plaintiffs must demonstrate a close relationship to Alberta Eagle, who spoke to the desk clerk, or have a physical manifestation of distress. Defendants' reliance on *Nielson v. AT&T Corp.,* 597 N.W.2d 434 (S.D. 1999) is misplaced, given that the Court rejects the theory the Plaintiffs were mere bystanders.

The Court finds Plaintiffs Red Bear, Cottier, Bowman, and Jackson did not "assume the risk" they would suffer injuries from discrimination in that they, as

14

Defendants state, "purposefully and knowingly placed themselves within a confrontational situation that they all admitted they believed would likely happen, in fact, they all openly admitted that they welcomed and wanted the exact confrontation to happen because they all admitted that it was their collective plan to record that confrontation on video (to boot)." (Doc. 283, PgID 7133-74). This is a characterization that does not accord with Plaintiffs' depositions. Plaintiff Red Bear testified that she went to the Grand Gateway to rent a room and "[o]nce I was denied I was completely shocked. Like, I was really hoping it went a different way." (Doc. 169-16, PgID 3688; Doc. 274-1, PgID 6664). Plaintiff Bowman testified that after the clerk would not rent them a room and Nick Uhre came out "yelling and screaming at us to get out…I was just shocked…." (Doc. 274-5, PgID 6691-92). Plaintiff Cottier testified that "he did not expect to be denied a room." (Doc. 152-3, PgID 2292). Plaintiff Jackson testified she went to the hotel based on "feelings and sentiments of wanting to see, like, if this is true, if this was real, if they would really do what they said they were going to do." Doc. 152-3. PgID 2326).

This testimony does not indicate a desire on the part of plaintiffs to "want a confrontation" and "place themselves in a confrontational situation." There was no confrontation between these Plaintiffs and the desk clerk. Any confrontation

15

occurred only after Nick Uhre came into the lobby and screamed and yelled at the Plaintiffs before ejecting them from the hotel.

Defendants also assert there was a "plan" by Plaintiffs to ensure there was some kind of confrontation –"to ensure the risk happened" (Doc. 283, PgID 7143) -- because at least one of the Plaintiffs taped it. Defendants also characterize Bowman as a "tester" who went to the hotel "to collect evidence" which eliminates her having standing. (Doc. 302, PgID 7249). The deposition testimony provided to the Court contradicts this. Plaintiff Bowman testified there was no plan except to ask for rooms. (Doc.152-3, PgID 2364). Plaintiff Jackson testified going to the hotel was an "organic" decision and did not state there was any plan. (Doc. 152-3, PgID 2327). As noted above, the "confrontation" occurred when Nick Uhre came to the lobby, and according to Plaintiff Jackson, "yelling at us and pretty aggressively." (Doc. 152-3, PgID 2332; Doc. 274-4, PgID 6685).

Because the Court finds that Plaintiffs Cottier, Bowman, and Jackson were not merely bystanders to the effort to rent rooms at the Grand Gateway, did not assume the risk of injury from alleged discrimination, and did not have a plan to force a confrontation, the Court denies Defendants' motion for reconsideration and dismissal on these bases. (Doc. 282).

## V. "Tester" analysis

Defendants have repeated their arguments that Plaintiffs were "testers" who lack standing. The Court rejected this claim in its previous Order. (Doc. 279). Defendants add to the argument that Plaintiffs had only a "hypothetical plan" to give the rooms to needy people and therefore lack standing as testers. They assert that without a "concrete plan" to give the rooms to needy people coupled with their failure to follow up their rejection by Nick Uhre by making online reservations at the Grand Gateway or another hotel means they were merely testers without standing. The Court is not persuaded with this additional argument because Defendants appear to be adding a set of requirements Plaintiffs must have met to qualify for standing. The Court has analyzed the relevant factors to determine whether Plaintiffs have standing and were not merely "testers" who lack it. The Court has considered the arguments of the Parties and adheres to its analysis of the law governing standing on the part of Plaintiffs Red Bear, Cottier, Bowman, and Jackson. (Doc. 279). The Court denies Defendants' motion to dismiss Plaintiffs' § 1981 claims on the basis they were merely "testers" without standing.

## VI. Demonstration that "but for" Plaintiffs' race, they would not have suffered the loss of any federally protected right

Defendants assert that Plaintiffs "fail the 'but for' test," meaning that but for race, they would not have suffered the loss of a federally protected right, (Doc.

17

283, PgID 7139).  They cite *Comcast Corp. v. National Association of African American-Owned Media,* 589 U.S. 327, 341 (2020), for the proposition that a plaintiff must "plead and ultimately prove that, but for race, it would not have suffered the loss of a federally protected right."  Plaintiffs have sufficiently pled that racial discrimination is the basis for their § 1981 claims.  They have offered sufficient evidence in support of their claims to proceed to trial on them. Defendants cite as additional authority *Johnson v. Schulte*, 66 F. 4th 1110 (8th Cir. 2023).  That case is distinguishable, given the showing on summary judgment that the allegedly racially-motivated inhospitable treatment by defendant was based on restrictions adopted as a result of the COVID-19 pandemic and not as racial discrimination.  *Id.* at 1114-15.

In the case at bar, the Court has denied summary judgment because the standard for granting it has not been met.  The Parties will have the opportunity to present their claims and proffered defenses to the jury, which will determine whether Plaintiffs have proved their claims of discrimination under § 1981.

## CONCLUSION

Defendants close their reply to the motion for reconsideration under Rule 54(d) and for correction under Rule 60(b)(6) by asserting that Plaintiffs were bystanders at the Grand Gateway who assumed the risk they would be

discriminated against, and therefore lack standing.  Defendants further characterize

Plaintiffs' conduct as a "performative event" and claim they "sought a

confrontation" as they exercised "vigilante justice."  (Doc. 302, PgID 7259-60).

These descriptions to not accord with the view of the evidence available to

the Court in resolving the standing issue.  The Court adheres to the determinations

made with respect to the standing of Plaintiffs Bowman, Cottier, Jackson, and Red

Bear.  The Court finds reconsideration under Rule 54(d) is not warranted and

denies the motion in that regard.  The Court further finds correction of an order

under Rule 60(b)(6) is unwarranted.  The Court finds there is sufficient evidence to

proceed to trial on the § 1981 claims of Plaintiffs Red Bear, Cottier, Bowman, and

Jackson. Therefore, the Court denies the entirety of Defendants' motion at Doc.

282.

Accordingly, IT IS ORDERED that Defendants' motion for reconsideration,

relief from an order, and dismissal of the § 1981 claims of Plaintiffs Red Bear,

Cottier, Bowman, and Jackson is denied. (Doc. 282).

Dated this 6th day of June, 2025.

BY THE COURT:

_____
Lawrence L. Piersol
United States District Judge

19