UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |
|---|---|
| NDN COLLECTIVE, SUNNY RED BEAR, NICK COTTIER, BRE JACKSON, MARY BOWMAN and GEORGE BETTELYOUN, | * * * * |
| Plaintiffs, | * * |
| -vs- | * * |
| RETSEL CORPORATION, d/b/a GRAND GATEWAY HOTEL and d/b/a CHEERS SPORTS LOUNGE AND CASINO, | * * * * |
| Defendants. | * * |
| and | * * |
| RETSEL CORPORATION, d/b/a GRAND GATEWAY HOTEL and d/b/a CHEERS SPORTS LOUNGE AND CASINO and NICHOLAS UHRE, | * * * * * |
| Counterclaimants, | * * |
| -vs- | * * |
| NDN Collective, | * * |
| Counterclaim Defendant | * |

5:22-CV-05027-KES

Rapid City, South Dakota
Courtroom 2

December 5, 2025
2:03 p.m.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

TRANSCRIPT OF
PRETRIAL CONFERENCE HEARING

BEFORE THE HONORABLE KAREN E. SCHREIER,
UNITED STATES DISTRICT JUDGE

* * * * * * * * * *

Connie Heckenlaible, RPR, FCRR
225 S. Pierre, #420, Pierre, SD  57501
connie_heckenlaible@sdd.uscourts.gov · (605) 945-4627

APPEARANCES:

Counsel for Plaintiffs:          MR. TIMOTHY W. BILLION
                                 MR. BRENDAN V. JOHNSON
                                 Robins Kaplan LLP
                                 150 East 4th Place, Suite 704
                                 Sioux Falls, South Dakota  57104

Counsel for Defendants:          MR. DONALD G. DERRICO
(Via Video)                      MR. JASON C. SCOTT
                                 Gordon Rees Scully Mansukhani
                                 500 Mamaroneck Avenue, Suite 503
                                 Harrison, New York  10528

                                 MS. HAYLEE M. CULVER
                                 Gordon Rees Scully Mansukhani
                                 3523 45th Street South, Suite 100
                                 Fargo, North Dakota  58104

*Proceedings reported by realtime stenographic reporter; transcript produced with Computer-Aided Transcription*

I N D E X

MOTIONS:                                                                    PAGE

    Discussion Among the Court and Counsel Regarding
Trial Procedure..................................................................     5

    Discussion Among the Court and Counsel as to
Deposition Designations.....................................................     8

    Preliminary Settlement of Pretrial Jury Instructions.......    10

    Defendants Retsel's Motion for Relief Pursuant to
Rule 60(b), Docket No. 348.................................................    11

    Plaintiffs' and Defendants' Motions in Limine
Previously Ruled On...........................................................    11

    Defendants' Omnibus Motions in Limine, Docket No.
346.................................................................................    12

    Plaintiffs' Second Supplemental Motion in Limine,
Docket No. 341.................................................................    15

    Defendants' Omnibus Motions in Limine (No. 10),
Docket No. 346.................................................................    17

    Defendant's Objection to Plaintiffs' Designation of
Witnesses, Docket No. 361..................................................    19

    Plaintiffs' Objections to Defendants' Exhibit List (Dkt.
345) and Plaintiffs' Objections to Defendants' Witness List
(Dkt. 343), Docket Nos. 352 and 353.....................................    24

    Discussion Among the Court and Counsel as to
Representation of Retsel Corporation and Nicholas Uhre on
Counterclaim....................................................................    28

    Discussion Among the Court and Counsel Regarding
Security During Trial...........................................................    31

December 5, 2025

(The court reporter and some of the parties appeared via videoconference.  Use of the word "indiscernible" indicates something can be heard but cannot be understood.  Use of "audio gap" indicates audio cut out.)

(In open court at 2:03 p.m.)

THE COURT:  This is the time scheduled for a pretrial conference in the matter entitled NDN Collective, et al versus Retsel Corporation.

Would counsel please note their appearances for the record.

MR. BILLION:  Good afternoon, Your Honor, Tim Billion and Brendan Johnson for the plaintiffs.

THE COURT:  Is anybody appearing for the defendants?

MR. DERRICO:  Yes, as soon as I unmute myself, Your Honor. I apologize.

Donald Derrico of Gordon Rees for the defendants Retsel Corporation d/b/a Cheers.

MR. SCOTT:  And Jason Scott, also Gordon Rees, with Don Derrico for Retsel Corporation doing business as Cheers.

MS. CULVER:  Haylee Culver, also with Gordon Rees.

Do you want to introduce Hannah as well or note her appearance -- no, okay.

THE COURT:  Who is Hannah?

MR. DERRICO:  Hannah is my law clerk, your Honor.  She's a recent law clerk graduate who's just sitting in if that's okay with the

Court.

THE COURT:  Okay.  She's not making an appearance though?

MR. DERRICO:  No, Your Honor.

THE COURT:  All right.  This is scheduled for a trial to start on Monday, December 15th at 9 o'clock and we will be in Courtroom Number 1, which is the courtroom on the third floor here in Rapid City.  And I just wanted to go over a few things.

First of all, when I do jury selection, I like to tell the jury how long we think the trial will last.  And it appeared that both sides agreed on five days.  Is that still everybody's best prediction?

MR. BILLION:  For the plaintiffs, yes, I think that's accurate.  Maybe shorter, but I think that's probably fair.

MR. DERRICO:  I would agree, Your Honor.

THE COURT:  Okay.  So on a civil case, I seat all of the jurors who appear that day, and then each side will have strikes so we get down to either 11 or 12.  Each side will get an equal number of strikes.

So, for instance, if we had 22 jurors that appeared, each side would get 5 strikes getting us down to 12.  If we had 21 that appeared, each side would get 5 strikes getting us to 11.

But everybody will be seated and will be asked questions during the voir dire.

And I normally ask some preliminary questions, and then I have a -- a questionnaire that each juror will answer out loud.  And then I give both sides an opportunity to ask questions.

It appeared to me from Judge Piersol's pretrial conference that both sides had agreed to one hour -- or that's what he had allotted so that is the same amount of time that both sides will have during jury selection.

Both sides were also given 45 minutes for your opening statement.  So that will still apply.

There will not be any alternates so if someone is excused, we'll just proceed on with the number that remain.  Under the federal rules, as long as we have six jurors, that's sufficient on a civil trial.

And both sides will have an unlimited number of challenges for cause.

And I think the jury list will be provided to both sides soon, within the next couple of days.

Okay.  I understand they were just emailed to you.  So you both have gotten -- both sides have gotten them.

Just as with Judge Piersol, I encourage both sides to provide a list to the other side of any witnesses that they are going to be calling one day in advance.  It's not required, but I do highly encourage you to do that.

For exhibits, both sides should number their exhibits and provide them to the other side no later than noon on Friday before the trial begins.  And the plaintiffs should use numbers 1 through 200 and the defendant 201 through 300.

I couldn't tell from the defendants' list, some of them appear to already have numbers.  Are those the same numbers that the

plaintiff has used?

MR. DERRICO:  It would appear, Your Honor, that those were numbers that were allocated during depositions.  So we'll coordinate with Mr. Billions (sic) on that in terms of -- I think a lot of the evidence -- or some of evidence we're both seeking to put in, so we'll coordinate -- we've gotten along pretty well up to this point so we'll coordinate on that, Your Honor.

THE COURT:  Okay.  That would be great.

And again, just turn over a copy to the other side no later than noon on Friday with the number on them and provide the Court with a full set on noon the Friday before the trial begins.

It looked to me like the parties were trying to reach some agreements on stipulations regarding some of the exhibits.  And I know at the time that you made your filings, you were still talking.  Have you made any progress on reaching those stipulations?

MR. BILLION:  Your Honor, I think that we have stipulated to the admission of the videos that are on the exhibit list, and so I think when we prepare the final exhibit list to be submitted and provided to the Court, we'll note which exhibits are stipulated.  And I think there were a few additional exhibits that -- that the defense stipulated to as well.

THE COURT:  So if you do reach stipulations on the exhibits, whatever party is offering them should just offer them in front of the jury and indicate that the parties have stipulated to their admission, and then I'll receive them and that way the jury knows that they've been

admitted as an exhibit.

I saw that there are a number of deposition designations that have been made.  I can't -- I forgot to look back and see the deadline for filing any objections, but if you can just look at the pretrial order for the deadline on filing objections, if there are any objections, please try to get them in on time.

MR. BILLION:  Your Honor, I think we might --

MR. DERRICO:  Objections are due 12-11, Your Honor.

THE COURT:  Okay.  Thank you.

MR. BILLION:  Your Honor, if I might make a record on this.

I believe that the defense noticed or designated portions of, I believe, 25 different depositions, and my understanding is that the defense did that under the belief that in order to use depositions for impeachment purposes they needed to designate them.

So my understanding is that at least the vast majority of those depositions would not actually be read into the record, and so I would just like, you know, a little bit of guidance in terms of whether we have to object to, you know, 30 pages, single spaced of line entries between now and next Thursday or if Mr. Derrico actually intends to read all of those deposition transcripts into the record.

I don't think that would be proper in any event, Your Honor, because a vast number of those witnesses could appear in person, their testimony should be live.

THE COURT:  And to just clarify, if you're using something for impeachment, you don't need to designate it in advance.  The only thing

that should be designated are things that you plan to submit in your case-in-chief.

So, Mr. Derrico, are there things that you designated that would not be admitted in your case-in-chief?

MR. DERRICO:  Yes, and that was only a result of belt and suspenders on a case I had in federal court in New York, we were required to supply line by line of anything that was going to be read regardless.

THE COURT:  So can you clarify in your filings which --

MR. DERRICO:  I can, Your Honor.

THE COURT:  -- designations will be used in your case-in-chief?

MR. DERRICO:  I can, and I will, Your Honor.

THE COURT:  Okay.  Thank you.

MR. BILLION:  Well, Your Honor, and I'd ask that maybe, you know, because I think that this is going to resolve the vast, vast number of these designations, so perhaps, Mr. Derrico, if you could do that no later than Monday because this cuts into our time to prepare objections to these.

MR. DERRICO:  Of course.  Yes.

THE COURT:  Okay.  If you could do that by Monday -- by 5:00 p.m. on Monday.

MR. DERRICO:  Poor Hannah is going to have to work all weekend, but she's going to get it done.

THE COURT:  Thank you.

Next I wanted to take up the Court's proposed preliminary instructions to the jury.  Both sides provided some proposed edits on Preliminary Instruction Number 1.  And I think just before we started, my law clerk emailed a revision to Instruction Number 1 to both sides. I don't know if you had a chance to get that yet.

MS. CULVER:  I did receive that, Your Honor, on behalf of defendants and it looks like our requested change was incorporated in here.

MR. BILLION:  I've received it, Your Honor.  And it looks like -- it appears that incorporates our changes to Instruction Number 1.

I actually think the Court's prior version was correct with respect to the changes Defense requested.  I think that the adding the language that Connie Uhre was acting on behalf of defendant Retsel Corporation is actually not what's required by the law for vicarious liability.  She just has to be acting within the scope of her employment.

I also think that it's appropriate for a preliminary instruction like this to clarify, as the Court had in its original version, that Connie Uhre was an employee of Retsel at the time.

MR. DERRICO:  She was not an employee though.

MR. SCOTT:  She was on the board --

MR. DERRICO:  She's a board member.  That was it.

MR. BILLION:  She was also president.  I don't think there's any dispute about that.

THE COURT:  I'll go back and look at that language closer to

see what was alleged in the Complaint because these are the allegations of the parties that are set forth here.  So I'll revise that and let you know what the Court ultimately decides.

Are there any other matters in the preliminary instructions that anybody wanted to bring to my attention?

MR. BILLION:  No, Your Honor.

MR. DERRICO:  No, Your Honor.

THE COURT:  The defendant made a motion for reconsideration at Docket 348, and that's not yet ripe for a decision. The plaintiffs still have an opportunity to respond.  So I'll be issuing a written order ruling on that motion for reconsideration.

MR. DERRICO:  Thank you, Your Honor.

MR. BILLION:  Your Honor, if I may just briefly on that, I believe our response deadline would be the last Friday of trial, so I would ask that we get perhaps until -- with the holidays and everything -- maybe we get until the middle of January or so to provide a written response.

THE COURT:  Mr. Derrico.

MR. DERRICO:  I have no problem with that.

THE COURT:  You can have until January 15th.

MR. BILLION:  Thank you, Your Honor.

THE COURT:  With regard to the motions in limine, I just wanted both parties to know that Judge Piersol ruled on the vast majority of them in writing, and I agree with his rulings and will impose those same rulings and incorporate them as my own.

The defendant filed an omnibus motion in limine on November 21st at Docket 346.  And it appeared to me that it was mostly an incorporation of the ruling -- of the motions that they had previously made that Judge Piersol had previously ruled on.

The differences that I noted were in the first motion in limine, they expanded on the portion that deals with a reptile theory and identified what they believe a reptile theory is.  Judge Piersol had previously said that he wasn't familiar with that theory.  I've never heard of it before.

But basically, from what the defendant says, it's to prohibit argument by the plaintiffs regarding the community norm or community safety.

So I thought I should address that specific thing today.  Mr. Billion or Mr. Johnson, did you want to respond?

MR. BILLION:  Your Honor, I don't think that the added description really adds much to the motion in limine.  This was a generalized motion, and I think that if anything -- any questions we ask they think cross the line, they should object at the time.  I think it's -- I think it's too vague to rule on ahead of time, Your Honor.

THE COURT:  I think it's similar to a golden rule argument.

MR. DERRICO:  It is.

THE COURT:  Mr. Derrico, is it any different than a golden rule argument?

MR. DERRICO:  It's very much similar to a golden rule argument.  We just do not want plaintiff in the opening or in

questioning, either direct or in cross, to ask the jury to put themselves in the plaintiff's shoes, to demonize that the defendant and -- to -- as we indicated in the motion.

THE COURT:  So now that it's been described more fully, I'm going to grant the motion in limine to preclude a reptile theory evidence or argument.  And that just supplements Judge Piersol's ruling that he was precluding golden rule evidence or arguments.  But it appears to me to be basically the same theory.

The other minor changes to the motions in limine from what Judge Piersol ruled on don't affect the overall rulings so all of those rulings that he previously made still stand.

Another difference I noted was that in the prior motions in limine, number 9, is no longer included in the new filing.  And number 18 in the new filing is now new.

Number 18 is:  "The Court should dismiss all claims asserted against Defendant Connie Uhre, as she has passed away and no personal representative has been substituted."

The Court has already dismissed Connie Uhre in a written motion.

MR. SCOTT:  Yes, Your Honor.

THE COURT:  So I don't know what additional matter you want me to take up on this motion in limine because she's already been dismissed.

MR. SCOTT:  Yes.  At the time, Your Honor, that ruling had not been made which is why it was included at number 18 in the

motions in lim.  So, Your Honor, we agree.

THE COURT:  All right.  So that's denied as moot because she's been formally dismissed.

Is there anything else that the defendants have regarding motions in limine --

MR. SCOTT:  Yes, Your Honor.

THE COURT:  -- that wasn't previously addressed?

MR. SCOTT:  Yes, Your Honor.  Sorry.

Motion in limine Number 19 is new compared to the prior motions that were made.  And this is to preclude plaintiffs' expert witness, their only expert witness, from testifying of the opinions set forth in his report.  And I can discuss that if Your Honor would like.

THE COURT:  So Judge Piersol already entered an order dealing with this exact motion.  It wasn't as a motion -- it wasn't included in your original motions in limine before, but there was a separate motion that he ruled on.

MR. DERRICO:  We were unaware of that, Your Honor.

THE COURT:  It was at Docket 192, just to refresh your memory.  He denied the motion in limine.

MR. SCOTT:  Your Honor, our apologies.  We did not know that that was addressed previously.

THE COURT:  Okay.  Does that address all of your motions then?

MR. SCOTT:  Yes, Your Honor.  Sorry, yes, that does --

THE COURT:  Okay.

MR. SCOTT: -- that is all the motions in lim.

THE COURT: The plaintiff filed a supplemental motion in limine at Docket 241 (sic), and that's to exclude reference to Connie Uhre's death and absence from trial. And the defendant has filed an objection to that. So I'll hear argument.

Mr. Billion.

MR. BILLION: Thank you, Your Honor.

We don't think that Connie Uhre's death has any relevance to any fact or element that needs to be proved at this trial. She's going to be unavailable as a witness.

I think that the Eighth Circuit has a model jury instruction that the Court will use when deposition testimony from an unavailable witness is read. We think that model instruction is sufficient and we don't need to get into why she is unavailable. And we think that further references or really any references to the fact that she is deceased would really only serve to elicit sympathy from the jury for the family. And because it's not relevant to anything, we'd ask that it be excluded.

THE COURT: Did the defense want to argue?

MR. SCOTT: Yes, Your Honor. Again, Jason Scott.

Your Honor, the defense simply seeks to acknowledge to the jury as to why she is not present given the allegations in the lawsuit, and not simply -- it is not for the purpose of eliciting any type of sympathy, but really just to acknowledge the fact that she has passed away and really say no more than that.

MR. DERRICO: The same could be said for Hermus

Bettelyoun.  It's all going to have to be explained to the jury that he's not testifying live so I don't know that it's -- it's kind of a quid pro quo. They're both deceased.

THE COURT:  Is -- so only one person gets to argue on a motion.

MR. DERRICO:  Sorry, Judge.

THE COURT:  Is there a reason why the Court would not use the Eighth Circuit model instruction language?

MR. SCOTT:  There's no reason not to.  We're just asking that we -- that we are -- have the ability just to acknowledge that she is deceased and leave it at that, Your Honor, as to why we're reading testimony or she's not present.  And it's simply no more -- she's really the focal point of this lawsuit, and it does strike as odd that she wouldn't be present, and I think it's just -- it's just acknowledging a fact in the case, Your Honor.

THE COURT:  So the -- my recollection of the model instruction just indicates that the person is not available to testify.  It doesn't indicate the reason why they're not available.  So I'm asking, is there a reason why I wouldn't use that instruction?

MR. SCOTT:  Judge, she is the focal point of the underlying assault that's at issue and the Facebook post that's at issue.  She's such an important player in this lawsuit, if you will.  All we're seeking to acknowledge is that she's deceased and say nothing more.

THE COURT:  Mr. Billion.

MR. BILLION:  Your Honor, saying that she's unavailable is

more than sufficient.  I don't think that there needs to be anything added to that and explaining why is the prejudice.  It's eliciting sympathy necessarily.  An instruction that both Connie Uhre and Hermus Bettelyoun are unavailable is the appropriate approach.

MR. SCOTT:  Judge, I would just add, if I may, she's not a named party and there will be no sympathy, in our opinion, to saying that she's deceased and leaving it at that.

THE COURT:  So she is a key player in what happened in this matter.  And she is not available to testify.  I think the fact that much -- many of her actions come into play here, the jury would wonder why she's not available.

So I think I will just instruct the jury that she is deceased and the parties should not reference that.  And I don't think the fact that she's deceased would cause unfair prejudice to the plaintiffs.  So I'm denying the motion to exclude reference to her death and her absence from trial.

There was one other matter I wanted to bring up and it was the motion about not referencing that the defense attorneys were from outside of South Dakota and not referencing Brendan Johnson's dad being a U.S. Senator or that he had been U.S. Attorney.  And I just wanted to discuss that a little bit further and hear from both sides.

My thought is during jury selection, I have the attorneys introduce themselves to the jury and then I ask if any of the jurors know the lawyers.  Do I need -- does anything more than that need to be done?  Is there a reason why I need specifically to indicate that

Mr. Johnson had been U.S. Attorney and that his office has prosecuted people?  If the jurors don't recognize him, why do I need to bring that to their attention?

MR. BILLION:  Your Honor, the only additional concern that I would have with that is that if the question is posed to the juror, *Do you know any of the lawyers,* the jurors themselves may not, but if they did have family members that were prosecuted by Mr. --

THE COURT:  That's the question I ask, is, *Do you or any member of your immediate family, which would include your spouse, your children, your in-laws,* I define who the immediate family is so it applies to everyone, not just to the juror.

MR. BILLION:  Yeah, I think that would be sufficient, Your Honor, as long as we are then, you know, allowed to ask follow-up questions if anybody indicates that they do know him.

THE COURT:  Mr. Derrico.

MR. DERRICO:  Well, as long as -- as plaintiff's counsel doesn't say, *Do you know Mr. Johnson, the former U.S. Attorney or his dad was a Congress -- or a Senator,* as long as we're not throwing that out there, I'm fine with it and there's absolutely no reason for anyone to state that I'm not from South Dakota.  That would be unfair.

THE COURT:  And how many people are in your firm?  How many lawyers?

MR. DERRICO:  In total?

THE COURT:  Yes.

MR. DERRICO:  1,754.

THE COURT: And I'm only asking that because I usually ask the lawyers to identify the other people that they work with so that I know if the jurors have any potential conflicts with that, but I'm not going to have you list 1,700 people. So I'll just limit it to the lawyers that are present in the courtroom, have them introduced.

MR. DERRICO: Well, I do have a Rapid City office, Your Honor, and I believe you might know one of my partners, Susan Collins. So Susan is a partner of mine as well as her sister -- I mean, Sarah Collins and Susan Meyer, both practice in Rapid City, so it might be helpful to mention their names to the jury and obviously Haylee because she's from the area.

THE COURT: Mr. Billion.

MR. BILLION: Your Honor, I'm not sure that we need to preemptively raise those issues. I think likely simply identifying firm name, you know, does anyone know the lawyers in the room or any other lawyer with, you know, the Gordon Rees or the Robins Kaplan firm would be sufficient.

THE COURT: Is there any objection to that?

MR. DERRICO: No, Your Honor.

THE COURT: Okay. So we'll limit it to the lawyers that are present in the room and the firm names for both sides.

I thought there was one more motion dealing with an exhibit or exhibits.

MR. DERRICO: We did have an objection, Your Honor --

THE COURT: Yes.

MR. DERRICO:  -- to the plaintiffs calling Mr. and Mrs. White as witnesses at trial.  I don't know if that was what you're referencing.

THE COURT:  Yes, that's what I was trying to find. Unfortunately, my pile is so big it's hard to find things in this case.  So why don't you address your motion.

MR. DERRICO:  Yes, Your Honor.  It's very simple.  Mr. and Mrs. White were our -- are suing my client for a subsequent event they allege involve discrimination which occurred in 2023, which is a year after our event.  That's number one.  They are represented by Mr. Billions (sic).  That matter has yet to be adjudicated.  That is merely an allegation and it's a subsequent allegation.

Now, if it was a prior allegation, you might be able to argue that you could get it in, but to call them to talk about something that happened after and didn't involve Ms. Connie Uhre, it seems a bit tenuous at best, and what we could end up is having a trial within a trial because not all the witnesses available in the White matter would be called in this matter, and it -- it would just be confusing and quite honestly it's not fair.

They have all the witnesses that were there on the 21st of March as well as the 22nd of March, and those are the witnesses that are needed to testify as to what happened on those two days because, as Mr. Tilson testified to in his deposition, their claims involving the discrimination only involve those two days.  That's his testimony and he's the one that brought the lawsuit.  So those are the two days.  We're not talking about anything that happened after that and it would be

highly prejudicial and irrelevant.

THE COURT:  Mr. Billion.

MR. BILLION:  Thank you, Your Honor.

We listed Jessica and Ryan White as witnesses we may call. We intend to use them as rebuttal witnesses.  We fully expect that members of the Uhre family will testify along the following lines:  *We don't discriminate. We've never discriminated,* et cetera.  And so it's appropriate to elicit rebuttal testimony if that's the case, particularly where we believe there are some factual similarities between what happened with the Whites and what happened with the plaintiffs in this case.

I would also note, Your Honor, these witnesses were disclosed in this case, they were deposed in this case by Retsel, and so I don't think there's any prejudice or any surprise to calling them to act as rebuttal witnesses.

THE COURT:  So you're not calling them in your case-in-chief?

MR. BILLION:  We would call them -- I mean, we're going to call the Uhres in our case-in-chief, and if the Uhres testify in the way we expect they will, then we will call Whites later in our case to rebut that testimony, Your Honor.

MR. DERRICO:  Your Honor, I would object to any questions that involve anything that happened after March 22nd, 2022.  We're here to discuss what happened on the 21st and the 22nd, not what happened on the 23rd or any day thereafter other than obviously if

there was an admission or a Facebook or an email or something, of course, I would agree with you on that.  But if -- no, I would wholeheartedly disagree to any question --

THE COURT:  So wouldn't it -- wouldn't it be admissible under 404(b)?

MR. DERRICO:  I don't believe so, Your Honor.

THE COURT:  Why not?  It's an other bad act or another act being offered for another purpose.

MR. DERRICO:  The character -- we're -- my client adamantly denied that the Whites were discriminated against on the -- in 2023.  Adamantly.  As I said, we're going to end up having a trial within a trial.  We already have the witnesses that are going to talk about the 21st and 22nd.  What happens thereafter is irrelevant and they already entered into the consent decree by that point in time.

And he's proposing them as witnesses in the event that they testify, we've -- my questions are limited up until the 22nd.  And as I said, I will object to any questions that occur about any allegations of discrimination after that.  My client adamantly said they never discriminated.  And the question is whether or not they instituted a policy of discrimination.

THE COURT:  Mr. Billion.

MR. BILLION:  Your Honor, the question isn't whether they had a policy of discrimination.  The question is whether they actually discriminated, and we have to prove discriminatory intent.  We have to prove pattern, intent, and that's exactly why this comes in under 404(b)

and the element of discriminatory intent.

So if they're going to testify, as Mr. Derrico just described, which is that they ever discriminated, then it's only fair for us to be able to call that into question because if they're going to make that defense, then we get to challenge it.

MR. DERRICO: At that time. That's what we're talking about. We're not talking about after. We're talking about before. Did we discriminate at any time before that or as a result of Connie Uhre's Facebook post on the 21st or on the 22nd.

Now plaintiffs' counsel is seeking to expand that, the universe of that, which is not what the Complaint alleged, the Amended Complaint alleged or the -- the -- what Mr. -- Mr. Tilson testified to. He said, *We're not claiming that they discriminated after that.* We're only talking about those two days. Anything -- it would be so prejudicial because, as I said, it's not -- it's not an adjudicated matter. We're going to end up with a trial within a trial now.

THE COURT: Sometimes that happens with 404(b) evidence. But I find that it may be admissible under 404(b). It's evidence of another act being offered to rebut or to impeach evidence that's offered by the defendants. I don't know what that evidence is going to be so I can't rule at this point on whether it will be admitted or not, but I also can't exclude it at this point because I don't know what the evidence is that they would be offering to rebut. So I'm not excluding them as witnesses.

I find that they could be called as rebuttal witnesses. Their

testimony has been fully disclosed.  So there's adequate notice under 404(b), and I'll wait to rule on it once I hear what the remainder of the evidence is whether it's admissible or not.

MR. DERRICO:  Well, may I inquire of something, Your Honor?

THE COURT:  Sure.

MR. DERRICO:  Given your ruling now, I assume the Court would then preclude plaintiffs' counsel from mentioning that in their opening statement?

THE COURT:  Well, it's their risk if they mention it and the evidence isn't admissible later, that's the risk that they would have.

MR. DERRICO:  Well, I would then ask for a mistrial at that point in time.

THE COURT:  Right, that's the risk -- that's the risk that they would have if they mentioned it and it ends up not being admitted.  But that -- I don't -- I doubt that they'll take that risk, but that's their choice.

I think that addresses everybody's motions then.

MR. BILLION:  Your Honor, we did file some objections to the witness list and exhibit lists.  I don't know if the Court wants to address those now.

THE COURT:  So with regard to the exhibits, I don't usually rule on those in advance.  I rule on them as it comes up during the trial.  So I'm not going to rule on exhibits -- objections to exhibits at this time.

With regard to witnesses, go ahead.

MR. BILLION:  Thank you, Your Honor.  I just note that the plaintiffs' (sic) witness list -- and first of all, there was an original witness list timely filed by the Court's deadline, and then there was an amended witness list, which I don't recall if it was filed last night or this morning.

First of all, we would object to any witnesses that were not timely disclosed on a witness list and ask that the Court exclude any witnesses that were disclosed after that date.

But there are a number of witnesses listed even on the timely-filed witness list that cause some -- some real issues.  For example, I believe that three of the witnesses listed on there were never disclosed in discovery in this matter and so those witnesses should not testify under any circumstances.  I believe those witnesses were Pamela Giroux, Troy Lynn Peneaux and Selina Brewer.

Had they been disclosed, Your Honor, obviously we would have taken discovery on them, you know, possibly deposed them, but we never had that opportunity.  They were never disclosed.

The other objections we made, Your Honor, Brandon Ferguson, his testimony was previously excluded by one of Judge Piersol's rulings on the motions in limine.  And Marletta Red Cloud has no personal knowledge of any of the events in this case.

THE COURT:  Mr. Derrico.

MR. DERRICO:  Yes.  First, Ms. Red Cloud was mentioned countless times during the deposition of multiple parties and identified

as an employee, a Native American, who worked at the hotel for 24 years and still works at the hotel.  So they can't say they didn't know who she was.  They just decided not to depose her.  That does not preclude her.  She is known to the other parties and they had an opportunity to depose her.

With regard to the other three witnesses -- Troy Lynn Peneaux, Selina Brewer, and Pamela Giroux -- all three of those individuals were in fact exchanged.  Their names appear in the -- plaintiffs' counsel demanded the folios or registrations ledgers for people that stayed at the hotel, and they asked for some pretty specific time periods, including the time period leading up to March 21st and 22nd as well as thereafter.

The reason they don't want them to testify is because the folios clearly indicate that they did -- did rent to Native Americans on the 21st and 22nd.  They were staying at the hotel.

And the fact that they chose not to depose them is not my fault.  They knew who they were.  So they can't claim unfair surprise.  The reality is it undermines their claim and they don't like that.  So that's not my problem.  It's disproves what they're trying to say.  We did in fact rent to Native Americans after that ridiculous Facebook post, contrary to their assertion that we had a policy of not doing that.

THE COURT:  What about Brandon Ferguson?

MR. DERRICO:  May I have -- may I have my partner, Jason Scott, address that point, Your Honor, please?

THE COURT:  Yes.

MR. SCOTT:  Your Honor, I -- in plaintiffs' opposition papers, they say that Mr. Ferguson was already precluded -- excluded from testimony.  And they say Docket 229 at page 6.

Your Honor, in reviewing that, that is not what that document says.  That is referring to a protective order, and I would argue that's a very different issue than what plaintiff is raising here.  I read that page in that docket as not excluding testimony but making reference to a protective order only.  So I don't think it's already been ruled on, Your Honor.

THE COURT:  So since the defendants haven't responded in writing and you're citing things that I'm not aware of, do you want to file something in writing and attach whatever documents you're relying on?

MR. SCOTT:  Yes, we can do that, Your Honor.  Again, it's just a citation actually from plaintiff themself.

MR. DERRICO:  We will, Your Honor.

THE COURT:  I'm talking about with regard to Pamela Giroux, Troy Lynn Peneaux, Selina Brewer, Marletta Red Cloud, you're -- you're citing documents and things that I'm not familiar with.

MR. DERRICO:  We will, Your Honor.  Thank you for the opportunity.

THE COURT:  And when can you file that by?

MR. DERRICO:  Can we have it to you by Monday?

THE COURT:  Yes.

MR. BILLION:  And I do want to be very clear about one thing, Your Honor.  Marletta Red Cloud was disclosed.  The issue is that she

was not at any of the events involved in this complaint.  So by defendants' own motion in limine prohibiting witnesses from testifying about things they don't have personal knowledge of, that's why we think it should be excluded not because it was disclosed.

The other witnesses were not disclosed in discovery.  I'm looking right now at the initial disclosures that defendants submitted, they're not on there.  I guess, I don't know whether they submitted folios or not.  We looked.  And I think that even if a witness is mentioned in a document -- or one page of a document, that's not sufficient to satisfy a party's obligations under the rules to disclose witnesses.

Moreover, we asked specific interrogatories to identify witnesses, and they were never identified in response to those interrogatories, so I don't think it's sufficient to say that a name might have been mentioned once in a document.  They had an obligation to disclose these witnesses and they didn't do it, Your Honor.

THE COURT:  Well, whatever position the defendant is taking on why these people should be allowed to testify, put it in writing and file it by Monday, and if you're relying on disclosures or documents that had previously been disclosed in discovery, identify what those are. And then I'll let the plaintiffs do a reply by noon on Wednesday.

Anything else anybody wanted to bring up today?

MR. BILLION:  Yes, Your Honor.  So Retsel currently has counterclaims and so does Nick Uhre.  In Retsel's proposed jury instructions, defense counsel indicated they did not represent Nick

Uhre.

I've had some -- some recent conversations with Mr. Derrico as well, and he informed us that his firm, at least at that time, wasn't representing Retsel as a counterclaimant, only representing Retsel to defend the claims brought against it.  And he indicated that other counsel might be making an appearance at some point in time.  I am unaware of lawyers for Retsel or for Nick Uhre making any appearance.

Obviously, this presents a number of issues if we have counterclaimants asserting a claim at trial, either without counsel or without having submitted pretrial filings, and so I have some thoughts on how we should proceed, but maybe I'll pause there to let Mr. Derrico address the scope of his representation.

THE COURT:  Mr. Derrico.

MR. DERRICO:  Yes, thank you, Your Honor.

I have had discussions with John Pierce and Andrew Green, who are representing the Retsel Corporation in the lawsuit by the Whites, and it's my understanding that they -- they may be coming in on the counterclaim.  I have discussed with them the proposed verdict sheet and the questions.  That is my understanding that they will be filing a notice of appearance next week.

That's my understanding.  I'm not making any representations for them.  That is based upon my discussions with them, but we wanted to have a full verdict sheet available for the Court if and when that happens.

And that does not preclude me, I believe -- if Mr. Pierce and

Mr. Green decide not to, that does not preclude me from making a decision at that point in time whether or not I will be pursuing the counterclaims on Mr. Uhre's behalf and plaintiffs' counsel is in no way, shape, or form prejudiced by that.

THE COURT:  So what you're saying is if they don't make a notice of appearance on the counterclaims, you may still handle those matters yourself?

MR. DERRICO:  Yes.

THE COURT:  And how will I know if that has happened?

MR. DERRICO:  I will inform the Court next week on that.

THE COURT:  Do you know when Mr. Pierce and Mr. Green would -- would contemplate filing their notice of appearance?

MR. DERRICO:  Sooner rather than later I hope, Your Honor. I'm scheduled to speak to them later today.  I did already have one discussion with Mr. Green about this very issue.  I know that he was speaking to Mr. Uhre and they were discussing the terms and conditions of the representation on the counterclaim.

I will endeavor to have an answer for the Court by Wednesday, if that's okay?

THE COURT:  It is.  No later than 5:00 on Wednesday.

MR. DERRICO:  Yes, Your Honor.

THE COURT:  And if you decide -- if Mr. Pierce and Mr. Green decide not to represent Retsel Corporation and Nicholas Uhre on the counterclaims, and you decide not to represent Retsel Corporation and Nicholas Uhre on the counterclaims, then I assume you don't take any

position because you're not representing them, correct?

MR. DERRICO:  That is true.  And Mr. Uhre has indicated that he might proceed pro se on the counterclaim.

THE COURT:  So Wednesday, when you decide what you're doing -- and I think we'll know by Mr. -- what Mr. Pierce and Mr. Green are doing by Wednesday, can you -- I assume you have conversations with Mr. Uhre, if you can let the Court know if he's going to be proceeding pro se?

MR. DERRICO:  I will, Your Honor.

THE COURT:  The corporation cannot proceed pro se.  They have to be represented by counsel.

MR. DERRICO:  Understood.

THE COURT:  Okay.  And just so I make sure that I have the pronunciation correct, my understanding is that it's Uhre; is that right?

MR. DERRICO:  I believe that is correct, Your Honor.

THE COURT:  All right.  I just don't want to mispronounce it when I'm talking to the jury and then everybody else uses a different pronunciation.

Okay.  Anything else?

MR. DERRICO:  Nothing from the defendant, Your Honor.

Oh, Your Honor, I just did want to ask one question.

THE COURT:  Sure.

MR. DERRICO:  When we were retained on this case, we were contacted and advised that there had been some threats against prior counsel.  Obviously, I was a bit concerned about that.  And I have hired

private security.  I don't want to be assaulted or bothered or anything else the minute I leave the courtroom up until the point I go to my hotel.  I don't want people bothering me in a hotel or protesting my hotel.  So I hired private security.

I don't know if it's feasible or possible, but I would ask the Court that when I leave -- or my team leaves during the day, I would like to leave not from the front, but from a different exit away from any protest that may be there so that I can safely get to my hotel room unmolested.  I'm not --

THE COURT:  We don't really have another way out of the building.  The rest of it takes you into a secured parking lot where judges and federal employees park.  And it's locked.  If you're in there and you don't have a employee badge, you can't get out.  So we don't really have another option.

MR. DERRICO:  Okay.

MR. BILLION:  Your Honor, I would like --

MR. DERRICO:  I am --

MR. BILLION:  Go ahead, Mr. Derrico, finish up.

MR. DERRICO:  I'm not accusing Mr. Billions (sic) and obviously his firm of anything, and I'm not saying that I have received any specific threats.  I'm just relaying what was told to me by prior counsel and that caused me a bit of concern.

There have -- and I'll be quite honest with you, based upon everything that I've read and the videos I've seen of some actions of some of the players in this scenario, that threats have been made

against people -- physical threats to injure people.  And based upon that, I made a determination for my own safety, as well as the safety of my staff, that's what I was going to do.

THE COURT:  I guess all I can share with you is that I oftentimes leave the courthouse through the front door after I've sentenced someone to a pretty significant sentence, a lot of their family members are outside.  We have court security officers and deputy marshals that are patrolling the area and I have never felt threatened or concerned for my safety, and I think you'll feel the same way.

MR. DERRICO:  I appreciate that.

THE COURT:  If something happens, bring it to my attention and we can deal with it at that point.

MR. DERRICO:  Of course.

MR. BILLION:  And, Your Honor, I have a slightly different concern with this.

Obviously, I have no idea, you know, the communications that Mr. Derrico is referring to.  I haven't seen them.  I can't really address that aspect of it.

My concern -- and I'm not saying that Mr. Derrico would solicit this testimony -- is that I don't want any of this in front of the jury.  I don't want the jury to hear about, you know, threats or security.  I don't want the jury, when they're leaving, to see a bunch of armed security out front or anything like that.  So I would just ask that whatever measures Mr. Derrico takes not be referenced in front of the jury, that these threats not be referenced in front of the jury, and that

security not be visible in front of the jury, Your Honor.

MR. DERRICO:  Not unless I wanted a mistrial.  I would never say any such thing.  Inappropriate, and has nothing to do with this case.

MR. BILLION:  No, and I'm not saying you would, Mr. Derrico, I'm talking here about witnesses specifically.

MR. DERRICO:  No.  No, no, no.  Of course, I would -- I'll make 100 percent certain that witnesses -- my witnesses are forewarned that they're not to -- I mean, other than obviously the things that happened with Nick Uhre, and he's free to talk about or testify to what was said to him, but other than that, no.

THE COURT:  And I just encourage both sides to talk with your witnesses beforehand to make sure that they don't have any inappropriate contact with people from the other side.  Don't threaten the other side.  I would encourage them not to gather in the front of the building and demonstrate in any way because we will have jurors coming in and out through the front of the building, and you don't know how people are going to react to things.

So anything that both sides can do to try to limit or diminish anything that might impact the jury in any way, I would encourage.

MR. DERRICO:  Might I suggest -- I don't know if the Court can do this, but I know that, you know, juries are told not to go on social media or look up the participants or the parties or the lawyers on social media.  But there seems to be a lot of prolific -- on both sides I grant you -- social media postings about events.

I know what I'm going to tell my client, *No social media during this trial. I do not want any posting going on during this trial about the trial.* And I would hope that Mr. Billions (sic) will tell the same things to his clients.

THE COURT:  So if you're asking the Court to enter an order like that, I don't think that I can will.  People have First Amendment rights and nothing has been brought to my attention where I could impose a prior restraint.

I just encourage both sides to talk with your people and be reasonable so that we can make it through the trial.

MR. DERRICO:  We'll do.

THE COURT:  Shawn.

COURT SECURITY OFFICER:  Nothing with signs, graphics, names, statements --

MR. DERRICO:  Who is this guy?

COURT SECURITY OFFICER:  -- in or out of the courtroom too.  We'll have to take it and turned inside out outside.

THE COURT:  So it's the court security officer just reminding both sides to tell the people that come to the courthouse to not wear any clothing that has any insignias or inflammatory printing on them because they will not be allowed in the courthouse, and would have to go outside, turn their T-shirt or top on inside out and wear it into the courthouse.

So if you can just make sure your people are dressed appropriately without threats or signage or something that would

influence the jury, it will make it easier for everybody.

MR. BILLION:  Understood, Your Honor.

THE COURT:  Seeing nothing else, I think we're done.  We'll see everybody in a little over a week.

MR. BILLION:  Thank you, Your Honor.

MR. DERRICO:  Thank you very much, Your Honor.

(Conclusion of Hearing at 3:01 p.m.)

UNITED STATES DISTRICT COURT )
DISTRICT OF SOUTH DAKOTA        ) SS  CERTIFICATE OF REPORTER
CENTRAL DIVISION                )

I, Connie Heckenlaible, Official United States District Court Reporter, Registered Professional Reporter, Federal Certified Realtime Reporter, and Notary Public in and for the State of South Dakota, do hereby certify that the above and foregoing transcript, consisting of pages 1 through 36, inclusive, is a full, true, and complete transcript of the above-entitled proceedings.

I further certify that I am not a relative or employee or attorney or counsel of any of the parties hereto, nor a relative or employee of such attorney or counsel; nor do I have any interest in the outcome or events of the action.

IN TESTIMONY WHEREOF, I have hereto set my hand this 6th day of December, 2025, at Pierre, South Dakota.

/s/Connie Heckenlaible
Connie Heckenlaible, RPR, FCRR
Official Court Reporter
225 S. Pierre Street, #420
Post Office Box 7147
Pierre, South Dakota  57501
(605) 945-4627
connie_heckenlaible@sdd.uscourts.gov

Connie Heckenlaible, RPR, FCRR

**1**

**1** [5] - 5:7; 6:22; 10:3, 11
**1,700** [1] - 19:4
**1,754** [1] - 18:25
**10** [2] - 3:7, 14
**100** [2] - 2:9; 34:8
**10528** [1] - 2:7
**11** [4] - 3:8, 10; 5:17, 20
**12** [3] - 3:11; 5:17, 19
**12-11** [1] - 8:8
**15** [1] - 3:13
**150** [1] - 2:3
**15th** [2] - 5:6; 11:20
**17** [1] - 3:14
**18** [3] - 13:14, 25
**19** [2] - 3:16; 14:9
**192** [1] - 14:18

**2**

**200** [1] - 6:22
**201** [1] - 6:23
**2022** [1] - 21:23
**2023** [2] - 20:8; 22:10
**2025** [1] - 4:1
**21** [1] - 5:19
**21st** [7] - 12:2; 20:19; 21:24; 22:12; 23:9; 26:11, 15
**22** [1] - 5:18
**229** [1] - 27:3
**22nd** [8] - 20:20; 21:23; 22:13, 16; 23:9; 26:12, 15
**23rd** [1] - 21:25
**24** [2] - 3:18; 26:2
**241** [1] - 15:3
**25** [1] - 8:12
**28** [1] - 3:20
**2:03** [1] - 4:6

**3**

**30** [1] - 8:18
**300** [1] - 6:23
**31** [1] - 3:21
**341**...........................
...................................
.......... [1] - 3:13
**343** [1] - 3:18
**345** [1] - 3:17
**346** [1] - 12:2
**346**...........................
...................................

**..........** [1] - 3:14
**346**...........................
...................................
........................... [1] - 3:11
**348** [1] - 11:9
**348**...........................
........................ [1] - 3:8
**352** [1] - 3:18
**3523** [1] - 2:9
**353**...........................
......... [1] - 3:18
**361**...........................
........................ [1] - 3:16
**3:01** [1] - 36:7

**4**

**404(b** [4] - 22:5, 25; 23:17; 24:2
**404(b)** [1] - 23:18
**45** [1] - 6:5
**45th** [1] - 2:9
**4th** [1] - 2:3

**5**

**5** [4] - 3:4; 4:1; 5:19
**500** [1] - 2:6
**503** [1] - 2:6
**57104** [1] - 2:4
**58104** [1] - 2:9
**5:00** [2] - 9:22; 30:20

**6**

**6** [1] - 27:3
**60(b** [1] - 3:8

**7**

**704** [1] - 2:3

**8**

**8** [1] - 3:6

**9**

**9** [2] - 5:6; 13:13

**A**

**ability** [1] - 16:10
**absence** [2] - 15:4; 17:15
**absolutely** [1] - 18:19
**accurate** [1] - 5:12
**accusing** [1] - 32:19
**acknowledge** [4] - 15:20, 23; 16:10, 23
**acknowledging** [1] - 16:14
**act** [4] - 21:14; 22:7; 23:19
**acting** [2] - 10:14, 16
**actions** [2] - 17:10; 32:24
**adamantly** [3] - 22:9, 11, 18
**add** [1] - 17:5
**added** [2] - 12:15; 17:2
**adding** [1] - 10:13
**additional** [3] - 7:20; 13:21; 18:4
**address** [7] - 12:13; 14:22; 20:5; 24:20; 26:24; 29:12; 33:18
**addressed** [2] - 14:7, 21
**addresses** [1] - 24:18
**adds** [1] - 12:16
**adequate** [1] - 24:1
**adjudicated** [2] - 20:10; 23:15
**admissible** [4] - 22:4; 23:18; 24:3, 11
**admission** [3] - 7:17, 24; 22:1
**admitted** [4] - 8:1; 9:4; 23:21; 24:15
**advance** [3] - 6:18; 8:25; 24:23
**advised** [1] - 31:24
**affect** [1] - 13:10
**afternoon** [1] - 4:11
**agree** [4] - 5:14; 11:24; 14:1; 22:2
**agreed** [2] - 5:10; 6:2
**agreements** [1] - 7:13
**Aided** [1] - 2:12
**al** [1] - 4:8
**allegation** [3] - 20:11
**allegations** [3] - 11:1; 15:21; 22:17
**allege** [1] - 20:8
**alleged** [3] - 11:1; 23:11
**allocated** [1] - 7:3

**allotted** [1] - 6:2
**allowed** [3] - 18:13; 28:18; 35:21
**alternates** [1] - 6:7
**Amended** [1] - 23:11
**amended** [1] - 25:5
**Amendment** [1] - 35:6
**American** [1] - 26:1
**Americans** [2] - 26:14, 20
**amount** [1] - 6:3
**Andrew** [1] - 29:15
**answer** [2] - 5:24; 30:18
**apologies** [1] - 14:20
**apologize** [1] - 4:15
**appearance** [7] - 4:22; 5:2; 29:6, 20; 30:6, 12
**APPEARANCES** [1] - 2:1
**appearances** [1] - 4:10
**appeared** [6] - 4:2; 5:10, 18-19; 6:1; 12:2
**appearing** [1] - 4:13
**applies** [1] - 18:10
**apply** [1] - 6:6
**appreciate** [1] - 33:10
**approach** [1] - 17:4
**appropriate** [3] - 10:17; 17:4; 21:8
**appropriately** [1] - 35:25
**argue** [4] - 15:18; 16:4; 20:12; 27:5
**argument** [6] - 12:11, 20, 23, 25; 13:6; 15:5
**arguments** [1] - 13:7
**armed** [1] - 33:22
**aspect** [1] - 33:18
**assault** [1] - 16:21
**assaulted** [1] - 32:1
**asserted** [1] - 13:15
**asserting** [1] - 29:9
**assertion** [1] - 26:21
**assume** [3] - 24:7; 30:25; 31:6
**attach** [1] - 27:12
**attention** [4] - 11:5; 18:3; 33:11; 35:7
**Attorney** [3] - 17:20; 18:1, 17
**attorneys** [2] - 17:18, 22
**audio** [2] - 4:4
**available** [6] - 16:17;

17:9, 11; 20:16; 29:23
**Avenue** [1] - 2:6
**aware** [1] - 27:11

**B**

**bad** [1] - 22:7
**badge** [1] - 32:13
**based** [3] - 29:22; 32:23; 33:1
**beforehand** [1] - 34:13
**begins** [2] - 6:22; 7:11
**behalf** [3] - 10:6, 14; 30:3
**belief** [1] - 8:13
**belt** [1] - 9:5
**best** [2] - 5:11; 20:15
**Bettelyoun** [2] - 16:1; 17:4
**big** [1] - 20:4
**Billion** [7] - 4:11; 12:14; 15:6; 16:24; 19:12; 21:2; 22:21
**BILLION** [31] - 2:2; 4:11; 5:12; 7:16; 8:7, 10; 9:15; 10:9, 23; 11:6, 13, 21; 12:15; 15:7; 16:25; 18:4, 12; 19:13; 21:3, 18; 22:22; 24:19; 25:2; 27:24; 28:23; 32:16, 18; 33:14; 34:5; 36:2, 5
**Billions** [4] - 7:4; 20:10; 32:19; 35:3
**board** [2] - 10:21
**bothered** [1] - 32:1
**bothering** [1] - 32:3
**Brandon** [2] - 25:19; 26:22
**BRENDAN** [1] - 2:2
**Brendan** [2] - 4:12; 17:19
**Brewer** [3] - 25:15; 26:7; 27:17
**briefly** [1] - 11:13
**bring** [5] - 11:5; 17:17; 18:2; 28:22; 33:11
**brought** [3] - 20:24; 29:5; 35:7
**building** [3] - 32:11; 34:16
**bunch** [1] - 33:22
**business** [1] - 4:19

## C

cannot [2] - 4:4; 31:10
case [17] - 5:15; 9:2, 4, 6, 12; 16:15; 20:4; 21:8, 11, 13, 17, 19-20; 25:22; 31:23; 34:4
case-in-chief [5] - 9:2, 4, 12; 21:17, 19
caused [1] - 32:22
certain [1] - 34:8
cetera [1] - 21:7
challenge [1] - 23:5
challenges [1] - 6:10
chance [1] - 10:5
change [1] - 10:7
changes [3] - 10:10, 13; 13:9
character [1] - 22:9
Cheers [2] - 4:17, 19
chief [5] - 9:2, 4, 12; 21:17, 19
children [1] - 18:10
choice [1] - 24:17
chose [1] - 26:16
Circuit [2] - 15:11; 16:8
circumstances [1] - 25:14
citation [1] - 27:14
citing [2] - 27:11, 18
City [3] - 5:7; 19:6, 9
civil [2] - 5:15; 6:9
claim [3] - 26:17; 29:9
claiming [1] - 23:13
claims [3] - 13:15; 20:22; 29:5
clarify [3] - 8:24; 9:9; 10:18
clear [1] - 27:24
clearly [1] - 26:14
clerk [3] - 4:24; 10:4
client [4] - 20:7; 22:9, 18; 35:1
clients [1] - 35:4
closer [1] - 10:25
clothing [1] - 35:20
Cloud [4] - 25:22, 24; 27:17, 25
Collective [1] - 4:8
Collins [2] - 19:7, 9
coming [2] - 29:17; 34:17
communications [1] - 33:16
community [2] - 12:11
compared [1] - 14:9
complaint [1] - 28:1

Complaint [3] - 11:1; 23:11
Computer [1] - 2:12
Computer-Aided [1] - 2:12
concern [4] - 18:4; 32:22; 33:15, 19
concerned [2] - 31:25; 33:9
Conclusion [1] - 36:7
conditions [1] - 30:17
conference [2] - 4:8; 6:1
conflicts [1] - 19:3
confusing [1] - 20:17
Congress [1] - 18:18
Connie [9] - 10:14, 18; 13:16, 18; 15:3, 8; 17:3; 20:14; 23:8
consent [1] - 22:14
contact [1] - 34:14
contacted [1] - 31:24
contemplate [1] - 30:12
contrary [1] - 26:21
conversations [2] - 29:2; 31:6
coordinate [3] - 7:3, 6
copy [1] - 7:9
Corporation [8] - 3:19; 4:9, 17, 19; 10:15; 29:16; 30:23
corporation [1] - 31:10
counsel [12] - 4:10; 18:16; 23:10; 24:8; 26:9; 28:25; 29:6, 9; 30:3; 31:11, 25; 32:22
Counsel [6] - 2:2, 5; 3:4, 19, 21
counterclaim [3] - 29:18; 30:17; 31:3
Counterclaim............ .............................. .............................. [1] - 3:20
counterclaimant [1] - 29:4
counterclaimants [1] - 29:9
counterclaims [5] - 28:24; 30:3, 6, 24
countless [1] - 25:25
couple [1] - 6:13
course [4] - 9:20; 22:2; 33:13; 34:7
Court's [3] - 10:1, 12; 25:4
courthouse [4] - 33:5;

35:19, 21, 23
courtroom [4] - 5:7; 19:5; 32:2; 35:16
Courtroom [1] - 5:6
cross [2] - 12:18; 13:1
CULVER [3] - 2:8; 4:20; 10:6
Culver [1] - 4:20
cut [1] - 4:5
cuts [1] - 9:18

## D

d/b/a [1] - 4:17
dad [2] - 17:19; 18:18
Dakota [4] - 2:4, 9; 17:19; 18:20
date [1] - 25:9
days [6] - 5:11; 6:13; 20:21, 23-24; 23:14
deadline [4] - 8:3, 5; 11:14; 25:4
deal [1] - 33:12
dealing [2] - 14:14; 19:22
deals [1] - 12:6
death [3] - 15:4, 8; 17:15
deceased [7] - 15:15; 16:3, 11, 23; 17:7, 12, 14
December [2] - 4:1; 5:6
decide [5] - 30:1, 22-24; 31:4
decided [1] - 26:3
decides [1] - 11:3
decision [2] - 11:9; 30:2
decree [1] - 22:14
defend [1] - 29:5
defendant [9] - 6:23; 10:14; 11:8; 12:1, 10; 13:2; 15:4; 28:17; 31:20
Defendant [1] - 13:16
Defendant's [1] - 3:15
Defendants [2] - 2:5; 3:8
defendants [7] - 4:13, 16; 10:7; 14:4; 23:20; 27:10; 28:6
Defendants' [5] - 3:9, 11, 14, 17
defendants' [2] - 6:24; 28:2
Defense [1] - 10:13
defense [8] - 7:20; 8:11, 13; 15:18, 20;

17:18; 23:4; 28:25
define [1] - 18:10
demanded [1] - 26:9
demonize [1] - 13:2
demonstrate [1] - 34:16
denied [3] - 14:2, 19; 22:10
denying [1] - 17:15
depose [3] - 26:3, 5, 16
deposed [2] - 21:13; 25:17
deposition [5] - 8:2, 20; 15:12; 20:22; 25:25
Deposition [1] - 3:6
depositions [4] - 7:3; 8:12, 16
deputy [1] - 33:7
Derrico [18] - 4:16, 19; 8:19; 9:3, 17; 11:18; 12:22; 18:15; 23:2; 25:23; 29:2, 11, 13; 32:18; 33:17, 19, 24; 34:5
DERRICO [64] - 2:5; 4:14, 24; 5:4, 14; 7:2; 8:8; 9:5, 10, 13, 20, 23; 10:20, 22; 11:7, 12, 19; 12:21, 24; 14:17; 15:25; 16:6; 18:16, 23, 25; 19:6, 19, 24; 20:1, 6; 21:22; 22:6, 9; 23:6; 24:4, 7, 12; 25:24; 26:23; 27:15, 19, 22; 29:14; 30:8, 10, 13, 21; 31:2, 9, 12, 15, 20, 23; 32:15, 17, 19; 33:10, 13; 34:2, 7, 21; 35:11, 15; 36:6
described [2] - 13:4; 23:2
description [1] - 12:16
designate [2] - 8:14, 25
designated [3] - 8:11; 9:1, 3
Designation [1] - 3:15
designations [3] - 8:2; 9:11, 17
Designations............ .............................. ............. [1] - 3:6
determination [1] - 33:2
difference [1] - 13:12
differences [1] - 12:5

different [6] - 8:12; 12:22; 27:6; 31:17; 32:7; 33:14
diminish [1] - 34:19
dire [1] - 5:22
direct [1] - 13:1
disagree [1] - 22:3
disclose [2] - 28:10, 16
disclosed [11] - 21:12; 24:1; 25:8, 13, 16, 18; 27:25; 28:4, 20
disclosures [2] - 28:6, 19
discovery [4] - 25:13, 17; 28:5, 20
discriminate [2] - 21:7; 23:8
discriminated [6] - 21:7; 22:10, 19, 24; 23:3, 13
discrimination [5] - 20:8, 23; 22:18, 20, 23
discriminatory [2] - 22:24; 23:1
discuss [3] - 14:12; 17:21; 21:24
discussed [1] - 29:18
discussing [1] - 30:16
Discussion [4] - 3:4, 19, 21
discussion [1] - 30:15
discussions [2] - 29:15, 22
dismiss [1] - 13:15
dismissed [3] - 13:18, 23; 14:3
disproves [1] - 26:19
dispute [1] - 10:24
Dkt [2] - 3:17
docket [1] - 27:7
Docket [11] - 3:8, 11, 13-14, 16, 18; 11:9; 12:2; 14:18; 15:3; 27:3
document [4] - 27:4; 28:9, 15
documents [3] - 27:12, 18; 28:19
Don [1] - 4:18
DONALD [1] - 2:5
Donald [1] - 4:16
door [1] - 33:5
doubt [1] - 24:16
dressed [1] - 35:24
due [1] - 8:8
During [1] - 3:21
during [9] - 5:22; 6:3; 7:3; 17:22; 24:23;

25:25; 32:6; 35:1

## E

easier [1] - 36:1
East [1] - 2:3
edits [1] - 10:2
Eighth [2] - 15:11; 16:8
element [2] - 15:9; 23:1
elicit [2] - 15:16; 21:8
eliciting [2] - 15:22; 17:2
email [1] - 22:1
emailed [2] - 6:14; 10:4
employee [4] - 10:19; 26:1; 32:13
employees [1] - 32:12
employment [1] - 10:16
encourage [6] - 6:16, 18; 34:12, 15, 20; 35:9
endeavor [1] - 30:18
ends [1] - 24:15
enter [1] - 35:5
entered [2] - 14:13; 22:13
entitled [1] - 4:8
entries [1] - 8:18
equal [1] - 5:17
et [2] - 4:8; 21:7
event [4] - 8:21; 20:7, 9; 22:15
events [3] - 25:22; 28:1; 34:25
evidence [11] - 7:5; 13:5, 7; 23:17-20, 22; 24:3, 11
exact [1] - 14:14
exactly [1] - 22:25
example [1] - 25:12
exchanged [1] - 26:8
exclude [4] - 15:3; 17:15; 23:22; 25:8
excluded [4] - 15:17; 25:20; 27:2; 28:4
excluding [2] - 23:23; 27:7
excused [1] - 6:7
exit [1] - 32:7
expand [1] - 23:10
expanded [1] - 12:6
expect [2] - 21:5, 20
expert [2] - 14:10
explained [1] - 16:1
explaining [1] - 17:2

## F

Facebook [4] - 16:21; 22:1; 23:9; 26:20
factual [1] - 21:9
Falls [1] - 2:4
familiar [2] - 12:8; 27:18
family [6] - 15:16; 18:7, 9-10; 21:6; 33:6
Fargo [1] - 2:9
fault [1] - 26:17
feasible [1] - 32:5
federal [3] - 6:8; 9:6; 32:12
felt [1] - 33:8
Ferguson [3] - 25:20; 26:22; 27:2
few [2] - 5:8; 7:20
file [4] - 24:19; 27:11, 21; 28:19
filed [6] - 12:1; 15:2, 4; 25:4, 11
filing [6] - 8:4; 13:13; 29:20; 30:12
filings [3] - 7:14; 9:9; 29:10
final [1] - 7:18
fine [1] - 18:19
finish [1] - 32:18
firm [6] - 18:21; 19:14, 17, 21; 29:3; 32:20
First [1] - 35:6
first [5] - 5:9; 12:5; 25:3, 7, 24
five [1] - 5:11
floor [1] - 5:7
focal [2] - 16:13, 20
folios [3] - 26:9, 14; 28:8
follow [1] - 18:13
follow-up [1] - 18:13
following [1] - 21:6
forewarned [1] - 34:9
forgot [1] - 8:3
form [1] - 30:4
formally [1] - 14:3
former [1] - 18:17
forth [2] - 11:2; 14:12
free [1] - 34:10
Friday [4] - 6:21; 7:10; 11:14
front [10] - 7:23; 32:7; 33:5, 20, 23-25; 34:1, 15, 17
full [2] - 7:11; 29:23
fully [3] - 13:4; 21:5; 24:1

## G

gap [1] - 4:4
gather [1] - 34:15
generalized [1] - 12:17
Giroux [3] - 25:15; 26:7; 27:16
given [3] - 6:5; 15:21; 24:7
golden [4] - 12:20, 22, 24; 13:7
Gordon [6] - 2:6, 8; 4:16, 18, 20; 19:16
graduate [1] - 4:25
grant [2] - 13:5; 34:25
graphics [1] - 35:13
great [1] - 7:8
Green [1] - 29:15
green [5] - 30:1, 11, 15, 22; 31:5
guess [2] - 28:7; 33:4
guidance [1] - 8:17
guy [1] - 35:15

## H

handle [1] - 30:6
Hannah [4] - 4:21, 23-24; 9:23
hard [1] - 20:4
Harrison [1] - 2:7
Haylee [2] - 4:20; 19:10
HAYLEE [1] - 2:8
helpful [1] - 19:10
Hermus [2] - 15:25; 17:4
highly [2] - 6:18; 21:1
hired [2] - 31:25; 32:4
holidays [1] - 11:15
honest [1] - 32:23
honestly [1] - 20:18
hope [2] - 30:13; 35:3
hotel [8] - 26:1, 10, 15; 32:3, 8
hour [1] - 6:2

## I

idea [1] - 33:16
identified [3] - 12:7; 25:25; 28:13
identifying [1] - 19:14
immediate [2] - 18:9
impact [1] - 34:20
impeach [1] - 23:19

impeachment [2] - 8:14, 25
important [1] - 16:22
impose [2] - 11:24; 35:8
in-laws [1] - 18:10
inappropriate [2] - 34:3, 14
include [1] - 18:9
included [3] - 13:13, 25; 14:15
including [1] - 26:11
incorporate [1] - 11:25
incorporated [1] - 10:7
incorporates [1] - 10:10
incorporation [1] - 12:3
indicate [4] - 7:24; 16:18; 17:25; 26:14
indicated [4] - 13:3; 28:25; 29:5; 31:2
indicates [4] - 4:3; 16:17; 18:14
indiscernible [1] - 4:3
individuals [1] - 26:8
inflammatory [1] - 35:20
influence [1] - 36:1
inform [1] - 30:10
informed [1] - 29:3
initial [1] - 28:6
injure [1] - 33:1
inquire [1] - 24:4
insignias [1] - 35:20
instance [1] - 5:18
instituted [1] - 22:19
instruct [1] - 17:12
Instruction [3] - 10:3, 10
instruction [7] - 10:17; 15:11, 13; 16:8, 17, 19; 17:3
instructions [3] - 10:2; 11:4; 28:25
Instructions...... [1] - 3:7
intend [1] - 21:5
intends [1] - 8:19
intent [3] - 22:24; 23:1
interrogatories [2] - 28:12, 14
introduce [2] - 4:21; 17:23
introduced [1] - 19:5
involve [4] - 20:8, 14, 23; 21:23
involved [1] - 28:1

involving [1] - 20:22
irrelevant [2] - 21:1; 22:13
issue [5] - 16:21; 27:6, 25; 30:15
issues [3] - 19:14; 25:11; 29:8
issuing [1] - 11:10

## J

January [2] - 11:16, 20
JASON [1] - 2:5
Jason [3] - 4:18; 15:19; 26:23
Jessica [1] - 21:4
John [1] - 29:15
Johnson [4] - 4:12; 12:14; 18:1, 17
JOHNSON [1] - 2:2
Johnson's [1] - 17:19
Judge [12] - 6:1, 16; 11:23; 12:4, 7; 13:6, 10; 14:13; 16:6, 20; 17:5; 25:21
judges [1] - 32:12
juries [1] - 34:22
juror [3] - 5:24; 18:5, 11
jurors [8] - 5:15, 18; 6:9; 17:23; 18:2, 6; 19:3; 34:16
Jury [1] - 3:7
jury [27] - 5:9; 6:3, 12; 7:24; 10:2; 13:1; 15:11, 16, 21; 16:1; 17:10, 12, 22-23; 19:10; 28:24; 31:17; 33:21, 25; 34:1, 20; 36:1

## K

Kaplan [2] - 2:3; 19:16
key [1] - 17:8
known [1] - 26:4

## L

language [3] - 10:14, 25; 16:8
last [3] - 5:10; 11:14; 25:5
law [4] - 4:24; 10:4, 15
laws [1] - 18:10
lawsuit [5] - 15:21; 16:13, 22; 20:24;

29:16
**lawyer** [1] - 19:16
**lawyers** [9] - 17:24; 18:6, 22; 19:2, 4, 15, 20; 29:7; 34:23
**leading** [1] - 26:11
**leaves** [1] - 32:6
**leaving** [2] - 17:7; 33:22
**ledgers** [1] - 26:9
**liability** [1] - 10:16
**likely** [1] - 19:14
**lim** [2] - 14:1; 15:1
**Limine** [4] - 3:9, 11-12, 14
**limine** [15] - 11:22; 12:1, 5, 16; 13:5, 9, 13, 22; 14:5, 9, 15, 19; 15:3; 25:21; 28:2
**limit** [3] - 19:4, 20; 34:19
**limited** [1] - 22:16
**List** [2] - 3:17
**list** [12] - 6:12, 17, 24; 7:17; 19:4; 24:20; 25:3-5, 8, 11
**listed** [3] - 21:4; 25:10, 12
**lists** [1] - 24:20
**LLP** [1] - 2:3
**locked** [1] - 32:12
**loud** [1] - 5:24
**Lynn** [3] - 25:15; 26:6; 27:17

## M

**majority** [2] - 8:15; 11:24
**Mamaroneck** [1] - 2:6
**Mansukhani** [2] - 2:6, 8
**March** [4] - 20:20; 21:23; 26:11
**Marletta** [3] - 25:21; 27:17, 25
**marshals** [1] - 33:8
**matter** [9] - 4:8; 13:21; 17:9, 17; 20:10, 16-17; 23:15; 25:13
**matters** [2] - 11:4; 30:7
**mean** [3] - 19:8; 21:18; 34:9
**measures** [1] - 33:24
**media** [4] - 34:23-25; 35:1
**member** [2] - 10:22; 18:9

**members** [3] - 18:7; 21:6; 33:7
**memory** [1] - 14:19
**mention** [2] - 19:10; 24:10
**mentioned** [4] - 24:15; 25:24; 28:9, 15
**mentioning** [1] - 24:8
**merely** [1] - 20:10
**Meyer** [1] - 19:9
**middle** [1] - 11:16
**mine** [1] - 19:8
**minor** [1] - 13:9
**minute** [1] - 32:2
**minutes** [1] - 6:5
**mispronounce** [1] - 31:16
**mistrial** [2] - 24:12; 34:2
**model** [4] - 15:11, 13; 16:8, 16
**Monday** [6] - 5:6; 9:18, 21-22; 27:22; 28:19
**moot** [1] - 14:2
**moreover** [1] - 28:12
**morning** [1] - 25:6
**Motion** [2] - 3:8, 12
**motion** [22] - 11:8, 11; 12:1, 5, 16-17; 13:3, 5, 19, 22; 14:9, 14, 16, 19; 15:2; 16:5; 17:15, 18; 19:22; 20:5; 28:2
**MOTIONS** [1] - 3:3
**motions** [12] - 11:22; 12:3; 13:9, 12; 14:1, 5, 10, 15, 22; 15:1; 24:18; 25:21
**Motions** [3] - 3:9, 11, 14
**multiple** [1] - 25:25

## N

**named** [1] - 17:6
**Native** [3] - 26:1, 14, 20
**NDN** [1] - 4:8
**never** [9] - 12:8; 21:7; 22:18; 25:12, 18; 28:13; 33:8; 34:2
**New** [2] - 2:7; 9:6
**new** [4] - 13:13; 14:9
**Nicholas** [3] - 3:19; 30:23, 25
**Nick** [4] - 28:24; 29:7; 34:10
**night** [1] - 25:5
**noon** [4] - 6:21; 7:10;

28:21
**norm** [1] - 12:11
**normally** [1] - 5:23
**North** [1] - 2:9
**Nos** [1] - 3:18
**note** [5] - 4:10, 21; 7:19; 21:12; 25:2
**noted** [2] - 12:5; 13:12
**notice** [4] - 24:1; 29:20; 30:6, 12
**noticed** [1] - 8:11
**November** [1] - 12:2
**Number** [5] - 5:7; 10:3, 11; 14:9
**number** [15] - 5:17; 6:8, 10, 20; 7:10; 8:2, 22; 9:16; 13:13, 15, 25; 20:9; 25:10; 29:8
**numbers** [4] - 6:22, 25; 7:3

## O

**o'clock** [1] - 5:6
**object** [5] - 8:18; 12:18; 21:22; 22:17; 25:7
**objection** [3] - 15:5; 19:18, 24
**Objection** [1] - 3:15
**objections** [8] - 8:4, 8; 9:18; 24:19, 24; 25:19
**Objections** [2] - 3:17
**obligation** [1] - 28:15
**obligations** [1] - 28:10
**odd** [1] - 16:13
**office** [2] - 18:1; 19:6
**OFFICER** [2] - 35:13, 16
**officer** [1] - 35:18
**officers** [1] - 33:7
**Omnibus** [2] - 3:11, 14
**omnibus** [1] - 12:1
**On.............................
...............................
..** [1] - 3:10
**open** [1] - 4:6
**opening** [3] - 6:5; 12:25; 24:9
**opinion** [1] - 17:6
**opinions** [1] - 14:11
**opportunity** [5] - 5:25; 11:10; 25:18; 26:5; 27:20
**opposition** [1] - 27:1
**option** [1] - 32:14

**order** [7] - 8:4, 13; 11:11; 14:13; 27:5, 8; 35:5
**original** [3] - 10:18; 14:15; 25:3
**outside** [4] - 17:19; 33:7; 35:17, 22
**overall** [1] - 13:10
**own** [3] - 11:25; 28:2; 33:2

## P

**p.m** [3] - 4:6; 9:22; 36:7
**page** [3] - 27:3, 6; 28:9
**PAGE** [1] - 3:3
**pages** [1] - 8:18
**Pamela** [3] - 25:14; 26:7; 27:16
**papers** [1] - 27:1
**park** [1] - 32:12
**parking** [1] - 32:11
**participants** [1] - 34:23
**particularly** [1] - 21:8
**parties** [9] - 4:2; 7:12, 24; 11:2, 23; 17:13; 25:25; 26:4; 34:23
**partner** [2] - 19:8; 26:23
**partners** [1] - 19:7
**party** [2] - 7:23; 17:6
**party's** [1] - 28:10
**passed** [2] - 13:16; 15:23
**patrolling** [1] - 33:8
**pattern** [1] - 22:25
**pause** [1] - 29:11
**Peneaux** [3] - 25:15; 26:7; 27:17
**percent** [1] - 34:8
**period** [1] - 26:11
**periods** [1] - 26:11
**personal** [3] - 13:17; 25:22; 28:3
**physical** [1] - 33:1
**Pierce** [1] - 29:15
**pierce** [4] - 29:25; 30:11, 22; 31:5
**Piersol** [6] - 6:16; 11:23; 12:4, 7; 13:10; 14:13
**Piersol's** [3] - 6:1; 13:6; 25:21
**pile** [1] - 20:4
**plaintiff** [5] - 7:1; 12:25; 15:2; 27:6, 14
**plaintiff's** [2] - 13:2;

18:16
**Plaintiffs** [1] - 2:2
**plaintiffs** [9] - 4:12; 5:12; 6:22; 11:10; 12:11; 17:14; 20:1; 21:10; 28:21
**Plaintiffs'** [5] - 3:9, 12, 15, 17
**plaintiffs'** [7] - 14:10; 23:10; 24:8; 25:3; 26:9; 27:1; 30:3
**plan** [1] - 9:1
**play** [1] - 17:10
**player** [2] - 16:22; 17:8
**players** [1] - 32:25
**policy** [3] - 22:20, 23; 26:21
**poor** [1] - 9:23
**portion** [1] - 12:6
**portions** [1] - 8:11
**posed** [1] - 18:5
**position** [2] - 28:17; 31:1
**possible** [1] - 32:5
**possibly** [1] - 25:17
**post** [3] - 16:21; 23:9; 26:20
**posting** [1] - 35:2
**postings** [1] - 34:25
**potential** [1] - 19:3
**practice** [1] - 19:9
**preclude** [6] - 13:5; 14:10; 24:8; 26:4; 29:25; 30:1
**precluded** [1] - 27:2
**precluding** [1] - 13:7
**prediction** [1] - 5:11
**preemptively** [1] - 19:14
**prejudice** [3] - 17:2, 14; 21:14
**prejudiced** [1] - 30:4
**prejudicial** [2] - 21:1; 23:14
**Preliminary** [2] - 3:7; 10:3
**preliminary** [4] - 5:23; 10:1, 17; 11:4
**prepare** [2] - 7:18; 9:18
**present** [5] - 15:21; 16:12, 14; 19:5, 21
**presents** [1] - 29:8
**president** [1] - 10:23
**pretrial** [4] - 4:7; 6:1; 8:4; 29:10
**Pretrial** [1] - 3:7
**pretty** [3] - 7:6; 26:10; 33:6
**previously** [8] - 12:4,

8; 13:11; 14:7, 21; 25:20; 28:20
**Previously** [1] - 3:10
**printing** [1] - 35:20
**private** [2] - 32:1, 4
**pro** [4] - 16:2; 31:3, 8, 10
**problem** [2] - 11:19; 26:19
**Procedure................. ................................. ...................... [1] - 3:4
**proceed** [4] - 6:8; 29:11; 31:3, 10
**proceeding** [1] - 31:8
**Proceedings** [1] - 2:12
**produced** [1] - 2:12
**progress** [1] - 7:15
**prohibit** [1] - 12:10
**prohibiting** [1] - 28:2
**prolific** [1] - 34:24
**pronunciation** [2] - 31:14, 18
**proper** [1] - 8:21
**proposed** [4] - 10:1; 28:24; 29:18
**proposing** [1] - 22:15
**prosecuted** [2] - 18:1, 7
**protective** [2] - 27:5, 8
**protest** [1] - 32:8
**protesting** [1] - 32:3
**prove** [2] - 22:24
**proved** [1] - 15:9
**provide** [4] - 6:16, 21; 7:10; 11:16
**provided** [3] - 6:12; 7:18; 10:2
**purpose** [2] - 15:22; 22:8
**purposes** [1] - 8:14
**Pursuant** [1] - 3:8
**pursuing** [1] - 30:2

## Q

**questioning** [1] - 13:1
**questionnaire** [1] - 5:24
**quid** [1] - 16:2
**quo** [1] - 16:2

## R

**Rapid** [3] - 5:7; 19:6, 9
**rather** [1] - 30:13

**reach** [2] - 7:12, 22
**reaching** [1] - 7:15
**react** [1] - 34:18
**reality** [1] - 26:18
**realtime** [1] - 2:12
**reasonable** [1] - 35:10
**rebut** [3] - 21:20; 23:19, 23
**rebuttal** [4] - 21:5, 8, 15; 23:25
**receive** [2] - 7:25; 10:6
**received** [2] - 10:9; 32:20
**recent** [2] - 4:25; 29:2
**recollection** [1] - 16:16
**reconsideration** [2] - 11:9, 11
**Red** [4] - 25:21, 24; 27:17, 25
**Rees** [6] - 2:6, 8; 4:16, 18, 20; 19:16
**reference** [4] - 15:3; 17:13, 15; 27:7
**referenced** [2] - 33:24
**references** [2] - 15:15
**referencing** [3] - 17:18; 20:2
**referring** [2] - 27:5; 33:17
**refresh** [1] - 14:18
**regardless** [1] - 9:8
**registrations** [1] - 26:9
**relaying** [1] - 32:21
**relevance** [1] - 15:8
**relevant** [1] - 15:17
**Relief** [1] - 3:8
**relying** [2] - 27:12; 28:19
**remain** [1] - 6:8
**remainder** [1] - 24:2
**reminding** [1] - 35:18
**rent** [2] - 26:14, 20
**reply** [1] - 28:21
**report** [1] - 14:12
**reported** [1] - 2:12
**reporter** [2] - 2:12; 4:2
**represent** [3] - 28:25; 30:23
**Representation** [1] - 3:19
**representation** [2] - 29:12; 30:17
**representations** [1] - 29:22
**representative** [1] - 13:17
**represented** [2] - 20:9;

31:11
**representing** [4] - 29:4, 16; 31:1
**reptile** [3] - 12:6; 13:5
**requested** [2] - 10:7, 13
**required** [3] - 6:18; 9:7; 10:15
**resolve** [1] - 9:16
**respect** [1] - 10:13
**respond** [2] - 11:10; 12:14
**responded** [1] - 27:10
**response** [3] - 11:14, 17; 28:13
**rest** [1] - 32:11
**restraint** [1] - 35:8
**result** [2] - 9:5; 23:8
**retained** [1] - 31:23
**Retsel** [14] - 3:19; 4:8, 16, 19; 10:14, 19; 21:13; 28:23; 29:4, 7, 16; 30:23
**Retsel's** [2] - 3:8; 28:24
**reviewing** [1] - 27:4
**revise** [1] - 11:2
**revision** [1] - 10:4
**ridiculous** [1] - 26:20
**rights** [1] - 35:7
**ripe** [1] - 11:9
**risk** [5] - 24:10, 14, 16
**Robins** [2] - 2:3; 19:16
**room** [3] - 19:15, 21; 32:8
**Rule** [1] - 3:8
**rule** [10] - 12:19, 23-24; 13:7; 23:21; 24:2, 23
**ruled** [5] - 11:23; 12:4; 13:10; 14:16; 27:8
**Ruled** [1] - 3:10
**rules** [2] - 6:9; 28:10
**ruling** [5] - 11:11; 12:3; 13:6, 24; 24:7
**rulings** [5] - 11:24; 13:10; 25:21
**Ryan** [1] - 21:4

## S

**safely** [1] - 32:8
**safety** [4] - 12:12; 33:2, 9
**Sarah** [1] - 19:8
**satisfy** [1] - 28:10
**scenario** [1] - 32:25
**scheduled** [3] - 4:7; 5:5; 30:14

**scope** [2] - 10:16; 29:12
**SCOTT** [16] - 2:5; 4:18; 10:21; 13:20, 24; 14:6, 8, 20, 24; 15:1, 19; 16:9, 20; 17:5; 27:1, 13
**Scott** [3] - 4:18; 15:19; 26:24
**Scully** [2] - 2:6, 8
**se** [3] - 31:3, 8, 10
**seat** [1] - 5:15
**seated** [1] - 5:21
**Second** [1] - 3:12
**secured** [1] - 32:11
**SECURITY** [2] - 35:13, 16
**Security** [1] - 3:21
**security** [7] - 32:1, 4; 33:7, 21, 23; 34:1; 35:18
**seeking** [3] - 7:5; 16:22; 23:10
**seeks** [1] - 15:20
**selection** [3] - 5:9; 6:4; 17:22
**Selina** [3] - 25:15; 26:7; 27:17
**Senator** [2] - 17:20; 18:18
**sentence** [1] - 33:6
**sentenced** [1] - 33:6
**serve** [1] - 15:16
**set** [3] - 7:11; 11:2; 14:11
**Settlement** [1] - 3:7
**shape** [1] - 30:4
**share** [1] - 33:4
**Shawn** [1] - 35:12
**sheet** [2] - 29:19, 23
**shirt** [1] - 35:22
**shoes** [1] - 13:2
**shorter** [1] - 5:13
**sic** [5] - 7:4; 15:3; 25:3; 32:19; 35:3
**sic)** [1] - 20:10
**signage** [1] - 35:25
**signs** [1] - 35:13
**similar** [2] - 12:20, 24
**similarities** [1] - 21:9
**simple** [1] - 20:6
**simply** [4] - 15:20, 22; 16:12; 19:14
**single** [1] - 8:18
**Sioux** [1] - 2:4
**sister** [1] - 19:8
**sitting** [1] - 4:25
**six** [1] - 6:9
**slightly** [1] - 33:14

**social** [4] - 34:23-25; 35:1
**solicit** [1] - 33:20
**soon** [2] - 4:14; 6:12
**sooner** [1] - 30:13
**sorry** [3] - 14:8, 24; 16:6
**South** [4] - 2:4, 9; 17:19; 18:20
**spaced** [1] - 8:18
**speaking** [1] - 30:16
**specific** [4] - 12:13; 26:10; 28:12; 32:21
**specifically** [2] - 17:25; 34:6
**spouse** [1] - 18:9
**staff** [1] - 33:3
**stand** [1] - 13:11
**start** [1] - 5:5
**started** [1] - 10:3
**state** [1] - 18:20
**statement** [2] - 6:6; 24:9
**statements** [1] - 35:14
**staying** [1] - 26:15
**stenographic** [1] - 2:12
**stipulated** [4] - 7:16, 19-20, 24
**stipulations** [3] - 7:13, 15, 22
**Street** [1] - 2:9
**strike** [1] - 16:13
**strikes** [4] - 5:16, 19
**submit** [1] - 9:1
**submitted** [4] - 7:18; 28:6; 29:10
**subsequent** [2] - 20:7, 11
**substituted** [1] - 13:17
**sufficient** [7] - 6:9; 15:13; 17:1; 18:12; 19:17; 28:10, 14
**suggest** [1] - 34:21
**suing** [1] - 20:7
**Suite** [3] - 2:3, 6, 9
**Supplemental** [1] - 3:12
**supplemental** [1] - 15:2
**supplements** [1] - 13:6
**supply** [1] - 9:7
**surprise** [2] - 21:14; 26:17
**Susan** [3] - 19:7
**suspenders** [1] - 9:6
**sympathy** [4] - 15:16, 23; 17:3, 6

## T

**T-shirt** [1] - 35:22
**team** [1] - 32:6
**tenuous** [1] - 20:15
**terms** [3] - 7:4; 8:17; 30:16
**testified** [2] - 20:22; 23:12
**testify** [11] - 16:17; 17:9; 20:21; 21:6, 19; 22:16; 23:2; 25:14; 26:13; 28:18; 34:10
**testifying** [3] - 14:11; 16:2; 28:2
**testimony** [11] - 8:23; 15:12; 16:12; 20:23; 21:8, 21; 24:1; 25:20; 27:3, 7; 33:20
**themself** [1] - 27:14
**themselves** [3] - 13:1; 17:23; 18:6
**theory** [5] - 12:6-8; 13:5, 8
**thereafter** [3] - 21:25; 22:13; 26:12
**they've** [1] - 7:25
**third** [1] - 5:7
**thoughts** [1] - 29:10
**threaten** [1] - 34:14
**threatened** [1] - 33:8
**threats** [7] - 31:24; 32:21, 25; 33:1, 21, 25; 35:25
**three** [3] - 25:12; 26:6
**throwing** [1] - 18:18
**Thursday** [1] - 8:19
**Tilson** [2] - 20:22; 23:12
**Tim** [1] - 4:11
**timely** [3] - 25:4, 8, 11
**timely-filed** [1] - 25:11
**TIMOTHY** [1] - 2:2
**today** [3] - 12:13; 28:22; 30:14
**top** [1] - 35:22
**total** [1] - 18:23
**transcript** [1] - 2:12
**Transcription** [1] - 2:12
**transcripts** [1] - 8:20
**trial** [22] - 5:5, 10; 6:9, 22; 7:11; 11:14; 15:4, 9; 17:16; 20:2, 15-16; 22:11; 23:16; 24:24; 29:9; 35:2, 10
**Trial** [1] - 3:4
**Trial.........................**

.............................
**...** [1] - 3:21
**Troy** [3] - 25:15; 26:6; 27:17
**true** [1] - 31:2
**turned** [1] - 35:17
**two** [4] - 20:21, 23-24; 23:14

## U

**U.S** [4] - 17:20; 18:1, 17
**Uhre** [18] - 3:19; 10:14, 19; 13:16, 18; 17:3; 20:14; 21:6; 28:24; 29:1, 7; 30:16, 23, 25; 31:2, 7, 14; 34:10
**Uhre's** [4] - 15:4, 8; 23:8; 30:3
**Uhres** [2] - 21:19
**ultimately** [1] - 11:3
**unavailable** [5] - 15:10, 12, 14; 16:25; 17:4
**unaware** [2] - 14:17; 29:7
**underlying** [1] - 16:20
**undermines** [1] - 26:18
**understood** [3] - 4:4; 31:12; 36:2
**unfair** [3] - 17:14; 18:20; 26:17
**unfortunately** [1] - 20:4
**universe** [1] - 23:10
**unless** [1] - 34:2
**unlimited** [1] - 6:10
**unmolested** [1] - 32:9
**unmute** [1] - 4:14

## V

**vague** [1] - 12:19
**vast** [5] - 8:15, 22; 9:16; 11:23
**verdict** [2] - 29:18, 23
**version** [2] - 10:12, 18
**versus** [1] - 4:8
**Via** [1] - 2:5
**via** [1] - 4:2
**vicarious** [1] - 10:15
**Video** [1] - 2:5
**videoconference** [1] - 4:3
**videos** [2] - 7:17;

32:24
**visible** [1] - 34:1
**voir** [1] - 5:22

## W

**wait** [1] - 24:2
**wants** [1] - 24:20
**wear** [2] - 35:19, 22
**Wednesday** [5] - 28:21; 30:19; 31:4, 6
**week** [3] - 29:20; 30:10; 36:4
**weekend** [1] - 9:24
**White** [4] - 20:1, 7, 16; 21:4
**Whites** [4] - 21:10, 20; 22:10; 29:17
**wholeheartedly** [1] - 22:3
**Witness** [1] - 3:17
**witness** [11] - 14:11; 15:10, 13; 24:20; 25:3-5, 8, 11; 28:8
**witnesses** [31] - 6:17; 8:22; 20:2, 16, 19-20; 21:4, 12, 15; 22:12, 15; 23:24; 25:1, 7, 9-10, 12-14; 26:6; 28:2, 5, 11, 13, 16; 34:6, 8, 13
**Witnesses** [1] - 3:16
**wonder** [1] - 17:10
**word** [1] - 4:3
**works** [1] - 26:2

## Y

**York** [2] - 2:7; 9:6