UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

|  |  |
|---|---|
| NDN COLLECTIVE, SUNNY RED BEAR, NICK COTTIER, BRE JACKSON, MARY BOWMAN, and GEORGE BETTELYOUN, | Civ. No. 5:22-cv-05027-LLP |
| Plaintiffs, | **DEFENDANT RETSEL CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND CROSS-MOTION FOR DISCOVERY, AN EVIDENTIARY HEARING, AND REFERRAL** |
| v. |  |
| RETSEL CORPORATION, d/b/a GRAND GATEWAY HOTEL and d/b/a CHEERS SPORTS LOUNGE AND CASINO, and CONNIE UHRE, |  |
| Defendants, |  |
| and |  |
| RETSEL CORPORATION, d/b/a GRAND GATEWAY HOTEL and d/b/a CHEERS SPORTS LOUNGE AND CASINO, and NICHOLAS UHRE |  |
| Counterclaimants, |  |
| v. |  |
| NDN Collective, |  |
| Counterclaim Defendant. |  |

Defendant Retsel Corporation ("Retsel") opposes Plaintiffs' motion for attorneys' fees and costs, which seeks an award of $3,536,338 in past attorneys' fees under 42 U.S.C. § 1988(b), $286,617.24 in past costs and expert witness fees under 42 U.S.C. § 1988, and enhanced post-judgment interest. (ECF Nos. 435–436) To the extent the motion is not denied, Retsel cross-moves for discovery, an evidentiary hearing, and referral to a special master or magistrate judge. In support of its opposition and cross-motion, Retsel states as follows.

## INTRODUCTION

This is not a case about vindicating civil rights. It is a case about lawyer greed. From the outset, Plaintiffs' attorneys pursued a case they knew was likely worth only nominal damages. All equitable and declaratory relief had already been secured through a Department of Justice consent decree long before trial. Tellingly, Plaintiffs have consistently and publicly insisted that the case was never about money, and only about principle.

Despite that posture, Plaintiffs' counsel's conduct reveals a contrary and far more troubling purpose. Plaintiffs' counsel repeatedly warned Defendants of "millions" in exposure, demanded seven-figure recoveries, and leveraged the threat of attorneys' fees to foreclose settlement. When Defendants offered a reasonable settlement that would have paid Plaintiffs three times more than they ultimately recovered at trial, Plaintiffs' counsel rejected it and pressed forward. They staffed the case like a high-stakes New York commercial dispute, forced it through trial, and obtained only a fraction of what had already been offered. Now, having failed to deliver any result resembling a meaningful result for their clients, Plaintiffs' counsel ask this Court to convert the jury award into an almost $4 million windfall. The fee-shifting statute does not permit that inversion of justice.

Plaintiffs' fee request fails for multiple, independent reasons. *First*, it is tainted by unethical conduct. As explained by fee expert Michael Watters, Plaintiffs' attorneys prosecuted

1

this case not to advance their clients' interests, but to maximize their own fees. They rejected settlement offers that exceeded the likely recovery, improperly treated attorneys' fees as a component of "damages," and pursued escalation over resolution. That conduct created an undisclosed conflict of interest, violated core ethical obligations under South Dakota law, and independently warrants denial of fees.

*Second*, even setting ethics aside, Plaintiffs' request collapses on the merits. Their success was purely technical and overwhelmingly incomplete. Their claimed rates bear no resemblance to the South Dakota market. Their billing records are riddled with overstaffing, duplication, implausible hours, missing declarations, and nonrecoverable work. They failed to segregate compensable from noncompensable time and seek interest and costs that the law does not allow. Any one of these defects requires denial or drastic reduction. Collectively, they make the request indefensible.

Granting this motion in any form would endorse a perverse incentive structure. Lawyers would be rewarded for avoiding settlement at all costs, inflating damages theories they know will never materialize, and prolonging litigation to the detriment of their clients, in hopes of generating fees payable by the opposing party. Fee-shifting statutes exist to promote access to justice and encourage the vindication of civil rights, not to subsidize fee-driven litigation unmoored from results. Courts are not required to reward such conduct, and are obligated to prevent it.

This Court should draw a firm line. Civil-rights statutes are not blank checks for lawyers to monetize low-value cases through fee inflation and settlement obstruction. Where, as here, counsel made themselves the real parties in interest and prosecuted the case for an improper motive, the appropriate response is denial.

Accordingly, Retsel respectfully requests that the Court deny Plaintiffs' motion for attorneys' fees and costs or stay the motion pending final disposition of Retsel's post-judgment motions and any appeal. To the extent the Court does not outright deny the motion, Retsel requests that the Court substantially reduce Plaintiffs' claimed hourly rates and apply an across-the-board reduction of 90% to account for Plaintiffs' limited success and fundamentally flawed billing practices. Retsel further requests, on its cross-motion, that this Court grant discovery, an evidentiary hearing, and referral to a special master or magistrate judge

**ARGUMENT**

**I.      Plaintiffs' motion must be summarily denied or stayed: If the judgment falls, due to post-judgment motions or appeal, Plaintiffs will not be the prevailing parties.**

A fees applicant bears the burden to establish entitlement to an award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Fees and costs may be awarded only if the applicant is a prevailing party. 42 U.S.C. § 1988(b) (stating that in an action to enforce Section 1981, a court may award reasonable attorneys' fees to the prevailing party); FED. R. CIV. P. 54(d)(1) (stating that "costs—other than attorney's fees—should be allowed to the prevailing party").

Prevailing party status requires the existence of a valid and enforceable judgment that materially alters the parties' legal relationship. *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). If the judgment is vacated or set aside, prevailing party status is eliminated. *Jenkins v. Missouri*, 127 F.3d 709, 714 (8th Cir. 1997) ("Naturally, reversal on appeal of the merits can change a prevailing party into a non-prevailing party, and require that earlier fees awards be vacated.").

Here, in light of Retsel's pending motions attacking the judgment, Plaintiffs cannot establish that they are indeed prevailing parties. Retsel has moved for, among other relief, judgment as a matter of law or vacatur of the judgment. (ECF Nos. 348, 349, 449, 450, 458, 459) If Retsel prevails (before this Court or on appeal) in demonstrating that Plaintiffs failed to prove

3

all elements of their Section 1981 claims, Retsel will be entitled to judgment in its favor. If Retsel prevails (before this Court or on appeal) in demonstrating that multiple procedural and trial errors warrant relief from the judgment and a new trial, the judgment will be vacated. Either way, the judgment will disappear—and, with it, prevailing party status.

Given that the predicate success for a fees and costs award has failed, or will fail, this Court should summarily deny Plaintiffs' motion or defer ruling until final resolution of the post-judgment motions and any appeal. *Muhammad v. Mayfield*, No. 5:15-cv-00130-KGB-PSH, 2019 WL 13181999, at *2 (E.D. Ark. Mar. 25, 2019) (staying fees application pending appeal, based on potential impact to prevailing party status); *Kirkeby v. Furness*, 905 F. Supp. 727, 728 (D.N.D. 1995) (declining to award fees while an appeal was pending).

II.     **Plaintiffs' motion must be denied on the merits: This Court should exercise its considerable discretion to deny a fees award, which would be inequitable because Plaintiffs achieved merely a technical victory.**

A court has discretion to award attorneys' fees, which must be reasonable. 42 U.S.C. § 1988(b) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."); *Marshall v. Anderson Excavating & Wrecking Co.*, 8 F.4th 700, 712 (8th Cir. 2021) (noting that the reasonableness of a fees award is a matter within the district court's discretion).

Here, Plaintiffs' request for an award of over $3,500,000 in fees, when they recovered a sliver of that amount at trial, is an outrageous fraud upon the court. Plaintiffs' attorneys litigated as though this were a bet-the-company lawsuit, investing extraordinary time and resources to achieve a thoroughly unremarkable result. That stark imbalance cannot now be converted into a windfall, enriching Plaintiffs' attorneys far beyond what the case was ever worth.

Underscoring the inequity of a multimillion-dollar fees award, Plaintiffs were never interested in pursuing a large recovery. To Plaintiffs, this case has always been about social

4

justice—not financial remuneration. In a Facebook post after the verdict, NDN Collective President stated: "Something that I think is really important about this case is that when NDN brought this lawsuit, brought this case, we sued for one dollar because this case was never about money. It was not about financial gain." NDN Collective, *We Won*, FACEBOOK (Dec. 20, 2025, 6:33 P.M.), https://www.facebook.com/ndncol/videos/we-won/1628982261422474/.

Plaintiffs' attorneys, on the other hand, were intent on a money grab from the very start. This is evident from the fact that, throughout this litigation, Plaintiffs' attorneys have chosen escalation over resolution. Retsel highlights two salient examples of such behavior.

Two years before trial, Retsel offered $15,000 to settle, but was flatly rebuffed:

> As of the date of this letter, [Retsel's] insurance company has made one offer to resolve this case for $15,000. If we are successful at trial, we intend to ask a jury for a damage award that will be far greater than your client will be able to pay.

(Declaration of Haylee Culver, Exhibit 1, December 19, 2023 Letter at 2) The letter says nothing about social justice—relief that had already been achieved through the Department of Justice consent decree. Nor does the letter mention nominal damages. Just the opposite: Plaintiffs' attorneys characterized the case as a "multi-million-dollar litigation risk," and pledged to seek both damages "far greater than [Retsel] will be able to pay" and "a seven-figure award of attorneys' fees," estimated to be "over $2 million at the time of trial." *Id.*

In another effort to settle, about ten days before trial, Retsel increased its offer to $200,000.[1] (Declaration of Haylee Culver, Exhibit 2, Dec. 20, 2025 email) Plaintiffs' attorneys rejected the offer, once again, and shut down any further settlement discussions:

---

[1] Consideration of these settlement communications does not run afoul of the evidentiary rules. FED. R. EVID. 408(b) (stating that settlement communications are admissible for a non-prohibited purpose). The communications are not offered for the prohibited purpose of disproving the validity or amount of Plaintiffs' claims, but for the equitable and permissible purpose of evidencing the unreasonableness of Plaintiffs' attorneys' fees application and

> Hi all, following up on my conversation with Don and Jason earlier this evening about settlement discussions, the $200,000 offer is rejected. In the interest of being candid and not wasting anyone's time, I can also share that further settlement discussions in the range that Don mentioned would not resolve this case. . . .

*Id.* This, despite the fact that Plaintiffs ended up doing much worse at trial, securing a damages award on their Section 1981 claims of not even one-third of Retsel's last settlement offer.

The explanation for this escalation-over-resolution stratagem is simple. A fees award to Plaintiffs' attorneys—not a damages award to Plaintiffs—has always driven this litigation, and is the sole reason such a low-value case went to trial. A potentially big-ticket item, a fees award inures *exclusively* to the benefit of Plaintiffs' attorneys, given that fees are not damages sustained by Plaintiffs. (Affidavit of Michael Watters ¶¶ 12, 19–24 (opining that a fee award in a nominal-damages case inures exclusively to Plaintiffs' counsel and incentivizes litigation driven by attorneys' fees rather than by client recovery))

Plaintiffs concede the point. In the bankruptcy proceedings, Plaintiffs admitted that in the present case, they were seeking only "nominal" damages, which excludes attorneys' fees. Plaintiffs stated that "[a] plaintiff may be awarded nominal damages when there is liability on a § 1981 claim but no compensatory damages," and further that they "distinguish between potential 'damages' under their § 1981 action and the potential recovery of attorneys' fees" in the present lawsuit. (Declaration of Haylee Culver, Exhibit 3, Plaintiffs' response to opposition to motion for relief from automatic stay at ¶¶ 8, 10; *see also* Declaration of Haylee Culver, Exhibit 4, Plaintiffs' motion for relief from automatic stay ¶¶ 3, 27–28 (distinguishing attorneys' fees from damages, characterizing fees as contingent liability available only after a fees application is granted); Affidavit of Michael Watters ¶ 23 (opining that continuing to prosecute a

---

disproving the validity or amount of their requested fees. *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 451 (1982) (recognizing that a Section 1988 fees application raises collateral issues).

6

nominal-damages case primarily to pursue attorneys' fees reflects a fee-driven litigation strategy inconsistent with accepted professional standards) Underscoring that only damages were ever in play here, all equitable and declaratory relief theories were dismissed before trial.

Because Plaintiffs' attorneys were holding out for a payday, in the form of a multimillion-dollar fees award, they avoided settlement at every turn. Plaintiffs' attorneys leveraged the potential fees award as an absolute foreclosure of and hindrance to settling their clients' alleged damages. Rejection of multiple reasonable settlement offers shows that Plaintiffs' attorneys valued recovery of their fees above all else—including their own clients' best interests in early resolution of a case that, at best, would have yielded (and, in fact, did yield) only a modest recovery.

By elevating their own interests ahead of their clients' interests, Plaintiffs' attorneys breached their ethical obligations. (Affidavit of Michael Watters ¶¶ 12–24 (opining that Plaintiffs' counsel subordinated their clients' interests to their own pursuit of attorneys' fees, constituting a conflict and an ethical breach under governing professional standards)) S.D.C.L, § 16-18-16 (stating that an attorney is duty-bound not to maintain an action for any improper motive). In short, Plaintiffs' attorneys traded their ethical obligations for the chance to exploit a fee-shifting statute for personal financial gain. Such behavior and abuse of the system cannot result in anything other than an absolute forfeiture of any right to collect fees under a clearly abused statute.

This exploitation of the litigation system and fee-shifting statute runs afoul of the spirit and purpose of the civil rights litigation itself. The complaint sought over $1,000,000 in "damages" and, throughout the history of this case, Plaintiffs' attorneys refused to even entertain settlement for those alleged "damages." (Affidavit of Michael Watters ¶¶ 18, 20–21 (opining that

7

Plaintiffs' counsel improperly treated attorneys' fees as a form of damages, despite knowing that fees are legally distinct from and not damages suffered by Plaintiffs)) Attorneys' fees that *may* be awarded, and only if Plaintiffs are the "prevailing party," are not "damages"—they are "costs," as specifically defined in 42 U.S.C. § 1988.

Simply put, Plaintiffs' attorneys have been engaged in unethical "tail wagging the dog" behavior for years, with the hope of a windfall payday at the end. The complaint sought over $1 million in damages and was never amended before trial. Plaintiffs' attorneys also rejected clearly reasonable settlement offers that would have netted their clients more in "damages" than the jury ultimately awarded, which was minuscule in comparison. And then, in rejecting those reasonable settlement demands, Plaintiffs' attorneys unethically justified doing so by improperly labelling their potential right to attorneys' fees as being a component of their clients' alleged damages, when they knew very well that a potential right to attorneys' fees, pursuant to statute, is only a potential right to an award of "costs," which are not, and can never be, a component of the "damages" their clients allegedly sustained.

Plaintiffs' attorneys have consistently and dishonestly prosecuted a civil rights case they labeled as worth "millions of dollars" in "damages," when all along the true value in their eyes was the cash-grab for attorneys' fees that could be accomplished only through dragging this litigation out (with no realistic goal of settlement). Plaintiffs' attorneys knew all along that the actual damages that could be, and were to be awarded, were merely "nominal" and all along that the equitable relief, declaratory relief, and acknowledgement of wrongdoing and punishment had already been accomplished via the Department of Justice consent decree. In fact, it was only on the eve of trial that Plaintiffs finally conceded this fact, in dismissing all prayers for equitable

and declaratory relief they sought in this civil litigation as being "moot" (in light of the consent decree) and "duplicative in nature" (again, in light of the consent decree).

Plaintiffs' attorneys' historic and unethical outright refusal or rejection of good faith settlement negotiations to settle their clients' alleged "damages," when little to no damages were ultimately awarded (compared to what they were seeking in damages throughout), and where all civil justice was accomplished via the consent decree, rendered this civil litigation predominantly redundant and duplicative and did not result even remotely in the type of "victory" they now claim. Especially compared to what was alleged in the complaint, along with exploitative litigation behavior that was improperly justified through their true goal: an inflated and improper fees award. Such poor behavior runs afoul of the spirit of the American judicial system itself. It is black letter law that in the American judicial system, settlement is encouraged—not *discouraged* (and thwarted) by the very Plaintiffs who filed the lawsuit.

Based on the clear evidence submitted herein, Plaintiffs and their attorneys plainly never had any intention to settle for the "damages" they sought in this case, and instead were looking for only "a $1," and "social justice" as an improper "means to an end." Plaintiffs are certainly free to do so, if they choose, but the equitable purpose of fee-shifting statutes is turned on its head if all defendants are then forced to fund these types of social justice endeavors embedded within civil litigation seeking only nominal "damages," with no intention of ever settling for those alleged "damages." This is especially true, in light of the fact that all equitable and declaratory relief that could be had was accomplished and made right through the consent decree.

Under these circumstances, where Plaintiffs were largely unsuccessful and recovered far less than the amount for which they could have settled, and their attorneys improperly exploited

9

the fee-shifting statute for their own financial gain, their bloated fee request should be denied outright. A contrary result would fuel precisely the kind of fee-centric litigation the statute was designed to restrain.

### III.    Plaintiffs' requested amounts must be reduced as nonrecoverable, excessive, and otherwise unreasonable.

#### A.    Reasonableness is the touchstone of any fees award.

In determining the reasonableness of a discretionary fees award, courts apply the lodestar method: the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 965 (8th Cir. 2012). A fees applicant bears the burden to prove the reasonableness of both the hours expended and the hourly rates claimed. *Hensley*, 461 U.S. at 437. A court need not accept an attorney's submitted hours as conclusive, and may exclude hours not reasonably expended on the litigation. *Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, No. 21-1795, 2024 WL 504589, at *7 (8th Cir. Feb. 9, 2024); *see also Hensley*, 461 U.S. at 434 (observing that cases may be overstaffed and the hours expended may be excessive, redundant, or otherwise unnecessary); *Trs. of Chi. Plastering Inst. Pension Tr. v. Cork Plastering Co.*, 570 F.3d 890, 905 (7th Cir. 2009) ("It is not at all unusual for a court to determine that some aspects of an attorney's work were not fruitful, were unnecessary, or merited less time than the attorney devoted to them, and to deny compensation for those portions of the attorney's work.").

After calculating the lodestar amount, additional factors may be considered in reducing the amount. *Marshall*, 8 F.4th at 712. Relevant factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney, due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the

10

client or the circumstances; (8) the amount involved and results obtained; (9) the attorneys' experience, reputation, and ability; (10) the case's undesirability; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *League of Women Voters of Mo. v. Ashcroft*, 5 F.4th 937, 941 n.3 (8th Cir. 2021); *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 n.7 (8th Cir. 2018). A court may reduce the lodestar amount without mechanically reciting these twelve factors. *Farrar*, 506 U.S. at 115.

**B.      Plaintiffs cannot recover amounts incurred in litigating the state law claims and counterclaims, for which fees are not authorized.**

Plaintiffs cannot establish their entitlement to attorneys' fees incurred in prosecuting the assault and battery claims (abandoned before trial) and defending the counterclaims for civil conspiracy, trespass, defamation, nuisance, and intentional interference with business relations. (ECF No. 84 at ¶¶ 130–141; ECF No. 86 at 18–23) These claims and counterclaims are governed by South Dakota law, notwithstanding that the case is pending in federal court. *Grabinski v. Blue Springs Ford Sales, Inc.*, 203 F.3d 1024, 1027 (8th Cir. 2000). South Dakota follows the American Rule, under which each party bears its own fees, unless a statute expressly provides otherwise. S.D.C.L. § 15-17-38; *Eagle Ridge Ests. Homeowners Ass'n, Inc. v. Anderson*, 2013 S.D. 21, ¶ 28, 827 N.W.2d 859, 868. No South Dakota fee-shifting statute applies to the foregoing claims and counterclaims—and Plaintiffs cite none.

This means fees incurred in litigating the state law claims and counterclaims must be excluded from any award. *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 168 (2d Cir. 2011) ("Hours spent solely on common law claims and statutory claims not subject to fee-shifting must be excluded . . . ."). Plaintiffs' attorneys did not even try, however, to segregate these nonrecoverable amounts. The billing records are full of entries devoted purely to work on the state law claims and counterclaims. Examples include, but are not limited to, the following:

11

| ECF | Date | Timekeeper | Hours | Rate | Task |
|---|---|---|---|---|---|
| ECF No. 438-2 at 75 | 12/18/2025 | Billion | 17.1 | $760.00 | [W]ork on closing evidence regarding assault and counterclaims |
| ECF No. 438-2 at 36 | 9/21/2022 | Pacelli | 10.2 | $675.00 | Analyze various case law and pleadings in preparation for drafting motion to dismiss counterclaims . . . . |
| ECF No. 438-2 at 36 | 9/17/2022 | Pacelli | 8.9 | $675.00 | Analyze various case law and pleadings in preparation for drafting motion to dismiss counterclaims . . . . |
| ECF No. 438-2 at 36 | 9/9/2022 | Pacelli | 7 | $675.00 | Attend internal conference in preparation for drafting motion to dismiss counterclaims; Analyze various case law and draft outline for motion to dismiss counterclaims. |
| ECF No. 438-2 at 79 | 9/16/2022 | Titze | 6.7 | $485.00 | Draft facts and research argument as to counterclaims 1 and 2. |
| ECF No. 438-2 at 56 | 9/23/2022 | Billion | 6.5 | $645.00 | Revisions to memo in support of motion to dismiss counterclaims |
| ECF No. 438 at 79 | 12/4/2022 | Titze | 6.4 | $485.00 | Research and outline rely brief on motion to dismiss counterclaims . . . . |
| ECF No. 438-2 at 65 | 4/15/2024 | Billion | 5.1 | $725.00 | Review and revise opposition to |

| | | | | | motion for reconsideration or alternatively to amend counterclaims . . . . |
|---|---|---|---|---|---|
| ECF No. 438-2 at 90 | 4/11/2024 | Titze | 4.7 | $540.00 | Revise analysis of response to motion to reconsider counterclaims |
| ECF No. 438-2 at 36 | 9/16/2022 | Pacelli | 4.5 | $675.00 | Internal conference with T. Titze in preparation for filing motion to dismiss counterclaims; Analyze various case law in preparation for drafting same . . . . |

Additional fees may have been incurred in litigating the state law claims and counterclaims. But it is impossible to tell from Plaintiffs' attorneys' shoddy billing records, which lump together numerous tasks in extremely vague terms: "case strategy," "trial preparation," "witness preparation," "discovery," and the like. (ECF No. 438-1) Time spent on such tasks cannot even be traced to this case, let alone any particular claim within this case, let alone the Section 1981 claims—the only ones that potentially support a fees award.

Under these circumstances, where Plaintiffs submit opaque billing records in hopes of dodging their burden to allocate between recoverable and nonrecoverable fees, this Court must not engage in guesswork. *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 261 (8th Cir. 1991) (holding that uncertainties, due to imprecise and inadequate billing records, are resolved against the fees applicant). Rather, an across-the-board reduction is warranted. *Id.* at 260 (holding that inadequate documentation merits reduction, noting that shoddy billing records preclude meaningful review).

13

  **C.**  **Plaintiffs' attorneys' billing rates are excessive, relative to a civil rights lawsuit litigated in Rapid City, South Dakota.**

A reasonable hourly rate generally reflects the prevailing market rate—that is, the ordinary rate charged for similar work in the community where the case is litigated. *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002); *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001); *see also* S.D. RULES OF PROF'L CONDUCT R. 1.5(a)(3) (stating that "the fee customarily charged in the locality for similar legal services" is relevant to reasonableness of the fee).

Setting a reasonable hourly rate is discretionary, as a court is well acquainted with its local bar and can assess what is reasonable in the relevant market. *Burton v. Nilkanth Pizza Inc.*, 20 F.4th 428, 431 (8th Cir. 2021); *see also Brewington v. Keener*, 902 F.3d 796, 805 (8th Cir. 2018) (holding that a district court may rely on its own experience and knowledge of prevailing market rates). Courts typically require proof of the prevailing market rate, such as affidavits or recent fees awards for similarly qualified attorneys. *Black Hills Clean Water All. v. U.S. Forest Serv.*, 733 F. Supp. 3d 801, 807 (D.S.D. 2024).

The South Dakota market rate for attorney services is in the neighborhood of $300 per hour for partners and $200 per hour for associates. (Affidavit of Michael Watters ¶¶ 32, 34) The average attorney billing rate was $251 per hour in 2025, with rates ranging from $120 to $380 per hour. (Declaration of Haylee Culver, Exhibit 5, Clio's 2025 Legal Trends Report at 132-35) South Dakota ranks among the states with the lowest average billing rates. *Id.*

Recent decisions within this district have approved similar rates for South Dakota attorneys, including Plaintiffs' attorneys. *See, e.g.*, *Wilbur-Ellis Co. LLC v. Jens*, No. 4:23-CV-04104-LLP, 2025 WL 1220437, at *2 (D.S.D. Apr. 28, 2025) ($300 per hour for senior partners, $245 per hour for junior partners, and $245 per hour for associates); *E&I Glob. Energy Servs., Inc. v. Liberty Mut. Ins. Co.*, No. 4:20-CV-04033-KES, 2023 WL 8809324, at *2 (D.S.D. Dec.

14

20, 2023) (Judge Schreier cut Robins Kaplan's rates for Timothy Billion to $350 per hour as a partner and $260 per hour as an associate); *Blue State Refugees v. Noem*, No. 3:21-CV-03024-RAL, 2022 WL 1000564, at *3 (D.S.D. Apr. 4, 2022) (Chief Judge Lange found that $300 per hour was reasonable for South Dakota's highly experienced former Attorney General, rejected an out-of-state attorney's request for $640 per hour as incompatible with South Dakota market rates, and cut the requested associate rate to $200 per hour).

Here, Plaintiffs' attorneys concede that they request fees be awarded at rates more befitting of New York City than Rapid City. (ECF No. 437 at 7) Plaintiffs' attorneys' billing rates are $760 per hour for senior partners, $725 per hour for junior partners, and $670 per hour for associates—more than double local market rates. (ECF No. 438-2) Yet Plaintiffs' attorneys offer no evidence that their exorbitant rates are presumptively reasonable—such as evidence that other local attorneys charge similar rates for similar experience levels in similar cases, or that invoices reflecting these rates were ever submitted to and paid by Plaintiffs (or any other client).

Plaintiffs' attorneys offer no such evidence because the local market does not support rates anywhere close to the requested rates. Rather than reflecting what a South Dakota client would pay for similar legal work, the inflated rates were tailor-made for a fees application. Proof of this is a fees application, decided just two years ago, in which Robins Kaplan attorney Timothy Billion averred that he charged $295 per hour as an associate, $400 per hour as a partner in 2022, and $450 per hour as a partner in 2023. *E&I Glob. Energy Servs.*, 2023 WL 8809324, at *2. In the present fees application, Plaintiffs' attorneys are now seeking even *higher* rates. Compare Billion's 2022 $400 hourly partner rate in *E&I Global Energy Services* to his 2022 $645 hourly partner rate in this case. Given that this Court already found the lower

15

requested rates excessive, and reduced them to local market rates, it should be even easier to do the same here.

Plaintiffs' attorneys rejoin that no other South Dakota attorney would have accepted the case, citing the affidavit of Russ Janklow—a local personal injury attorney and former law partner of Plaintiffs' lead counsel. (ECF No. 441) Plaintiffs' attorneys' own billing records, however, refute that notion. The records show that on March 21, 2022, the date of the incident at the hotel, Nick Tilsen contacted Brendan Johnson to urge immediate retention of counsel—without awaiting an exhaustive search for local representation. (ECF No. 438 at 7) As Plaintiffs never even *tried* to find a qualified South Dakota attorney to accept the case at local market rates, they cannot prove that doing so would have been futile.

That aside, it is pure fiction that Robins Kaplan would not have represented Plaintiffs absent the inducement of a multimillion-dollar fees award. Billion and NDN Collective had a preexisting business relationship. Billion was NDN Collective's quasi corporate counsel, having represented the entity and its Chief Executive Officer in other similar lawsuits years before this one. *See, e.g.*, *Dakota Rural Action v. Noem*, No. 5:19-cv-5026-LLP (D.S.D. filed Mar. 28, 2019); *Oglala Lakota Sioux Tribe v. Purdue Pharma, L.P.*, No. 5:18-cv-5021-JLV (D.S.D. filed Mar. 16, 2018). Robins Kaplan required no additional monetary incentive to continue representing a long-standing firm client.

To be clear, Retsel does not challenge the qualifications, expertise, or experience of Plaintiffs' attorneys. Plaintiffs were certainly free to retain their chosen attorneys to litigate this case at well above local market rates. But that does not mean Plaintiffs may now foist the cost of that choice onto Retsel.

16

Given that Plaintiffs have not overcome the presumption that a reasonable hourly rate is dictated by the local market, their requested rates must be reduced accordingly. Thus, any fees awarded should not exceed $300 per hour for partners and $200 per hour for associates.

**D.      Plaintiffs' attorneys' billing records are chock full of excessive hours and other sums that cannot be shifted.**

As an initial matter, the fees billed at the outset of the case are excessive. Plaintiffs received the benefit of free work performed by the Department of Justice in connection with the consent decree—proceedings that overlapped with this lawsuit. Department of Justice attorneys took the laboring oar in deposing witnesses, while Plaintiffs' attorneys largely just tagged along with attend-only appearances. And Plaintiffs' attorneys did not amend the complaint to add four additional plaintiffs until long after the lawsuit was filed, so the scope of their work was relatively narrow for the first few years of the litigation.

Once Plaintiffs' attorneys ramped up their work, they billed with an extremely heavy hand—at least according to their billing records, which reflect pervasive overstaffing and overbilling. Plaintiffs' legal team is comprised of an astonishing number of timekeepers: five partners; eleven associates; and twenty-three staff members. (ECF No. 438 at 12–17) And nearly 90% of the time billed was at the highest rates. This top-heavy staffing model is upside down, running up fees without a concomitant benefit. A straightforward civil rights case simply does not require constant partner-level involvement, layered supervision, or overlapping teams of senior lawyers billing hundreds of hours apiece.

The billing records contain additional nonrecoverable fees. For example, Plaintiffs' attorneys try to charge Retsel for work performed outside this case and without proof of how it advanced the Section 1981 claims: (1) communications with the Department of Justice and drafting the consent decree; (2) social media activities; (3) media strategy and public relations;

17

(4) political and policy research; (5) work relating to the criminal proceedings; (6) work relating to the bankruptcy proceedings; and (7) background investigations, untethered to any motion, witness, or evidentiary issue in this case. (ECF No. 438-2) *Best Buy Stores v. Devs. Diversified Realty Corp.*, No. 05-2310, 2011 WL 1321391, at *4–5 (D. Minn. Feb. 1, 2011) (holding that fees incurred in unrelated or collateral proceedings must be excluded from a fees award).

Plaintiffs' attorneys also try to convert routine office work—scheduling, docketing, uploading documents, organizing exhibits, and the like—into attorneys' fees, as well as bill clerical tasks at premium attorney rates. (ECF No. 438-2 at 3, 6–8, 13, 15–16, 19–21, 26, 28–30, 32–35, 38–46, 48–52, 60, 70, 74, 76–78, 81, 105; ECF No. 438-4 at 31–33, 37–38) Fees incurred for purely administrative or clerical tasks are not recoverable, no matter who performs the work. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989); *see also Ladd v. Pickering*, 783 F. Supp. 2d 1079, 1094 (D.S.D. 2011) (holding that hours billed for secretarial or clerical tasks are not compensable). Such costs must be subsumed in firm overhead. *Jo Ann Howard & Assocs., P.C. v. Cassity*, No. 4:09-CV-1252 ERW, 2020 WL 870987, at *10 (E.D. Mo. Feb. 21, 2020).

Even worse, the billing records do not permit a meaningful review to identify other potentially nonrecoverable amounts. *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008) (holding that an attorney's billing statement should be sufficiently detailed to permit adequate review of the time billed to tasks). This is because the records contain block billing and vague entries, like "[r]eview documents," "[r]eview facts relating to hotel discrimination case," "[a]dditional factual research regarding allegations for complaint," and "[m]edia discussions and questions." (ECF No. 438-2 at 54, 56)

The billing records independently confirm that Plaintiffs' fee request is grossly unreasonable. As detailed by Plaintiffs' own records and explained by fee expert Michael

18

Watters, this case was massively overstaffed from start to finish. (Affidavit of Michael Watters ¶ 37) Multiple attorneys billed for the same depositions, tens of thousands of dollars were charged merely to prepare for and attend routine examinations, and lawyers billed extensive "preparation" time for proceedings they did not even attend. (*Id.* ¶ 38) Several attorneys logged extreme daily hours—billing nearly every day over multi-week stretches at averages exceeding fourteen hours per day—raising serious questions about efficiency, necessity, and credibility. (*Id.* ¶ 39) These decisions reflect a litigation approach that treated the case as a vehicle for fee accumulation rather than proportional advocacy.

The excess began early and only escalated. Plaintiffs billed approximately $380,000 before the first deposition was taken, despite the limited scope of the case and the absence of meaningful discovery. (*Id.* ¶ 42) Junior attorneys billed at rates comparable to, or exceeding, those of far more experienced lawyers, while annual rate increases approaching twenty percent— well above inflation—were imposed without justification. (*Id.* ¶¶ 40–41) Compounding the problem, more than 10% of all attorney hours were billed by lawyers who submitted no declaration at all, depriving the Court of any basis to assess their experience, role, or necessity. (*Id.* ¶ 43) The billing records also show widespread duplication, verbatim entries repeated across timekeepers, and a sharp, unexplained spike in hours beginning in late 2023—precisely when Plaintiffs' counsel shifted their focus to fee recovery. (*Id.* ¶ 44–48) Taken together, these practices confirm that the requested lodestar is not merely excessive, but fundamentally unreliable.

Under these circumstances, where Plaintiffs' attorneys make no effort to exclude fees incurred due to overstaffing, excessive and inefficient billing, work unrelated to the case, and firm overhead, an across-the-board reduction is warranted. *Beckler v. Rent Recovery Sols., LLC*,

19

83 F.4th 693, 695 (8th Cir. 2023) (finding no abuse of discretion in halving fees request to reflect excessive billing); *Kline v. City of Kan. City, Mo., Fire Dep't*, 245 F.3d 707, 709 (8th Cir. 2001) (affirming fees reduction for "overlawyering").

### E.    A further reduction is required to reflect limited success.

A fees award should reflect the applicant's success. *Hensley*, 461 U.S. at 436–37 (explaining that one who achieves limited success may be entitled to limited fees). Where a fees applicant achieves only limited success, a court should award only those fees that are reasonable relative to the results obtained. *H.J. Inc.*, 925 F.2d at 260; *see also Hensley*, 461 U.S. at 436 (holding that when plaintiff achieves limited success, the lodestar method may be excessive, even if the claims were interrelated and pursued in good faith). A court may either attempt to identify and eliminate nonrecoverable amounts, or simply reduce the award. *H.J. Inc.*, 925 F.2d at 260.

The rationale behind this rule is that fee-shifting statutes are not intended to bestow attorneys with windfall recoveries. *Blanchard v. Bergeron*, 489 U.S. 87, 98 (1989). The prevailing party requirement encourages prompt resolution of meritorious claims and discourages unnecessary litigation. *Peter v. Jax*, 187 F.3d 829, 837–38 (8th Cir. 1999). This policy is served by denying fees when litigation yields relief that was likely attainable without the time and expense of a trial. *Id.* at 838; *see also Planned Parenthood of Minn., Inc. v. Citizens of Cmty. Action*, 558 F.2d 861, 871 (8th Cir. 1977) ("A party is not entitled needlessly to accumulate exorbitant legal fees with the expectation that the losing party will be called upon to pick up the entire tab.").

Here, to the extent the judgment survives post-judgment motions and appeal, Plaintiffs are prevailing parties in name only. There are numerous aspects of the Section 1981 claims on which Plaintiffs were decidedly *unsuccessful*.

Plaintiffs' string of failures began at the outset. Although Plaintiffs initiated this lawsuit as a purported class action, this Court denied class certification. (ECF No. 84 at ¶¶ 85–95; ECF No. 206 at 29) And Plaintiffs abandoned their declaratory relief claim, which in any event was rendered moot when they obtained the same relief through the consent decree. (ECF No. 84 at ¶¶ 127–129; ECF No. 279) Because the billing records include time spent in pursuing unsuccessful class action and declaratory relief theories, those amounts are not recoverable. (ECF No. 438-1)

Plaintiffs' string of failures continued through the verdict. Rejecting Plaintiffs' attorneys' inflated $2,500,000 demand,[2] the jury awarded just $63,003 on the Section 1981 claims, itemized as follows: (1) one dollar in nominal compensatory damages and one dollar in nominal punitive damages to NDN Collective; (2) $25,000 in compensatory damages and no punitive damages to George Bettelyoun; (3) one dollar in nominal compensatory damages and $8,000 in punitive damages to Sunny Red Bear; and (4) $2,000 in compensatory damages and $8,000 in punitive damages each to Bre Jackson, Mary Bowman, and Nick Cottier. (ECF No. 434 at 2–7)

Under these circumstances, where Plaintiffs' recovery pales in comparison to the requested fees, a significant reduction is warranted. *Paz v. Portfolio Recovery Assocs., LLC*, 924 F.3d 949, 956 (7th Cir. 2019) (affirming a fees award of $10,875, reduced from $187,410, where

---

[2] The fact that Plaintiffs were only ever seeking nominal damages (which Retsel would have paid long ago) and social justice (already achieved through the consent decree) begs the question of why their attorneys would ask the jury to award $2,500,000. The answer is clear: to bolster a future fees application seeking an outsized award, which is unethical. (Affidavit of Michael Watters ¶¶ 19, 23 (opining that Plaintiffs' counsel requested an inflated damages figure not to reflect client harm, but to manufacture leverage for a future attorneys' fee application, a practice that is unethical and inconsistent with accepted professional standards)) Also unethical is asking for $2,500,000, when Plaintiffs' attorneys knew that damages were most likely nominal or a tiny fraction of that amount. (*Id.*) S.D.C.L § 16-18-15 (stating that an attorney is duty-bound not to maintain unjustified actions).

"the vast majority of the fees . . . sought . . . were for time spent pursuing an unsuccessful and ill-advised effort to win a much bigger payoff than was even remotely possible"); *Spero v. Abbott Labs.*, 396 F. Supp. 321, 323 (N.D. Ill. 1975) (reducing a fees award from $12,000 to $1,500, where plaintiff rejected a settlement offer and then recovered no more than the rejected offer).

> **F.     The requested fees eclipse the highest reported award in a similar case.**

In determining reasonableness, fees awarded in similar cases are an appropriate comparator. *League of Women Voters*, 5 F.4th at 941 n.3. Using published fees awards in civil rights cases adjudicated in this Court as a benchmark, awarding Plaintiffs' requested fees would be record-setting. Retsel's research reveals that the largest fees award in a non-class action civil rights case was $612,045, awarded to Plaintiffs' attorneys by Judge Piersol over seven years ago. *Libertarian Party of S. Dakota v. Krebs*, No. CIV 15-4111, 2018 WL 4762966, at *6 (D.S.D. Oct. 2, 2018). More telling still, since 2008, the *total* of all published fees awards in forty-three comparable cases in this Court is not quite $2,000,000.

Put in perspective, Plaintiffs seek fees of nearly six times the single largest comparable award and nearly double the collective amount of all comparable awards from the past seventeen years. This disconnect highlights just how far Plaintiffs' fee request departs from local norms—and why it cannot be sustained.

**IV.     To identify additional nonrecoverable amounts, Retsel cross-moves for discovery, an evidentiary hearing, and referral to a special master or magistrate judge.**

A fees dispute may be referred to a special master or magistrate judge:

> By local rule, the court may establish special procedures to resolve fee-related issues without extensive evidentiary hearings. Also, the court may refer issues concerning the value of services to a special master under Rule 53 without regard to the limitations of Rule 53(a)(1), and may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter.

FED. R. CIV. P. 54(d)(2)(D); *see also* FED. R. CIV. P. 54(d)(2) (D), *Notes of Advisory Committee on Rules—1993 Amendment* (stating that a court may refer a fees dispute to a special master or magistrate judge, even absent a local rule).

Referral is particularly appropriate here, given the sizeable fees requested. In this circumstance, Plaintiffs' motion meets with heightened scrutiny. *REXA, Inc. v. Chester*, 42 F.4th 652, 674 (7th Cir. 2022) (recognizing "a greater degree of formality in cases where the stakes are higher"). Considering the non-exhaustive instances of nonrecoverable and excessive fees outlined above, it is clear that Plaintiffs' attorneys failed to exercise the sort of scrupulous billing judgment that would permit their requested amounts to escape careful scrutiny. As such, the motion should be referred to a special master or magistrate judge.

To uncover even more excesses, Retsel must be allowed an opportunity to conduct discovery and an evidentiary hearing. For example, to discern the existence of a possible contingency fee agreement, Retsel will pursue production of Plaintiffs' fee arrangement with their attorneys. This is because a contingency fee agreement bears on the reasonableness of a fees award. *Blanchard*, 489 U.S. at 93 (holding that "[t]he presence of a pre-existing fee agreement may aid in determining reasonableness," reasoning that the percentage of recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case); *League of Women Voters*, 5 F.4th at 941 n.3 (holding that whether the fee is fixed or contingent is a permissible consideration); *Sisco v. J.S. Alberici Constr. Co.*, 733 F.2d 55, 57 (8th Cir. 1984) ("The existence of such a contract [contingency fee] is still a factor that can be considered, along with all other relevant factors.").

## V.    Plaintiffs disguise their attorneys' firm overhead as litigation expenses.

Recoverable costs are generally limited to those enumerated in 28 U.S.C. Section 1920, and documented according to Federal Rule of Civil Procedure 54(d)(1) and local rules. Taxable

23

costs are: (1) clerk and marshal fees; (2) transcript fees; (3) printing and witness fees and disbursements; (4) copying costs, where the copies are necessarily obtained for use in the case; (5) docket fees; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services. 28 U.S.C. § 1920.

Here, Plaintiffs do not seek taxable costs, as confirmed by their failure to submit a bill of costs. FED. R. CIV. P. 54(d)(1). Instead, Plaintiffs seek $286,617.24 in "out-of-pocket expenses." (ECF No. 437 at 10) A cursory examination of these supposed incidental litigation expenses reveals, however, that what Plaintiffs are truly requesting is that Retsel subsidize their attorneys' firm overhead. To wit, 97% of the total figure consists of charges for postage, courier, copying, telephone, electronic legal research, meals, travel, office supplies, document management, and technology. (ECF No. 438-4 at 2–30, 35–36, 39–70)

Firm overhead is not chargeable to Retsel. *Emery*, 272 F.3d at 1048 ("Plaintiffs are not entitled to reimbursement for expenses that are part of normal office overhead in the community."); *Ace Mortg. Funding, LLC v. Brian Bradford*, No. 1:06-CV-146-SEB-JMS, 2008 WL 2484600, at *1 (S.D. Ind. June 18, 2008) (holding that routine office overhead must be absorbed in the attorney's hourly rate, and cannot be recovered as costs).

Plaintiffs' cited authority does not hold otherwise. *Pinkham v. Camex, Inc.*, 84 F.3d 292 (8th Cir. 1996). That case found that a narrow set of expenses—$5,486.37 in telephone, fax, messenger, and express mail charges—were not taxable costs. *Id.* at 294. The court nevertheless deemed the error harmless, as the expenses are the kind normally charged to clients by attorneys. *Id.* at 295. Not so here, where Plaintiffs' attorneys dare not suggest that they routinely pass to clients the wholesale expense of operating a 200-attorney law firm in seven offices nationwide.

24

The balance of Plaintiffs' requested amount ($31,920.22) represents fees charged by their expert, David Sherwyn, who testified for one day at trial. But this expense is statutorily capped at $40 per day. 28 U.S.C. § 1821(b); 28 U.S.C. § 1920(6); *see also Bone Shirt v. Hazeltine*, No. 01-3032-KES, 2006 WL 1788307, at *8 (D.S.D. June 22, 2006) ("It is settled that §§ 1821 and 1920 limit witness fees, including expert witness fees, to a $40–per–day attendance fee."). Plaintiffs are entitled to nothing more.

**VI.    This Court has no discretion to award enhanced post-judgment interest.**

In an especially egregious example of Plaintiffs' brazen money grab, they lead this Court astray by urging it to flout statutory law. Plaintiffs insist that post-judgment accrues at the rate of 10% per annum, as they claim would be the case under South Dakota law. (ECF No. 437 at 11) This is sheer wishful thinking. Post-judgment interest is governed by federal law, not state law, and this Court has no discretion to deviate from the federal interest rate. 28 U.S.C. § 1961(a); *Swope v. Siegel-Robert, Inc.*, 243 F.3d 486, 497 (8th Cir. 2001).

Applying these principles here, the post-judgment interest rate is considerably less than 10% per annum. Judgment was entered on December 22, 2025. (ECF No. 435) It follows that the applicable interest rate is 3.51% per annum, based on the weekly average one-year constant maturity Treasury yield for the preceding week. 28 U.S.C. § 1961. This Court has no discretion to impose a higher rate. To do otherwise would be guaranteed reversible error.

**CONCLUSION AND RELIEF REQUESTED**

For the foregoing reasons, Retsel respectfully requests that this Court:

(1) deny Plaintiffs' motion for attorneys' fees and costs; or

(2) stay Plaintiffs' motion for attorneys' fees and costs pending final disposition of post-judgment motions and any appeal; or

(3) reduce Plaintiffs' requested attorneys' fees and costs by

25

    (a) setting the billing rates at $300 per hour for partners and $200 per hour for associates; and

    (b) applying an across-the-board reduction of 90% to reflect Plaintiffs' limited success, fees incurred for work unrelated to the Section 1981 claims, fees billed by non-attorney staff members, excessive billing and litigation expenses, block billing, vague time entries, and firm overhead; and

(4) grant Retsel's cross-motion for discovery, an evidentiary hearing, and referral to a special master or magistrate judge; and

(5) grant such further and additional relief as this Court deems just.

Dated: February 3, 2026

*Haylee M. Culver*
Haylee M. Culver (SD Bar #4993)
Don Derrico (admitted *pro hac vice*)
GORDON REES SCULLY MANSUKHANI
283 West Front Street, Suite 003
Missoula, MT 59802
701-300-3449
hculver@grsm.com
dderrico@grsm.com

*Attorneys for Defendants, Retsel Corporation and Nicholas Uhre*

26