UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| NDN COLLECTIVE, SUNNY RED BEAR, NICK COTTIER, BRE JACKSON, MARY BOWMAN, and GEORGE BETTELYOUN,<br><br>Plaintiffs,<br><br>v.<br><br>RETSEL CORPORATION, d/b/a GRAND GATEWAY HOTEL and d/b/a CHEERS SPORTS LOUNGE AND CASINO, and CONNIE UHRE,<br><br>Defendants,<br><br>and<br><br>RETSEL CORPORATION, d/b/a GRAND GATEWAY HOTEL and d/b/a CHEERS SPORTS LOUNGE AND CASINO, and NICHOLAS UHRE<br><br>Counterclaimants,<br><br>v.<br><br>NDN Collective,<br><br>Counterclaim-Defendant. | Civ. No. 5:22-cv-05027-LLP<br><br>**DEFENDANT RETSEL CORPORATION'S REPLY IN SUPPORT OF ITS COMBINED RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, ALTERNATIVE MOTION TO ALTER, AMEND, OR REMIT THE JUDGMENT, AND FURTHER ALTERNATIVE MOTION FOR A NEW TRIAL** |

Retsel files its Reply in Support of its Combined Renewed Motion for Judgment as a Matter of Law; Alternative Motion to Alter, Amend, or Remit the Judgment; and Further Alternative Motion for a New Trial.[1] (ECF Nos. 449, 450.) In support of its reply, Retsel respectfully shows as follows:

## INTRODUCTION

Plaintiffs' response is an exercise in evasion. Rather than engage the legal standards governing Section 1981, Plaintiffs try to preserve the judgment through waiver rhetoric, selective quotation, and narrative gloss that collapses under even minimal scrutiny. They sidestep the core issues, blur distinctions the law treats as dispositive, and ask the Court to sustain liability, damages, and punishment by relaxing settled requirements that Plaintiffs bore—and failed—to prove at trial.

Retsel's renewed motion for judgment as a matter of law identifies three dispositive failures of proof that Plaintiffs still do not cure. *First*, the record contains no legally sufficient evidence of discriminatory intent. Tellingly, the incidents Plaintiffs cite are refuted by video, stripped of context, or reduced to speculation and stray remarks. *Second*, Plaintiffs failed to establish agency. Connie Uhre lacked actual or apparent authority, Retsel condemned her conduct, and nothing in the record permits imputation to Retsel. *Third*, Plaintiffs presented no

[1] Retsel adopts by reference all defined terms, short-form names, and abbreviations as used in its combined post-trial motion. (ECF Nos. 449–450.)

evidence of compensable injury beyond alleged emotional distress, a failure underscored by their concession that punitive damages could stand even if compensatory damages collapse to nominal. Any one of these failures independently requires judgment as a matter of law.

Retsel's remaining and alternative post-trial motions expose additional, incurable defects in the verdict. Several Plaintiffs lacked standing to pursue the Section 1981 claims submitted to the jury, a problem compounded by a verdict form that asked for a generalized discrimination finding. The punitive damages award is equally defective. Plaintiffs offered no evidence of malice or reckless indifference attributable to Retsel itself, and punishment cannot stand where liability and injury were never proved. These errors were then disproportionally magnified by the admission of inflammatory, irrelevant evidence unrelated to the claims the jury was asked to decide. Each flaw is serious on its own, but together they confirm that the verdict cannot be salvaged.

Upholding this verdict would erase the lines Section 1981 carefully draws. Outrage may have filled the courtroom, but proof never filled the record. Accordingly, the judgment should therefore be vacated, judgment rendered in Retsel's favor, or alternatively a new trial ordered.

# ARGUMENT

## I. Reply in Support of Retsel's Renewed Motion for Judgment as a Matter of Law

### A. Judgment as a matter of law is required on the Section 1981 claims.

#### 1. No legally sufficient evidence supports a finding of intentional discrimination.

Plaintiffs begin by asserting that Retsel waived its right to seek judgment as a matter of law on George Bettelyoun's Section 1981 claim because Retsel did not raise this precise argument in its Rule 50(a) motion at trial. (ECF No. 460 at 3.) That contention fails at the outset. Rule 50 does not require "technical precision," and a post-trial Rule 50(b) motion may properly advance grounds that are closely related or "inextricably intertwined" with those raised under Rule 50(a). *Hagen v. Siouxland Obstetrics & Gynecology, PC*, 799 F.3d 922, 927–28 (8th Cir. 2015). Here, Retsel's Rule 50(a) motion squarely challenged the sufficiency of the evidence supporting discriminatory intent. That challenge necessarily encompasses and preserves the argument that the evidence cannot support Bettelyoun's distinct Section 1981 claim. Plaintiffs' attempt to reframe that preservation rule as waiver elevates form over substance and should be summarily rejected.

Following this, Plaintiffs' account of the Bettelyoun incident asks the Court to read racial animus into an encounter that the video evidence itself refutes. The footage shows a brief, contentious interaction, but nothing that supports an

inference of discriminatory intent. (Exs. 201, 202, 203.) The jury was not free to ignore what the camera plainly depicts. Plaintiffs' reliance on the alleged "Rosebud" comment does not change that analysis. That remark does not appear in the video, and there is no competent evidence that it occurred at all. Nor can Plaintiffs salvage intent by pointing to Nick's post-incident texts and statements. Post hoc expressions of frustration or hostility—made after the encounter had already ended—cannot retroactively supply discriminatory intent for the June 2020 interaction itself. *Quick v. Wal-Mart Stores, Inc.*, 441 F.3d 606, 609 (8th Cir. 2006) (holding statements made lacking temporal proximity to alleged discriminatory event are not evidence of discriminatory intent). At bottom, speculation layered onto hindsight is not legally sufficient to establish intentional discrimination under Section 1981.

The March 21, 2022 incident with Red Bear further exposes the hollowness of Plaintiffs' intent theory. As explained below, Connie was not acting as Retsel's agent, and her comments cannot be imputed to the company. Even setting agency aside, Plaintiffs strip the exchange of context to manufacture racial animus where none exists. The record shows that Nick's comments in the March 19, 2022 email reflected frustration with local government's failure to respond to a recent shooting and prevent future violence, not hostility toward Native Americans. (Ex. 53.) Plaintiffs' claim that Connie endorsed a "no locals" policy as a discriminatory

stand-in is flatly contradicted by the evidence. (Ex. 12.) In fact, Connie *expressly agreed* that Retsel could not discriminate against Native Americans. (*Id.*) Nor was the "no locals" policy cherry-picked or race-based. Consistent with its prior practice, Retsel applied the "no locals" policy to all guests and implemented it in response to recent violence at the hotel. (2 Trial Tr. 236.[2]) Plaintiffs' pretext theory collapses entirely on the undisputed fact that Retsel was willing during the same encounter to rent a room to Mousseaux, a non-local Native American—conduct that is *per se* incompatible with intentional racial discrimination or pretext. (Exs. 204–205.)

Additionally, the March 22, 2022 incident confirms—not undermines—the absence of racial intent. The unrebutted testimony is that, in the immediate aftermath of Connie's vile Facebook post, Nick felt personally threatened and under siege. He believed that Hermus "worked" for NDN Collective, knew that Hermus had circulated a doctored image falsely claiming Nick said "no Native Americans" could stay at the hotel, and was receiving constant threats directed at him and his family. (Ex. 213; 2 Trial Tr. 154, 156, 157–58, 163–64, 172.) Against that backdrop, Nick's decision to eject individuals he associated with NDN Collective admits of only one reasonable explanation: animus toward Hermus and

[2] Plaintiffs' criticism that Retsel did not initially cite the trial transcript is not well taken. The trial transcript was filed and first became available on the same day Retsel filed its post-trial motion, making contemporaneous citation impracticable. (ECF Nos. 448–450.)

the organization Nick believed was fueling the threats. (Exs. 208–209.) Plaintiffs effectively concede the point, acknowledging that the encounter stemmed from Nick's hostility toward NDN Collective itself. (ECF No. 460 at 6–7.) Their attempt to manufacture pretext from the presence of Nick's "golf buddy" also fails. That guest stayed pursuant to a preexisting trade account with the hotel, which Nick honored—just as Retsel honored reservations already made before the temporary "no locals" policy took effect. (2 Trial Tr. 195–96.) Honoring existing commitments while refusing service based on perceived affiliation with NDN Collective is not discrimination.

Finally, Plaintiffs' reliance on assorted stray remarks untethered from any of the challenged incidents adds nothing to the intent analysis. Isolated comments, made at different times and in different contexts, cannot substitute for evidence that race motivated the specific decisions at issue. *Clearwater v. Indep. Sch. Dist. No. 166*, 231 F.3d 1122, 1126 (8th Cir. 2000) (holding stray remarks are "not sufficient to establish a claim for discrimination"). Stripped of their narrative gloss, these remarks amount to no evidence of discriminatory intent.

In sum, Plaintiffs' intent evidence amounts to speculation layered onto hindsight, contradicted by video, undisputed facts, and Plaintiffs' own concessions. Because no reasonable jury could find intentional racial discrimination on this

record, Retsel is entitled to judgment as a matter of law on Plaintiffs' Section 1981 claims.

**2. Agency fails because Plaintiffs fail to identify any actual or apparent authority for Connie to act on Retsel's behalf.**

Plaintiffs attempt to preserve their Section 1981 claim by imputing Connie's discriminatory statements to Retsel based on her corporate title and a handful of unrelated workplace communications. (ECF No. 460 at 8–10.) That theory fails because it sidesteps the core requirement of agency—actual or apparent authority.

Plaintiffs never address the threshold issue of *authority*. Their response does not argue, much less cite evidence, that Connie had actual or apparent authority to act on Retsel's behalf when she made the social-media post at issue. That silence is dispositive. Vicarious liability under Section 1981 requires proof that the challenged conduct was undertaken by an agent acting with authority attributable to the principal. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477 (2006) (acknowledging traditional agency principles apply to Section 1981 claims); *Green v. Dillard's, Inc.*, 483 F.3d 533, 540 (8th Cir. 2007) (same). Where Plaintiffs abandon any claim of actual or apparent authority, the inquiry ends.

Plaintiffs' reliance on Connie's title is equally misguided. Corporate status alone does not convert all conduct by an officer into corporate action. *Meyer v. Holley*, 537 U.S. 280, 286 (2003). Liability turns on authority, not job titles.

Plaintiffs' theory would erase that distinction and impose vicarious liability simply because Connie was president—an approach the law expressly rejects.

Nor do the isolated workplace references Plaintiffs cite—separate emails, internal communications, or a front-desk to-do list—transform a personal Facebook post into corporate action. None of those items authorized, contemplated, or ratified the post, and none show that social-media commentary fell within Connie's alleged duties. At most, Plaintiffs identify unrelated operational communications that cannot bridge the gap between a private, unilateral post and an action taken on behalf of the corporation.

The record also affirmatively negates agency. Retsel did not approve of or adopt Connie's conduct, and Connie lacked any authority to control or bind the company. (1 Trial Tr. 238–39; 2 Trial Tr. 291.) She could not set corporate policy or act unilaterally for the company. (2 Trial Tr. 317–18.) Far from ratifying her conduct, Retsel disavowed it—conduct that is fatal to any claim of vicarious liability under settled agency principles. (2 Trial Tr. 312.)

In short, Plaintiffs' agency argument rests on inference piled on inference, untethered from any actual or apparent authority. Plaintiffs' failure to establish agency independently requires judgment as a matter of law on this theory.

### 3. Evidence of emotional distress without any actual injury cannot be the foundation for compensatory damages.

Plaintiffs lay bare the fatal defect in their compensatory damages claims. They openly premise recovery on mental and emotional harms untethered from any actual injury, a theory the Eighth Circuit has squarely rejected. *Bailey v. Runyon*, 220 F.3d 879, 880–81 (8th Cir. 2000) (collecting cases). Emotional distress damages are not presumed and require competent evidence of a "genuine injury." *Id.* (quoting *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 531 (8th Cir. 1999)). Plaintiffs do not identify such evidence here. Worse still, they do not respond at all to Retsel's argument that NDN Collective suffered no actual compensatory harm—effectively conceding the point. Conclusory references to embarrassment or discomfort, standing alone, cannot sustain the compensatory award Plaintiffs were given as a matter of law. *Id.*

Plaintiffs try to force this case into the framework of *Hall v. Gus Construction Co.*, when *Hall* is the outlier. There, the plaintiffs endured a four-month campaign of abuse, including public humiliation, offensive touching, and physical assaults, which drove them from their jobs. 842 F.2d 1010, 1012 (8th Cir. 1988). The resulting emotional harm was pervasive, obvious, corroborated, and inseparable from the conduct itself. *Id.* It follows that the Eighth Circuit upheld modest compensatory awards under a clearly erroneous standard. *Id.* at 1017. Outside those extreme circumstances, compensatory damages require proof of

concrete emotional injury tied to non-isolated, publicly humiliating conduct. *Forshee*, 178 F.3d at 531. Where, as here, the record shows at most a single, private incident—with no physical injury, no treatment, no corroboration, and no outward manifestations of distress—there is no basis for compensatory damages. *Id*. *Hall* supplies the severity Plaintiffs lack, and *Forshee* demands proof they never tried to offer.

Plaintiffs' fallback argument gives the game away. By insisting that punitive damages may be awarded even if compensatory damages are reduced to nominal ones, Plaintiffs implicitly concede that the record cannot support compensatory damages at all. That concession confirms that judgment as a matter of law is at least required for compensatory damages.

**B. Plaintiffs presented no evidence supporting vicarious liability for the alleged assault.**

Plaintiffs' assault theory rests on the premise that Connie's conduct can be attributed to Retsel based on where it occurred and her corporate title. (ECF No. 460 at 11–12.) But neither point establishes agency. That Connie was Retsel's president, or that she believed she was acting to protect the hotel, does not show that she had actual or apparent authority to act on the company's behalf. *Bass v. Happy Rest, Inc.*, 507 N.W.2d 317, 320 (S.D. 1993) (holding officer status alone insufficient to establish agency); *Kasselder v. Kapperman*, 316 N.W.2d 628, 630 (S.D. 1982) (holding "acts, declarations or conduct of an agent" insufficient to

establish agency). Plaintiffs identify no evidence that Retsel authorized Connie to confront protesters, held her out as having such authority, or ratified her conduct afterward. At most, the record shows that the incident occurred on hotel property, which is insufficient to establish vicarious liability for a personal, unilateral act. *Iverson v. NPC Int'l, Inc.*, 2011 S.D. 40, ¶ 11, 801 N.W.2d 275, 279. Thus, judgment as a matter of law is required in Retsel's favor on the assault claim.

## II. Reply in Support of Retsel's Motion to Alter, Amend, or Remit the Judgment

### A. Plaintiffs cannot disprove that they lack standing to assert claims under Section 1981.

Plaintiffs are correct that Red Bear, Eagle, Jackson, Bowman, and Cottier testified at trial that they intended to rent rooms when they went to the Grand Gateway, but their testimony is incredible. It is clear from Red Bear's, Eagle's, Bowman's, Jackson's, and Cottier's testimony that the only reason they went to the Grand Gateway was to test whether Retsel would refuse to rent them rooms based on their race.

Red Bear only went up to the Grand Gateway hotel on March 21, 2022, in reaction to Connie's Facebook post. (3 Trial Tr. 418–19.) She testified in her deposition that she went to the Grand Gateway to test if Retsel would refuse her service, not to rent a room for anyone. (3 Trial Tr. 451–52.) Red Bear changed her testimony at trial only after Defendants argued she lacked standing based on this

deposition testimony. Further undermining her trial testimony, Red Bear conceded that she did not try to rent a room elsewhere after Retsel refused her services. (3 Trial Tr. 430–31.)

Like Red Bear, NDN Collective, Jackson, Bowman, and Cottier only went to the Grand Gateway in reaction to Connie's Facebook post, not to actually rent rooms. (3 Trial Tr. 523–24, 543-45, 570–71; 4 Trial Tr. 618–19.) Plaintiffs provided no evidence that they would have gone to the Grand Gateway hotel on March 22, 2022, but for Connie's Facebook post. Eagle and Cottier testified that, had Retsel been willing to rent them rooms, they would have rented the rooms and given them to an unhoused relative, a victim of domestic violence, or any visitors of NDN Collective. (3 Trial Tr. 515, 519; 4 Trial Tr. 618–20.) Bowman and Jackson, meanwhile, testified they would have rented a room and stayed in it for a "staycation." (3 Trial Tr. 544, 571.) But belying their testimony is the fact that none tried to rent a room elsewhere after Retsel refused service, and that none suggested they had any desire to rent a hotel room before seeing Connie's Facebook post.

### B. Plaintiffs failed to show that they engaged in protected activity for purposes of Section 1981.

#### 1. Bowman, Jackson, and Cottier acted only as NDN Collective's agents, not as contracting parties.

Plaintiffs presented no evidence that Bowman, Jackson, and Cottier tried to form a contract with Retsel. When Eagle, Bowman, Jackson, and Cottier arrived at

the Grand Gateway on March 22, 2022, only Eagle asked the front desk to rent a room. (4 Trial Tr. 639–38; Exs. 208–209.) Bowman, Jackson, and Cottier never even tried to ask for one. There is also no evidence that NDN Collective attempted to enter into a contract with Retsel, to which Bowman, Jackson, and Cottier would be third-party beneficiaries. Indeed, as Eagle testified, had Retsel been willing to rent rooms, she would have rented them to visiting staff of NDN Collective or to unhoused relatives—not to Bowman, Jackson, or Cottier. (3 Trial Tr. 515, 519.)

**2. Bettelyoun lacks standing for the same reasons already briefed and preserved.**

Bettelyoun's standing argument fails for the same reason it failed before. The record shows he did not seek to contract in his own right, was not the contracting party, and therefore suffered no cognizable injury under Section 1981. Plaintiffs' response offers no new facts, law, or theory—only a repackaged disagreement with arguments already raised, preserved, and correctly presented in Retsel's post-trial motion.

**3. No lawful contract was possible, and that defect was neither waived nor curable.**

Plaintiffs' "waiver" argument only underscores the seriousness of the legal impossibility problem. Retsel repeatedly raised—well before trial—the dispositive legal point that no lawful contract could have been formed given South Dakota's mandatory guest-registry statute, and legal arguments raised in dispositive motions

provide ample notice without unfair surprise. (ECF No. 86 at 16 ¶ 145; ECF No. 182 at 20 n.5; ECF No. 269 at 4; ECF No. 349 at 23–30; ECF No. 454 at 6–10.) By contrast, Plaintiffs' suggestion that Retsel somehow waived statutory compliance through hotel practice would itself be an affirmative claim of waiver—one that was never pleaded, never the subject of discovery, and never supported by evidence. Plaintiffs cannot cure that failure by assertion in a response brief, nor can a private party waive a statutory mandate that renders the proposed contract unlawful in the first place.

In any event, Plaintiffs' attempt to brush aside the guest-registry statute misses the point entirely. Retsel's argument is not hypothetical or speculative—it is that South Dakota law made the transaction Plaintiffs demanded legally impossible. SDCL § 34-18-21 requires a hotel, as a condition of rental, to register the identity of the actual guest occupying the room. Plaintiffs admit they did not know who would stay, did not intend to stay themselves, and sought to test whether the hotel would rent rooms to unidentified third parties. That is precisely what the statute forbids. Plaintiffs' response that the statute imposes duties on hotels rather than guests only reinforces the problem. Section 1981 does not confer a right to insist on an unlawful contract, and no amount of speculation about what *might* have happened later can cure the legal impossibility that existed at the moment Plaintiffs were refused service.

### C. The punitive damages award cannot stand when it rests on no evidence of malice, reckless indifference, or imputation.

Punitive damages under Section 1981 require proof of a heightened mental state—malice or reckless indifference to federally protected rights—not merely intentional discrimination. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534–35, 544–45 (1999) (citing 42 U.S.C. § 1981a). Plaintiffs' opposition collapses that distinction. The record does not support the mental state required for punishment, and the punitive award is therefore manifestly erroneous as a matter of law.

By not responding, Plaintiffs admit that the record contains no evidence that Nick or any Retsel employee knew that the challenged conduct violated federal law or consciously disregarded that risk at the time it occurred. (ECF No. 450 at 18.) A jury's decision to credit Plaintiffs' version of events and reject Nick's testimony does not supply that missing mental state.

Plaintiffs' reliance on testimony acknowledging that discrimination is wrong fares no better. General awareness that discrimination is unlawful does not establish reckless indifference. *Compare Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 943 (8th Cir. 2007) (reversing punitive damages award based on business decisions and ineptness), *with Otting v. J.C. Penney Co.*, 223 F.3d 704, 711–12 (2000) (finding sufficient evidence of discrimination when manager admitted awareness of specific restrictions under federal law). If it did, punitive damages would attach in every discrimination case as a matter of course. Nor can post-hoc

moral condemnation, characterizations of the conduct as egregious, or the absence of discipline substitute for proof of contemporaneous malice or conscious legal defiance. *See Browning v. President Riverboat Casino-Mo., Inc.*, 139 F.3d 631, 636 (8th Cir. 1998) (holding employer's failure to investigate discrimination charge did not support punitive damages).

Plaintiffs' attempt to distinguish employment cases is plainly wrong. The Eighth Circuit has squarely held that the standard for imputing vicarious liability for punitive damages under Section 1981 is identical to that applicable to Title VII claims. *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 526 (8th Cir. 2019). Nor does Plaintiffs' reliance on *Sherman v. Kasotakis*, 314 F. Supp. 2d 843, 860–61 (N.D. Iowa 2004), suggest otherwise. There, the court did not hold that *Kolstad*'s imputation principles are *per se* inapplicable to Section 1981 claims. *Id.* Choosing to avoid the question, the court instead concluded that punitive damages were supported on alternative grounds. *Id.* at 861.

Even if Plaintiffs had shown the requisite mental state, the punitive award still cannot be imputed to Retsel. Plaintiffs allege, in support of this, that Nick was the "de facto manager" of the hotel. (ECF No. 460 at 18.) Yet Plaintiffs concede that Nick lacked authority to set corporate policy unilaterally, and the undisputed evidence showed that the board did not approve—and in fact affirmatively disapproved—both the alleged "no-locals" policy and Connie's racist Facebook

posts. At most, Plaintiffs proved intentional discrimination, not malice or reckless indifference, while Nick was acting within the course and scope of any managerial role. On this record, the punitive damages award must be vacated—even if the Court leaves the liability verdict intact.

### D. Plaintiffs fail to overcome Retsel's showing that punitive damages awarded to Red Bear must be remitted to $9.

Plaintiffs' reliance on the due-process guideposts from *Campbell* confirms that punitive damages awarded to Red Bear are improper and must be remitted. Plaintiffs' assertion that reprehensibility was high is unsupported by the record. The conduct at issue involved brief, isolated service encounters—not physical harm, threats to health or safety, financial exploitation, or deception. There was no evidence of repeated misconduct carried out pursuant to an approved corporate policy, no effort to conceal wrongdoing, and no conduct designed to extract value from vulnerable individuals. On these facts alone, the degree of reprehensibility falls decidedly at the low end of the constitutional spectrum.

The disparity between the harm suffered and the punitive damages awarded weighs decisively against punishment. There is no dispute that the ratio of punitive to compensatory damages here exponentially exceeds the single-digit ratio the Supreme Court identified in *Campbell* as the constitutional ceiling in all but the most exceptional cases. 538 U.S. 408, 425 (2003). That violation is dispositive. It is immaterial that other courts, under distinguishable facts involving far greater

harm or far higher reprehensibility, have upheld larger punitive awards. *See Bryant*, 919 F.3d at 524, 528 (allowing $25,000 in punitive damages in case where defendant used vile and derogatory terms to refer to plaintiff); *Sherman*, 314 F. Supp. 2d at 849, 870 (same). Absent exceptional circumstances (none of which exist here), this Court is bound by the ratio in this case, not by punitive damages approved elsewhere under materially different circumstances.

Finally, the punitive awards bear no relationship to any comparable civil penalties. Plaintiffs identify no statutory or regulatory penalties approaching the punishment imposed here, depriving Retsel of fair notice of the magnitude of potential liability. Because all three guideposts weigh against punishment, the punitive damages awarded to Red Bear must be remitted to a constitutionally allowable amount—$9.

## III. Reply in Support of Retsel's Motion for a New Trial

### A. Plaintiffs' arguments do not undermine the need for a new trial based on the Court's evidentiary rulings.

#### 1. The record does not excuse the harmful impact of the Court not admitting the Mousseaux video.

Plaintiffs' forfeiture argument rests on the false premise that Rule 37(c) was never raised because Retsel did not expressly invoke the rule. However, Retsel squarely raised the issue in substance while seeking admission of the Mousseaux video. Plaintiffs objected to the video on nondisclosure grounds, and Retsel responded by addressing the discovery issue head-on, explaining the circumstances

of the video's existence, the lack of prior production, and why exclusion was unwarranted. (1 Trial Tr. 79–92.) That exchange necessarily invoked Rule 37(c)'s framework: whether nondisclosure occurred, who bore responsibility for it, and what consequence—if any—should follow. Plaintiffs cannot now recast a fully litigated discovery dispute as if Rule 37(c) were never in play simply because Retsel did not recite the rule number.

Nor can Plaintiffs avoid the consequences of the Court's exclusion of the exculpatory video by pointing to the fact that Retsel never produced it. As explained in the motion, Plaintiffs knew the video existed, knew it captured the encounter with Red Bear, and nevertheless chose not to pursue it in discovery—only to claim surprise when Retsel sought to use it. (ECF No. 250 at 21–23.) Rule 37(c) does not reward that gamesmanship. And the objection itself concedes the point: the video is exculpatory as to Red Bear. Evidence offered to rebut or contradict a central witness on a core liability issue is, by definition, material, and its exclusion is harmful. *See United States v. Swink*, 21 F.3d 852, 856 (8th Cir. 1994) (holding that exclusion of exculpatory testimony that removed a factual issue from the jury was reversible error). By keeping the jury from seeing the only contemporaneous, objective evidence of what occurred, the ruling deprived Retsel of its strongest credibility evidence and skewed the evidentiary record. That prejudice warrants relief.

**2. Plaintiffs offer no answer to the prejudicial admission of political and conspiracy theory evidence.**

Plaintiffs argue that any objection to Nick's testimony about political conspiracies was waived because Retsel failed to identify specific questions and answers, and that the testimony was properly admitted as evidence of discriminatory intent under *Fitzgerald v. Action, Inc.*, 521 F.3d 867 (8th Cir. 2008). (ECF No. 460 at 24–26.) Both arguments fail.

First, there was no waiver. When a court permits the wholesale and repeated introduction of a category of evidence that pervades a witness's testimony, a party is not required to catalogue individual questions to preserve error. Retsel objected to this line of evidence before trial, and the objection was conclusively overruled. (ECF No. 229 at 9.) That ruling preserved the issue. *United States v. Young*, 753 F.3d 757, 775 (8th Cir. 2014) (citing FED. R. EVID. 103(b)) ("Once the court rules *definitively* on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal."). Nothing required Retsel to catalogue every question and exhibit or to re-justify inadmissibility piece by piece after the court definitively ruled the entire category admissible. And Plaintiffs cite no authority imposing such a requirement.

Second, *Fitzgerald* does not support the admission of this testimony. *Fitzgerald* involved remarks probative of bias against the protected class at issue. 521 F.3d at 876–77 (holding that stray remarks about plaintiff's age were relevant

in an age-discrimination case). Nick's testimony was not. His statements concerned political conspiracies he believed connected various political and criminal groups to NDN Collective and its affiliates. They spoke to Nick's potential political hostility toward NDN Collective, not race. They contained no racial content and did not tend to prove or disprove any discriminatory intent under Section 1981. Injecting those views into the case invited the jury to punish Nick for his politics rather than assess his conduct, creating severe unfair prejudice untethered to any legitimate evidentiary purpose. That distinction makes *Fitzgerald* inapposite and underscores exactly why admission of this testimony warrants a new trial.

**3. Admitting testimony on the unproven "Rosebud" allegation was prejudicial error.**

Plaintiffs' response to the "Rosebud" issue completely sidesteps the record. To start, the issue was litigated in limine and conclusively overruled. (ECF No. 229 at 19.) Worse yet, the trial evidence never proved what Plaintiffs now assume. Nick did not admit to making a "Rosebud" comment. Rather, Nick clarified that his recollection is poor, and that he cannot say one way or the other if Rosebud was referenced. (2 Trial Tr. 321–22.) And the claim that approximately twenty-one seconds were removed from the video rests on nothing but Plaintiffs' say-so. No witness testified that footage was altered, no expert opined that anything was missing, and no evidence established that any racial remark occurred

during the alleged gap. Despite all of this, the jury was invited to infer both spoliation and racial animus from that vacuum. Allowing that allegation to reach the jury was harmful error, substituting speculation for proof on a central issue of intent, and requires a new trial.

**4. Sherwyn's unreliable testimony imported an impermissible disparate-impact theory and was unrecoverably prejudicial.**

Plaintiffs' defense of Sherwyn's irrelevant and unreliable testimony consists of little more than the assertion that Retsel is "wrong," and is thus inadequately briefed. Contrary to Plaintiffs' claims, Retsel moved to exclude Sherwyn's testimony, and that motion was conclusively denied. (ECF No. 321 at 12–17.) Tellingly, Plaintiffs then largely ignore the substance of Retsel's argument. Plaintiffs do not explain how Sherwyn's opinions satisfy Section 1981's requirement of intentional discrimination, or how his conclusion that Retsel's policies were "pretextual" rests on any accepted methodology rather than assumption. Plaintiffs likewise do not confront the central problem that his testimony asked the jury to infer intent from generalized effects untethered to any specific incident or decision-maker. By failing to engage these defects, Plaintiffs leave unrebutted that Sherwyn's testimony substituted speculation for proof, lowered their burden of persuasion, and improperly imported a disparate-impact theory into a case that requires purposeful discrimination. That error was prejudicial and compels a new trial.

### 5. Excluding the foreclosure evidence distorted the punitive-damages inquiry.

Even taking Plaintiffs' framing of the foreclosure evidence at face value, the prejudice analysis runs in the opposite direction. The question is not whether the punitive damages award was large in absolute terms, but whether the exclusion of evidence bearing directly on the need for punishment could have affected the jury's decision. *Doe v. Young*, 664 F.3d 727 (8th Cir. 2011) (holding exclusion of highly probative evidence bearing directly on defendant's reckless indifference for punitive damages was substantially prejudicial and warranted new trial).

It bears repeating that no punitive damages are warranted on this record. Still, Plaintiffs admit that the Court barred Retsel from presenting evidence of the pending foreclosure—evidence that went directly to whether any conduct reflected clear financial distress. *Schaub v. VonWald*, 638 F.3d 905, 926–27 (8th Cir. 2011) (holding evidence of tortfeasor's wealth "traditionally admissible as a measure of the amount of punitive damages that should be awarded"). Plaintiffs argue there can be no prejudice because the punitive award was only about $32,000 (ECF No. 460 at 28), but that misses the point entirely. The jury's punitive and compensatory awards were equal and substantive, reflecting a moral judgment that punishment was necessary. Excluding evidence that spoke to Retsel's financial status and whether punishment was justified at all was prejudicial, regardless of the dollar figure ultimately returned.

**6. Excluding the Hermus Bettelyoun evidence removed critical context on intent and caused prejudice.**

Finally, the exclusion of Hermus Bettelyoun's testimony as unduly prejudicial cannot be justified. Excluding evidence on such grounds is appropriate only where probative value is *substantially* outweighed by unfair prejudice, confusion, or waste of time—not where evidence undermines one party's narrative. FED. R. EVID. 403. Retsel offered Nick's testimony that Hermus had previously smeared feces on a hotel bed after being disciplined. (ECF No. 321 at 5.) That incident explained Nick's state of mind and why he later viewed Hermus as dangerous. (*Id.*) The evidence was not offered to inflame the jury or prove character. It provided context and rebutted the claim that Nick's conduct was driven by racial animus rather than prior experience. Rule 403 does not bar relevant evidence because it is unpleasant. Excluding this testimony removed the most direct explanation for Nick's conduct, leaving the jury to speculate about motive. When excluded evidence goes to intent and credibility, the core issues in the case, the error is harmful and warrants a new trial.

**B. Plaintiffs concede that the verdict form included plain error by allowing Section 1981 liability without contract interference.**

Plaintiffs do not engage with Retsel's verdict-form argument at all. They assert, without analysis, that no plain error exists. That non-response is a concession and waiver of any contrary position. *Milligan v. City of Red Oak*, 230

F.3d 355, 360 (8th Cir. 2000) (declining to address an issue because the party failed to "support his assertion with any argument or legal authority," and thus, "waived the issue").

The problem is not the jury instructions, which correctly stated that Section 1981 protects the right to "making and enforcement of contracts." (ECF No. 427 at 11.) It is the verdict form, which never required the jury to decide whether any Plaintiff was actually denied that right. (*Id.* at 32–37.) By reducing Section 1981 to a generic finding of "discrimination," the form removed the statute's core contractual element at the moment of decision and invited liability untethered from contract interference. A correct instruction cannot cure a verdict form that omits an essential element. The resulting ambiguity creates a real risk that the jury found discrimination without finding a denial of the right to make or enforce a contract. That misstatement of law is plain error and requires vacatur of the Section 1981 verdict.

## **<u>CONCLUSION</u>**

For these reasons and those stated in the original combined motion, Retsel respectfully requests that this Court grant the following relief: (1) vacate the judgment entered against Retsel and enter judgment for Retsel and against Plaintiffs; (2) in the first alternative, alter or amend the judgment to vacate all findings of liability under Section 1981, or at least remit the punitive damages

awarded to Red Bear; (3) in the second alternative, grant a new trial on all issues of liability vis-à-vis Retsel; and (4) grant such further and additional relief as this Court deems just.

Dated: February 13, 2026

*DRAFT*

Haylee M. Culver (SD Bar #4993)
Don Derrico (admitted *pro hac vice*)
GORDON REES SCULLY MANSUKHANI
283 West Front Street, Suite 003
Missoula, MT 59802
701-300-3449
hculver@grsm.com
dderrico@grsm.com

*Attorneys for Defendants,*
*Retsel Corporation and Nicholas Uhre*