UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| NDN COLLECTIVE, SUNNY RED BEAR, NICK COTTIER, BRE JACKSON, MARY BOWMAN and GEORGE BETTELYOUN,<br><br>Plaintiffs,<br><br>v.<br><br>RETSEL CORPORATION, d/b/a GRAND GATEWAY HOTEL and d/b/a CHEERS SPORTS LOUNGE AND CASINO,<br><br>Defendant,<br><br>and<br><br>RETSEL CORPORATION, d/b/a GRAND GATEAY HOTEL and d/b/a CHEERS SPORTS LOUNGE AND CASINO and NICHOLAS UHRE,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>NDN COLLECTIVE,<br><br>Counterclaim Defendant. | 5:22-CV-05027-KES<br><br>ORDER DENYING MOTION TO RECONSIDER |

Defendant, Retsel Corporation, moved for reconsideration under Fed. R. Civ. P. 60(b) of this court's orders (1) denying Retsel's motion to dismiss the claims of Sunny Red Bear, Alberta Eagle, Bre Jackson, Mary Bowman, and Nick Cottier under 42 U.S.C. § 1981 for lack of standing (Docket 279), and (2) denying reconsideration on the same issue (Docket 309). Docket 348.

Plaintiffs filed a response. Docket 445. This court now issues the following order.

**LEGAL STANDARD**

Rule 60(b) provides that:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Relief under Rule 60(b) is an "extraordinary remedy" granted at the discretion of trial level courts. *Hunter v. Underwood*, 362 F.3d 468, 475 (8th Cir. 2004). While a legal error in a court's previous order can constitute a "mistake" under Rule 60(b)(1), *see Kemp v. United States*, 596 U.S. 528, 533-34 (2022), "[t]he Eighth Circuit has stated that Rule 60(b)(1) is grounded in equity and 'is to be given a liberal construction so as to do substantial justice' and 'prevent the judgment from becoming a vehicle of injustice.' " *Finneman v. Laidlaw*, 2024 WL 2724723, at *2 (D.S.D. May 28, 2024) (quoting *MIF Realty L.P. v. Rochester Assocs.*, 92 F.3d 752, 755 (8th Cir. 1996)). Similarly, relief pursuant to the Rule 60(b)(6) catch-all provision is "exceedingly rare" and available only in "exceptional circumstances." *In re*

*Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 868 (8th Cir. 2007). A motion for reconsideration "cannot be used to introduce new evidence that could have been produced while the [ ] motion was pending." *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 992 n.4 (8th Cir. 1998). Nor is Rule 60(b) "a vehicle for simple reargument on the merits." *Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999).

## BACKGROUND

Retsel's motion is the most recent of several filings arguing that plaintiffs' § 1981 claims must fail because their alleged status as "testers" deprives them of standing under Article III of the U.S. Constitution.[1] The facts underlying this case have not changed since this court issued its order on defendants' summary judgment motion. *See* Docket 279; *see also* Docket 309 at 2 (declining to repeat this case's background information after having already done so in six other orders).

On December 19, 2025, following a five-day jury trial, a jury returned a verdict ruling for all of the Native American plaintiffs on their § 1981 claims. Docket 433. The jury was instructed on the issue of "tester standing" and impliedly rejected the defense that the plaintiffs were testers by ruling in their favor on their claims under § 1981. Docket 427 at 14.

---

[1] As Judge Piersol observed in his order denying defendants' motion to certify for interlocutory appeal (the most recent on this issue), he had "lost track" of how many times they had raised argument on the standing issue and did not doubt plaintiffs' suggestion that it was the ninth. Docket 320 at 1.

Retsel's latest motion cites two bases for this court to reconsider its order on Retsel's summary judgment motion. First, Retsel argues that this court erred in concluding that plaintiffs' claims are not barred by the doctrines of Article III and prudential standing. Docket 349 at 2. Retsel argues that this issue is "heightened" by Justice Alito's recent concurrence in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), an opinion that briefly discusses the Court's evolving third-party standing doctrine. In sum, Retsel argues that plaintiffs are self-admitted testers who did not intend to stay in the rooms they attempted to book at the Grand Gateway Hotel. Docket 349 at 3. Retsel claims that the third-party standing doctrine relates to this issue because plaintiffs did not have a personal plan to obtain lodging for themselves. *Id.* at 19. Even if they did book the rooms, Retsel argues that they would not have stayed in them themselves, and were acting solely in their capacity as members of NDN Collective. *Id.* at 21. Retsel claims that these plaintiffs' acting on behalf of NDN is an issue because "*CASA* also exposes the flaw in the Court's prior 'dual capacity' analysis," and thus the individual plaintiffs and the organization they represent cannot both carry standing. *Id.*

Second, Retsel argues that they cannot be held liable under § 1981 because forming a contract was legally impossible. *Id.* at 2-3. Specifically, Retsel argues that because SDCL § 34-18-21 requires a hotel to obtain an actual guest's identifying information as a condition of rental, plaintiffs' admitted intention to rent the hotels on behalf of unidentified guests meant

that the transaction plaintiffs sought would have violated state law. *Id.* This court now considers both arguments.

## DISCUSSION

### I.      Standing, Injury-in-Fact, and Testers

Standing is the "irreducible constitutional minimum" that a plaintiff must meet for his action to have stated a "case or controversy" under Article III of the United States Constitution. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992); *Glickert v. Loop Trolley Transp. Dev. Dist.*, 792 F.3d 876, 880-81 (8th Cir. 2015). For a plaintiff to have standing, he must have suffered an "injury in fact—an invasion of a legally protected interested which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical," "there must be a causal connection between the injury and the conduct complained of," and "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan,* 504 U.S. at 560-61 (cleaned up). A plaintiff must also satisfy prudential requirements to have standing. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982). To have prudential standing, a plaintiff must "assert his own legal rights and interests," rather than asserting those of third parties or raising "generalized grievances" without showing a concrete injury to himself. *Id.* at 474-75.

The requirement that a plaintiff show an injury in fact is most important for the standing analysis here. A plaintiff does not satisfy this requirement merely because "a statute grants [the plaintiff] a statutory right and purports to

authorize that [plaintiff] to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Such an "injury in law" must have a " 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Transunion LLC v. Ramirez,* 594 U.S. 413, 424 (2021) (quoting *Spokeo,* 578 U.S. at 341). Congress cannot legislate such an injury into existence. When it codifies a cause of action, it is only defining an injury that is already legally cognizable. *See Lujan,* 504 U.S. at 580 (Kennedy, J., concurring). Importantly, the United States Supreme Court and courts within the Eighth Circuit have both cited "discriminatory treatment" as an example of a concrete harm that Congress has recognized. *TransUnion,* 594 U.S. at 426; *Heckler v. Mathews,* 465 U.S. 728, 739-40 (1984); *see also Parents, Families, & Friends of Lesbians & Gays, Inc. v. Camdenton R-III Sch. Dist.,* 853 F. Supp. 2d 888, 896-97 (W.D. Mo. 2012).

The related term "testers" refers to individuals who—often by posing as potential customers of a business—attempt to gather evidence of statutory violations by testing if they will be unlawfully denied a good or service for which they had no intention of transacting. *See Havens Reality Corp. v. Coleman,* 455 U.S. 363, 373 (1982). Testers do not have standing because they do not suffer an injury in fact. If a tester does not have a sincere intention of transacting for a good or service, then their denial of that good or service is not a "harm" that courts can remedy. They did not lose anything as a result of the statutory violation. *See Smith v. Golden China of Red Wing, Inc.,* 987 F.3d 1205, 1209-10 (8th Cir. 2021) (concluding that a tester's lack of a concrete intention to

6

patronize a defendant's restaurant foreclosed his having standing to bring an action under the Americans with Disabilities Act).

## II.    Did the Native American Plaintiffs Have Standing?

This court has already concluded that plaintiffs Bowman, Cottier, Jackson, and Red Bear have alleged facts sufficient to confer standing. Docket 279 at 31-33. To briefly reiterate: each of these plaintiffs appeared at the Grand Gateway Hotel after seeing Connie Uhre broadcast a "no Natives" policy on social media. *Id.* at 32. Their attempt to transact with the hotel was thwarted when hotel employees ordered them to leave. *Id.* at 4. Plaintiffs allege they were refused because they are Native Americans. Docket 84 at 2. While plaintiffs appeared in response to the "no Natives" social media post, they testified that they would have booked and used the rooms for various purposes if they were permitted to do so. Docket 279 at 32. This court determined that their loss of an opportunity to book a hotel room is a sufficiently cognizable injury in fact to satisfy the requirements of Article III standing. *Id.* at 32-33. Discriminatory treatment is a concrete injury that Congress has defined and federal courts have routinely recognized. *Id.* at 28-30. And the possibility that these plaintiffs were also acting on behalf of NDN Collective was not an obstacle for standing either. *Id.* at 33-36. As this court explained, "the Plaintiffs were acting in a dual role as individuals who are Native American and activists for Native American causes, and to some extent and in varying degrees, on behalf of NDN." *Id.* at 34.

The apparent reason why Retsel has again raised the standing argument is its understanding of Justice Alito's recent concurrence in *Trump v. CASA*. *See* Docket 349 at 2, 9-23. Retsel argues that *CASA* is "directly relevant here[]" because it stands for the proposition that "[f]ederal courts may not extend relief, or entertain arguments, based on the legal rights or interests of persons who are not parties to the suit." *Id.* at 12. At different points in its brief, Retsel argues that this principle is germane because plaintiffs were "attempting to test how the Hotel would treat hypothetical third parties whose identities they could not even identify[,]" and also because these individuals were acting "on behalf of an organization[.]" *Id.* at 14-15, 23. Retsel argues that *CASA* "heightens" the "importance of resolving these issues[.]" *Id.* at 2.

This court does not agree that *CASA* has any bearing on this case or that it presents an extraordinary circumstance meriting Rule 60(b) reconsideration. Justice Alito's concurring opinion broadly stands for the legal principles that (1) "a litigant seeking to assert the legal rights or interests of others must demonstrate ordinary Article III standing for itself *and* answer the additional threshold question whether [it has] standing to raise the rights of others," (2) that a litigant asserting third-party standing must show he has a "close relationship to the right holder and there is some hindrance to the right holder's ability to protect his own interests," and (3) that federal district courts should adhere closely to the limits of Fed R. Civ. P. 23 when certifying classes of plaintiffs. *CASA*, 606 U.S. at 866-68 (Alito, J., concurring) (cleaned up).

8

But here, plaintiffs are not asserting third-party standing. Each plaintiff has alleged that he or she was personally discriminated against. Docket 84 at 2, 14, 19. Justice Alito's discussion of third-party standing came in the separate context of a decision relating to "universal" injunctions and the potentially substitutive role of class actions. *See CASA*, 606 U.S. at 837, 849.

Retsel raises two arguments to fit *CASA*'s third-party standing discussion into the facts of this case. First, Retsel argues that plaintiffs' testimony "confirms that none of them visited the Hotel with a concrete, personal plan to obtain lodging for themselves." Docket 349 at 19. Retsel reiterates its arguments that plaintiffs' admitted purpose of the visit was to test, and repeatedly notes that plaintiffs only mentioned transacting for the benefit of a potential, hypothetical party who might have need of the rooms. *Id.* at 20-21. To the extent Retsel is arguing that a § 1981 plaintiff lacks standing because the contract they seek may have had a third-party beneficiary, this is mistaken. It is bedrock contract law that in a contract with a third-party beneficiary, the initial promisee retains enforcement rights. *See* Restatement (Second) of Contracts § 305 (1981).

To the extent Retsel is arguing that plaintiffs lack standing because they were solely acting as testers to determine whether the Grand Gateway Hotel would deny rooms to Native Americans who had no intention of renting a room at the hotel, the jury was instructed on this issue and nevertheless ruled in favor of all Native American plaintiffs on their § 1981 claims. Docket 427 at 14; Docket 434 at 2-6. And the jury's conclusion is consistent with Judge Piersol's

prior order denying summary judgment based on plaintiffs' deposition testimony that they would have booked rooms if they had not been forced to leave the hotel. Docket 279 at 32-33.

Second, Retsel argues that "*CASA* also exposes the flaw in the Court's prior 'dual capacity' analysis, as a plaintiff cannot simultaneously act on behalf of an organization and claim a personal Section 1981 injury because it is unfounded under Eighth Circuit caselaw." Docket 349 at 21. According to Retsel, this means that NDN Collective and plaintiffs who acted on behalf of NDN Collective cannot both have Article III standing. *Id.* at 22-23. Retsel argues that in § 1981 actions, "the claim belongs to the contracting party—not to the individual seeking to make the contract on behalf of the contracting party." *Id* at 22-23 (emphasis in original and citations omitted). Retsel understands *CASA* to "confirm[] that federal courts may not grant relief to individuals acting on behalf of an organization, nor may they treat such plaintiffs as if they possess personal rights that belong only to the entity." *Id.* at 23.

This court does not see from where in Justice Alito's *CASA* concurrence Retsel derives this principle. As this court has previously explained, NDN Collective is an activist organization, and it is comprised of activist members. Docket 279 at 33-36. The principal-agent relationship between individual Native American plaintiffs and NDN Collective does not mean either is asserting third-party standing. Rather, the individual Native American plaintiffs are asserting "first-party" standing, and NDN Collective is also asserting "first-

10

party" standing, because both were allegedly discriminated against. This court sees no reason to depart from its prior stance: "The Court is unwilling to impose an either-or standard on the Plaintiffs such that they either are solely individual Native people or solely NDN activists but not both. They can be and were both and to say otherwise is to deny their identity as Native people." Docket 279 at 34. Thus, this court disagrees with Retsel's arguments that Justice Alito's concurrence in *CASA* merits revisiting plaintiffs' standing and denies reconsideration on that basis.

### III.    Was Plaintiffs' Sought Contract Legally Impossible?

Retsel next argues that plaintiffs lack standing because they "never could have formed a contract as required by 42 U.S.C. § 1981 because hotel policy—tracking mandatory South Dakota law—required the hotel to obtain the *actual guest's* identifying information as a condition of rental [under] SDCL § 34-18-21[.]" Docket 349 at 2. Retsel repeats that "[p]laintiffs admitted they were not the intended guests, could not identify who the intended guests were, and had no personal plans to use any room." *Id.* at 23-24. Retsel claims this is a problem under the South Dakota statute because "[a] contract cannot arise when the would-be contracting party never intended to occupy the rooms, cannot identify the true occupants, and seeks to induce a transaction that would have required the hotel to violate a statutory duty." *Id.* at 24.

Retsel did not raise this argument in its pleadings or in its motion for summary judgment. *See* Docket 128 at 16-17; *see also* Docket 152-2. A motion for reconsideration should not "serve as the occasion to tender new legal

11

theories for the first time." *Concordia Coll. Corp. v. W.R. Grace & Co.*, 999 F.2d 326, 330 (8th Cir. 1993). Retsel claims in its reply brief that it raised the issue of legal impossibility in its summary judgment motion, *see* Docket 454 at 7-8, but that motion contains no discussion pertaining to SDCL § 34-18-21 or hotel guest registration requirements in South Dakota. *See* Docket 152-2. Because this argument is being raised for the first time in a reconsideration motion, this court is not required to consider it.

Notwithstanding this argument's untimeliness, it bears noting that this argument attempts to reframe the logic of Retsel's defense that plaintiffs lack standing by repainting it as an argument about contractual impossibility. Retsel is essentially arguing that because plaintiffs never intended to form a contract to begin with, the requirements to form a contract under South Dakota law were impossible to meet. As this court has previously explained, plaintiffs have pleaded sufficient facts to conclude that they would have entered into a contract with Retsel had their attempts to do so not been thwarted. *See, e.g.*, Docket 279 at 31-33 ("All Plaintiffs testified they would have followed through with the rental."). Had they followed through with the rental, there is no reason to doubt that whoever would have ultimately stayed in the rooms would have provided their identifying information to the hotel as required by SDCL § 34-18-21. Thus, this court rejects Retsel's argument that plaintiffs were legally incapable of forming the contract they sought and denies reconsideration on that basis.

## CONCLUSION

For the reasons explained above, it is

ORDERED that Retsel's Motion for Relief Pursuant to Rule 60(b) (Docket 348) is DENIED.

Dated April 21, 2026.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE