UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| NDN COLLECTIVE, SUNNY RED BEAR, NICK COTTIER, BRE JACKSON, MARY BOWMAN, and GEORGE BETTELYOUN,<br><br>            Plaintiffs,<br><br>    v.<br><br>RETSEL CORPORATION, d/b/a GRAND GATEWAY HOTEL and d/b/a CHEERS SPORTS LOUNGE AND CASINO,<br><br>            Defendant,<br><br>    and<br><br>RETSEL CORPORATION, d/b/a GRAND GATEWAY HOTEL and d/b/a CHEERS SPORTS LOUNGE AND CASINO and NICHOLAS UHRE,<br><br>            Counterclaim Plaintiffs,<br><br>    v.<br><br>NDN COLLECTIVE,<br><br>            Counterclaim Defendant. | 5:22-CV-05027-KES<br><br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, DENYING DEFENDANT'S CROSS-MOTION FOR DISCOVERY, AN EVIDENTIARY HEARING, AND REFERRAL, AND GRANTING DEFENDANT'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL DECLARATION |

## INTRODUCTION

Plaintiffs, NDN Collective, Sunny Red Bear, Nick Cottier, Bre Jackson,

Mary Bowman, and George Bettelyoun, move under Fed. R. Civ. P. 54(d)(2) and

42 U.S.C. § 1988 for an award of reasonable attorney's fees from defendant,

Retsel Corporation (Retsel). Docket 436. Plaintiffs filed their motion for an award of attorney's fees after the jury trial, in which all six plaintiffs prevailed on each of their claims under 42 U.S.C. § 1981, plaintiff Sunny Red Bear prevailed on her claim of assault against Retsel, plaintiff NDN Collective was found not liable on Retsel and Nicholas (Nick) Uhre's counterclaims of defamation, and NDN Collective was found liable on Retsel's counterclaim of nuisance. Docket 434. Plaintiffs initially sought $3,536,338 in attorney's fees and $286,617.24 in expenses, but their request grew by $146,083.50 after expending additional time responding to several post-trial motions that were filed by Retsel. Docket 437 at 1-2; Docket 470 at 16.

Retsel filed a combined opposition to plaintiffs' motion for attorney's fees and a cross-motion for discovery, an evidentiary hearing, and referral of remaining factual issues to a special master or magistrate judge. Docket 465. Plaintiffs filed a reply. Docket 470. Retsel then filed a document captioned as a reply in support of its cross-motion for discovery, an evidentiary hearing, and referral to a special master or magistrate judge. Docket 473. This filing contained briefing in support of Retsel's requested relief as well as arguments pertaining to the reasonableness of plaintiffs' requested fee award. *Id.*

Shortly after filing that document, Retsel also filed a motion for leave to file a supplemental declaration from Retsel's manager, Nick Uhre. Docket 476. Plaintiffs filed a notice characterizing Retsel's filing at Docket 473 as an unauthorized surreply and stated that they will file no further briefs in support of their motion unless ordered to do so by this court. Docket 477. In response,

2

Retsel filed an objection defending its request for this court to consider the arguments in its cross-motion/surreply. Docket 478.

This court has reviewed each of these filings as well as all declarations, affidavits, and other materials submitted by the parties in support of or in opposition to plaintiffs' requested fee award. This court now issues the following order.

**LEGAL STANDARD**

The Federal Rules of Civil Procedure provide that parties seeking an award of attorney's fees and nontaxable expenses must file a motion specifying the "judgment and the statute, rule, or other ground entitling the movant to the award[.]" Fed. R. Civ. P. 54(d)(2)(B)(ii). Here, plaintiffs move under 42 U.S.C. § 1988, which provides that a district court may award "a reasonable attorney's fee as part of the costs" to the prevailing party in an action under 42 U.S.C. § 1981. 42 U.S.C. § 1988(b). Section 1988 also provides that "the court, in its discretion, may include expert fees as part of the attorney's fee." *Id.* § 1988(c).

The Supreme Court of the United States has observed that Congress's purpose in enacting § 1988 was to "ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citation modified); *see also* H.R. Rep. No. 94-1558, at 1 (1976). The statute promotes this purpose by creating a scheme where the citizenry may "monitor rights violations at their source, while imposing the costs of rights violations on the violators." *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993); *Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001). While this

3

mechanism ensures that successful plaintiffs will not bear the costs of vindicating their own civil rights, an appropriate fee award under it will not necessarily result in a windfall to the prevailing parties' counsel. *See Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989); *see also Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 719 (5th Cir. 1974) (explaining that the commonly used *Johnson* criteria in fee award calculations are not designed to "make prevailing counsel rich"), *abrogated on other grounds by Blanchard*, 489 U.S. at 96. Rather, these fees will "represent the reasonable worth of the services rendered in vindication of a plaintiff's civil rights claim." *Blanchard*, 489 U.S. at 96. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437; *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (quotation omitted).

## BACKGROUND

Plaintiffs' request for a fee award follows nearly four years of bitterly fought litigation. During that time, the parties:

- Reviewed hundreds of thousands of pages of electronic discovery. *See* Docket 438 ¶ 4a;
- Took and defended dozens of depositions, in excess of the total number contemplated by this court's original scheduling order. Docket 14; Docket 358; Docket 367; Docket 438 ¶ 4b;
- Briefed and orally argued two 45+ page cross-motions for summary judgment. Docket 152-2; Docket 159; Docket 195;
- Litigated five discovery motions. Docket 64; Docket 95; Docket 99; Docket 108; Docket 207;

4

- Jointly conducted discovery and mediation for this case alongside its sister lawsuit brought by the Department of Justice, *United States v. Retsel Corp.*, 5:22-CV-05086 (D.S.D. Oct. 19, 2022);

- Briefed three motions for reconsideration. Docket 94; Docket 246; Docket 282;

- Navigated repeated turnover in Retsel's legal counsel spanning at least eleven different attorneys from three different law firms. *See NDN Collective, et al. v. Retsel, et al.*, 5:22-CV-05027 (D.S.D. 2022) (CM/ECF Docket Caption);

- Sought at least two interlocutory appeals, Docket 233; Docket 313, and two writs of mandamus from the Eighth Circuit, *see In re Retsel Corp.*, 24-2827 (8th Cir. Sep. 7, 2024); *In re Retsel Corp.*, 25-2639 (8th Cir. Aug. 19, 2025);

- Navigated last-minute delays of the trial date related to Retsel's bankruptcy action and the illness and death of a key witness. Docket 261; Docket 295; and

- Litigated a five-day jury trial embracing seven claims and three counterclaims.[1] *See* Docket 434.

This case's protracted and turbulent procedural history ultimately resulted in a jury verdict finding that Retsel had discriminated against each plaintiff on the basis of their race, in violation of 42 U.S.C. § 1981. Docket 434 at 2-7. Plaintiff Sunny Red Bear also prevailed on her claim of assault against Retsel. *Id.* at 8. The jury similarly found in favor of plaintiff NDN Collective on Retsel's and counterclaimant Nick Uhre's counterclaims of defamation, but found in favor of

---

[1] At different points in the litigation, plaintiffs also indicated an intent to certify a class under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), Docket 1 at 9-11, and defendants raised additional counterclaims that were not ultimately presented to the jury, Docket 18 at 18-22.

Retsel on Retsel's nuisance counterclaim against NDN. *Id.* at 9-11. Altogether, the jury awarded plaintiffs a sum of compensatory and punitive damages totaling to $63,003 on their discrimination claims, and Red Bear was awarded $1,000 on her assault claim. *Id.* at 2-8. Retsel received $812 for its successful nuisance claim against NDN Collective. *Id.* at 11.[2]

The consent decree obtained by the United States in *United States v. Retsel,* 5:22-CV-05086, at Docket 59 (D.S.D. Nov. 29, 2023) two years prior to this case's jury trial is also relevant to plaintiffs' degree of success here. *See* Docket 308-14. That consent decree provided for a host of injunctive relief, including a requirement that Retsel issue a formal apology related to certain statements made by Retsel's former president, Connie Uhre. *Id.* at 7-15, 20.[3] While the consent decree provided robust injunctive relief, it was careful to note that Retsel "den[ies] that they engaged in, or attempted to engage in, discriminatory conduct" and disclaims any admission by Retsel that Connie Uhre's comments were an authorized expression of the hotel's policies. *Id.* at 3, 6. Retsel entered into the consent decree "in the spirit of cooperation with the United States and to memorialize Defendants' commitment to compliance with applicable laws prohibiting discrimination." *Id.* at 3. In a manner consistent

---

[2] This case's full factual background can be found in this court's order denying Retsel's renewed motion for judgment as a matter of law. *See* Docket 482.

[3] In a sworn declaration, one of plaintiffs' counsel describes this case as proceeding in parallel with the Department of Justice's action, and states that "[t]he parties to both cases coordinated on discovery while the DOJ action was pending and jointly mediated the cases together in August of 2023." Docket 438 at 10.

with that caveat, the consent decree's stipulated apology only expresses remorse about Connie Uhre's hurtful social media comments. *Id.* at 20. It does not contain an apology for discriminating against plaintiffs on the basis of their race. *See id.*

Plaintiffs' motion for attorney's fees cites their success at trial to support their position as the prevailing parties under § 1988. Docket 437 at 4. To aid this court's calculation of attorney's fees, plaintiffs offer declarations supporting that counsel charged their usual rates in the state of South Dakota. *See, e.g.*, Docket 437 at 6-7; Docket 439 ¶¶ 4, 8-12, 15-18; Docket 441 ¶¶ 4-5. Plaintiffs also provided a summary of the hours spent by its counsel's law firm's attorneys and staff on this matter, Docket 438-1; Docket 438-2, as well as all costs and expenses incurred, Docket 438-3; Docket 438-4.

Retsel opposes plaintiffs' motion and seeks either outright denial or a substantial reduction of the fee request. Retsel characterizes plaintiffs' counsel as having exploited § 1988's fee-shifting provision to convert the jury's award of $63,003 into an almost $4 million windfall for themselves. Docket 465 at 2. Retsel argues that "[a]ll equitable and declaratory relief had already been secured through [the] Department of Justice consent decree long before trial[,]" and thus any purported aim of securing racial justice for the plaintiffs had already been achieved. *Id.* at 2, 6. Retsel claims that, because the consent decree rendered all of plaintiffs' interests in the trial's outcome aside from monetary relief redundant, plaintiffs' counsel were acting in bad faith and "elevating their own interests ahead of their clients' interests[]" by rejecting

7

various settlement offers that would have eclipsed the ultimate jury award. *Id.* at 2, 6-8.

Retsel requests that this court either deny plaintiffs' motion outright, stay ruling on it pending final disposition of Retsel's various post-judgment motions and appeals, reduce the award by lowering plaintiffs' counsel's billing rates and applying an across-the-board reduction of 90%, or order further discovery, an evidentiary hearing, and referral of this matter to a special master or magistrate judge. Docket 465 at 26-27. But before this court can address these issues and compute an appropriate fee award, it must address the additional briefs and supplemental filings the parties submitted after plaintiffs filed their reply.

## DISCUSSION

### I.    Retsel's Cross-Motion, Surreply, and Supplemental Declaration in Support of its Opposition to Plaintiffs' Motion for Attorney's Fees

The District of South Dakota's local rules provide that after a movant for attorney's fees files its reply brief, "[t]he court will then determine the appropriate attorney's fees, if any, without further hearing, unless in the court's opinion a hearing is needed to resolve serious factual disputes between the parties." D.S.D. Civ. LR 54.1(C); *see also* D.S.D. Civ. LR 7.1(B) (explaining general motion practice in the District of South Dakota). Here, after plaintiffs filed their reply, Retsel filed a brief captioned as a reply in support of its cross-motion for discovery, an evidentiary hearing, and referral. Docket 473. But Retsel acknowledges that much of this filing responds to the reasonableness of

8

plaintiffs' requested fee award, which was first raised in plaintiffs' motion for attorney's fees. *Id.* at 5 ("Retsel [ ] is entitled to respond fully, including by submitting evidence to counter [p]laintiffs' new materials and theories, and to address *entitlement, reduction,* discovery, and a stay pending appeal.") (emphasis added), 9-23 (raising various arguments that plaintiffs' fee request is unreasonable).

Retsel argues that it should be permitted to respond to plaintiffs' attorney's fees motion further because "[p]laintiffs' reply in support of their motion for attorneys' fees injected new amounts [of compensable hours] and evidence." Docket 478 at 2. In a footnote, Retsel states that "if the [c]ourt treats [p]laintiffs' new evidence and theories as part of their fee reply, rather than an opposition to Retsel's cross-motion," then "Retsel moves for leave for the Court to consider as a surreply those portions of its reply addressing the reasonableness and viability of the fee request." Docket 473 at 5 n.2. Outside of this footnote, Retsel did not seek this court's leave to further contest the reasonableness of plaintiffs' fee request. Retsel also filed a supplemental declaration in support of its response to plaintiffs' motion. Docket 476-1. Retsel did formally move for leave to file that material. Docket 476.

"The District of South Dakota's local rules do not contemplate surreply briefs in opposition to a motion as a matter of right . . . [a] party *may seek leave* for permission to file a surreply when the moving party's reply brief contains new information or arguments for which an opportunity to respond is needed." *Counts v. Wasko,* 2024 WL 4068651, at *3 (D.S.D. Sep. 5, 2024)

9

(emphasis added). A surreply "can be appropriate when a reply brief contains new information or arguments for which an opportunity to respond is needed." *Cooks v. Nat. Grocers by Vitamin Cottage, Inc.*, 2025 WL 2438702, at \*1 (D.S.D. Aug. 25, 2025) (citation modified). But this court and the Eighth Circuit have both maintained that "[p]arties are required to move a court for permission to file a [surreply], and the question of granting such a motion is left to the court's discretion." *Id.*; *see also Buergofol GmbH v. Omega Liner Co.*, 2025 WL 964541, at \*2 (D.S.D. Mar. 28, 2025); *Lightner v. Catalent CTS (Kansas City), LLC*, 89 F.4th 648, 655 (8th Cir. 2023).

This court disagrees with Retsel's position. Even if Retsel is correct that plaintiffs' reply brief contains new arguments, the presence of arguments not found in the initial motion does not make Retsel "entitled" to file a surreply without first formally moving for this court's leave to do so. *See* Docket 473 at 5. Nor is this court required to consider the entirety of a brief that is primarily a surreply simply because a small portion of Retsel's responsive brief sought affirmative relief. *See* Docket 478 at 2. The District of South Dakota's local rules do not authorize a party to give itself additional bites at the apple by inserting new requests for affirmative relief into its responsive briefs. If the local rules did require this, then principles of fairness would require giving plaintiffs an opportunity to reply again and enlarge the disputed fee award even further.[4]

---

[4] Retsel also claims that this court must consider its surreply because plaintiffs request an additional $146,083.50 in fees that they accumulated while briefing post-trial issues, including their reply in support of their motion for attorneys' fees. *See* Docket 473 at 3; Docket 476 at 3; Docket 476 at 2-3. If plaintiffs

10

Nevertheless, this court has carefully reviewed Retsel's surreply and concludes that no arguments in it will affect this court's disposition and fee award. Thus, this court exercises its discretion to construe Retsel's filing at Docket 473 as partially a reply in support of its cross-motion at Docket 465 and partially a surreply, for which this court grants leave to file.[5] Because plaintiffs will not be prejudiced by this court's consideration of this material, this court does not order them to submit anything further.[6] Similarly, this court grants Retsel's motion for leave to file a supplemental declaration in support of its opposition to plaintiffs' attorney's fees, Docket 476, and has reviewed the supplemental declaration of Nick Uhre, Docket 476-1. This material also does not affect this court's disposition.

---

drafted another reply and accumulated even more fees in the process, Retsel's reasoning suggests that this would entitle it to file yet another surreply. This court will not let this back-and-forth endlessly continue past the timeline prescribed by D.S.D. L.R. Civ. 54.1(C) and further increase the disputed award in the process.

[5] Retsel agrees that this court may properly construe its brief at Docket 473 this way. *See* Docket 473 at 5 n.2.

[6] Plaintiffs filed a notice regarding Retsel's filing at Docket 473 stating that they "do not intend to provide any further briefing or the supplemental affidavit unless ordered to do so by the [c]ourt." Docket 477 at 2.

11

## II.    The Fee Award

### A.    Prevailing Party Status

Before calculating a fee award, this court must determine if the movants qualify as "prevailing parties" entitled to an award under § 1988(b). *Hensley*, 461 U.S. at 433. "The fee applicant bears the burden of establishing entitlement to an award[.]" *Fish*, 295 F.3d at 852 (citation modified). "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992); *see also Dawson v. Scurr*, 986 F.2d 257, 263 (8th Cir. 1993).

Here, plaintiffs are the prevailing parties. A jury reached a unanimous verdict finding Retsel liable for discriminating against each plaintiff on the basis of their race. Docket 434 at 2-7.[7] As a result, plaintiffs obtained an enforceable judgment against Retsel entitling each of them to compensatory and punitive damages on their § 1981 claims. Docket 435. Thus, plaintiffs obtained relief on the merits that altered the legal relationship between themselves and Retsel in a way that directly benefits them.

---

[7] The jury also found Retsel liable for Connie Uhre's assault of Sunny Red Bear and rejected all but one of Retsel's counterclaims against NDN Collective. Docket 434 at 8-11. This court will discuss the compensability of work done for these related state-law claims and counterclaims in a later section. *See infra,* Part II.B.2. These related claims do not affect plaintiffs' status as prevailing parties because plaintiffs "succeed[ed] on [a] significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433 (quotation omitted).

While Retsel describes the trial's outcome as a "technical victory" and characterizes plaintiffs as "prevailing parties in name only[,]" its response and surreply do not appear to dispute that plaintiffs have formally achieved prevailing party status. *See* Docket 465 at 4-11, 21-23; *see generally* Docket 473. Retsel instead seeks outright denial under its theory that plaintiffs are attempting to subvert the purposes of § 1988 by seeking an award that is grossly disproportionate to their limited success. Docket 465 at 10-11. This court will consider this argument when determining if an across-the-board reduction of the lodestar calculation is necessary. *See Hensley*, 461 U.S. at 436 ("If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."); *see also Bone Shirt v. Hazeltine*, 2006 WL 1788307, at *2 (D.S.D. June 22, 2006) ("Although the lodestar is presumed to be a reasonable fee, the court may, in some circumstances, adjust the award after considering additional factors.").

Retsel also defends its request for a stay of the judgment by arguing that "in light of Retsel's pending motions attacking the judgment, [p]laintiffs cannot establish that they are indeed prevailing parties." Docket 465 at 4; *see also* Docket 449; Docket 458. But this is not an attack on plaintiffs' status as prevailing parties now. The appropriate way to manage such a situation is for a losing party to post a supersedeas bond. In a separate order, this court conditionally granted Retsel's motion to waive supersedeas bond and stay execution of the judgment as it currently stands. *See generally* Docket 472.

13

This court will amend the judgment and appropriately update the conditions of the stay after issuing this order.

### B.    Computing the Lodestar

The first step in determining the prevailing party's fee award is computing the lodestar, "which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005); *see also Hensley*, 461 U.S. at 433; *Emery v. Hunt*, 236 F. Supp. 2d 1033, 1039 (D.S.D. 2002). Thus, this court must first determine reasonable hourly rates for each of plaintiffs' attorneys and staff, and then determine the number of hours reasonably spent on the litigation by each of them. *See Bone Shirt*, 2006 WL 1788307, at *2-7.

### 1.    Hourly Rates

Plaintiffs' litigation team was primarily staffed by three South Dakota attorneys between 2022 and 2026: Brendan Johnson, Tim Billion, and Thad Titze. Docket 438 ¶ 6(a). Thirteen other Robins Kaplan attorneys also recorded time spent on this case, *id.* ¶¶ 6(b)-(c), and twenty-three members of Robins Kaplan's support staff recorded time as well, *id.* ¶ 6(d). Plaintiffs submitted an exhibit recording every one of these professionals' time entries over this case's lifespan and asserted that the listed billing rates reflect their counsel's standard rates in the years when they were recorded. Docket 437 at 6-7; Docket 438 at 12; *see generally* Docket 438-2. Plaintiffs maintain that these rates "are reasonable and should be used to determine the lodestar without discount." Docket 437 at 7. Across this case's lifespan, these rates range from

14

$645 to $860 for partners, $205 to $710 for associates, and $165 to $400 for various support staff. Docket 438-2; Docket 471-1.

"As a general rule, a reasonable hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.' " *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002) (quoting *Emery*, 272 F.3d at 1048 (8th Cir. 2001)). "The court[] [is] not bound to mechanically accept as conclusive counsel's regular charges as the reasonable hourly rate." *Wabasha v. Solem*, 580 F. Supp. 448, 461-62 (D.S.D. 1984) (citing *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140 (8th Cir. 1982)). "To do otherwise would be an abdication of the court's duty to supervise the conduct of the bar and do justice to the losing as well as the winning side." *Id.* (cleaned up). "A district court has great latitude to determine a reasonable hourly rate because it is intimately familiar with its local bar[.]" *Childress v. Fox Assocs., LLC*, 932 F.3d 1165, 1172 (8th Cir. 2019) (internal quotation marks omitted); *see also Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1095 (8th Cir. 2012).

While the prevailing market rate is the natural place to start, in civil rights matters, rates are not strictly limited to amounts typically charged in the local community. "To limit rates to those prevailing in a local community might have the effect of limiting civil rights enforcement to those communities where the rates are sufficient to attract experienced counsel." *Casey,* 12 F.3d at 805. An attorney's level of experience or expertise in a particular area of law also supports a fee award greater than what is typical of the local market, even

15

when less-experienced local counsel could have competently tried the case. *See Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995) (finding that it is reasonable to award Chicago-based attorneys with extensive experience in reproductive rights law their typical rates after they prevailed in a reproductive rights case in Sioux Falls, South Dakota).

Here, an award of fees at the upper end of the South Dakota market is reasonable given the investment and acumen required to litigate a matter as complex, lengthy, and economically risky as this one. But for the reasons explained below, this court will not use hourly rates quite as high as those plaintiffs request when calculating a lodestar.

Plaintiffs submit declarations from experienced South Dakota attorneys suggesting that Robins Kaplan is the only law firm in South Dakota with the resources required to undertake this case. Docket 441 ¶ 6. For instance, Russ Janklow, an attorney who has litigated over 100 jury trials in South Dakota and lectured at the University of South Dakota School of Law, declares that he is unaware of any other firm with an office in South Dakota that has an in-house e-discovery department (recall that the parties reviewed hundreds of thousands of pages of electronic discovery, *see* Docket 438 ¶ 4a**;** Docket 439 ¶ 9) or that is sufficiently capitalized to fund a four years-long, complex civil matter out of its own pocket with no guarantee of recovery. Docket 441 ¶¶ 2, 5.

Plaintiffs' counsel's rates also reflect their expertise in matters related to Native Americans and civil rights. Robins Kaplan has experience in South Dakota litigating discrimination claims against other private defendants and

the State of South Dakota itself. Docket 439 ¶ 17. Johnson, plaintiffs' lead trial attorney, is a former United States Attorney for the District of South Dakota with a rare level of experience litigating issues related to Native American rights. *Id.* ¶ 2. Titze and Billion both also have experience working with Native American clients on civil rights issues. Docket 440 ¶ 3; Docket 438 ¶ 2. This combination of resources and relevant experiences merits an award of fees beyond what is typical of the South Dakota market.

Retsel argues that these rates are excessive for the South Dakota market and offers an affidavit from Michael G. Watters—a California attorney with experience in mediation, settlement conferences, and reviewing subordinate attorneys' time entries—opining that reasonable rates for civil litigators in Sioux Falls "generally do not exceed $300 per hour for partners and $200 per hour for associates." Docket 466 ¶¶ 1-8, 32; *see also* Docket 465 at 15. Retsel notes other fee awards consistent with that appraisal that have been awarded in the District of South Dakota, including in a case where this court reduced a requested rate for the work of Tim Billion. Docket 465 at 15-16; *see E&I Glob. Energy Servs., Inc. v. Liberty Mut. Ins. Co.*, 2023 WL 8809324, at *2 (D.S.D. Dec. 20, 2023); *see also Blue State Refugees v. Noem*, 2022 WL 1000564, at *3 (D.S.D. Apr. 4, 2022); *Wilbur-Ellis Co. LLC v. Jens,* 2025 WL 1220437, at *2 (D.S.D. Apr. 28, 2025). Retsel also notes a lack of evidence that plaintiffs attempted to obtain less expensive legal counsel before retaining Robins Kaplan and argues that it was their burden to do so before hiring some of South Dakota's most expensive lawyers. Docket 465 at 17.

17

This court agrees with Retsel that plaintiffs' requested rates are high for the South Dakota legal market. Even for experienced, out-of-state counsel with specialized expertise, the highest hourly rates determined to be reasonable by this court do not exceed $660. *See, e.g., Esperance v. Vilsack*, 2025 WL 102229, at *1, 7-9 (D.S.D. Jan. 15, 2025) (determining a rate of $600 to be reasonable for work done in 2023-2024 by an out-of-state employment law attorney with "vast multijurisdictional experience"), *Black Hills Clean Water All. v. U.S. Forest Serv.*, 733 F. Supp. 3d 801, 813-15 (D.S.D. 2024) (determining rates of $400 to $658 to be reasonable for work done in 2020-2023 by Washington, D.C. attorneys experienced in FOIA litigation);[8] *Buergofol GMBH v. Omega Liner Co., Inc.*, 4:22-CV-04112, Docket 979 at 2-4 (D.S.D. Mar. 3, 2026) (determining a rate of $500 to be reasonable for an experienced, out-of-state patent attorney for work done in 2025). And those rates are exceptional. It is this court's experience that rates charged by Sioux Falls law firms are typically around $300 for partners and $200 for associates. *See, e.g., Wilbur-Ellis*, 2025 WL 1220437, at *2; *Blue State Refugees*, 2022 WL 1000564, at *3; *see also Childress*, 932 F.3d at 1172 ("A district court has great latitude to determine a reasonable hourly rate because it is intimately familiar with its local bar[.]") (internal quotation omitted).

---

[8] The range in *Black Hills Clean Water* does not include the $697 rate charged by William Eubanks because he worked entirely out of Washington, D.C. *See Black Hills Clean Water All.*, 733 F. Supp. 3d at 815.

Plaintiffs suggest that this court may determine reasonable rates by reference to the legal market in Minneapolis, Minnesota, which is the closest major metro area to Sioux Falls and is where Robins Kaplan is headquartered. Docket 437 at 9. In his supporting affidavit, Johnson states that partners at comparable Minneapolis law firms typically charge over $800 per hour, and associates charge between $465 and $765 per hour. *See* Docket 439 ¶ 18. Johnson is correct that these figures align with amounts determined to be reasonable local rates by the District of Minnesota for work done in Minneapolis, including for attorneys from large and well-resourced law firms. *See, e.g., In re RFC*, 399 F. Supp. 3d 827, 848 (D. Minn. 2019) (the District of Minnesota determining that rates as high as $675 were a reasonable local rate for attorneys for work done by a large, international law firm); *Fancher v. Klann,* 2015 WL 1810235, at *1-2 (D. Minn. Apr. 21, 2015) (approving rates ranging between $225 and $650 for work done between 2013 and 2015); *Safelite Grp., Inc. v. Rothman*, 2017 WL 3495768, at *7 (D. Minn. Aug. 11, 2017) (approving rates as high as $560 for work done between 2015 and 2017).[9]

---

[9] These Minneapolis rates are closer to plaintiffs' requested rates when adjusted for inflation. The formula to calculate an inflation rate based on the Bureau of Labor Statistics' Consumer Price Indices (CPI) is ((CPI in Year 2 – CPI in Year 1) / CPI in Year 1) x 100. For example, for the highest reasonable rate charged by attorneys in *RFC*, the rate between 2018 and 2022 is ((281.148 – 247.867) / 247.867) x 100 = 13.427%. A 13.427% increase from $675 is $765.63.

But even after considering the hourly rate in the Minneapolis legal market, a reduction in plaintiffs' requested rates is warranted. This court is mindful of the Eighth Circuit's guidance in *Casey,* 12 F.3d at 806, and agrees with plaintiffs that it is appropriate to compute the lodestar using rates greater than those typically charged by law firms in Sioux Falls. But it will not use rates quite as high as those that plaintiffs request, which often substantially exceed those charged by South Dakota's most experienced lawyers. Thus, this court exercises its discretion to reduce plaintiffs' counsel's hourly rates by 33.3% in its lodestar calculation. This reduction brings reasonable attorney's rates to the ranges of $430 to $574 for partners and $240 to $474 for associates. Based on this court's familiarity with its local bar, these reductions are not so great as to render civil rights litigation economically unviable to South Dakota's best attorneys. *See Black Hills Clean Water All.,* 733 F. Supp. 3d at 813 (Judge Piersol opining that the court's reductions to the high hourly rates of out-of-state attorneys were "not so great as to discourage filing in local forums.").

Because these post-reduction rates still exceed what Retsel argues are reasonable amounts, this court will address the remainder of Retsel's arguments for a reduction. *See* Docket 465 at 18 ("[A]ny fees awarded should not exceed $300 per hour for partners and $200 per hour for associates"). In its response and surreply, Retsel first argues that plaintiffs' counsel's year-to-year rate increases of roughly 7% are excessive and exceed the rate of inflation. *Id.* at 20; Docket 473 at 17. Retsel cites Watters's opinion that these increases

20

coincided with plaintiffs' focused research into prevailing-party fee recovery and reflect the "economics of [p]laintiffs' litigation[]" more than inflation-based adjustments. *Id.*; Docket 466 ¶ 45. But a 7% year-to-year increase is consistent with regular class year advancement of fees charged by attorneys in a large law firm. Thus, this court does not agree that these increases are unreasonable.

Further, Retsel's citations to *Blue State Refugees, E&I Global Energy,* and *Wilbur-Ellis Co.* are misplaced because those cases are distinguishable from the matter here. The reduction in *Blue State Refugees* was merited because "the issues in [that] case were clear and unextraordinary[.]" 2022 WL 1000564, at *5. The court did not find the labor of six attorneys—some of whom were from out-of-state or highly experienced—to be necessary to try a case with a "short duration and simple legal issue presented." *Id.* That situation is unlike the four-year, intensely litigated legal battle waged here. The claims in *E&I Global Energy* were uncomplicated, and the court reduced Robins Kaplan's requested rates because they were retained only as local counsel, not lead counsel. 2023 WL 8809324, at *2. Finally, the rates in *Wilbur-Ellis Co.* were simply the unchallenged rates that counsel sought in a far less complex matter than this one. 2025 WL 1220437, at *2. This court refuses to further reduce plaintiffs' counsel's rates based on those cases.

Regarding the fees requested for Robins Kaplan's support staff, several professionals on Robins Kaplan's e-discovery team, an audio-visual media specialist, and paralegals billed large amounts ranging from $165 to $400 per hour between 2022 and 2025. *See* Docket 438-2. Plaintiffs do not offer

21

justification for the high rates charged by Robins Kaplan's support staff in their briefs or declarations. And this court's own review of fee awards in the District of South Dakota and the District of Minnesota has not found any examples of either district finding rates as high as $400 for support staff to be reasonable in comparable cases.

Furthermore, the District of Minnesota has denied and reduced much smaller support staff rates in its lodestar calculations. *See, e.g., Robinson v. Robinson*, 2025 WL 4674418, at *2 (D. Minn. Mar. 26, 2025) (declining to award an experienced paralegal's rate of $275 for work done in 2025 where plaintiffs had not met their burden to show it was reasonable); *Harris v. Chipotle Mexican Grill, Inc.*, 2018 WL 617972, at *8 (D. Minn. Jan. 29, 2018) (reducing, in a case where movants litigated across from defendants represented by Robins Kaplan, a requested fee award of $250 for paralegals for work done between 2013 and 2018 because movants provided inadequate justification for these rates). Thus, this court finds that plaintiffs have not met their burden of establishing entitlement to these rates and exercises its discretion to reduce the rates charged by Robins Kaplan's support staff by 50%.

After applying these reductions, this court determines that the rates charged by plaintiffs' counsel and support staff from 2022 to 2026 are reasonable. This includes time spent by plaintiffs' counsel responding to Retsel's post-trial motions. *See* Docket 471-1. The final adjusted rates

determined to be reasonable by this court are listed in Appendix B to this order.

### 2. Hours Worked

Plaintiffs submit declarations and exhibits indicating that from their counsel's core trial team, Johnson worked 741.6 hours between 2022 and 2025, Billion worked 1703.4 hours, and Titze worked 2134.5 hours. Docket 438 ¶ 6(a); *see also* Docket 438-2. Each of these attorneys spent additional hours responding to Retsel's post-trial motions. *See* Docket 471-1. Robins Kaplan's other attorneys worked between 7.5 and 179.2 hours. Docket 438 ¶¶ 6(b)-(c). Members of Robins Kaplan's support staff worked between 0.8 and 288.2 hours. *Id.* ¶ 6(d).

When calculating the lodestar, a district court does not need to accept counsel's submission of hours as conclusive and should exclude hours that were not reasonably expended on the litigation. *Wheeler v. Mo. Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003); *see also Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573, 575 (8th Cir. 2014) (per curiam). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley*, 461 U.S. at 434. Work that is reasonably expended on the litigation does not include expenses ordinarily covered by normal office overhead, such as postage expenses, time spent preparing itemized billing statements, or secretarial tasks. *See Emery*, 272 F.3d at 1048; *Ladd v. Pickering*, 783 F. Supp. 2d 1079, 1094 (E.D. Mo. 2011).

23

Here, this court finds the hours expended by plaintiffs' counsel to be mostly reasonable. It is no surprise that a multi-year, complex civil rights case involving multiple counterclaims, a parallel government action, voluminous discovery, multiple delays of trial, and an abandoned class action certification required thousands of hours of labor by plaintiffs' litigation team. *See supra,* BACKGROUND. To the extent that either party is to blame for this case taking longer than most civil rights matters do, this court agrees with plaintiffs that this case's protraction was largely attributable to Retsel's behavior. *See* Docket 176; Docket 217; Docket 246; Docket 248; Docket 358; Docket 437 (Retsel attempting to delay trial at least five times); Docket 14; Docket 367 (Retsel taking a number of depositions far exceeding what was permitted by this court's scheduling order); *see also* Docket 438 at ¶¶ 4(d) (Billion discussing Retsel's conduct during discovery in his declaration, which Retsel does not address in its response, surreply, or supplemental submissions). Retsel has a right to vigorously defend this lawsuit, but a party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Bone Shirt,* 2006 WL 1788307, at *7 (quoting *City of Riverside v. Rivera,* 477 U.S. 561, 580 n.11 (1986)).

In its response, Retsel argues that the reasonable number of hours worked by plaintiffs should be reduced because plaintiffs recorded time spent on various state-law claims and counterclaims for which an attorney's fees award is not authorized under any South Dakota fee shifting statute. Docket 465 at 12. In its surreply, Retsel further argues that these claims do not share

a common factual core with plaintiffs' § 1981 claims because their legal elements do not overlap with § 1981's. Docket 473 at 14-15.

This court agrees with Retsel with regard to the time plaintiffs' counsel spent defending against Retsel's state-law counterclaims, but disagrees with regard to Sunny Red Bear's state-law assault claim. Retsel's assault of Red Bear took place at a protest conducted in direct response to Retsel's alleged discrimination against plaintiffs and was offered by plaintiffs to prove Retsel's discriminatory intent. Docket 448-2 at 70, 80, 92-93. This factual relationship to plaintiffs' discrimination claims brings Red Bear's assault claim within the same common core of facts as plaintiffs' § 1981 claims. Thus, time spent litigating it is compensable.

Retsel's arguments that no South Dakota law authorizes fee shifting and that overlapping legal elements are required for a related state-law claim to be compensable are both incorrect. Plaintiffs seek attorney's fees under § 1988, which covers federal civil rights claims, not any state law. Further, Retsel's argument that Red Bear's assault claim and plaintiffs' § 1981 claims lack overlapping elements misunderstands the applicable standard. The Supreme Court was clear in *Hensley* that the relevant question is whether the claims involve a common core of facts *or* legal theories. 461 U.S. at 435. Overlapping elements are not a requirement. And Retsel's citation to *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 168 (2d Cir. 2011) does not alter this conclusion. *See* Docket 465 at 12. *Millea* is not an Eighth Circuit case. Instead, this court follows the guidance of the Eighth Circuit in *Emery*, which permits plaintiffs to

25

recover for time spent on closely related state-law claims when they involve a "common core of operative facts[.]" 272 F.3d at 1047. Thus, for the same reasons that this court has supplemental jurisdiction over Red Bear's assault claim, plaintiffs may recover attorneys' fees for time spent litigating it.

But this court agrees with Retsel that time spent defending against state-law counterclaims is not compensable. The holdings in *Hensley* and *Emery* only extend to related state-law claims brought by a plaintiff; neither case discusses the defense of state-law counterclaims. *See generally Hensley,* 461 U.S. at 424; *Emery,* 272 F.3d at 1042. Further, a district court within the Eighth Circuit reduced a fee award when a prevailing party did not omit time spent on state-law counterclaims. *See Phelps v. Powers,* 90 F. Supp. 3d 833, 837 (S.D. Iowa 2015). Plaintiffs argue that time spent defending the counterclaims is compensable under *Hensley* because they involve the same common core of facts as their § 1981 claims, but they do not provide this court with any authority suggesting that *Hensley's* "common core doctrine" encompasses the defense of state-law counterclaims. Thus, this court excludes time spent on the counterclaims from its fee award calculation. Because it is not possible to segregate entries relating to plaintiffs' initial claims from those relating to Retsel's counterclaims, this court will factor plaintiffs' failure to exclude the counterclaims into a flat, percentage reduction of the number of hours worked by all of plaintiffs' counsel and support staff.

Retsel next argues that plaintiffs' fee award should be reduced because "[p]laintiffs' attorneys' billing records are chock full of excessive hours and

26

other sums that cannot be shifted." Docket 465 at 18-21 (emphasis in original omitted). Retsel claims that plaintiffs' hours exceed what was reasonable in light of the "free work performed by the Department of Justice in connection with the consent decree—proceedings that overlapped with this lawsuit." *Id.* at 18. Retsel also claims that many of the hours logged by plaintiffs are nonrecoverable because they were incurred in unrelated or collateral proceedings. *Id.* Specifically, Retsel takes issue with time entries for "(1) communications with the Department of Justice and drafting the consent decree; (2) social media activities; (3) media strategy and public relations; (4) political and policy research; (5) work relating to the criminal proceedings; (6) work relating to the bankruptcy proceedings; and (7) background investigations, untethered to any motion, witness, or evidentiary issue in this case." *Id.* at 18-19.

Retsel does not direct this court's attention to any specific problematic time entries that relate to the Justice Department's work or these seven objections. *See id.*; Docket 473 at 19-21. It is not this court's duty to plumb through thousands of hours of timekeeping entries and attempt to guess to which entries Retsel objects.[10]

Nevertheless, this court noticed a number of problematic entries when conducting its own review of plaintiffs' timekeeping. First, this court agrees

---

[10] Even after conducting its own careful review of plaintiffs' attorneys' timekeeping, for many of Retsel's objections, this court does not know to which time entries Retsel refers. For example, there do not appear to be entries having to do with "political and policy research."

with Retsel that time spent on the related Justice Department civil action is not fully compensable. *See United States v. Retsel Corp.*, 5:22-CV-05086 (D.S.D. 2022); Docket 438 ¶ 5(a). Plaintiffs note that their case and the Justice Department's case proceeded largely in tandem, with both parties collecting critical evidence during their jointly conducted discovery. Docket 438 at 10; *see also* Docket 438-2 at 54-60. While it may have been economical for plaintiffs and the Justice Department to conduct the two matters in tandem, it is not appropriate to shift fees to defendants for the share of this work that was done to advance a separate case. As plaintiffs state, the consent decree in the Justice Department's action "was obtained due to the efforts of [p]laintiffs."[11] Docket 470 at 14. Again, because it is difficult to separate work done to advance the Justice Department's case from the matter here, this court will factor time spent by plaintiffs' counsel on the Justice Department's case into a percentage reduction of their reasonable hours worked.

The other "collateral" work Retsel objects to is closely related to this matter and is compensable: depositions from Connie Uhre's criminal trial formed the evidentiary backbone of Sunny Red Bear's assault claim; "social media activity," which appears to refer to plaintiffs' counsel's review of the racially insensitive social media posts, formed the basis of plaintiffs' arguments that Retsel acted with discriminatory intent; plaintiffs' review of Retsel's

---

[11] Plaintiffs raise this argument to defend their status as prevailing parties. *See* Docket 470 at 14. To be clear, this court does not disagree that plaintiffs are prevailing parties. It only rules that it is inappropriate to shift fees to Retsel based on the share of plaintiffs' work that advanced the Justice Department's case.

bankruptcy proceedings was necessary because it formed the basis for one of Retsel's requested stays in this matter; and all investigation and background work was necessary to develop plaintiffs' theory of the case. All this work strikes this court as sufficiently related to this litigation.

This court agrees with Retsel, however, that plaintiffs improperly request fees related to "media strategy and public relations." This court's own review of plaintiffs' counsel's timekeeping noted one 0.4 hour entry by Johnson on December 20, 2023, recorded as "[r]eview and respond to media inquiries regarding Grand Gateway hotel and discuss with T. Titze," and one 0.8 hour entry by Billion on March 24, 2022, recorded as "media discussions and questions." Docket 438-2 at 9, 54. The Eighth Circuit rejects fee requests for public relations or media work unless the movant demonstrates that the work is "necessary to accomplish the objectives of the litigation[.]" *Jenkins by Jenkins v. Missouri*, 131 F.3d 716, 721 (8th Cir. 1997). Plaintiffs argue in their reply that "[a] lawyer can advise a client on what to say in the press while a lawsuit is pending." Docket 470 at 8. But responses to press inquiries have not been considered necessary to accomplish the objectives of litigation by other courts within the Eighth Circuit. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 2018 WL 5848994, at *9 (W.D. Mo. Nov. 7, 2018) (declining to shift fees for time "[r]esearch[ing] file to answer media question."); *Ne. Iowa Citizens for Clean Water v. Agriprocessors, Inc.*, 489 F. Supp. 2d 881, 902 (N.D. Iowa 2007) (holding that time spent on press issues is not compensable). Thus, this court agrees with Retsel that time spent responding to media inquiries is not

29

compensable and will factor that time into a reduction of the total number of hours billed by plaintiffs' counsel.

Retsel next argues that "[p]laintiffs' attorneys also try to convert routine office work—scheduling, docketing, uploading documents, organizing exhibits, and the like—into attorneys' fees, as well as bill clerical tasks at premium attorney rates." Docket 465 at 19. Retsel argues that such work must be subsumed by firm overhead rather than be shifted to Retsel as part of a fee award. *Id.* For this objection, Retsel directs this court to specific pages of plaintiffs' timekeeping spreadsheet, although it does not identify specific entries. *Id.* Retsel further criticizes plaintiffs' time entries as too block-billed and vague to permit meaningful review. *Id.*

As previously explained, "[p]laintiffs are not entitled to reimbursement for expenses that are part of normal office overhead in the community." *Emery*, 272 F.3d at 1048; *see also Bone Shirt*, 2006 WL 1788307, at *4. Per the Supreme Court's guidance in *Hensley,* the key inquiry is whether the hours at issue are "reasonably expended *on the litigation.*" 461 U.S. at 433 (emphasis added). Hours expended by the timekeepers to advance plaintiffs' case are legitimate. Regular office upkeep is not. Here, after reviewing plaintiffs' timekeeping, this court agrees with Retsel that a small proportion of plaintiffs' time entries list administrative tasks that should be subsumed into firm overhead or are too vague to permit meaningful review. Because the improper entries are numerous, this court exercises its discretion to factor the improper billing into a reduction of the total number of hours billed by plaintiffs' counsel.

Retsel next argues that plaintiffs' counsel engaged in redundant and excessive billing for depositions needlessly attended by multiple attorneys, attendance at "routine examinations," and "preparation time for proceedings they did not even attend." Docket 465 at 20 (internal quotation marks omitted). Retsel's response does not identify which time entries have these problems. But Retsel's declarant, Watters, does point to entries for Billion, Titze, and Jordan Rice's preparation for the depositions of Clarity Self and Kimberly Shaver, the same three attorneys' participation in the deposition of Self, and Titze's preparation for depositions he did not attend. Docket 466 ¶¶ 37-38.

With regard to attorneys preparing for depositions that they did not attend, this court's experience is that preparing to depose a key witness is an especially laborious part of pretrial litigation. The decision by plaintiffs' lead counsel to divide that task between associates who bill at lower rates reflects efficient staffing judgment, not "overstaffing" or "duplication of effort." *See id.*

With regard to the presence of three attorneys at Self's deposition, this court agrees with Retsel that it is improper to shift fees for a third attorney's participation at a deposition. Plaintiffs argue that Titze and Rice were present in order to bring Rice up-to-speed before Titze went on leave and ensure that Rice was prepared to conduct a deposition on his own the next day. *See* Docket 438 ¶ 6(c)(vi); Docket 438-1 at 16-17; Docket 470 at 9. But it is inappropriate to shift increased fees to Retsel based on Robins Kaplan's need to accommodate the leave of one of its associates. Thus, this court will factor the

31

overstaffing of Self's deposition into a reduction of the total number of hours billed.

Retsel also cites portions of Watters's declaration noting three periods of alleged overbilling: the early stages of the case before the first deposition was taken in May 2023, the months following late 2023, and December 2025. Docket 465 at 20; Docket 466 ¶¶ 39, 42. There is nothing unreasonable about plaintiffs' counsel billing more during these periods. The discovery and pleadings phases of litigation are when plaintiffs' counsel and discovery professionals were bound to be especially active, and their timekeeping entries reflect this. Docket 438-1 at 2-16. Late 2023 to mid-2024 is when the parties conducted nearly two dozen depositions and litigated two summary judgment motions. *Id.* at 26-46; Docket 152-2; Docket 158. December 2025 was the month of trial. *See* Docket 422. Thus, this court disagrees with Retsel that the number of hours worked by plaintiffs' counsel during these periods was unreasonable and declines to reduce their hours for these reasons in its lodestar calculation.

In sum, this court finds the number of hours worked by plaintiffs' counsel to be mostly reasonable, but agrees with Retsel that time spent litigating state-law counterclaims, advancing the Justice Department's related matter, and dealing with media inquiries are not compensable. Further, the cost of a third attorney's presence at Self's deposition and a modest number of time entries that are vague or appear to charge for clerical work are not shiftable to Retsel. Thus, this court exercises its discretion to reduce the total

number of hours worked by plaintiffs' counsel and support staff from 2022 to 2025 by 15%. The final adjusted hours worked by plaintiffs' counsel are listed in Appendix D to this order. The resulting lodestar amount, which does not include reasonable expenses, sales tax, or post-judgment interest, is $2,072,588.61.

### C.    Reasonable Expenses

Plaintiffs also request an award of $286,617.24 to cover out-of-pocket expenses. Docket 437 at 10. Plaintiffs submitted a spreadsheet listing these expenses for this court's review. Docket 438-3; Docket 438-4; *see also* Docket 438 ¶¶ 11-12.

The federal rules provide that taxable costs other than attorney's fees should be allowed to the prevailing party. Fed. R. Civ. P. 54(d)(1); *see also Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 498 (8th Cir. 2002); 28 U.S.C. § 1920 (enumerating taxable costs recoverable under Rule 54). In addition to taxable costs enumerated under § 1920, plaintiffs who recover under a fee-shifting statute may recover "reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys." *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996). In cases brought under § 1981, "the court, in its discretion, may include expert fees as part of the attorney's fee." 42 U.S.C. § 1988(c); *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 251 (1994) (recognizing that Congress amended § 1988 to provide that an award of attorney's fees may include expert fees when it passed the Civil Rights Act of 1991); *Jenkins*, 158 F.3d at 983.

This court has reviewed plaintiffs' bill of costs and finds it to be consistent with the Eighth Circuit's standards of reasonableness. The costs listed are the type routinely incurred as a part of active litigation, e.g., photocopying, travel expenses, purchasing equipment specifically needed for this case, postage, and expenses related to service of process. Docket 438-3; Docket 438-4. Thus, this court finds plaintiffs' costs to be reasonable.

Retsel argues that plaintiffs' declarations disguise their counsel's firm overhead as litigation expenses. Docket 465 at 24-26. Retsel claims that "97% of the total figure consists of charges for postage, courier, copying, telephone, electronic legal research, meals, travel, office supplies, document management, and technology." *Id.* at 25. With one exception, these expenses are similar to those courts within the Eighth Circuit have recognized as recoverable "reasonable out-of-pocket expenses of the kind normally charged to clients[.]" *Baker v. John Morrell & Co.*, 263 F. Supp. 2d 1161, 1203 (N.D. Iowa 2003) (collecting cases) (quoting *Pinkham*, 84 F.3d at 294-95 (8th Cir. 1996)).

The exception is search fees for electronic legal research, which the Eighth Circuit has previously held is a part of office overhead. *See Cottier v. City of Martin*, 2008 WL 2696917, at *6 (D.S.D. Mar. 25, 2008); *Standley v. Chilhowee R-IV Sch. Dist.*, 5 F.3d 319, 325 (8th Cir. 1993). Plaintiffs state that they have removed expenses for computer-assisted research such as Lexis and Westlaw from their declarations. Docket 437 at 10 n.2. This does not appear to be entirely accurate. Lexis search fees of $34.18 and a sum of many small

charges for "Pacer research performed" (mostly 10 cents each) remain in plaintiffs' declarations. *See* Docket 438-3 at 2; *see generally* Docket 438-4.

Contrary to both parties' statements that computer assisted research is unrecoverable, the Eighth Circuit has moved away from its categorical rule against awarding these sorts of costs under fee-shifting statutes. As the Eighth Circuit explained in *Hernandez v. Bridgestone Americas Tire Operations, LLC*, 831 F.3d 940, 949 (8th Cir. 2016), the Eighth Circuit's early decisions about the recoverability of computer-assisted research were decided when that technology was in its infancy. In the years since then, the court has recognized that computer-assisted legal research "is [ ] a common litigation expense" and charging clients for it is an "increasingly widespread custom" in some legal markets. *Id.* at 950. Thus, the Eighth Circuit's current guidance is that "[w]hen billing such fees separately becomes 'the increasingly widespread custom' in the relevant marketplace, district courts have the discretion to award them to the prevailing party under a fee-shifting statute." *Id.* (quoting *Jenkins*, 491 U.S. at 287). It is this court's experience that charging fees related to computer-assisted research is customary in the South Dakota legal market. Thus, because the remaining Lexis and Pacer search costs in plaintiffs' declarations are modest and the Eighth Circuit no longer prohibits awarding them, this court exercises its broad discretion to include them in its award of reasonable costs.

Retsel next argues that fees charged by plaintiffs' expert are "statutorily capped at $40 per day" under 28 U.S.C. §§ 1821(b) and 1920. Docket 465 at

35

26. This is incorrect. Plaintiffs' expert's testimony was offered only to prove plaintiffs' § 1981 claims. Section 1988(c) clearly states that expert fees may be awarded to prevailing parties in a § 1981 action. 42 U.S.C. § 1988(c); *Landgraf*, 511 U.S. at 251; *Jenkins*, 158 F.3d at 983. This court refuses to discount these fees from its award of costs. Thus, this court's award of reasonable out-of-pocket costs is $286,617.24.[12]

### D.    Across-the-Board Reductions

Retsel also seeks an across-the-board reduction of the fee award. Docket 465 at 21-23. At different points in its response, Retsel requests a 90% reduction to reflect limited success or an outright denial of an award despite plaintiffs' status as prevailing parties. *Id.* This court refuses to further reduce its award to plaintiffs.

"[T]here is a strong presumption that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) (internal quotation marks omitted). In those rare circumstances, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward[.]" *Hensley*, 461 U.S. at

---

[12] Retsel has not identified any expenses that were solely related to defending against Retsel's and Nick Uhre's counterclaims, and this court's review has not identified any. Thus, this court has not reduced its award of reasonable expenses based on costs related to counterclaims.

434; *Jet Midwest Int'l Co., Ltd. v. Jet Midwest Group, LLC*, 93 F.4th 408, 420 (8th Cir. 2024). These considerations are the factors first outlined by the Fifth Circuit in *Johnson*, 488 F.2d at 717-19 and later identified by the Supreme Court as "the appropriate standards" in *Hensley*, 461 U.S. at 430 n.4. Many of these factors tend to be adequately considered in a court's initial lodestar calculation. *Id.* at 439 n.9. These factors are:

> the time and labor spent; the novelty and difficulty of the legal issues; the skill required to perform the legal services; the attorneys' opportunity cost in pursuing this case; the attorneys' expectation when starting the litigation; the time limitations imposed by the client or the circumstances; the amount at issue and the results achieved; the attorneys' experience, reputation, and ability; the undesirability of the case; the nature of the attorney-client relationship; and fee awards in similar cases.

*Bone Shirt*, 2006 WL 1788307, at *7. Of these, "[t]he most critical factor in assessing fees is the degree of success obtained." *Fish*, 295 F.3d at 852 (citation omitted).

Here, this court's lodestar calculation already addresses most of these factors. Namely, this court's determination of a reasonable hourly rate and a reasonable number of hours worked account for plaintiffs' counsel's time and labor spent, their counsel's usual rates, experience, and abilities, the risk of non-recovery, and the case's challenging circumstances. *See supra* Part II.B.1-2. Regarding the "degree of success obtained," this court determines that plaintiffs' counsel achieved "excellent results" justifying a "fully compensatory fee." *Hensley,* 461 U.S. at 435. Plaintiffs prevailed on each one of their claims of discrimination and Sunny Red Bear prevailed on her assault claim. *See* Docket 434 at 1-8. More importantly, the jury's verdict vindicated plaintiffs'

civil rights in a way that cannot be measured by a monetary sum. This is an excellent result for plaintiffs that merits full compensation for their counsel.

Retsel first argues that plaintiffs' fee request should be denied outright because "[p]laintiffs were largely unsuccessful and recovered far less than the amount for which they could have settled[.]" Docket 465 at 10-11. Retsel notes the large differential between the jury's net award of $63,191 and its fee request of over $3,500,000 and argues that this "imbalance" reflects an unsuccessful outcome. *Id.* at 8-10. Retsel further alleges that this discrepancy suggests plaintiffs' counsel used this case as a vehicle to rack up fees rather than pursue the best possible outcome for their clients. *Id.*

This court does not agree. Successful civil rights actions often do not result in verdicts approaching the size of the attorney's fees expended to win them. *See, e.g., M.B. ex rel. Eggemeyer v. Tidball*, 18 F.4th 565, 567 (8th Cir. 2021) (affirming a fee award of $3.2 million plus $132,000 in costs where plaintiffs sought only declaratory and injunctive relief); *Butler v. Dowd*, 979 F.2d 661, 676 (8th Cir. 1992) (affirming a fee award of $94,680 where plaintiffs won only nominal damages). That reality is part of why Congress enacted § 1988. As the Supreme Court stated in *City of Riverside v. Rivera*, "[a] rule of proportionality [between a verdict and fees] would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting § 1988." 477 U.S. 561, 578 (1986). Here, plaintiffs' case involves the sort of small potential damages that

38

would deny them the opportunity to obtain redress from the courts if a fully compensatory fee award was not available. Thus, this court declines to reduce the award based on the comparatively small jury verdict.

Retsel also argues that plaintiffs' civil justice objectives were redundant because the consent decree with the Department of Justice already satisfied them. Docket 465 at 9-10; Docket 473 at 9-13. Retsel argues plaintiffs had no "intention to settle for the 'damages' they sought in this case," and instead were "using the fee-shifting statute for their [counsel's] own financial gain[.]" Docket 465 at 10-11. Retsel notes that plaintiffs rejected multiple settlement offers, including for an amount higher than the ultimate verdict award. *See id.* at 6-7.

In their reply, plaintiffs explain that they declined to settle because Retsel refused to include an apology or admission of wrongdoing as a condition of the settlement offers. *See* Docket 470 at 12. In its surreply, Retsel claims that this explanation is disingenuous because the Department of Justice's consent decree already required Connie Uhre to issue a formal apology to Rapid City's Native American community, which includes plaintiffs here. Docket 473 at 10-12; *see also* Docket 308-14 at 20. Because "[p]laintiffs cannot credibly argue that settlement required yet another apology[,]" Retsel claims monetary relief was all that remained at stake for plaintiffs, and plaintiffs recovered only a fraction of what they could have obtained through settlement. Docket 473 at 11. Thus, Retsel concludes that plaintiffs' fee award should be reduced because

39

their degree of success was much lower than what plaintiffs claim in their motion.[13]

This argument is unconvincing. Retsel does not cite any authority suggesting that it is this court's duty to second-guess the six plaintiffs' reasons for exercising their right to a jury trial instead of settling. But even taking Retsel's argument on its own terms, this court sees abundant reasons why the cited apologies did not satisfy plaintiffs' desire for an admission of wrongdoing. Namely, the consent decree's apology contains no admission that Retsel discriminated against plaintiffs. It only apologizes for offensive statements made by Connie Uhre in a Facebook post. *See* Docket 308-14 at 20.[14] The § 1981 plaintiffs did not initiate this action because of Connie Uhre's offensive Facebook posts—they did so because they allege Retsel refused to rent hotel rooms to them because they are Native American. These apologies also say nothing about Connie Uhre's assault of Sunny Red Bear. *Id.* Thus, this court does not agree that plaintiffs' aims in going forward with a jury trial were redundant and refuses to reduce plaintiffs' fee award on that basis.

### E.    Sales Tax

Attorneys in South Dakota are required to pay sales tax on services they bill to clients. *See* SDCL §§ 10-45-4; 10-45-4.1. "[T]he general practice of the

---

[13] Retsel also notes that plaintiffs abandoned their claim for declaratory relief before trial, further damaging their arguments that "admission of wrongdoing" was an essential goal of this litigation. It is not this court's place to scrutinize plaintiffs' reasons for preferring one kind of relief over another.

[14] The other public apologies Retsel cites in its surreply also contain no admission of wrongdoing. Docket 473 at 3-4.

District of South Dakota is to award taxes on attorney's fees as part of those fees[.]" *Johnson v. Astrue,* 2011 WL 4458850, at *11 n.5 (D.S.D. Sep. 23, 2011) (citations omitted). The sales tax rate in Rapid City, South Dakota is 6.2%. *See* SDCL §§ 10-45-2 (providing a statewide sales tax of 4.2%); Rapid City, S.D. Mun. Code § 3.16.010 (2026) (imposing a local sales tax of 2%). Thus, this court will award an additional 6.2% of the combined fee-and-expense award as sales tax.

### F.    Post-Judgment Interest

The parties also initially disputed the rate at which this court may determine post-judgment interest, although plaintiffs appear to concede that Retsel's requested interest rate is correct in their reply. Docket 437 at 11; Docket 465 at 26; Docket 470 at 16. 28 U.S.C. § 1961(a) provides that the rate of post-judgment interest is "calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." Thus, a rate of 3.51% interest will accrue on the judgment beginning on December 22, 2025. *See* Market Yield on U.S. Treasury Securities at 1-Year Constant Maturity, BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM (U.S.), https://fred.stlouisfed.org/series/WGS1YR (last accessed June 24, 2026).

### III.    Motion for Discovery, an Evidentiary Hearing, and Referral to a Special Master or Magistrate Judge

Retsel cross-moves for discovery, an evidentiary hearing, and referral to a special master or magistrate judge. Docket 465 at 23-24. Retsel argues that

because plaintiffs' counsel failed to exercise "scrupulous billing judgment[,]" further proceedings and discovery are necessary to "uncover even more excesses[.]" *Id.* at 24. Additionally, Retsel argues that discovery and an evidentiary hearing are necessary to "discern the existence of a possible contingency fee agreement" because such an agreement "bears on the reasonableness of a fees award." *Id.*

The District of South Dakota's Local Rules provide that after briefing on the initial motion for attorney's fees concludes, "[t]he court will then determine the appropriate attorney's fees, if any, without further hearing, unless in the court's opinion a hearing is needed to resolve serious factual disputes between the parties." D.S.D. Civ. LR 54.1(C); *see also* Fed. R. Civ. P. 54(d)(2)(D) (authorizing district courts to adopt local procedures for resolving fee disputes).

Here, further targeted discovery, an evidentiary hearing, or referral to a special master or magistrate judge are not needed to address "serious factual disputes between the parties." Plaintiffs' submissions provide adequate evidentiary basis to determine the merits of Retsel's complaints that plaintiffs' billing entries are vague, block-billed, or that they bill for non-compensable work. *See* Docket 465 at 23-24; Docket 473 at 5-9; *see also supra* Part II.B.2.

Regarding a contingency fee agreement, plaintiffs do not contest that one exists. *See* Docket 470 at 15. Retsel argues that this concession is insufficient and notes that plaintiffs' declarations do not attach the operative fee agreement, "describe the percentage, whether the arrangement is hybrid, whether fees are owed regardless of recovery, whether [p]laintiffs remain

42

responsible for costs, whether any multiplier applied, or whether any third-party bears payment responsibility." Docket 473 at 6. Retsel argues that these details are required to determine whether plaintiffs' counsel entered this case anticipating statutory fee recovery, and that this expectation bears directly on the "risk of nonpayment and whether the claimed rates reflect real market discipline." *Id.* at 7.

In computing a fee award, "[w]hether or not a litigant agreed to pay a fee and in what amount is not decisive. . . . Such arrangements should not determine the court's decision. The criterion for the court is not what the parties agree but what is reasonable." *Blanchard*, 489 U.S. at 92 (citation modified). The existence of a fee arrangement, while one of the *Johnson* factors, is only one of twelve "factors to be considered in assessing the reasonableness of an award of attorney's fees," and is "not dispositive." *Id.* at 93. The role of this factor is to help demonstrate the "attorney's fee expectations when he accepted the case," but the overarching goal of the *Johnson* factors and § 1988 remains reasonable compensation "in light of all of the circumstances." *Id.*; *see also Pennsylvania v. Del. Valley Citizens' Council for Clear Air*, 483 U.S. 711, 723 (1987); *Johnson*, 488 F.2d at 718.

Here, plaintiffs' counsel state in a declaration that they never expected a contingency fee agreement to determine their compensation. Docket 439 ¶ 14. Plaintiffs asked for modest or nominal damages awards at trial and obtained a verdict totaling a net award of $63,191, less than 2% of their requested fee award. *See* Docket 448-4 at 27-28; Docket 434. Their counsel's contractual

43

entitlement under a contingency agreement would be even smaller. Given this vast differential, it is obvious that plaintiffs' counsel expected to rely on fee-shifting for their compensation, and the details of plaintiffs' fee agreement would provide no additional value to this court in assessing the reasonableness of their fee request. Thus, the fee agreement's details are not needed to resolve any "serious factual disputes between the parties." Retsel's motion for discovery, an evidentiary hearing, and referral to a special master or magistrate judge is denied.

## CONCLUSION

When this court's determination of plaintiffs' counsel's reasonable hourly rate (Appendix B) is multiplied by its determination of their reasonable hours worked (Appendix D) in 2022 through 2026, the resulting lodestar amount is $2,072,588.61. When plaintiffs' counsel's reasonable out-of-pocket costs of $286,617.24 are added to the lodestar, the total pre-tax award is $2,359,205.85. Plaintiffs are also entitled to collect sales tax of $146,270.76. This court's full fee award calculation by year and by attorney is summarized at Appendix E.

Thus, it is

ORDERED that plaintiffs' motion for attorneys' fees (Docket 436) is GRANTED. It is

FURTHER ORDERED that Retsel's cross-motion for discovery, an evidentiary hearing, and referral to a special master or magistrate judge (Docket 465) is DENIED. It is

44

FURTHER ORDERED that defendant's motion for leave to file a supplemental declaration (Docket 476) is GRANTED. It is

FURTHER ORDERED that plaintiffs are awarded attorneys' fees in the amount of $2,072,588.61, out-of-pocket costs in the amount of $286,617.24, and sales tax in the amount of $146,270.76.

Dated July 7, 2026.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

**Appendix A: Plaintiffs' Requested Hourly Rates for Attorneys and Support Staff[15]**

| Staff Member | Hourly Rate in 2022 | Hourly Rate in 2023 | Hourly Rate in 2024 | Hourly Rate in 2025 | Hourly Rate in 2026 |
|---|---|---|---|---|---|
| *Attorneys* | | | | | |
| Brendan Johnson | $680.00 | $720.00 | $770.00 | $810.00 | $860.00 |
| Tim Billion | $645.00 | $685.00 | $725.00 | $760.00 | $805.00 |
| Thad Titze | $485.00 | $505.00 | $540.00 | $670.00 | $710.00 |
| Erica Ramsey | $645.00 | $685.00 | $725.00 | $760.00 | |
| Michael Reif | | | $755.00 | | |
| Tom Berndt | | | | $795.00 | |
| Alexandra Carthew | $360.00 | | | | |
| Allegra Labat | | | | $565.00 | |
| Amy Sisk | | | | $265.00 | $465.00 |
| Casey Matthiesen | $360.00 | | | | |
| Erica Rosenbaum | | | $540.00 | | |
| Jordan Rice | | $390.00 | | | |
| Kaitlin Ek | | | | $340.00 | |
| Michael Pacelli | $675.00 | $715.00 | | | |
| Morgia Holmes | | | $735.00 | | |
| Rebecca Zadaka | $360.00 | | | | |
| *Support Staff* | | | | | |
| Andrew Borer | $205.00 | | $215.00 | | |
| Brian Cade | | $235.00 | $250.00 | $265.00 | |

---

[15] Appendices A-E incorporate time plaintiffs spent responding to Retsel's post-trial motions in 2026. *See* Docket 471-1. Blank cells indicate that the professional did not record any time in that year.

| | | | | | |
|---|---|---|---|---|---|
| Caleb Shields | | | $295.00 | $310.00 | |
| Christopher Sullivan | | $295.00 | $315.00 | | |
| Elizabeth Omodt | | $215.00 | $215.00 | $225.00 | |
| Katrina Stewart | $170.00 | $180.00 | | | |
| Kyle Benson | | | | $310.00 | |
| Lisl Fuhrken | | | $215.00 | | |
| Lynn Brinkman | $170.00 | $180.00 | $180.00 | | |
| Marcia Niedorf | | | $315.00 | $330.00 | |
| Marina Schlesinger | $265.00 | $280.00 | $280.00 | $290.00 | |
| Nathan Howells | | | | $185.00 | |
| Nick Adler | $220.00 | | $250.00 | $265.00 | |
| Renae Knudson | | | $280.00 | | |
| Roger Smith | $170.00 | $180.00 | $180.00 | | |
| Ruben Narine | | | | $310.00 | |
| Sarah Leete | $205.00 | | | | |
| Scott Schermerhorn | $170.00 | $180.00 | $180.00 | $190.00 | |
| Shukri Ibrahim | $170.00 | $180.00 | | | |
| Stacey Wilson | $375.00 | $400.00 | $400.00 | | |
| Taylor Philp | $165.00 | $175.00 | | | |
| Theodore Harwood | | $180.00 | $180.00 | $190.00 | |
| Vivian Enck | $375.00 | | | | |

**Appendix B: Adjusted Hourly Rates for Attorneys and Support Staff**

| Staff Member | Hourly Rate in 2022 | Hourly Rate in 2023 | Hourly Rate in 2024 | Hourly Rate in 2025 | Hourly Rate in 2026 |
|---|---|---|---|---|---|
| *Attorneys* | | | | | |
| Brendan Johnson | $453.33 | $480.00 | $513.33 | $540.00 | $573.33 |
| Tim Billion | $430.00 | $456.67 | $483.33 | $506.67 | $536.67 |
| Thad Titze | $323.33 | $336.67 | $360.00 | $446.67 | $473.33 |
| Erica Ramsey | $430.00 | $456.67 | $483.33 | $506.67 | |
| Michael Reif | | | $503.33 | | |
| Tom Berndt | | | | $530.00 | |
| Alexandra Carthew | $240.00 | | | | |
| Allegra Labat | | | | $376.67 | |
| Amy Sisk | | | | $176.67 | $310.00 |
| Casey Matthiesen | $240.00 | | | | |
| Erica Rosenbaum | | | $360.00 | | |
| Jordan Rice | | $260.00 | | | |
| Kaitlin Ek | | | | $226.67 | |
| Michael Pacelli | $450.00 | $476.67 | | | |
| Morgia Holmes | | | $490.00 | | |
| Rebecca Zadaka | $240.00 | | | | |
| *Support Staff* | | | | | |
| Andrew Borer | $102.50 | | $107.50 | | |
| Brian Cade | | $117.50 | $125.00 | $132.50 | |
| Caleb Shields | | | $147.50 | $155.00 | |
| Christopher Sullivan | | $147.50 | $157.50 | | |
| Elizabeth Omodt | | $107.50 | $107.50 | $112.50 | |

| | | | | | |
|---|---|---|---|---|---|
| Katrina Stewart | $85.00 | $90.00 | | | |
| Kyle Benson | | | | $155.00 | |
| Lisl Fuhrken | | | $107.50 | | |
| Lynn Brinkman | $85.00 | $90.00 | $90.00 | | |
| Marcia Niedorf | | | $157.50 | $165.00 | |
| Marina Schlesinger | $132.50 | $140.00 | $140.00 | $145.00 | |
| Nathan Howells | | | | $92.50 | |
| Nick Adler | $110.00 | | $125.00 | $132.50 | |
| Renae Knudson | | | $140.00 | | |
| Roger Smith | $85.00 | $90.00 | $90.00 | | |
| Ruben Narine | | | | $155.00 | |
| Sarah Leete | $102.50 | | | | |
| Scott Schermerhorn | $85.00 | $90.00 | $90.00 | $95.00 | |
| Shukri Ibrahim | $85.00 | $90.00 | | | |
| Stacey Wilson | $187.50 | $200.00 | $200.00 | | |
| Taylor Philp | $82.50 | $87.50 | | | |
| Theodore Harwood | | $90.00 | $90.00 | $95.00 | |
| Vivian Enck | $187.50 | | | | |

**Appendix C: Hours Worked by Plaintiffs' Attorneys and Support Staff (before adjustment)**

| Staff Member | Hours Worked in 2022 | Hours Worked in 2023 | Hours Worked in 2024 | Hours Worked in 2025 | Hours Worked in 2026 |
|---|---|---|---|---|---|
| *Attorneys* | | | | | |
| Brendan Johnson | 43.2 | 57.4 | 396.6 | 244.4 | 7.2 |
| Tim Billion | 201 | 343 | 783.1 | 376.3 | 137.1 |
| Thad Titze | 51.1 | 429.8 | 1117.4 | 536.2 | 31.5 |
| Erica Ramsey | 1.3 | 4.5 | 1.6 | 2.2 | |
| Michael Reif | | | 179.2 | | |
| Tom Berndt | | | | 9.1 | |
| Alexandra Carthew | 13.7 | | | | |
| Allegra Labat | | | | 30.2 | |
| Amy Sisk | | | | 7.5 | 15.4 |
| Casey Matthiesen | 39 | | | | |
| Erica Rosenbaum | | | 14.7 | | |
| Jordan Rice | | 118.1 | | | |
| Kaitlin Ek | | | | 18.1 | |
| Michael Pacelli | 87.7 | 10.9 | | | |
| Morgia Holmes | | | 26.3 | | |
| Rebecca Zadaka | 8.1 | | | | |
| *Support Staff* | | | | | |
| Andrew Borer | 0.4 | | 1 | | |
| Brian Cade | | 7 | 28.5 | 9 | |
| Caleb Shields | | | 40.5 | 1.1 | |
| Christopher Sullivan | | 2 | 27 | | |

| Name | | | | | |
|---|---|---|---|---|---|
| Elizabeth Omodt | | 1.1 | 4.1 | 0.1 | |
| Katrina Stewart | 1.8 | 1.4 | | | |
| Kyle Benson | | | | 79.2 | |
| Lisl Fuhrken | | | 1.3 | | |
| Lynn Brinkman | 2.6 | 3.5 | 7.2 | | |
| Marcia Niedorf | | | 205.3 | 82.9 | |
| Marina Schlesinger | 2.1 | 14.4 | 12.2 | 0.9 | |
| Nathan Howells | | | | 3.1 | |
| Nick Adler | 11.5 | | 12 | 6.5 | |
| Renae Knudson | | | 1.7 | | |
| Roger Smith | 1.8 | 9.1 | 7.8 | | |
| Ruben Narine | | | | 8 | |
| Sarah Leete | 0.8 | | | | |
| Scott Schermerhorn | 0.4 | 14.5 | 37.4 | 3.6 | |
| Shukri Ibrahim | 2.2 | 1 | | | |
| Stacey Wilson | 1 | 10.5 | 4.9 | | |
| Taylor Philp | 1.4 | 26.4 | | | |
| Theodore Harwood | | 7.3 | 8.2 | 0.3 | |
| Vivian Enck | 4.2 | | | | |
| **Totals** | 475.3 | 1061.9 | 2918 | 1418.7 | 191.2 |

**Appendix D: Hours Worked by Plaintiffs' Attorneys and Support Staff (after adjustment)**

| Staff Member | Hours Worked in 2022 | Hours Worked in 2023 | Hours Worked in 2024 | Hours Worked in 2025 | Hours Worked in 2026 |
|---|---|---|---|---|---|
| *Attorneys* | | | | | |
| Brendan Johnson | 36.720 | 48.79 | 337.11 | 207.74 | 7.2 |
| Tim Billion | 170.85 | 291.55 | 665.635 | 319.855 | 137.1 |
| Thad Titze | 43.435 | 365.33 | 949.79 | 455.77 | 31.5 |
| Erica Ramsey | 1.105 | 3.825 | 1.36 | 1.87 | |
| Michael Reif | | | 152.32 | | |
| Tom Berndt | | | | 7.735 | |
| Alexandra Carthew | 11.645 | | | | |
| Allegra Labat | | | | 25.67 | |
| Amy Sisk | | | | 6.375 | 15.4 |
| Casey Matthiesen | 33.15 | | | | |
| Erica Rosenbaum | | | 12.495 | | |
| Jordan Rice | | 100.385 | | | |
| Kaitlin Ek | | | | 15.385 | |
| Michael Pacelli | 74.545 | 9.265 | | | |
| Morgia Holmes | | | 22.355 | | |
| Rebecca Zadaka | 6.885 | | | | |
| *Support Staff* | | | | | |
| Andrew Borer | 0.34 | | 0.85 | | |
| Brian Cade | | 5.95 | 24.225 | 7.65 | |
| Caleb Shields | | | 34.425 | 0.935 | |
| Christopher Sullivan | | 1.70 | 22.95 | | |

52

| | | | | | |
|---|---|---|---|---|---|
| Elizabeth Omodt | | 0.935 | 3.485 | 0.085 | |
| Katrina Stewart | 1.53 | 1.19 | | | |
| Kyle Benson | | | | 67.32 | |
| Lisl Fuhrken | | | 1.105 | | |
| Lynn Brinkman | 2.21 | 2.975 | 6.12 | | |
| Marcia Niedorf | | | 174.505 | 70.465 | |
| Marina Schlesinger | 1.785 | 12.24 | 10.37 | 0.765 | |
| Nathan Howells | | | | 2.635 | |
| Nick Adler | 9.775 | | 10.20 | 5.525 | |
| Renae Knudson | | | 1.445 | | |
| Roger Smith | 1.53 | 7.735 | 6.63 | | |
| Ruben Narine | | | | 6.80 | |
| Sarah Leete | 0.68 | | | | |
| Scott Schermerhorn | 0.34 | 12.325 | 31.79 | 3.06 | |
| Shukri Ibrahim | 1.87 | 0.85 | | | |
| Stacey Wilson | 0.85 | 8.925 | 4.165 | | |
| Taylor Philp | 1.19 | 22.44 | | | |
| Theodore Harwood | | 6.205 | 6.97 | 0.255 | |
| Vivian Enck | 3.57 | | | | |
| **Totals** | 404.005 | 902.615 | 2480.3 | 1205.895 | 191.2 |

53

**Appendix E: Resulting Fee Award[16]**

| Staff Member | Fees in 2022 | Fees in 2023 | Fees in 2024 | Fees in 2025 | Fees in 2026 |
|---|---|---|---|---|---|
| *Attorneys* | | | | | |
| Brendan Johnson | $16,646.28 | $23,419.20 | $173,048.68 | $112,179.60 | $4,127.98 |
| Tim Billion | $73,465.50 | $133,142.14 | $321,721.36 | $162,060.93 | $73,577.46 |
| Thad Titze | $14,043.84 | $122,995.65 | $341,924.40 | $203,578.79 | $14,909.90 |
| Erica Ramsey | $475.15 | $1,746.76 | $657.33 | $947.47 | |
| Michael Reif | | | $76,667.23 | | |
| Tom Berndt | | | | $4,099.55 | |
| Alexandra Carthew | $2,794.80 | | | | |
| Allegra Labat | | | | $9,669.12 | |
| Amy Sisk | | | | $1,126.27 | $4,774.00 |
| Casey Matthiesen | $7,956.00 | | | | |
| Erica Rosenbaum | | | $4,498.20 | | |
| Jordan Rice | | $26,100.10 | | | |
| Kaitlin Ek | | | | $3,487.32 | |
| Michael Pacelli | $33,545.25 | $4,416.35 | | | |
| Morgia Holmes | | | $10,953.95 | | |
| Rebecca Zadaka | $1,652.40 | | | | |
| *Support Staff* | | | | | |
| Andrew Borer | $34.85 | | $91.38 | | |
| Brian Cade | | $699.13 | $3,028.13 | $1,013.63 | |

---

[16] Lodestar calculations are based on adjusted hourly rates rounded to the nearest cent. Resulting fee awards by professional and by year are also rounded to the nearest cent.

| | | | | | |
|---|---|---|---|---|---|
| Caleb Shields | | | $5,077.69 | $144.93 | |
| Christopher Sullivan | | $250.75 | $3,614.63 | | |
| Elizabeth Omodt | | $100.51 | $374.64 | $9.56 | |
| Katrina Stewart | $130.05 | $107.10 | | | |
| Kyle Benson | | | | $10,434.60 | |
| Lisl Fuhrken | | | $118.79 | | |
| Lynn Brinkman | $187.85 | $267.75 | $550.80 | | |
| Marcia Niedorf | | | $27,484.54 | $11,626.73 | |
| Marina Schlesinger | $236.51 | $1,713.60 | $1,451.80 | $110.93 | |
| Nathan Howells | | | | $243.74 | |
| Nick Adler | $1,075.25 | | $1,275.00 | $732.06 | |
| Renae Knudson | | | $202.30 | | |
| Roger Smith | $130.05 | $696.15 | $596.70 | | |
| Ruben Narine | | | | $1,054.00 | |
| Sarah Leete | $69.70 | | | | |
| Scott Schermerhorn | $28.90 | $1,109.25 | $2,861.10 | $290.70 | |
| Shukri Ibrahim | $158.95 | $76.50 | | | |
| Stacey Wilson | $159.38 | $1,785.00 | $833.00 | | |
| Taylor Philp | $98.18 | $1,963.50 | | | |
| Theodore Harwood | | $558.45 | $627.30 | $24.23 | |
| Vivian Enck | $669.38 | | | | |
| **Total Fees By Year** | $153,558.27 | $321,147.89 | $977,658.95 | $522,834.16 | $97,389.34 |
| **Total Fee Award** | $2,072,588.61 | | | | |
| **Reasonable Expenses** | $286,617.24 | | | | |
| **Sales Tax** | $146,270.76 | | | | |

55